EXTRAORDINARY SESSION #1

Legislative Bill Drafting Commission
12053-04-2

S.         --------
        Senate
        --------

IN SENATE--Introduced by Sen

--read twice and ordered printed,
and when printed to be committed
to the Committee on

        -------- A.
        Assembly
        --------

IN ASSEMBLY--Introduced by M. of A.

with M. of A. as co-sponsors

--read once and referred to the
Committee on

*PENALA*
(Relates to licensing and other
provisions relating to firearms)

        --------

Pen L. licensing of firearms

                AN ACT

to amend the penal law, the general
business law, the executive law, the
civil practice law and rules and the
state finance law, in relation to
licensing and other provisions
relating to firearms

The People of the State of New
York, represented in Senate and
Assembly, do enact as follows:

IN SENATE_____

**Senate introducer's signature**

The senators whose names are circled below wish to join me in the sponsorship of this proposal:

| | | | | |
|---|---|---|---|---|
| s15 Addabbo | s17 Felder | s07 Kaplan | s58 O'Mara | s10 Sanders |
| s52 Akshar | s59 Gallivan | s26 Kavanagh | s62 Ortt | s23 Savino |
| s36 Bailey | s05 Gaughran | s63 Kennedy | s01 Palumbo | s32 Sepulveda |
| s34 Biaggi | s12 Gianaris | s28 Krueger | s21 Parker | s41 Serino |
| s57 Borrello | s22 Gounardes | s24 Lanza | s19 Persaud | s29 Serrano |
| s04 Boyle | s47 Griffo | s11 Liu | s13 Ramos | s39 Skoufis |
| s44 Breslin | s40 Harckham | s50 Mannion | s61 Rath | s16 Stavisky |
| s25 Brisport | s54 Helming | s42 Martucci | s38 Reichlin- | s45 Stec |
| s08 Brooks | s46 Hinchey | s02 Mattera | Melnick | s35 Stewart- |
| s55 Brouk | s27 Hoylman | s53 May | s48 Ritchie | Cousins |
| s30 Cleare | s31 Jackson | s37 Mayer | s33 Rivera | s49 Tedisco |
| s14 Comrie | s43 Jordan | s20 Myrie | s60 Ryan | s06 Thomas |
| s56 Cooney | s09 Kaminsky | s51 Oberacker | s18 Salazar | s03 Weik |

IN ASSEMBLY_____

**Assembly introducer's signature**

The Members of the Assembly whose names are circled below wish to join me in the multi-sponsorship of this proposal:

| | | | | |
|---|---|---|---|---|
| a049 Abbate | a032 Cook | a066 Glick | a014 McDonough | a121 Salka |
| a092 Abinanti | a039 Cruz | a146 Gonzalez- | a146 McMahon | a111 Santabarbara |
| a031 Anderson | a043 Cunningham | Rojas | a137 Meeks | a090 Sayegh |
| a122 Angelino | a063 Cusick | a150 Goodell | a017 Mikulin | a099 Schmitt |
| a107 Ashby | a045 Cymbrowitz | a075 Gottfried | a101 Miller, B. | a076 Seawright |
| a035 Aubry | a018 Darling | a021 Griffin | a051 Mitaynes | a084 Septimo |
| a120 Barclay | a053 Davila | a100 Gunther | a015 Montesano | a016 Sillitti |
| a030 Barnwell | a072 De Los Santos | a134 Hawley | a145 Morinello | a052 Simon |
| a106 Barrett | a203 DeStefano | a083 Heastie | a065 Niou | a114 Simpson |
| a082 Benedetto | a070 Dickens | a028 Hevesi | a037 Nolan | a005 Smith |
| a042 Bichotte | a054 Dilan | a128 Hunter | a144 Norris | a118 Smullen |
| Hermelyn | a081 Dinowitz | a029 Hyndman | a069 O'Donnell | a022 Solages |
| a117 Blankenbush | a147 DiPietro | a079 Jackson | a091 Otis | a110 Steck |
| a098 Brabenec | a009 Durso | a104 Jacobson | a132 Palmesano | a010 Stern |
| a026 Braunstein | a048 Eichenstein | a011 Jean-Pierre | a088 Paulin | a127 Stirpe |
| a138 Bronson | a046 Englebright | a134 Jensen | a141 Peoples- | a102 Tague |
| a020 Brown, E. | a074 Epstein | a115 Jones | Stokes | a064 Tannousis |
| a012 Brown, K. | a109 Fahy | a077 Joyner | a023 Pheffer | a086 Tapia |
| a093 Burdick | a061 Fall | a125 Kelles | Amato | a071 Taylor |
| a085 Burgos | a080 Fernandez | a040 Kim | a089 Pretlow | a001 Thiele |
| a142 Burke | a008 Fitzpatrick | a105 Lalor | a073 Quart | a033 Vanel |
| a119 Buttenschon | a057 Forrest | a013 Lavine | a019 Ra | a116 Walczyk |
| a094 Byrne | a124 Friend | a097 Lawler | a038 Rajkumar | a055 Walker |
| a133 Byrnes | a046 Frontus | a126 Lemondes | a006 Ramos | a143 Wallace |
| a103 Cahill | a095 Galef | a060 Lucas | a062 Reilly | a112 Walsh |
| a044 Carroll | a050 Gallagher | a135 Lunsford | a087 Reyes | a041 Weinstein |
| a058 Chandler- | a131 Gallahan | a123 Lupardo | a078 Rivera, J. | a024 Weprin |
| Waterman | a007 Gandolfo | a129 Magnarelli | a149 Rivera, J.D. | a059 Williams |
| a136 Clark | a068 Gibbs | a036 Mamdani | a027 Rosenthal, D. | a113 Woerner |
| a047 Colton | a002 Giglio, J.A. | a130 Manktelow | a067 Rosenthal, L. | a096 Zebrowski |
| a140 Conrad | a148 Giglio, J.M. | a108 McDonald | a025 Rozic | a056 Zinerman |

1) Single House Bill (introduced and printed separately in either or both houses). Uni-Bill (introduced simultaneously in both houses and printed as one bill. Senate and Assembly introducer sign the same copy of the bill).

2) Circle names of co-sponsors and return to introduction clerk with 2 signed copies of bill and: in Assembly 2 copies of memorandum in support, in Senate 4 copies of memorandum in support (single house); or 4 signed copies of bill and 6 copies of memorandum in support (uni-bill).

LBDC 05/31/22

Exhibit "1"

1   Section 1. The section heading and subdivisions 1, 1-a, 2, 4, 4-a,

2   4-b, 10 and 11 of section 400.00 of the penal law, subdivisions 1 and 10

3   as amended by chapter 1 of the laws of 2013, paragraph (c) of subdivi-

4   sion 1 as amended by chapter 60 of the laws of 2018, paragraph (j) of

5   subdivision 1 as amended by chapter 208 of the laws of 2022, subdivision

6   1-a as added by section 2 of part N of chapter 55 of the laws of 2020,

7   subdivision 2 as amended by chapter 212 of the laws of 2022, subdivision

8   4 as amended by chapter 242 of the laws of 2019, subdivision 4-a as

9   added by chapter 233 of the laws of 1980, subdivision 4-b as added by

10  chapter 446 of the laws of 1997, paragraph (c) of subdivision 10 as

11  added by chapter 212 of the laws of 2022, subdivision 11 as amended by

12  chapter 207 of the laws of 2022, are amended and a new subdivision 4-c

13  is added to read as follows:

14  [Licenses to carry, possess, repair and dispose of] Licensing and other

15  provisions relating to firearms.

16  1. Eligibility. No license shall be issued or renewed pursuant to this

17  section except by the licensing officer, and then only after investi-

18  gation and finding that all statements in a proper application for a

19  license are true. No license shall be issued or renewed except for an

20  applicant (a) twenty-one years of age or older, provided, however, that

21  where such applicant has been honorably discharged from the United

22  States army, navy, marine corps, air force or coast guard, or the

23  national guard of the state of New York, no such age restriction shall

24  apply; (b) of good moral character, which, for the purposes of this

25  article, shall mean having the essential character, temperament and

26  judgement necessary to be entrusted with a weapon and to use it only in

27  a manner that does not endanger oneself or others; (c) who has not been

28  convicted anywhere of a felony or a serious offense or who is not the

1  subject of an outstanding warrant of arrest issued upon the alleged

2  commission of a felony or serious offense; (d) who is not a fugitive

3  from justice; (e) who is not an unlawful user of or addicted to any

4  controlled substance as defined in section 21 U.S.C. 802; (f) who being

5  an alien (i) is not illegally or unlawfully in the United States or (ii)

