# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE, JOSEPH MANN, LESLIE LEMAN, and LAWRENCE SLOANE,<br><br>Plaintiffs,<br><br>v.<br><br>KATHLEEN HOCHUL, in her Official Capacity as Governor of the State of New York, KEVIN P. BRUEN, in his Official Capacity as Superintendent of the New York State Police, Judge MATTHEW J. DORAN, in his Official Capacity as the Licensing-official of Onondaga County, WILLIAM FITZPATRICK, in his Official Capacity as the Onondaga County District Attorney, EUGENE CONWAY, in his Official Capacity as the Sheriff of Onondaga County, JOSEPH CECILE, in his Official Capacity as the Chief of Police of Syracuse, P. DAVID SOARES in his Official Capacity as the District Attorney of Albany County, GREGORY OAKES, In his Official Capacity as the District Attorney of Oswego County, DON HILTON, in his Official Capacity as the Sheriff of Oswego County, and JOSEPH STANZIONE, in his Official Capacity as the District Attorney of Greene County,<br><br>Defendants. | Civil Action No. _____ |

## DECLARATION OF COREY JOHNSON

Exhibit "2"

Page **1** of **9**

1. My name is Corey Johnson. I am a U.S. citizen and resident of New York, and I live in Onondaga County. I am a member of Gun Owners of America, Inc., and thus am one of the individuals whose interests were represented by the organizational plaintiffs in *Antonyuk v. Bruen.*

2. I make this declaration in support of Plaintiffs' Complaint for Declaratory and Injunctive Relief. Unless otherwise stated, I make this declaration based on personal knowledge. If called as a witness, I can testify to the truth of the statements contained therein.

3. I am a law-abiding person who currently possesses and has maintained an unrestricted New York carry permit since 2019. I am eligible to possess and carry firearms in the State of New York, and have met all the qualifications for licensure, including having good moral character.

4. Not only do I possess a New York carry license, but also I routinely carry my handgun concealed when I leave home. To be sure, I do not carry in courthouses, schools, government buildings, or the other obvious "sensitive places" the Supreme Court has described, locations where the government often provides security in the form of armed guards and metal detectors. Otherwise, being responsible for my own security and that of my family, my gun generally does not leave my side when I leave the house, and goes where I go for lawful purposes.

5. However, due to the recent implementation of the Concealed Carry Improvement Act, I am now in jeopardy of arrest and prosecution as a felon, not to mention having my firearm seized and my permit revoked, merely for carrying in the completely ordinary and entirely non-sensitive locations in which I previously carried my firearm.

6. For example, I consider myself to be an outdoorsman, am an avid fisherman, and routinely go on hiking and camping trips throughout the state, including in numerous parks covered by the CCIA (subsection d).

7. For example, many times recently I have gone fishing in Mercer Park on the Seneca River in Baldwinsville, New York, a place previously open to carry. There is nothing in any way "sensitive" about this location, yet the CCIA makes the park off limits to me if I wish to exercise my Second Amendment right to carry a firearm while fishing.

8. Based on this Court's recent conclusion that "the CCIA's list of 'sensitive locations' is not deeply rooted in this Nation's historical tradition of firearm regulation," and because neither parks nor anything like them appears in the Supreme Court's list of traditional sensitive locations, I intend to continue to carry my firearm when I go fishing in Mercer Park. Although I cannot provide a definitive day and time that this will next occur, it is safe to say that I will go fishing within the next month, before the water gets too cold and the bass stop biting.

9. In addition, I currently have plans with my wife to take a trip in October of 2022, to include a tour of several state parks within New York, where we will engage in various recreational activities such as fishing and sightseeing. For example, as part of our trip, we plan to visit Bowman Lake State Park, which the state describes as "a 966.94 acre remote sylvan retreat known as 'a camper's paradise'" and which has a "lake … regularly stocked with trout" and offers "rustic cabins."[1] In other words, this is hardly a "sensitive location." In fact, hunting with firearms is permitted at the park.[2] I fail to see how high-powered rifles for hunting bear can be allowed at a purported "sensitive location," while low-powered handguns for self-defense (including from bear) are prohibited. Nevertheless, the CCIA makes Bowman Lake State Park off limits to me if I wish to carry my firearm to protect myself and my wife during our visit to this and other various parks during our trip.

