**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE, JOSEPH MANN, LESLIE LEMAN, and LAWRENCE SLOANE, <br><br> Plaintiffs, <br><br> v. <br><br> KATHLEEN HOCHUL, in her Official Capacity as Governor of the State of New York, KEVIN P. BRUEN, in his Official Capacity as Superintendent of the New York State Police,  Judge MATTHEW J. DORAN, in his Official Capacity as the Licensing-official of Onondaga County, WILLIAM FITZPATRICK, in his Official Capacity as the Onondaga County District Attorney, EUGENE CONWAY, in his Official Capacity as the Sheriff of Onondaga County, JOSEPH CECILE, in his Official Capacity as the Chief of Police of Syracuse, P. DAVID SOARES in his Official Capacity as the District Attorney of Albany County, GREGORY OAKES, In his Official Capacity as the District Attorney of Oswego County, DON HILTON, in his Official Capacity as the Sheriff of Oswego County,  and JOSEPH STANZIONE, in his Official Capacity as the District Attorney of Greene County, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____ |

---

**DECLARATION OF LAWRENCE SLOANE**

---

Exhibit "3"

1. My name is Lawrence Sloane.  I am a U.S. citizen and resident of New York, and I live in Onondaga County.  I am a member of Gun Owners of America, Inc., and thus am one of the individuals whose interests were represented by the organizational plaintiffs in *Antonyuk v. Bruen*.

2. I make this declaration in support of Plaintiffs' Complaint for Declaratory and Injunctive Relief.  Unless otherwise stated, I make this declaration based on personal knowledge.  If called as a witness, I can testify to the truth of the statements contained therein.

3. I am a law-abiding person who does not currently possesses a New York carry license. However, I have always wanted to obtain a carry permit to exercise my Second Amendment rights to acquire and carry a handgun for self-defense, but did not believe I would be found to have a special "proper cause" which was required before the Supreme Court's opinion in *Bruen*.

4. After *Bruen,* which held the "proper cause" test to be unconstitutional, I intended to apply for my carry license, and began looking into the process.  I am part of "the people" that the Second Amendment applies to and protects.  However, before I could apply for a license, the State of New York passed the Concealed Carry Improvement Act (CCIA), which imposes a slew of new and improved infringements on my constitutional right to obtain a license to keep and bear arms.

5. I want to make clear that I object to the following requirements of the CCIA: 1) social media history requirement, 2) providing information about my family, 3) providing character references, 4) exorbitant training costs and the time required to complete it, 5) an in-person interview with a government agent, and 6) proving that I am of "good moral character" in addition to being a law-abiding, responsible person.  I will address each in turn.

6.   After the CCIA was enacted, the application for carry license was updated[1] by the state, and now mandates that I must turn over my "social media" history to the government for review. The legislature has not seen fit to define what "social media" is, but my understanding of "social media" would include various forums where people congregate to speak, many times anonymously.  I also believe this to include Facebook, Twitter, Instagram and other more well-known "social media" platforms.

7.   To be sure, I have accounts on several of these and other platforms but, specifically, my Facebook profile is set to "friends" only, which means that only my friends can view my profile and my postings on that platform.  I refuse to add a state licensing official as a "friend" so that he or she can review my Facebook postings.

8.   The First Amendment protects my speech, and neither requires nor permits the government to review what I say, and certainly not as a condition of exercising my constitutional right to bear arms.  Moreover, the Fifth Amendment protects my right to remain silent and against self-incrimination.  In short, I will not turn over my "social media," however and whatever that means, to the government, as a condition of applying for a license.

9.   To the extent that I were forced to produce all my speech, even in an electronic format, to the government for review, from now on I would self-censor for fear of retribution, unwilling to express my true feelings, especially on contentious issues involving political speech, knowing that the state's prying anti-gun eye is looking over my shoulder.  It would also be likely that I would edit or delete some or all my social media and other online postings, so as not to allow the government to review what I have said, not because I regret anything that I have posted, but

---

[1] The "revised" State of New York Pistol/Revolver License Application can be found at https://troopers.ny.gov/system/files/documents/2022/09/ppb-3-08-22-_0.pdf.

because it is none of the government's business what I believe, how I vote, what my hobbies are, with whom I associate, where I travel, which constitutional rights I exercise, etc.