6  has not been admitted to the United States under a nonimmigrant visa

7  subject to the exception in 18 U.S.C. 922(y)(2); (g) who has not been

8  discharged from the Armed Forces under dishonorable conditions; (h) who,

9  having been a citizen of the United States, has not renounced his or her

10 citizenship; (i) who has stated whether he or she has ever suffered any

11 mental illness; (j) who has not been involuntarily committed to a facil-

12 ity under the jurisdiction of an office of the department of mental

13 hygiene pursuant to article nine or fifteen of the mental hygiene law,

14 article seven hundred thirty or section 330.20 of the criminal procedure

15 law or substantially similar laws of any other state, section four

16 hundred two or five hundred eight of the correction law, section 322.2

17 or 353.4 of the family court act, has not been civilly confined in a

18 secure treatment facility pursuant to article ten of the mental hygiene

19 law, or has not been the subject of a report made pursuant to section

20 9.46 of the mental hygiene law; (k) who has not had a license revoked or

21 who is not under a suspension or ineligibility order issued pursuant to

22 the provisions of section 530.14 of the criminal procedure law or

23 section eight hundred forty-two-a of the family court act; (l) in the

24 county of Westchester, who has successfully completed a firearms safety

25 course and test as evidenced by a certificate of completion issued in

26 his or her name and endorsed and affirmed under the penalties of perjury

27 by a duly authorized instructor, except that: (i) persons who are honor-

28 ably discharged from the United States army, navy, marine corps or coast

1  guard,  or  of  the national guard of the state of New York, and produce

2  evidence of official  qualification  in  firearms  during  the  term  of

3  service  are  not  required  to have completed those hours of a firearms

4  safety  course pertaining to the safe use, carrying, possession, mainte-

5  nance and storage of a firearm; [and] (ii) persons who were licensed  to

6  possess  a  pistol or revolver prior to the effective date of this para-

7  graph are not required to have completed a firearms  safety  course  and

8  test, provided, however, persons with a license issued under paragraph

9  (f) of subdivision two of this section prior to the  effective  date  of

10  the  laws  of two thousand twenty-two which amended this paragraph shall

11  be required to complete the training required by subdivision nineteen of

12  this section prior to the recertification of  such  license;  and  (iii)

13  persons applying for a license under paragraph (f) of subdivision two of

14  this  section  on or after the effective date of the chapter of the laws

15  of two thousand twenty-two which amended this  paragraph  who  shall  be

16  required to complete the training required under subdivision nineteen of

17  this  section for such license; (m) who has not had a guardian appointed

18  for him or her pursuant to any provision of state law, based on a deter-

19  mination that as a  result  of  marked  subnormal  intelligence,  mental

20  illness, incompetency, incapacity, condition or disease, he or she lacks

21  the  mental  capacity to contract or manage his or her own affairs; [and

22  (n) concerning whom no good cause exists for the denial of the license.]

23  (n) for a license issued under paragraph (f) of subdivision two of  this

24  section,  that the applicant has not been convicted within five years of

25  the date of the application of any of the following: (i)  assault    in

26  the    third  degree, as defined in section 120.00 of this chapter; (ii)

27  misdemeanor driving  while intoxicated,  as  defined  in section  eleven

28  hundred ninety-two of the vehicle and traffic law; or (iii) menacing, as

1  defined in section 120.15 of this chapter; and (o) for a license  issued

2  under  paragraph  (f)  of subdivision two of this section, the applicant

3  shall meet in person with the licensing officer for an  interview    and

4  shall,  in  addition  to  any other information or forms required by the

5  license application submit to the licensing officer the following infor-

6  mation:  (i)  names and  contact  information  for    the    applicant's

7  current  spouse,  or domestic  partner, any other adults residing in the

8  applicant's home,  including  any  adult children of the applicant, and

9  whether or not there are minors residing, full time or part time, in the

10  applicant's home; (ii) names and contact information of  no  less  than

11  four  character  references  who  can attest to the  applicant's  good

12  moral character and that such applicant has not engaged in any acts,  or

13  made  any statements   that suggest they are likely to engage in conduct

14  that would result in harm to themselves or others;  (iii)  certification

15  of  completion  of the training required in subdivision nineteen of this

16  section; (iv) a list of former and current social  media  accounts    of

17  the  applicant  from  the  past  three  years to confirm the information

18  regarding the applicants character and conduct as required  in  subpara-

19  graph (ii) of this paragraph; and (v) such other information required by

20  the  licensing  officer that is reasonably necessary and related to the

21  review of the licensing application.

22    1-a. No person shall engage in the business of gunsmith or  dealer  in

23  firearms  unless  licensed  pursuant  to  this  section. An applicant to

24  engage in such business shall also be a citizen of  the  United  States,

25  more  than  twenty-one  years of age and shall be required to maintain a

26  place of business in the city or county where the license is issued. For

27  such business, if the applicant is a firm or  partnership,  each  member

28  thereof  shall  comply  with  all  of the requirements set forth in this

1    subdivision and if the applicant is a corporation, each officer  thereof

2    shall so comply.

3    [1-a.]  1-b.  For purposes of subdivision one of this section, serious

4    offense shall include an offense in any jurisdiction or the former penal

5    law that includes all of the essential elements of a serious offense  as

6    defined  by  subdivision  seventeen  of  section 265.00 of this chapter.

7    Nothing in this subdivision shall preclude the denial of a license based

8    on the commission of, arrest for or conviction  of  an  offense  in  any

9    other  jurisdiction which does not include all of the essential elements

10   of a serious offense.

11   2. Types of licenses. A license for gunsmith  or  dealer  in  firearms

12   shall be issued to engage in such business. A license for a semiautomat-

13   ic rifle, other than an assault weapon or disguised gun, shall be issued

14   to  purchase  or take possession of such a [firearm] semiautomatic rifle

15   when such transfer of ownership occurs on or after the effective date of

16   [the] chapter two hundred twelve of the laws of two thousand  twenty-two

17   that amended this subdivision. A license for a pistol or revolver, other

18   than  an  assault weapon or a disguised gun, shall be issued to (a) have

19   and possess in his dwelling by a householder; (b) have  and  possess  in

20   his  place  of business by a merchant or storekeeper; (c) have and carry

21   concealed while so employed by a messenger employed by a banking  insti-

22   tution  or express company; (d) have and carry concealed by a justice of

23   the supreme court in the first or second judicial departments, or  by  a

24   judge  of  the  New  York city civil court or the New York city criminal

25   court; (e) have and carry concealed while  so  employed  by  a  regular

26   employee of an institution of the state, or of any county, city, town or

27   village,  under  control  of a commissioner of correction of the city or

28   any warden, superintendent or head keeper of any state prison,  peniten-

1  tiary, workhouse, county jail or other institution for the detention of

2  persons convicted or accused of crime or held as witnesses  in  criminal

3  cases,  provided that application is made therefor by such commissioner,

4  warden,  superintendent  or  head  keeper; (f) have and carry concealed,

5  without regard to employment or place  of  possession  <u>subject  to  the</u>

6  <u>restrictions  of state and federal law</u>, by any person [when proper cause

7  exists for the issuance thereof]; and (g)  have,  possess,  collect  and

8  carry antique pistols which are defined as follows: (i) any single shot,

9  muzzle  loading  pistol  with a matchlock, flintlock, percussion cap, or

10  similar type of ignition system manufactured in or before  [1898]  <u>1898</u>,

11  which is not designed for using rimfire or conventional centerfire fixed

12  ammunition;  and  (ii) any replica of any pistol described in clause (i)

13  hereof if such replica[--]<u>:</u>

14     (1) is not designed or redesigned for using  rimfire  or  conventional

15  centerfire fixed ammunition, or

16     (2)  uses rimfire or conventional centerfire fixed ammunition which is

17  no longer manufactured in the United States and  which  is  not  readily

18  available in the ordinary channels of commercial trade.

19     4.  Investigation.  Before a license is issued or renewed, there shall

20  be an investigation of all statements required in the application by the

21  duly constituted police authorities of the locality where such  applica-

22  tion is made, including but not limited to such records as may be acces-

23  sible  to  the  division of state police or division of criminal justice

24  services pursuant to section 400.02 of this article. For  that  purpose,

25  the  records  of  the  appropriate  office  of  the department of mental

26  hygiene concerning previous or present mental illness of  the  applicant

27  shall  be  available  for inspection by the investigating officer of the

28  police authority. Where the applicant is domiciled in a  foreign  state,

1   the investigation shall include inquiry of the foreign state for records

2   concerning the previous or present mental illness of the applicant, and,

3   to the extent necessary for inspection by the investigating officer, the

4   applicant  shall  execute  a waiver of confidentiality of such record in

5   such form as may be required by the foreign state. In order to ascertain

6   any previous criminal record, the investigating officer shall  take  the

7   fingerprints  and  physical  descriptive  data  in quadruplicate of each

8   individual by whom the application is signed and verified. Two copies of

9   such fingerprints shall be taken on  standard  fingerprint  cards  eight

10  inches  square,  and  one  copy may be taken on a card supplied for that

11  purpose by the federal bureau of investigation; provided, however,  that

12  in  the  case  of  a  corporate applicant that has already been issued a

13  dealer in firearms license and seeks to operate a firearm dealership  at

14  a  second  or subsequent location, the original fingerprints on file may

15  be used to ascertain any criminal record in  the  second  or  subsequent

16  application  unless any of the corporate officers have changed since the

17  prior application, in which case the new corporate officer shall  comply

18  with  procedures governing an initial application for such license. When

19  completed, one standard card shall be forwarded to and retained  by  the

20  division  of  criminal  justice services in the executive department, at

21  Albany. A search of the files of such division and written  notification

22  of  the  results  of  the search shall be forwarded to the investigating

23  officer and shall be made without unnecessary delay.  Thereafter,  such

24  division  shall  notify  the licensing officer and the executive depart-

25  ment, division of state police, Albany, of any criminal  record  of  the

26  applicant  filed therein subsequent to the search of its files. A second

27  standard card, or the one supplied by the  federal  bureau  of  investi-

28  gation,  as  the case may be, shall be forwarded to that bureau at Wash-

1   ington with a request that the files  of  the  bureau  be  searched  and

2   notification  of  the results of the search be made to the investigating

3   police authority. Of the remaining two fingerprint cards, one  shall  be

4   filed  with  the executive department, division of state police, Albany,

5   within ten days after issuance of  the  license,  and  the  other  shall

6   remain  on file with the investigating police authority. No such finger-

7   prints may be inspected by any person other than a peace officer, who is

8   acting pursuant to his or her  special  duties,  or  a · police  officer,

9   except  on  order of a judge or justice of a court of record either upon

10  notice to the licensee or without notice, as the judge  or  justice  may

11  deem  appropriate.  Upon  completion  of  the  investigation,  the police

12  authority shall report the results  to  the  licensing  officer  without

13  unnecessary delay.