---

[1] https://parks.ny.gov/parks/76/
[2] https://parks.ny.gov/documents/parks/BowmanLakeBowmanLakeSelfIssueHuntingPermit.pdf

10. There is no realistic way for me to repeatedly disarm and re-arm, in order to comply with the CCIA's prohibition on possession of my firearm in the various parks my wife and I will visit on our trip, as there is no place for me to leave my firearm while on the road. Even leaving my firearm in my vehicle while at such a park would seem to violate the CCIA, and make me a felon. Thus, due to the CCIA's unconstitutionality, and being left with no reasonable alternative, I am left with no choice but to carry my firearm for self-defense, which I intend to do on this upcoming trip.

11. I also routinely go out to eat with my family, including at restaurants such as Longhorn Steakhouse, which is considered a "sensitive location" by the CCIA (subsection o) because it serves alcohol, even if I am not sitting at the bar or consuming any alcoholic beverage. Longhorn Steakhouse, owned by Darden Restaurants, reports that "[o]ur approach has always been that we abide by all local and state laws,"[3] meaning that I would be permitted to carry my firearm when I go to eat, if not for the CCIA. Based on this Court's recent opinion, and because neither restaurants nor anything like them appears in the Supreme Court's list of traditional sensitive locations, I intend to continue to carry my firearm when I go out to eat with my family, an event that will occur within the next month or so.

12. During New York winters, I often take extended snowmobile trips throughout public parks and roads, often participating in "dice runs" – competitions where snowmobilers are required to follow a prescribed course and check in various locations along the way, with some of those locations being restaurants that serve alcohol. Under the CCIA, I would become a felon merely for getting off my snowmobile while carrying my firearm, and quickly checking in at such a location. Nevertheless, in reliance on the conclusions in this Court's prior opinion, and the

---

[3] https://www.cnbc.com/2014/05/21/restaurants-were-not-pulling-a-chipotle.html

Supreme Court's *Bruen* decision, the CCIA's restriction is clearly unconstitutional, and thus void. Therefore, as in years past, I intend to go on a snowmobiling trip this winter, and I will carry my firearm with me when I do, including in those places where I "check in" as part of the "dice run."

13. I routinely visit various locations that are considered "performance, art entertainment, gaming, or sporting events" under the CCIA (subsection p).  For example, late last month I had fully intended to attend the state fair at the New York State Fairgrounds (a locations at which carry is also prohibited under subsection (d)), until I learned that the Fairgrounds had expressed its intent to adopt and enforce the provision of the CCIA.  The news reported that "NYS Fair flexes policy prohibiting firearms in wake of conceal carry ruling."[4]  Moreover, because "[a]ll entrances may utilize 'Bag Check Areas' for guests, and some or all guests and/or vendors may be subject to manual scanning with the use of a metal detector wand or other similar device," I did not attend the fair, believing there to be a significant risk that my concealed carry firearm would be discovered and I would be charged with a crime.  To the extent that the fair previously may have had a weapons policy, it is my understanding that was merely a policy, for violation of which I could be asked to leave – not charged with a felony crime.

14. In the past, I have attended pro-gun rallies, and done so while armed.  For example, in August of 2020, I attended the "Back the Blue" rally in Albany.  I have attended similar rallies in other states, such as the January 2020 VCDL Lobby Day that takes place annually in January in Richmond, Virginia.  Suffice it to say, I take any realistic opportunity to exercise and advocate for my Second Amendment and other rights, preferably doing both at the same time.  The CCIA,

---

[4] https://www.timesunion.com/state/article/Maintaining-policy-NYS-fair-to-allow-only-law-17362602.php

however, makes me choose between the two rights, banning firearms at First Amendment protected activities, potentially under multiple subsections (subsections a, d, p, r, and s).

15. Whereas *Bruen* discussed restrictions in subsection (a) in "government buildings," the CCIA broadly bans guns in "any place owned or under the control of federal, state or local government, for the purpose of government administration...." If firearms were not already prohibited permanently at such a location, then a rally likely would constitute a "special event" where a permit is required under subsection (r), meaning firearms would be prohibited anyway. These CCIA provisions would restrict firearms at protests such as the 2014 pro-gun rally at the Empire State Plaza, which occurred in the wake of enactment of the New York SAFE Act in 2013.[5] None of these rallies or locations is a "sensitive place" under *Bruen*, merely because lots of people gather together to exercise constitutional rights.

16. I do not presently know of any upcoming pro-gun or pro-freedom rally currently scheduled but, when one is scheduled, I intend to attend it, and to do so while carrying my firearm, in violation of the CCIA.

17. The CCIA makes it a crime to possess a firearm at a zoo (subsection d), about as far from a "sensitive place" as I can imagine. My wife and I frequently visit the Rosamond Gifford Zoo in Syracuse, at least once or twice every fall, so that my wife can see the otters and wolves, which are her favorites. We will visit the zoo this fall as well, at least once, within the next 90 days. It is my understanding that the zoo has no policy prohibiting firearms on the premises.[6] Thus, but for the CCIA, it would seem to be perfectly permissible for me to carry my firearm at the zoo.