10. Likewise, the government of New York has no business contacting my family members to interrogate them about my life, my speech, my actions, or anything else about me, so that New York feels comfortable to "permit" me to exercise my constitutional rights. I will not provide the government of New York with information about my family, on the carry license application.

11. The license application further requires four character references. Supposedly, this is required so that the government can interrogate my associates to determine if I have the "essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others[.]" N.Y. Penal Law § 400.00(1).

12. Of course, as this Court acknowledged in *Antonyuk v. Bruen*, this definition does not include "other than in self-defense" which means that, apparently, merely being willing to use a handgun in self-defense in New York would automatically disqualify me from having "good moral character," because using a handgun, even in legitimate self-defense, would be to "endanger" whoever is attacking me. Worse, this may mean that even applying for a carry license is impossible, because the whole purpose of carrying a concealed firearm is to be able to use it for self-defense or defense of others which, taken to its logical conclusion, would result in "endanger[ing]" a criminal attacker.

13. Indeed, "good moral character" is a completely subjective standard that gives the licensing officer or interrogator wide discretion to ask whatever questions of me they wish.

14. While I believe I have "good moral character" insofar as I am a law-abiding citizen, it is none of the state's business when it comes to the exercise of my constitutional rights.

15. Likewise, I do not wish to ask those who I know to stand up to the government on my behalf, and testify to my good moral character, so that I may keep and bear arms. If the State of New York wished to check my criminal history to see if I have ever committed a crime, it can do so immediately by utilizing the innumerable databases that exist currently, and does not need to interrogate my friends and family. I know of no other constitutional right that is predicated on what friends think about you, and my right to keep and bear arms should not be any different.

16. I will not provide the State with information about my associates, so some licensing official can interrogate them about my life, including my exercise of my constitutional rights. It is none of the government's business what my friends and I discuss, either in person or online, and merely attempting to exercise an enumerated right does not give New York the right to invade my privacy and my other constitutional rights, and I should not be required to surrender my First Amendment right to exercise my Second Amendment rights, as this Court also acknowledged in the *Antonyuk* case.

17. Further, requiring me to sit down with a government agent for an in person interview, so that he or she can interrogate me, violates my Fifth Amendment rights to remain silent and against self-incrimination, because there do not appear to be any limits on the questions I am asked. Rather, I would be compelled to answer any and all questions posed to me as a condition of obtaining a license. I believe that is generally not a good idea for a person to answer questions posed by government officers during interrogations, such as if stopped for speeding or questioned by police, *regardless* of whether that person is innocent or not. Yet the CCIA requires me to submit to an "interview" of the sort that I believe most lawyers would advise against.

18. In order to obtain a carry license, I would be unable to skip answering the questions or invoke my Fifth Amendment rights to consult with counsel or to remain silent, should the need

arise.  Indeed, I am not a lawyer, but my understanding is that an invocation of Fifth Amendment rights is not an admission of guilt or wrongdoing, as people are often "incriminated" or even found guilty of crimes that they did not commit.  But common sense tells me that, if I were to invoke the Fifth Amendment to a government agent's question during this type of interview, it would probably be looked at with skepticism about why I am invoking my constitutional right.

19. Moreover, with the proliferation of thousands upon thousands of "crimes" that do not require any intent to violate, within the laws of federal, state, and local governments, it is my understanding that the average person unwittingly commits numerous crimes over the course of their lifetime, without ever having knowledge or intent to do so.  I am a law-abiding person and always try to follow the law, but the CCIA's demand that I be interrogated by the police as a condition of exercising my right to keep and bear arms violates my First, Second, and Fifth Amendment rights.

20. Without me surrendering my First and Fifth Amendment rights, I am unable to fully complete the application for a carry license.