14     4-a.  Appeals  from denial of an application, renewal, recertification

15  or license revocation. If an application for a license  is  denied,  not

16  renewed,  not recertified, or revoked, the licensing officer shall issue

17  a written notice to the applicant setting forth  the  reasons  for  such

18  denial.  An applicant may, within ninety days of receipt of such notice,

19  request a hearing to appeal the denial to the appeals board  created  by

20  the  division  of  criminal  justice  services and the superintendent of

21  state police. An individual may be represented by counsel at any appear-

22  ance before the appeals board and shall be afforded  an  opportunity  to

23  present  additional  evidence  in  support  of  their application.   The

24  commissioner of criminal justice services  and  the  superintendent  of

25  state  police  shall  promulgate  rules  and  regulations governing such

26  appeals process.

27     4-b. Processing of license  applications.  Applications  for  licenses

28  shall be accepted for processing by the licensing officer at the time of

1   presentment.  Except  upon  written notice to the applicant specifically

2   stating the reasons for any delay, in each case  the  licensing  officer

3   shall  act  upon  any application for a license pursuant to this section

4   within  six  months of the date of presentment of such an application to

5   the appropriate authority. Such delay may only be  for  good  cause  and

6   with  respect  to  the  applicant.  In  acting  upon an application, the

7   licensing officer shall either deny the application for reasons  specif-

8   ically  and  concisely  stated  in  writing or grant the application and

9   issue the license applied for.

10   [4-b.] 4-c. Westchester county firearms safety course certificate.  In

11   the  county  of  Westchester,  at the time of application, the licensing

12   officer to which the license application is made shall provide a copy of

13   the safety course booklet to each license applicant. Before such license

14   is issued, such licensing  officer  shall  require  that  the  applicant

15   submit  a  certificate  of  successful  completion  of a firearms safety

16   course and test issued in his or her  name  and  endorsed  and  affirmed

17   under the penalties of perjury by a duly authorized instructor.

18   10.  License:  expiration,  certification and renewal. (a) Any license

19   for gunsmith or dealer in firearms and, in the city of  New  York,  any

20   license  to  carry  or  possess a pistol or revolver, issued at any time

21   pursuant to this section or prior to the first  day  of  July,  nineteen

22   hundred  sixty-three  and not limited to expire on an earlier date fixed

23   in the license, shall, except as otherwise provided in paragraph (d)  of

24   this subdivision, expire not  more than three years after the date of

25   issuance. In  the  counties  of  Nassau,  Suffolk  and  Westchester,  any

26   license  to  carry  or  possess a pistol or revolver, issued at any time

27   pursuant to this section or prior to the first  day  of  July,  nineteen

28   hundred  sixty-three  and not limited to expire on an earlier date fixed

1  in the license, shall expire not more than five years after the date  of

2  issuance;  however, in the county of Westchester, any such license shall

3  be certified prior to the first day of April, two thousand,  in  accord-

4  ance  with  a schedule to be contained in regulations promulgated by the

5  commissioner of the division of criminal  justice  services,  and  every

6  such  license  shall, except  as  otherwise provided in paragraph (d) of

7  this subdivision, be  recertified  every  five  years  thereafter.  For

8  purposes  of  this  section  certification  shall mean that the licensee

9  shall provide to the licensing officer the following  information  only:

10 current name, date of birth, current address, and the make, model, cali-

11 ber  and serial number of all firearms currently possessed. Such certif-

12 ication information shall be filed by the licensing officer in the  same

13 manner  as  an amendment. Elsewhere than in the city of New York and the

14 counties of Nassau, Suffolk and Westchester, any  license  to  carry  or

15 possess  a  pistol  or  revolver,  issued  at  any time pursuant to this

16 section or prior to the first day of July, nineteen hundred  sixty-three

17 and  not  previously  revoked or cancelled, shall be in force and effect

18 until revoked as herein provided. Any license not  previously  cancelled

19 or  revoked shall remain in full force and effect for thirty days beyond

20 the stated expiration date on such license. Any application to  renew  a

21 license that has not previously expired, been revoked or cancelled shall

22 thereby extend the term of the license until disposition of the applica-

23 tion  by the licensing officer. In the case of a license for gunsmith or

24 dealer in firearms, in counties having a population  of  less  than  two

25 hundred  thousand  inhabitants,  photographs  and  fingerprints shall be

26 submitted on original applications and upon renewal thereafter [only] at

27 [six] three year intervals. Upon satisfactory  proof  that  a  currently

28 valid  original  license  has  been despoiled, lost or otherwise removed

1   from the possession of the licensee and upon application  containing  an

2   additional photograph of the licensee, the licensing officer shall issue

3   a duplicate license.

4       (b) All licensees shall be recertified to the division of state police

5   every  five  years thereafter, except as otherwise provided in paragraph

6   (d) of this subdivision. Any license issued before the effective date of

7   the chapter of the laws of two thousand thirteen which added this  para-

8   graph  shall be recertified by the licensee on or before January thirty-

9   first, two thousand eighteen, and not less than one year prior  to  such

10  date,  the  state  police shall send a notice to all license holders who

11  have not recertified by such time. Such recertification shall  be  in  a

12  form  as  approved  by  the  superintendent of state police, which shall

13  request the license holder's name, date of birth, gender, race, residen-

14  tial address, social security number, firearms possessed by such license

15  holder, email address at the option of the license holder and an  affir-

16  mation  that  such  license  holder  is  not  prohibited from possessing

17  firearms. The form may be in an electronic form if so designated by  the

18  superintendent  of  state  police.  Failure  to recertify shall act as a

19  revocation of such license. If the New York state police discover  as  a

20  result  of the recertification process that a licensee failed to provide

21  a change of address, the New York state police  shall  not  require  the

22  licensing officer to revoke such license.

23      (c)  A license to purchase or take possession of a semiautomatic rifle

24  as defined in subdivision two of this section shall  be  recertified  to

25  the applicable licensing officer every five years following the issuance

26  of  such  license.  Failure to renew such a license shall be a violation

27  punishable by a fine not to exceed two hundred fifty dollars,  and  such

28  failure  to  renew  shall  be  considered  by the licensing officer when

1  reviewing future license applications by the license holder pursuant  to

2  this chapter.

3   (d)  Licenses  issued  under  paragraph (f) of subdivision two of this

4  section shall be recertified or renewed in the same form and  manner  as

5  otherwise  required  by  this  subdivision,  provided however, that such

6  licenses shall be recertified or renewed every three years following the

7  issuance of such license. For licenses issued  prior  to  the  effective

8  date  of  this paragraph that were issued more than three years prior to

9  such date, or will expire in less than one year from such date shall  be

10  recertified or renewed within one year of such date.

11   11. License: revocation and suspension. (a) The conviction of a licen-

12  see  anywhere  of  a felony or serious offense or a licensee at any time

13  becoming ineligible to obtain a license [under this section shall  oper-

14  ate  as],  including engaging in conduct that would have resulted in the

15  denial of a license, under this section shall operate as or  be  grounds

16  for,  a revocation of the license. A license may be revoked or suspended

17  as provided for in section 530.14 of  the  criminal  procedure  law  or

18  section  eight hundred forty-two-a of the family court act. Except for a

19  license issued pursuant to section 400.01 of this article, a license may

20  be revoked and cancelled at any time in the city of New York, and in the

21  counties of Nassau and Suffolk, by the licensing officer, and  elsewhere

22  than  in  the  city  of  New  York by any judge or justice of a court of

23  record; a license issued pursuant to section 400.01 of this article  may

24  be  revoked  and  cancelled  at any time by the licensing officer or any

25  judge or justice of a court of record. A license to engage in the  busi-

26  ness  of  dealer  may  be  revoked or suspended for any violation of the

27  provisions of article thirty-nine-BB of the general  business  law.  The

28  official  revoking  a  license shall give written notice thereof without

1   unnecessary delay to the executive department, division of state police,

2   Albany, and shall also notify immediately the  duly  constituted  police

3   authorities  of  the  locality.   The licensing officer shall revoke any

4   license  issued  in  which  an applicant knowingly made a material false

5   statement on the application.  Notice of a revocation under this  subdi-

6   vision  shall  be  issued in writing and shall include the basis for the

7   determination, which shall  be  supported  by  a  preponderance  of  the

8   evidence. Such notice shall also include information regarding the abil-

9   ity  to  appeal  such  decision in accordance with subdivision four-a of

10  this section.