---

[5] https://www.poughkeepsiejournal.com/story/news/local/new-york/2014/04/02/gun-rally-in-albany-draws-donald-trump/7180313/
[6] https://rosamondgiffordzoo.org/visit/plan-your-visit/guest-etiquette/

Since the CCIA's blanket ban on firearms at zoos is unconstitutional, I intend to carry my firearm when my wife and I visit the Rosamond Gifford Zoo.

18. Finally, I routinely carry my firearm when out and about in public, including when I go shopping at various locations in Onondaga County, such as gas stations, grocery stores, home improvement stores, big box stores, etc. It is my understanding that none of these places has expressed any objection to the lawfully carrying of my firearm. However, the CCIA now declares such locations to be "restricted locations," and bans my carrying of a firearm on the premises unless I have the affirmative consent of the owner. However, obtaining such consent is entirely impractical. Indeed, since the CCIA's implementation, few if any locations have posted signs welcoming concealed carry license holders, even if the business otherwise supports or allows concealed carry. Nor is it practical for me to disarm, approach such a business, ask permission from a low-level employee who will no doubt be unfamiliar with store policy and need to ask the manager (if not contact corporate), wait for a response, then re-arm myself – all merely to pick up a few things at the store. Indeed, even if I receive permission at one point in time, such policy could change at any time and without notice, thus putting me at constant risk of committing a crime unawares.

19. Since it is between me and a business owner – not New York state – whether I carry my firearm in a certain business, I intend to continue carrying my firearm in various businesses and establishments in Onondaga County, something that occurs regularly, in violation of the CCIA's restriction on "prohibited locations" that are not conspicuously posted with signage or otherwise provide me their express consent.

20. Unless this Court strikes down that provision of the CCIA, my simply going peaceably about my daily life will be a crime, pursuant to a statute which this Court has already declared

clearly unconstitutional.  As such, as "an act of the legislature, repugnant to the constitution," the CCIA "is void."  *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

21. Not only do I intend to engage in various constitutionally-protected acts which are now made unlawful under the CCIA, but also I face a credible threat of prosecution, particularly since my specific intentions are now being made public through this filing.

22. For example, First Deputy Superintendent Steven Nigrelli of the New York State Police, has threatened persons such as me who violate the CCIA that "[w]e ensured that the lawful, responsible gun owners have the tools now to remain compliant with the law.  For those who choose to violate this law … Governor, it's an easy message.  I don't have to spell it out more than this.  We'll have zero tolerance.  If you violate this law, you will be arrested.  Simple as that.  Because the New York state troopers are standing ready to do our job to ensure ... all laws are enforced."[7]  If that is not a credible threat of enforcement, it is hard to see what would be.

23. Likewise, Onondaga County District Attorney William Fitzpatrick, although generally critical of the draconian provisions of the CCIA, recently stated that "[v]iolators will have their weapons confiscated while prosecutors investigate any other criminal activity," and "[t]heir cases will be referred to the judge who granted them concealed-carry licenses in the first place, possibly leading to the revocation of their carry privileges."[8]  DA Fitzpatrick was joined at the press conference by Syracuse Police Chief Joe Cecile.  In other words, the top law enforcement officials where I live have expressed a specific intent to enforce the provisions of the CCIA against violators, which might include having a firearm seized by police and a carry license revoked.

---

[7] https://youtu.be/gC1L2rrztQs?t=2281 (at 38:00 minutes).
[8] https://www.syracuse.com/crime/2022/09/syracuse-da-police-chief-we-wont-target-gun-owners-under-new-law-but-will-take-gun.html

24. What is more, I am far more likely than the average person to have a run-in with law enforcement, particularly during some of the times I intend to be in violation of the CCIA. For example, when fishing, I am required to be in possession of a valid New York State Fishing License, which is subject to verification and review at any time by a New York Environmental Conservation Officer (who works for the State, not the County). In recent years, I have had such officers stop and check my license at least a couple of times per year. In 2022 alone, I recall two such interactions along the Erie Canal in Camillus, one in Fair Haven State Park, and one at Oneida Shores State Park. If, for example, an officer saw a bulge from my concealed firearm while I was retrieving my fishing license and driver's license from my wallet, I could be arrested charged with a felony under the state's clearly-announced "zero tolerance" policy.

I declare under penalty of perjury that the foregoing is true and correct.

September 14, 2022
**Date**

*Corey Johnson*
**Corey Johnson**