21. Since the CCIA states that "No license shall be issued" without first providing the licensing official with all of the required information, there is no way for me even to apply for the permit and be rejected, as my application will not even be accepted.  As such, is futile for me even to attempt to apply and be denied a license, refusing to submit to the unconstitutional requirements that I am unwilling to provide to the government.  It is my understanding that other applicants in the past have had their applications rejected or denied for failure to provide all of the required information, which I will not provide.[2]

---

[2] In fact, the Onondaga Sheriff's website instructs that "[i]ncomplete applications will not be processed at the time of your appointment.  Your entire application will be returned to you and

22. Indeed, the only way for me to apply and be granted or denied a license would be for me first to forfeit my constitutional rights, something I will not do.  Therefore, I am left in the untenable position of surrendering and waiving some of my constitutional rights in order to exercise my Second Amendment rights.

23. Notwithstanding the futility of providing an application without all of the information required by the application, I am unable to even secure an appointment with the Onondaga Sheriff's Office until **October 24, 2023**, or 58 weeks from now.  This is simply to *submit* my application to the Sheriff's Office so it will be processed.[3]



24. Likewise, the CCIA's mandate of sixteen hours of classroom instruction, plus two hours of live-fire training, is unnecessary and expensive, and would occupy a minimum of two full days for me to complete.

---

you will be instructed to reschedule your appointment." https://sheriff.ongov.net/pistol-license-unit/appointment-requirements/.

And "walk-in service" is not available, so I must make an appointment to even submit my application.  https://sheriff.ongov.net/pistol-license-unit/.

[3] https://sheriff.ongov.net/pistol-license-unit/appointment/ (current as of September 19, 2022).

25. This is far in excess from what other states require, and I do not know of any other state that requires a total of 18 hours of training before you are granted permission to exercise a constitutional right.

26. Prior to the CCIA, my county only required only a basic handgun safety course which, while I believe is still objectionable because it conditions my right to bear arms on clearing government-imposed hurdles and paying government-imposed fees, was not nearly as bad as the new 18 hour requirement.[4,5]

27. I understand that, previously, a basic handgun safety course could be completed for around $50.00 and four hours of time.  But to comply with the CCIA's training requirement would require a minimum of two days, and cost me hundreds of dollars.  Some facilities are charging upwards of $700 for the class.  This will represent a significant cost to me, plus it will be necessary for me to pay for the ammunition used at such a class, and also the other associated licensing fees charged by my county.  The cost for me to obtain a permit could easily exceed $1,000, a significant investment, and an exorbitant cost for me to be licensed to exercise my constitutional rights.

28. Certainly, I believe that responsible gun owners have a moral responsibility to obtain training in the safe and effective use of firearms.  However, I do not want to expend my hard earned dollars to further the State's anti-gun agenda.  For instance, New York Penal Law 400(19) demands that I pay to learn about "suicide prevention," as if this has something to do with my being a responsible gun owner.  I am not suicidal.  Moreover, in a free society, all constitutional

---

[4]   https://sheriff.ongov.net/wp-content/uploads/2021/04/NYS-Pistol-License-Application-4-30-21.pdf.
[5] Prior to *Bruen* being released, Onondaga stated that it took "approximately 6 months" for a pistol license to be processed.  See the previous footnote.  Now, I cannot even schedule an appointment to simply *apply* for a license for over 1 year.

rights can be misused, but that does not mean the government can require a person to obtain a lecture on the dangers of free speech as a condition of receiving a license to post on Twitter.

29. If all that were required were a basic handgun safety course of four hours, at a cost of $50.00, that would be doable and, even though I would still object on principle, I would "bite the bullet," so to speak, in order to get my license.  However, spending two or more full days in a class, at a cost of several hundreds of dollars, plus expensive ammunition, is unreasonable and unconstitutional.

30. If these unconstitutional requirements were removed from the application, and the Sheriff would accept my application, I would immediately submit my application for a concealed carry license, something I greatly desire to obtain and, but for the CCIA's unconstitutional demands, I would seek to obtain.  I otherwise meet all of the requirements to be "granted" a permit to carry my firearm in public and, in fact, I have completed the remaining parts of my application (save for the portions I will not provide), and I have attempted to secure an appointment for submitting my application, but there is not one available until late next year, a completely unreasonable time frame.

I declare under penalty of perjury that the foregoing is true and correct.

September  19, 2022
**Date**

**Lawrence Sloane**