11  (b) Whenever the director of community services or his or her designee

12  makes a report pursuant to section 9.46 of the mental hygiene  law,  the

13  division  of  criminal  justice  services shall convey such information,

14  whenever it determines that the person named in the report  possesses  a

15  license  issued  pursuant  to this section, to the appropriate licensing

16  official, who shall issue an order suspending or revoking such license.

17  (c) In any instance in  which  a  person's  license  is  suspended  or

18  revoked  under  paragraph  (a)  or  (b) of this subdivision, such person

19  shall surrender such license to the appropriate licensing  official  and

20  any  and  all  firearms,  rifles, or shotguns owned or possessed by such

21  person shall be surrendered to an appropriate law enforcement agency  as

22  provided  in  subparagraph  (f)  of  paragraph  one  of subdivision a of

23  section 265.20 of this chapter. In  the  event  such  license,  firearm,

24  shotgun,  or  rifle  is not surrendered, such items shall be removed and

25  declared a nuisance and any  police  officer  or  peace  officer  acting

26  pursuant  to  his  or her special duties is authorized to remove any and

27  all such weapons.

1    § 2. Section 837 of the executive law  is  amended  by  adding  a  new

2    subdivision 23 to read as follows:

3    23.  (a)  In  conjunction with the superintendent of the state police,

4    promulgate policies and procedures with  regard  to  standardization  of

5    firearms  safety training required under subdivision nineteen of section

6    400.00 of the penal law, which shall  include  the  approval  of  course

7    materials and promulgation of proficiency standards for live fire train-

8    ing; and

9    (b)  In conjunction with the superintendent of state police, create an

10   appeals board for the purpose of hearing appeals as provided in subdivi-

11   sion four-a of section 400.00 of the penal law and promulgate rules  and

12   regulations governing such appeals.

13   § 3. The executive law is amended by adding a new section 235 to read

14   as follows:

15   § 235. Firearms safety training, and licensing appeals. 1. The  super-

16   intendent shall, in conjunction with the commissioner of the division of

17   criminal  justice  services,  promulgate  policies  and  procedures with

18   regard to standardization of firearms  safety  training  required  under

19   subdivision  nineteen  of  section  400.00 of the penal law, which shall

20   include the approval of course materials and the promulgation of  profi-

21   ciency standards for live fire training.

22   2.  The  superintendent,  in  conjunction with the commissioner of the

23   division of criminal justice services, shall create an appeals board for

24   the purpose of hearing appeals as  provided  in  subdivision  four-a  of

25   section  400.00  of  the  penal law and promulgate rules and regulations

26   governing such appeals.

27   § 4. The penal law is amended by adding a new section 265.01-e to read

28   as follows:

1  § 265.01-e Criminal possession of a  firearm,  rifle  or  shotgun  in  a

2                sensitive location.

3     1.  A  person  is guilty of criminal possession of a firearm, rifle or

4  shotgun in a sensitive location when such person  possesses  a  firearm,

5  rifle  or shotgun in or upon a sensitive location, and such person knows

6  or reasonably should know such location is a sensitive location.

7     2. For the purposes of this section, a sensitive location shall mean:

8     (a) any place owned or under the control  of  federal,  state  or  local

9  government,  for  the  purpose  of  government administration, including

10  courts;

11     (b) any location providing  health,  behavioral  health,  or  chemical

12  dependance care or services;

13     (c) any place of worship or religious observation;

14     (d) libraries, public playgrounds, public parks, and zoos;

15     (e)  the location of any program licensed, regulated, certified, fund-

16  ed, or approved by the office of  children  and  family  services  that

17  provides  services  to  children,  youth,  or  young adults, any legally

18  exempt childcare provider; a childcare program for  which  a  permit  to

19  operate  such  program  has  been issued by the department of health and

20  mental hygiene pursuant to the health code of the city of New York;

21     (f) nursery schools, preschools, and summer camps;

22     (g) the location of any program licensed, regulated, certified,  oper-

23  ated,  or  funded  by the office for people with developmental disabili-

24  ties;

25     (h) the location of any program licensed, regulated, certified,  oper-

26  ated, or funded by office of addiction services and supports;

27     (i)  the location of any program licensed, regulated, certified, oper-

28  ated, or funded by the office of mental health;

1    (j) the location of any program licensed, regulated, certified, oper-

2    ated, or funded by the office of temporary and disability assistance;

3    (k)  homeless  shelters, runaway homeless youth shelters, family shel-

4    ters, shelters for adults, domestic  violence  shelters,  and  emergency

5    shelters, and residential programs for victims of domestic violence;

6    (l)  residential  settings  licensed, certified, regulated, funded, or

7    operated by the department of health;

8    (m) in or upon any building or grounds, owned or leased, of any educa-

9    tional institutions, colleges and universities, licensed private  career

10   schools,  school  districts,  public  schools,  private schools licensed

11   under article one hundred one of the  education  law,  charter  schools,

12   non-public  schools,  board of cooperative educational services, special

13   act schools, preschool special education programs,  private  residential

14   or  non-residential schools for the education of students with disabili-

15   ties, and any state-operated or state-supported schools;

16   (n)  any place, conveyance, or vehicle used for public  transportation

17   or  public  transit,  subway cars, train cars, buses, ferries, railroad,

18   omnibus, marine or aviation transportation; or any facility used for  or

19   in   connection  with  service  in  the  transportation of  passengers,

20   airports, train stations, subway and rail stations, and bus terminals;

21   (o) any establishment issued  a  license  for  on-premise  consumption

22   pursuant to article four, four-A, five, or six of the alcoholic beverage

23   control  law  where  alcohol  is consumed and any establishment licensed

24   under article four of the cannabis law for on-premise consumption;

25   (p) any place used for the performance, art entertainment, gaming,  or

26   sporting  events such as theaters, stadiums, racetracks, museums, amuse-

27   ment parks, performance venues, concerts, exhibits, conference  centers,

1  banquet  halls, and gaming facilities and video lottery terminal facili-

2  ties as licensed by the gaming commission;

3    (q) any location being used as a polling place;

4    (r)  any  public sidewalk or other public area restricted from general

5  public access for a limited time or special event that has been issued a

6  permit for such time or event by a governmental entity,  or  subject  to

7  specific,  heightened  law  enforcement protection, or has otherwise had

8  such access restricted by a governmental entity, provided such  location

9  is identified as such by clear and conspicuous signage;

10    (s) any gathering of individuals to collectively express their consti-

11  tutional rights to protest or assemble;

12    (t)  the  area  commonly known as Times Square, as such area is deter-

13  mined and identified by the city of New York; provided such  area  shall

14  be clearly and conspicuously identified with signage.

15    3. This section shall not apply to:

16    (a)  consistent with federal law, law enforcement who qualify to carry

17  under the federal law enforcement officers safety act, 18 U.S.C. 926C;

18    (b) persons who are police officers as defined in subdivision  thirty-

19  four of section 1.20 of the criminal procedure law;

20    (c)  persons  who are designated peace officers by section 2.10 of the

21  criminal procedure law;

22    (d) persons who were employed as police officers as defined in  subdi-

23  vision thirty-four of section 1.20 of the criminal procedure law but are

24  retired;

25    (e) security guards as defined by and registered under article seven-A

26  of  the  general  business  law,  who  have been granted a special armed

27  registration card, while at the location of their employment and  during

28  their work hours as such a security guard;

1    (f) active-duty military personnel;

2    (g) persons licensed under paragraph (c), (d) or (e) of subdivision

3    two of section 400.00 of this chapter while in the course of his or her

4    official duties;

5    (h) a government employee under the express written consent of such

6    employee's supervising government entity for the purposes of natural

7    resource protection and management;

8    (i) persons lawfully engaged in hunting activity, including hunter

9    education training; or

10    (j) persons operating a program in a sensitive location out of their

11    residence, as defined by this section, which is licensed, certified,

12    authorized, or funded by the state or a municipality, so long as such

13    possession is in compliance with any rules or regulations applicable to

14    the operation of such program and use or storage of firearms.

15    Criminal possession of a firearm, rifle or shotgun in a sensitive

16    location is a class E felony.

17    § 5. The penal law is amended by adding a new section 265.01-d to read

18    as follows:

19    § 265.01-d Criminal possession of a weapon in a restricted location.

20    1. A person is guilty of criminal possession of a weapon in a

21    restricted location when such person possesses a firearm, rifle, or

22    shotgun and enters into or remains on or in private property where such

23    person knows or reasonably should know that the owner or lessee of such

24    property has not permitted such possession by clear and conspicuous

25    signage indicating that the carrying of firearms, rifles, or shotguns on

26    their property is permitted or has otherwise given express consent.

27    2. This section shall not apply to:

1    (a) police officers as defined in section 1.20 of the criminal  proce-

2  dure law;

3    (b)  persons  who  are designated peace officers as defined in section

4  2.10 of the criminal procedure law;

5    (c) persons who were employed as police officers as defined in section

6  1.20 of the criminal procedure law, but are retired;

7    (d) security guards as defined by and registered under article seven-A

8  of the general business law who has been granted a special armed  regis-

9  tration card, while at the location of their employment and during their

10  work hours as such a security guard;

11    (e) active-duty military personnel;

12    (f)  persons  licensed  under paragraph (c), (d) or (e) of subdivision

13  two of section 400.00 of this chapter while in the course of his or  her

14  official duties; or

15    (g) persons lawfully engaged in hunting activity.

16    Criminal  possession of a weapon in a restricted location is a class E

17  felony.

18   § 6. Subdivision a of section 265.20 of the penal law  is  amended  by

19  adding a new paragraph 3-a to read as follows:

20    3-a.  Possession  of a pistol or revolver by a person undergoing live-

21  fire range training pursuant to section 400.00  of  this  chapter  while

22  such person is  undergoing  such  training and is supervised by a duly

23  authorized instructor.

24   § 7. Section 400.02 of the penal law, as amended by chapter 244 of the

25  laws of 2019, is amended to read as follows:

26  § 400.02 Statewide license and record database.

27    1. There shall be a statewide license and record database which  shall

28  be  created  and  maintained by the division of state police the cost of

1  which shall not be borne  by  any  municipality.  Records  assembled  or

2  collected  for  purposes  of  inclusion  in  such  database shall not be

3  subject to disclosure pursuant to article six  of  the  public  officers

4  law.  [Records] All records containing granted license applications from

5  all licensing authorities shall be [periodically] monthly checked by the

6  division of criminal justice services in conjunction with  the  division

7  of state police against criminal conviction, criminal indictment, mental

8  health,  extreme  risk  protection orders, orders of protection, and all

9  other records as are necessary to determine their continued accuracy  as

10  well  as  whether an individual is no longer a valid license holder. The

11  division of criminal justice services shall also check pending  applica-

12  tions  made  pursuant  to this article against such records to determine

13  whether a license may be granted. All state  and local  agencies  shall

14  cooperate  with  the division of criminal justice services, as otherwise

15  authorized by law, in making their records available  for  such  checks.

16  The  division  of  criminal  justice  services, upon determining that an

17  individual is ineligible to possess a license, or is no longer  a  valid

18  license  holder,  shall notify the applicable licensing official of such

19  determination and such licensing official shall not issue a  license  or

20  shall  revoke  such  license  and any weapons owned or possessed by such

21  individual shall be removed consistent with the provisions of  subdivi-

22  sion  eleven  of  section  400.00  of  this article. Local and state law

23  enforcement shall have access to such database  in  the  performance  of

24  their  duties.  Records assembled or collected for purposes of inclusion

25  in the database established by this section shall be  released  pursuant

26  to a court order.

27    2. There shall be a statewide license and record database specific for

28  ammunition  sales  which shall be created and maintained by the division

1   of state police the cost of which shall not be borne by any municipality

2   no later than thirty days upon designating the division of state  police

3   as  the  point  of  contact to perform both firearm and ammunition back-

4   ground  checks  under  federal  and  state  law.  Records  assembled  or

5   collected for purposes of  inclusion  in  such  database  shall  not  be

6   subject  to  disclosure  pursuant  to article six of the public officers

7   law. All  records  containing  granted  license  applications  from  all

8   licensing authorities shall be monthly checked by the division of crimi-

9   nal  justice  services  in conjunction with the division of state police

10  against  criminal  conviction,  criminal  indictments,  mental   health,

11  extreme  risk  protection  orders,  orders  of protection, and all other

12  records as are necessary to determine their continued accuracy  as  well

13  as  whether an individual is no longer a valid license holder. The divi-

14  sion of criminal justice services shall also check pending  applications

15  made  pursuant to this article against such records to determine whether

16  a license may be granted. All state and local agencies  shall  cooperate

17  with  the division of criminal justice services, as otherwise authorized

18  by law, in making their records available for such checks. No later than

19  thirty days after the superintendent of the state police certifies  that

20  the  statewide  license and record database established pursuant to this

21  section and the statewide license and record  database  established  for

22  ammunition  sales  are  operational  for the purposes of this section, a

23  dealer in firearms licensed pursuant to section 400.00 of this  article,

24  a  seller of ammunition as defined in subdivision twenty-four of section

25  265.00 of this chapter shall not transfer any ammunition  to  any  other

26  person who is not a dealer in firearms as defined in subdivision nine of

27  such  section 265.00 or a seller of ammunition as defined in subdivision

28  twenty-four of section 265.00 of this chapter, unless:

1    (a) before the completion of the  transfer,  the  licensee  or  seller

2   contacts  the  statewide  license  and  record database and provides the

3   database with information sufficient to identify such dealer  or  seller

4   transferee based on information on the transferee's identification docu-

5   ment  as  defined  in  paragraph (c) of this subdivision, as well as the

6   amount, caliber, manufacturer's name and serial number, if any, of  such

7   ammunition;

8    (b)  the  licensee  or seller is provided with a unique identification

9   number; and

10   (c) the transferor has verified the  identity  of  the  transferee  by

11   examining a valid state identification document of the transferee issued

12   by  the department of motor vehicles or if the transferee is not a resi-

13   dent of the state of New York, a valid identification document issued by

14   the transferee's state or country of residence containing  a  photograph

15   of the transferee.

16    § 8. Subdivisions 2 and 6 of section 400.03 of the penal law, as added

17   by chapter 1 of the laws of 2013, are amended to read as follows:

18    2. Any seller of ammunition or dealer in firearms shall keep [a record

19   book]  either  an  electronic  record,  or  dataset,  or  an  organized

20   collection of structured information, or data,  typically  stored  elec-

21   tronically  in  a computer system approved as to form by the superinten-

22   dent of state police. In the record [book] shall be entered at the  time

23   of  every  transaction involving ammunition the date, name, age, occupa-

24   tion and residence of any person from whom ammunition is received or  to

25   whom  ammunition  is  delivered, and the amount, calibre, manufacturer's

26   name and serial number, or if none, any other distinguishing  number  or

27   identification  mark on such ammunition. [The record book shall be main-

28   tained on the premises mentioned and described in the license and  shall

1  be  open  at  all  reasonable hours for inspection by any peace officer,

2  acting pursuant to his or her special duties,  or  police  officer.  Any

3  record produced pursuant to this section and any transmission thereof to

4  any  government  agency  shall  not  be  considered  a public record for

5  purposes of article six of the public officers law.]

6    6. If the superintendent of state police  certifies  that  background

7  checks  of  ammunition  purchasers may be conducted through the national

8  instant criminal background check system  or  through  the  division  of

9  state police once the division has been designated point of contact, use

10  of  that  system  by  a  dealer or seller shall be sufficient to satisfy

11  subdivisions four and five of this section  and  such  checks  shall  be

12  conducted  through  such  system,  provided that a record of such trans-

13  action shall be forwarded to the state police in a  form  determined  by

14  the superintendent.

15    § 9. Section 265.45 of the penal law, as amended by chapter 133 of the

16  laws of 2019, is amended to read as follows:

17  § 265.45 Failure  to  safely store rifles, shotguns, and firearms in the

18            first degree.

19    1. No person who owns or is custodian of a rifle, shotgun or  firearm

20  who  resides  with  an  individual who: (i) is under [sixteen] eighteen

21  years of age; (ii) such person knows or has reason to know is prohibited

22  from possessing a rifle, shotgun or firearm pursuant to a  temporary  or

23  final  extreme  risk protection order issued under article sixty-three-A

24  of the civil practice law and rules or 18 U.S.C. § 922(g) (1), (4),  (8)

25  or  (9);  or (iii) such person knows or has reason to know is prohibited

26  from possessing a rifle, shotgun or firearm based on a conviction for  a

27  felony  or a serious offense, shall store or otherwise leave such rifle,

28  shotgun or firearm out of his or her  immediate  possession  or  control

1  without  having  first securely locked such rifle, shotgun or firearm in

2  an appropriate safe storage depository or rendered it incapable of being

3  fired by use of a gun locking device appropriate to that weapon.

4      2. No  person  shall  store  or  otherwise leave a rifle, shotgun, or

5  firearm out of his or her immediate possession or control inside a vehi-

6  cle without first removing the ammunition from and securely locking such

7  rifle, shotgun, or firearm in an appropriate safe storage depository out

8  of sight from outside of the vehicle.

9      3. For purposes of this section "safe storage depository" shall mean a

10  safe or other secure container which, when locked, is incapable of being

11  opened without the key, keypad, combination or other unlocking mechanism

12  and is capable of  preventing  an  unauthorized  person  from  obtaining

13  access  to  and  possession of the weapon contained therein and shall be

14  fire, impact, and tamper resistant. Nothing in  this  section  shall  be

15  deemed  to affect, impair or supersede any special or local act relating

16  to the safe storage of rifles, shotguns or firearms which  impose  addi-

17  tional  requirements  on the owner or custodian of such weapons. For the

18  purposes of subdivision two of this  section,  a  glove  compartment  or

19  glove  box shall not be considered an appropriate safe storage deposito-

20  ry.

21      4. It shall not be a violation of this section to allow a person  less

22  than  [sixteen] eighteen years of age access to: (i) a firearm, rifle or

23  shotgun for lawful use as authorized under paragraph seven or seven-e of

24  subdivision a of section 265.20 of this article, or  (ii)  a  rifle  or

25  shotgun  for  lawful use as authorized by article eleven of the environ-

26  mental conservation law when such person less· than  [sixteen]  eighteen

27  years of age is the holder of a hunting license or permit and such rifle

28  or shotgun is used in accordance with such law.

1    Failure  to  safely  store rifles, shotguns, and firearms in the first

2    degree is a class A misdemeanor.

3        § 10. The penal law is amended by adding a new section 400.30 to read

4    as follows:

5    § 400.30 Application.

6        Nothing in this article shall be construed to impair  or  in  any  way

7    prevent  the enactment or application of any local law, code, ordinance,

8    rule or regulation that is more restrictive  than  any  requirement  set

9    forth in or established by this article.

10       § 11.  Section 270.20 of the penal law, as added by chapter 56 of the

11   laws of 1984, and subdivision 1 as amended by chapter 317 of the laws of

12   2001, is amended to read as follows:

13   § 270.20 Unlawful wearing of [a] body [vest] armor.

14       1. A person is guilty of the unlawful wearing of [a] body [vest] armor

15   when acting either alone or with one or more other  persons  he  commits

16   any  violent  felony offense defined in section 70.02 while possessing a

17   firearm, rifle or shotgun and in the course of  and  in  furtherance  of

18   such crime he or she wears [a] body [vest] armor.

19       2.  For  the purposes of this section [a] "body [vest] armor" means [a

20   bullet-resistant soft body armor providing, as a minimum  standard,  the

21   level  of  protection  known as threat level I which shall mean at least

22   seven layers of  bullet-resistant  material  providing  protection  from

23   three  shots of one hundred fifty-eight grain lead ammunition fired from

24   a .38 calibre handgun at a velocity of  eight  hundred  fifty  feet  per

25   second] any product that is a personal protective body covering intended

26   to  protect against gunfire, regardless of whether such product is to be

27   worn alone or is sold as a complement to another product or garment.

28       The unlawful wearing of [a] body [vest] armor is a class E felony.

1     § 12. Section 270.21 of the penal law, as added by chapter 210 of  the

2   laws of 2022, is amended to read as follows:

3   § 270.21 Unlawful purchase of [a] body [vest] armor.

4     A  person  is guilty of the unlawful purchase of [a] body [vest] armor

5   when, not being engaged or employed  in  an  eligible  profession,  they

6   knowingly  purchase or take possession of [a] body [vest] armor, as such

7   term is defined in subdivision two of section 270.20  of  this  article.

8   This  section  shall  not  apply  to  individuals or entities engaged or

9   employed in eligible professions, which shall include police officers as

10   defined in section 1.20 of the criminal procedure law, peace officers as

11   defined in section 2.10 of the criminal procedure law, persons in  mili-

12   tary  service  in the state of New York or military or other service for

13   the United States, and such other professions designated by the  depart-

14   ment of state in accordance with section one hundred forty-four-a of the

15   executive law.

16     Unlawful  purchase  of  [a] body [vest] armor is a class A misdemeanor

17   for a first offense and a class E felony for any subsequent offense.

18     § 13. Section 270.22 of the penal law, as added by chapter 210 of  the

19   laws of 2022, is amended to read as follows:

20   § 270.22 Unlawful sale of [a] body [vest] armor.

21     A  person is guilty of the unlawful sale of [a] body [vest] armor when

22   they sell, exchange, give or dispose of [a] body [vest] armor,  as  such

23   term is defined in subdivision two of section 270.20 of this article, to

24   an  individual  whom  they  know  or reasonably should have known is not

25   engaged or employed in an eligible profession, as such term  is  defined

26   in section 270.21 of this article.

27     Unlawful  sale  of  [a] body [vest] armor is a class A misdemeanor for

28   the first offense and a class E felony for any subsequent offense.

1    § 14. Section 396-eee of the general business law, as added by chapter

2    210 of the laws of 2022, is amended to read as follows:

3    § 396-eee. Unlawful sale or delivery of body [vests] armor. 1. No

4    person, firm or corporation shall sell or deliver body [vests] armor to

5    any individual or entity not engaged or employed in an eligible profes-

6    sion, and except as provided in subdivision [three] two of this section,

7    no such sale or delivery shall be permitted unless the transferee meets

8    in person with the transferor to accomplish such sale or delivery.

9    2. The provisions of subdivision one of this section regarding in

10   person sale or delivery shall not apply to purchases made by federal,

11   state, or local government agencies for the purpose of furnishing such

12   body [vests] armor to employees in eligible professions.

13   3. For the purposes of this section, "body [vest] armor" shall have

14   the same meaning as defined in subdivision two of section 270.20 of the

15   penal law.

16   4. Any person, firm or corporation that violate the provisions of this

17   section shall be guilty of a violation punishable by a fine in an amount

18   not to exceed five thousand dollars for the first offense and in an

19   amount not to exceed ten thousand dollars for any subsequent offense.

20   § 15. Section 144-a of the executive law, as added by chapter 210 of

21   the laws of 2022, is amended to read as follows:

22   § 144-a. Eligible professions for the purchase, sale, and use of body

23   [vests] armor. The secretary of state in consultation with the division

24   of criminal justice services, the division of homeland security and

25   emergency services, the department of corrections and community super-

26   vision, the division of the state police, and the office of general

27   services shall promulgate rules and regulations to establish criteria

28   for eligible professions requiring the use of [a] body [vest] armor, as

1   such   term   is defined in subdivision two of section 270.20 of the penal

2   law. Such professions shall include those in which the duties may expose

3   the individual to serious physical injury that may be prevented or miti-

4   gated  by  the  wearing  of [a] body [vest] <u>armor</u>.  Such rules and regu-

5   lations shall also include a process by which an  individual  or  entity

6   may  request  that  the  profession in which they engage be added to the

7   list of eligible professions, a process by which  the  department  shall

8   approve  such  professions, and a process by which individuals and enti-

9   ties may present  proof  of  engagement  in  eligible  professions  when

10  purchasing [a] body [vest] <u>armor</u>.

11      § 16. The executive law is amended by adding a new section 228 to read

12  as follows:

13      <u>§  228. National instant criminal background checks. 1.  (a) The divi-</u>

14  <u>sion is hereby authorized and directed to serve  as  a  state  point  of</u>

15  <u>contact  for implementation of 18 U.S.C. sec. 922 (t), all federal regu-</u>

16  <u>lations and applicable guidelines  adopted  pursuant  thereto,  and  the</u>

17  <u>national  instant  criminal  background check system for the purchase of</u>

18  <u>firearms and ammunition.</u>

19      <u>(b) Upon receiving a  request  from  a  licensed  dealer  pursuant  to</u>

20  <u>section  eight  hundred  ninety-six or eight hundred ninety-eight of the</u>

21  <u>general business law, the division shall initiate a background check  by</u>

22  <u>(i)  contacting  the  National  Instant Criminal Background Check System</u>

23  <u>(NICS) or its successor to initiate a national  instant  criminal  back-</u>

24  <u>ground  check,  and  (ii)  consulting the statewide firearms license and</u>

25  <u>records database established  pursuant  to  subdivision  three  of  this</u>

26  <u>section, in order to determine if the purchaser is a person described in</u>

27  <u>sections  400.00 and  400.03 of the penal law, or is prohibited by state</u>

1  or federal law from possessing, receiving, owning, or purchasing a

2  firearm or ammunition.

3     2.  (a) The division shall report the name, date of birth and physical

4  description of any person prohibited from possessing a firearm pursuant

5  to 18 U.S.C. sec. 922(g) or (n) to the national instant criminal back-

6  ground check system index, denied persons files.

7     (b) Information provided pursuant to this section shall remain privi-

8  leged and confidential, and shall not be disclosed, except for the

9  purpose of enforcing federal or state law regarding the purchase of

10 firearms or ammunition.

11    (c) Any background check conducted by the division, or delegated

12 authority, of any applicant for a permit, firearms identification card

13 license, ammunition sale, or registration, in accordance with the

14 requirements of section 400.00 of the penal law, shall not be considered

15 a public record and shall not be disclosed to any person not authorized

16 by law or this chapter to have access to such background check, includ-

17 ing the applicant. Any application for a permit, firearms identification

18 card, ammunition sale, or license, and any document reflecting the issu-

19 ance or denial of such permit, firearms identification card, or license,

20 and any permit, firearms identification card, license, certification,

21 certificate, form of register, or registration statement, maintained by

22 any state or municipal governmental agency, shall not be considered a

23 public record and shall not be disclosed to any person not authorized by

24 law to have access to such documentation, including the applicant,

25 except on the request of persons acting in their governmental capacities

26 for purposes of the administration of justice.

27    3. The division shall create and maintain a statewide firearms license

28 and records database which shall contain records held by the division

1   and any records that it is authorized to request from the division of

2   criminal justice services, office of court administration, New York

3   state department of health, New York state office of mental health, and

4   other local entities. Such database shall be used for the certification

5   and recertification of firearm permits under section 400.02 of the penal

6   law, assault weapon registration under subdivision sixteen-a of section

7   400.00 of the penal law, and ammunition sales under section 400.03 of

8   the penal law. Such database shall also be used to initiate a national

9   instant criminal background check pursuant to subdivision one of this

10  section upon request from a licensed dealer. The division may create and

11  maintain additional databases as needed to complete background checks

12  pursuant to the requirements of this section.

13  4. The superintendent shall promulgate a plan to coordinate background

14  checks for firearm and ammunition purchases pursuant to this section and

15  to require any person, firm or corporation that sells, delivers or

16  otherwise transfers any firearm or ammunition to submit a request to the

17  division in order to complete the background checks in compliance with

18  federal and state law, including the National Instant Criminal Back-

19  ground Check System (NICS), in New York state. Such plan shall include,

20  but shall not be limited to, the following features:

21  (a) The creation of a centralized bureau within the division to

22  receive and process all background check requests, which shall include a

23  contact center unit and an appeals unit. Staff may include but is not

24  limited to: bureau chief, supervisors, managers, different levels of

25  administrative analysts, appeals specialists and administrative person-

26  nel. The division shall employ and train such personnel to administer

27  the provisions of this section.

1    (b) Procedures for carrying out the duties under this section, includ-

2  ing hours of operation.

3    (c) An automated phone system and web-based application system,

4  including a toll-free telephone number and/or web-based application

5  option for any licensed dealer requesting a background check in order to

6  sell, deliver or otherwise transfer a firearm which shall be operational

7  every day that the bureau is open for business for the purpose of

8  responding to requests in accordance with this section.

9    5. (a) Each licensed dealer that submits a request for a national

10  instant criminal background check pursuant to this section shall pay a

11  fee imposed by the bureau for performing such background check. Such fee

12  shall be allocated to the background check fund established pursuant to

13  section ninety-nine-pp of the state finance law. The amount of the fee

14  shall not exceed the total amount of direct and indirect costs incurred

15  by the bureau in performing such background check.

16    (b) The bureau shall transmit all moneys collected pursuant to this

17  paragraph to the state comptroller, who shall credit the same to the

18  background check fund.

19    6. On January fifteenth of each calendar year, the bureau shall submit

20  a report to the governor, the temporary president of the senate, and the

21  speaker of the assembly concerning:

22    a. the number of employees used by the bureau in the preceding year

23  for the purpose of performing background checks pursuant to this

24  section;

25    b. the number of background check requests received and processed

26  during the preceding calendar year, including the number of "proceed"

27  responses and the number and reasons for denials;

1  c. the calculations used to determine the amount of the fee imposed

2  pursuant to this paragraph.

3  7. Within sixty days of the effective date of this section, the super-

4  intendent shall notify each licensed dealer holding a permit to sell

5  firearms of the requirement to submit a request to the division to

6  initiate a background check pursuant to this section as well as the

7  following means to be used to apply for background checks:

8  i. any person, firm or corporation that sells, delivers or otherwise

9  transfers firearms shall obtain a completed ATF 4473 form from the

10  potential buyer or transferee including name, date of birth, gender,

11  race, social security number, or other identification numbers of such

12  potential buyer or transferee and shall have inspected proper identifi-

13  cation including an identification containing a photograph of the poten-

14  tial buyer or transferee.

15  ii. it shall be unlawful for any person, in connection with the sale,

16  acquisition or attempted acquisition of a firearm from any transferor,

17  to willfully make any false, fictitious oral or written statement or to

18  furnish or exhibit any false, fictitious, or misrepresented identifica-

19  tion that is intended or likely to deceive such transferor with respect

20  to any fact material to the lawfulness of the sale or other disposition

21  of such firearm under federal or state law. Any person who violates the

22  provisions of this subparagraph shall be guilty of a class A misdemea-

23  nor.

24  8. Any potential buyer or transferee shall have thirty days to appeal

25  the denial of a background check, using a form established by the super-

26  intendent. Upon receipt of an appeal, the division shall provide such

27  applicant a reason for a denial within thirty days. Upon receipt of the

28  reason for denial, the appellant may appeal to the attorney general.

1   § 17.  Subdivision  2  of section 898 of the general business law, as

2   added by chapter 129 of the laws of 2019, is amended to read as follows:

3      2.  Before  any sale, exchange or disposal pursuant to this article, a

4   national instant criminal background check must be completed by a dealer

5   who [consents] shall submit a request to the division of  state  police

6   pursuant  to  section  two  hundred twenty-eight of the executive law to

7   conduct such check[, and upon completion of such background check, shall

8   complete a document, the form of which shall be approved by  the  super-

9   intendent  of state police, that identifies and confirms that such check

10  was performed]. Before a dealer who [consents] has submitted  a  request

11  to  the  division of state police to conduct a national instant criminal

12  background check delivers a firearm, rifle or  shotgun  to  any  person,

13  either   (a) NICS shall have issued a "proceed" response [to the dealer],

14  or (b) thirty calendar days shall have elapsed since the date the dealer

15  [contacted] submitted a request to  the  division  of  state  police  to

16  contact  the  NICS  to  initiate  a national instant criminal background

17  check and NICS has not notified the [dealer] division  of  state  police

18  that the transfer of the firearm, rifle or shotgun to such person should

19  be denied.

20     § 18.  Paragraph  (c)  of subdivision 1 of section 896 of the general

21  business law, as added by chapter 189 of the laws of 2000, is amended to

22  read as follows:

23     (c) coordinate with the division of state police to provide access  at

24  the  gun  show  to  [a  firearm dealer licensed under federal law who is

25  authorized to] perform a  national  instant  criminal  background  check

26  [where  the  seller  or transferor of a firearm, rifle or shotgun is not

27  authorized to conduct such a check by (i) requiring  firearm  exhibitors

28  who  are  firearm dealers licensed under federal law and who are author-

1   ized to conduct a national instant criminal background check to  provide

2   such  a check at cost or (ii) designating a specific location at the gun

3   show where a firearm dealer licensed under federal law who is authorized

4   to  conduct a national instant criminal background check will be present

5   to perform such a check at cost] prior to any firearm sale or  transfer.

6   Any  firearm  dealer licensed under federal law who [performs] submits a

7   request to the division of state police to perform  a  national  instant

8   criminal  background  check pursuant to this paragraph shall provide the

9   seller or transferor of the firearm, rifle or shotgun with a copy of the

10  United States Department of Treasury, Bureau  of  Alcohol,  Tobacco  and

11  Firearms  Form  ATF  F 4473 and such dealer shall maintain such form and

12  make such form available for inspection by law enforcement agencies  for

13  a period of ten years thereafter.

14      § 19.  Subdivision  6 of section 400.03 of the penal law, as added by

15  chapter 1 of the laws of 2013, is amended to read as follows:

16      6. If the superintendent of state police  certifies that  background

17  checks  of  ammunition  purchasers may be conducted through the national

18  instant criminal background check system, [use of  that  system  by]  a

19  dealer  or  seller shall contact the division of state police to conduct

20  such check which shall be sufficient to satisfy  subdivisions  four  and

21  five  of  this  section [and such checks shall be conducted through such

22  system, provided that a record of such transaction shall be forwarded to

23  the state police in a form determined by the superintendent].

24      § 20. The penal law is amended by adding a new section 400.06 to  read

25  as follows:

26  § 400.06 National instant criminal background checks.

27      1.  Any dealer in firearms that sells, delivers or otherwise transfers

28  any firearm shall contact the division of  state  police  to  conduct  a

1  national  instant  criminal  background  check  pursuant  to section two

2  hundred twenty-eight of the executive law.

3     2.  Failure to comply with the requirements of this section is a class

4  A misdemeanor.

5     § 21. The state finance law is amended by adding a new  section  99-pp

6  to read as follows:

7     § 99-pp. Background check fund. 1. There is hereby established in the

8  joint custody of the state comptroller and commissioner of taxation  and

9  finance a special fund to be known as the "background check fund".

10    2.  Such  fund  shall  consist  of  all revenues received by the comp-

11  troller, pursuant to the provisions of section two hundred  twenty-eight

12  of  the executive law and all other moneys appropriated thereto from any

13  other fund or source pursuant to law. Nothing contained in this  section

14  shall prevent the state from receiving grants, gifts or bequests for the

15  purposes of the fund as defined in this section and depositing them into

16  the fund according to law.

17    3. The moneys of the background check fund, following appropriation by

18  the legislature, shall be allocated for the direct costs associated with

19  performing  background  checks  pursuant  to section two hundred twenty-

20  eight of the executive law.

21    4. The state comptroller may invest any moneys in the background check

22  fund not expended for the purpose of this section as  provided  by  law.

23  The  state comptroller shall credit any interest and income derived from

24  the deposit and investment of moneys in the background check fund to the

25  background check fund.

26    5. (a) Any unexpended and unencumbered moneys remaining in  the  back-

27  ground  check fund at the end of a fiscal year shall remain in the back-

28  ground check fund and shall not be credited to any other fund.

1    (b) To the extent practicable, any such remaining funds shall be  used

2    to  reduce the amount of the fee described in subdivision two of section

3    two hundred twenty-eight of the executive law.

4       § 22. Subdivision 19 of section 265.00 of the penal law, as amended by

5    chapter 150 of the laws of 2020, is amended to read as follows:

6       19. "Duly authorized instructor" means (a) a duly commissioned officer

7    of  the United States army, navy, marine corps or coast guard, or of the

8    national guard of the state of New York; or (b) a duly  qualified  adult

9    citizen  of  the  United States who has been granted a certificate as an

10   instructor in small arms practice issued by the United States army, navy

11   or marine corps, or by the adjutant general of this  state,  or  by  the

12   division  of criminal justice services, or by the national rifle associ-

13   ation of America, a not-for-profit corporation duly organized under  the

14   laws of this state; (c) by a person duly qualified and designated by the

15   department  of environmental conservation [under paragraph c of subdivi-

16   sion three of section 11-0713 of the environmental conservation law]  as

17   its  agent in the giving of instruction and the making of certifications

18   of qualification in responsible hunting practices; or  (d)  a  New  York

19   state 4-H certified shooting sports instructor.

20      § 23.  Subdivision 18 of section 400.00 of the penal law, as added by

21   chapter 135 of the laws of 2019, is amended and a new subdivision 19  is

22   added to read as follows:

23      18.  Notice.  Upon  the  issuance  of a license, the licensing officer

24   shall issue therewith, and such licensee shall attest to the receipt of,

25   the following [notice] information and notifications:  (a)  the  grounds

26   for which the license issued may be revoked, which shall include but not

27   be  limited  to  the  areas  and locations for which the licenses issued

28   under paragraph (f) of subdivision two of  this  section  prohibits  the

1  possession of firearms, rifles, and shotguns, and that a conviction

2  under sections 265.01-d and 265.01-e of this chapter are felonies for

3  which licensure will be revoked;

4   (b) a notification regarding the requirements for safe storage which

5  shall be in conspicuous and legible twenty-four point type on eight and

6  one-half inches by eleven inches paper stating in bold print the follow-

7  ing:

8   WARNING: RESPONSIBLE FIREARM STORAGE IS THE LAW IN NEW YORK STATE.

9  WHEN STORED IN A HOME FIREARMS, RIFLES, OR SHOTGUNS MUST EITHER BE

10 STORED WITH A GUN LOCKING DEVICE OR IN A SAFE STORAGE DEPOSITORY OR NOT

11 BE LEFT OUTSIDE THE IMMEDIATE POSSESSION AND CONTROL OF THE OWNER OR

12 OTHER LAWFUL POSSESSOR IF A CHILD UNDER THE AGE OF EIGHTEEN RESIDES IN

13 THE HOME OR IS PRESENT, OR IF THE OWNER OR POSSESSOR RESIDES WITH A

14 PERSON PROHIBITED FROM POSSESSING A FIREARM UNDER STATE OR FEDERAL LAW.

15 FIREARMS SHOULD BE STORED [UNLOADED AND LOCKED] BY REMOVING THE AMMUNI-

16 TION FROM AND SECURELY LOCKING SUCH FIREARM IN A LOCATION SEPARATE FROM

17 AMMUNITION. LEAVING FIREARMS ACCESSIBLE TO A CHILD OR OTHER PROHIBITED

18 PERSON MAY SUBJECT YOU TO IMPRISONMENT, FINE, OR BOTH. WHEN STORED IN A

19 VEHICLE OUTSIDE THE OWNER'S IMMEDIATE POSSESSION OR CONTROL, FIREARMS,

20 RIFLES, AND SHOTGUNS MUST BE STORED IN AN APPROPRIATE SAFE STORAGE

21 DEPOSITORY AND OUT OF SIGHT FROM OUTSIDE OF THE VEHICLE.

22  (c) any other information necessary to ensure such licensee is aware

23 of their responsibilities as a license holder.

24  Nothing in this subdivision shall be deemed to affect, impair or

25 supersede any special or local law relating to providing notice regard-

26 ing the safe storage of rifles, shotguns or firearms.

27  19. Prior to the issuance or renewal of a license under paragraph (f)

28 of subdivision two of this section, issued or renewed on or after the

1    effective date of this subdivision, an applicant shall complete an

2    in-person live firearms safety course conducted by a duly authorized

3    instructor with curriculum approved by the division of criminal justice

4    services and the superintendent of state police, and meeting the follow-

5    ing requirements:  (a) a minimum of sixteen hours of in-person live

6    curriculum approved by the division of criminal justice services and the

7    superintendent of state police, conducted by a duly authorized instruc-

8    tor approved by the division of criminal justice services, and shall

9    include but not be limited to the following topics: (i) general firearm

10   safety; (ii) safe storage requirements and general secure storage best

11   practices; (iii) state and federal gun laws; (iv) situational awareness;

12   (v) conflict de-escalation; (vi) best practices when encountering law

13   enforcement; (vii) the statutorily defined sensitive places in subdivi-

14   sion two of section 265.01-e of this chapter and the restrictions on

15   possession on restricted places under section 265.01-d of this chapter;

16   (viii) conflict management; (ix) use of deadly force; (x) suicide

17   prevention; and (xi) the basic principles of marksmanship; and (b) a

18   minimum of two hours of a live-fire range training course. The applicant

19   shall be required to demonstrate proficiency by scoring a minimum of

20   eighty percent correct answers on a written test for the curriculum

21   under paragraph (a) of this subdivision and the proficiency level deter-

22   mined by the rules and regulations promulgated by the division of crimi-

23   nal justice services and the superintendent of state police for the

24   live-fire range training under paragraph (b) of this subdivision. Upon

25   demonstration of such proficiency, a certificate of completion shall be

26   issued to such applicant in the applicant's name and endorsed and

27   affirmed under the penalties of perjury by such duly authorized instruc-

28   tor. An applicant required to complete the training required herein

1  prior to renewal of a license issued prior to the effective date of this

2  subdivision shall only be required to complete such training for the

3  first renewal of such license after such effective date.

4     § 24.  Subdivisions 11 and 12 of section 265.00 of the penal law are

5  amended to read as follows:

6     11. "Rifle" means a weapon designed or redesigned, made or remade, and

7  intended to be fired from the shoulder and designed or redesigned and

8  made or remade to use the energy of the explosive [in a fixed metallic

9  cartridge] to fire only a single projectile through a rifled bore for

10 each single pull of the trigger using either: (a) fixed metallic

11 cartridge; or (b) each projectile and explosive charge are loaded indi-

12 vidually for each shot discharged. In addition to common, modern usage,

13 rifles include those using obsolete ammunition not commonly available in

14 commercial trade, or that load through the muzzle and fire a single

15 projectile with each discharge, or loading, including muzzle loading

16 rifles, flintlock rifles, and black powder rifles.

17    12. "Shotgun" means a weapon designed or redesigned, made or remade,

18 and intended to be fired from the shoulder and designed or redesigned

19 and made or remade to use the energy of the explosive [in a fixed shot-

20 gun shell] to fire through a smooth or rifled bore either a number of

21 ball shot or a single projectile for each single pull of the trigger

22 using either: (a) a fixed shotgun shell; or (b) a projectile or number

23 of ball shot and explosive charge are loaded individually for each shot

24 discharged. In addition to common, modern usage, shotguns include those

25 using obsolete ammunition not commonly available in commercial trade, or

26 that load through the muzzle and fires ball shot with each discharge, or

27 loading, including muzzle loading shotguns, flintlock shotguns, and

28 black powder shotguns.

1    § 25.  Severability. If any clause, sentence, paragraph or section of

2   this act shall be adjudged by any court of competent jurisdiction to  be

3   invalid, the judgment shall not affect, impair or invalidate the remain-

4   der  thereof,  but  shall  be  confined  in its operation to the clause,

5   sentence,  paragraph or section thereof directly involved in the contro-

6   versy in which the judgment shall have been rendered.

7    § 26. This act shall take  effect  on  the  first  of  September  next

8   succeeding  the  date  on  which  it  shall have become a law; provided,

9   however:

10   (a) the amendments to subdivision 1 and  subdivision  4-b  of  section

11   400.00 of the penal law made by section one of this act shall apply only

12   to  licenses  for which an application is made on or after the effective

13   date of this act;

14   (b) if chapter 208 of the laws of 2022 shall not have taken effect  on

15   or  before such date then the amendments made to paragraph (j) of subdi-

16   vision one of section 400.00 of the penal law made  by  section  one  of

17   this  act  shall  take effect on the same date and in the same manner as

18   such chapter of the laws of 2022, takes effect;

19   (c) the amendments to sections 270.20, 270.21 and 270.22 of the  penal

20   law made by sections eleven, twelve and thirteen of this act, the amend-

21   ments  to  section  396-eee  of  the  general business law as amended by

22   section fourteen of this act, and the amendments to section 144-a of the

23   executive law as amended by section fifteen of  this  act,  shall  take

24   effect  on  the  same  date and in the same manner as chapter 210 of the

25   laws of 2022, takes effect;

26   (d) if chapter 207 of the laws of 2022 shall not have taken effect  on

27   or  before  such  date  then the amendments to subdivision 11 of section

28   400.00 of the penal law made by section  one  of  this  act  shall  take

1  effect  on  the  same date and in the same manner as such chapter of the

2  laws of 2022, takes effect;

3    (e)  if chapter 212 of the laws of 2022 shall not have taken effect on

4  or before such date then the amendments  to  subdivision  2  of  section

5  400.00  of  the  penal  law  made  by section one of this act shall take

6  effect on the same date and in the same manner as such  chapter  of  the

7  laws of 2022, takes effect;

8    (f)  sections  sixteen,  seventeen,  eighteen,  nineteen,  twenty, twenty-

9  one and twenty-two shall take effect July 15, 2023; and

10   (g) subdivision 4-a of section 400.00 of the penal law, as amended  by

11  section one of this act, shall take effect April 1, 2023.