# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE, JOSEPH MANN, LESLIE LEMAN, and LAWRENCE SLOANE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| KATHLEEN HOCHUL, in her Official Capacity as Governor of the State of New York, KEVIN P. BRUEN, in his Official Capacity as Superintendent of the New York State Police,  Judge MATTHEW J. DORAN, in his Official Capacity as the Licensing-official of Onondaga County, WILLIAM FITZPATRICK, in his Official Capacity as the Onondaga County District Attorney, EUGENE CONWAY, in his Official Capacity as the Sheriff of Onondaga County, JOSEPH CECILE, in his Official Capacity as the Chief of Police of Syracuse, P. DAVID SOARES in his Official Capacity as the District Attorney of Albany County, GREGORY OAKES, In his Official Capacity as the District Attorney of Oswego County, DON HILTON, in his Official Capacity as the Sheriff of Oswego County,  and JOSEPH STANZIONE, in his Official Capacity as the District Attorney of Greene County, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## DECLARATION OF ALFRED TERRILLE

---

Exhibit "9"

1.   My name is Alfred ("Al") Terrille.  I am a U.S. citizen and resident of New York, and I live in Albany County.  I am a member of Gun Owners of America, Inc., and thus am one of the individuals whose interests were represented by the organizational plaintiffs in *Antonyuk v. Bruen*, and in this case.

2.   I make this declaration in support of Plaintiffs' Complaint for Declaratory and Injunctive Relief.  Unless otherwise stated, I make this declaration based on personal knowledge.  If called as a witness, I can testify to the truth of the statements contained therein.

3.   I am a law-abiding person who currently possesses and has maintained an unrestricted New York carry permit since 1994.  I am eligible to possess and carry firearms in the State of New York, and have met all the qualifications for licensure, including having good moral character.

4.   Not only do I possess a New York carry license, but also I routinely carry my handgun concealed when I leave home.  To be sure, I do not carry in courthouses, schools, government buildings, or the other obvious "sensitive places" the Supreme Court has described, where the government often provides security in the form of armed guards and metal detectors.  Otherwise, being responsible for my own security and that of my family, my gun generally does not leave my side when I leave the house, and goes where I go.

5.   However, due to the recent implementation of the Concealed Carry Improvement Act ("CCIA"), I am now in jeopardy of arrest and prosecution as a felon, not to mention having my firearm seized and my permit revoked, and my constitutional rights forfeited, merely for carrying in the completely ordinary and entirely non-sensitive locations in which I previously carried my firearm.

6.   For example, in addition to being a father, I am now grandfather to 5 grandchildren.  In that role, it is my duty to protect my family, regardless of the State of New York's attempts to

disarm me, subjugate me, and infringe my Second Amendment rights through passage of the CCIA.  Put simply, my duty to my family trumps any duty to disarm in acquiescence to a clearly unconstitutional statute.

7.  As part of my activities with my grandchildren, we routinely see movies, both at movie theaters and at drive-in locations within Albany County. This activity occurs repeatedly throughout the year, and we will see a movie again at some point within the next 60 days.  In the past, I have carried my concealed firearm during such outings, yet the CCIA will now make me a felon for doing this entirely ordinary family activity in entirely ordinary and non-sensitive locations (subsection p).  Indeed, this sort of public location is the type of place where I absolutely need to be able to protect my family.  Based on this Court's recent conclusion that "the CCIA's list of 'sensitive locations' is not deeply rooted in this Nation's historical tradition of firearm regulation," and because neither movie theaters nor anything like them appears in the Supreme Court's list of traditional sensitive locations, I intend to continue to carry my firearm when I go to movie theaters with my grandchildren, in violation of the CCIA.

8.  I also routinely take my grandkids to Thatcher State Park, in Albany County, where we utilize the hiking trails, picnic areas, and playground for children.  I intend to carry my firearm when my family visits the Park in the future, something that occurs and will continue to occur on at least a monthly basis (CCIA subsection d).

9.  I have been planning and, within the next 60 days, I will take a trip to visit the state of Tennessee.  Since Tennessee is a constitutional carry state that respects the Second Amendment rights of all Americans to bear arms, I will bring my firearm with me.  I have not yet booked a flight, but I plan to travel by airplane, departing via the Albany International Airport.  I have done some research into flights, and it looks like a ticket with one stop in Charlotte, NC will be under

$500 to Chattanooga, TN, or under $350 to Nashville, TN.  Thus, I will continue watching prices, and will purchase a ticket in the coming weeks, for travel within the next two months.  However, the unconstitutional CCIA makes it a crime for me to take this trip, criminalizing my taking my firearm with me to the airport, even unloaded, locked, and properly declared in my checked luggage in compliance with federal regulations.  In fact, the CCIA bans possession of firearms in "any place … or vehicle used for public transportation," which expressly includes "airports" and by inference would include an airplane as well (since it is a vehicle) (subsection n). Nor would I be able to store my firearm in my vehicle in an airport parking lot, before taking a trip.  In other words, the CCIA will subject me to arrest and criminal prosecution should I bring my firearm to the airport for my upcoming trip.  Since I intend to check my firearm with my luggage in accordance with TSA regulations, which requires declaring the firearm, I would be essentially telling authorities that I am in illegal possession of a firearm, opening myself to prosecution under the CCIA.

10. Although I intend to travel to Tennessee by airplane, even if I were to travel by car, it would take me approximately 2.5 to 3 hours to drive directly out of New York State.  Along the way, I would be effectively prohibited from making any stops, such as to use the bathroom, or even onto the parking lot of a gas station, rest stop, or fast-food restaurant, unless I have foreknowledge that a sign has been posted welcoming carrying (an impossibility in places where I do not routinely travel and/or have never been).  In fact, I *cannot even stop in a parking lot to find out* if I may carry at a specific location, without violating the CCIA.

11. In other words, the CCIA greatly impairs my freedom of travel.  I find this highly ironic, given that Governor Hochul has publicly asked all Republicans to leave New York State,[1] but also

---

[1] https://nypost.com/2022/08/25/kathy-hochuls-call-for-5-4m-republicans-to-leave-new-york-is-dangerous/

has signed into law a bill making it difficult (if not impossible) for me to do so with my firearm. In the next 60 days, I will travel to Tennessee via airplane, and I intend to bring my firearm with me in my checked luggage, in full compliance with 18 U.S.C. Section 926A, and/or TSA regulations.

12. The CCIA also makes it a felony for me to peaceably carry my firearm to entirely ordinary and non-sensitive locations that I routinely visit.  For example, my bank, the First National Bank of Scotia, is a local bank with only a few branches in upstate New York.  I have never been made aware of any anti-gun policy of the bank, nor does the bank have any posted signage stating that firearms are not allowed.  On the other hand, nor does the bank have any sign stating that I *may* carry.  This leaves me in an impossible situation where I essentially need to go into a bank, declare that I have a gun, and ask if it is permissible for me to carry.  That is ridiculous, and I will not do that.  Rather, I intend to continue carrying my firearm to my local bank in violation of the CCIA, because I will be doing so without the presence of "conspicuous signage" or having received "express consent," unless the bank asks me to leave my firearm in my vehicle.

13. In addition to my local bank, I routinely carry my firearm when out and about in public, including when I go shopping at various locations in Albany County, such as gas stations, grocery stores (such as Hannaford Supermarket and Price Shopper), home improvement stores, big box stores, etc.  Many of the stores have corporate policies which permit the carry of firearms, including Walmart, Walgreens and Target.[2]  I would estimate that, at least once a week, I visit one or more of these retailers. However, the CCIA now declares such locations to be "restricted locations," and bans my carrying of a firearm on the premises unless I have the affirmative consent of the owner, or there is specific signage posted.  However, obtaining such consent is entirely

---

[2] https://thehill.com/policy/finance/460336-here-are-the-gun-policies-for-americas-largest-retailers/#:~:text=Since%20July%202014%2C%20Target%20has,a%20statement%20at%20the%20time.

impractical.  Moreover, since the CCIA's implementation, few if any locations have posted signs welcoming concealed carry license holders, even if the business otherwise supports or allows concealed carry.  In fact, to my knowledge, *none* of these retailers listed above has taken the affirmative steps to post signage to opt out of the CCIA.

14. Nor is it practical for me to disarm, approach such a business, ask permission from a low-level employee who will no doubt be unfamiliar with store policy and need to ask the manager (if not contact corporate), wait for a response, then re-arm myself – all merely to pick up a few things at the store.  Indeed, even if I receive permission at one point in time, such policy could change at any time and without notice, thus putting me at constant risk of committing a crime unawares.

15. Since it is between me and a business – not New York state – whether I carry my firearm there, I intend to continue carrying my firearm in various businesses and establishments in Albany County, in violation of the CCIA's restriction on "prohibited locations" that are not conspicuously posted with signage.  Unless this Court strikes down that provision of the CCIA, simply going peaceably about my daily life will be a crime, pursuant to a statute which this Court has already declared clearly unconstitutional.  As such, as "an act of the legislature, repugnant to the constitution," the CCIA "is void."  *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

16. I plan to attend the upcoming NEACA Polish Community Center Gun Show, to occur on October 8-9, 2022, in Albany.[3]  The gun show is hosted by The Polish Community Center, which describes itself as "a conference center, banquet hall & wedding venue in Albany, NY."[4]  Under the CCIA, however, guns are entirely banned at "conference centers" and "banquet halls" (subsection p), and there is no provision for the community center to opt out and expressly allow firearms.  Moreover, one of my main reasons for attending, and a huge part of any gun show, is

---

[3] https://gunshowtrader.com/gun-shows/albany-ny-gun-show/
[4] https://www.albanypcc.com/

the conversations with fellow gun owners, which invariably includes discussion of New York State's tyrannical gun laws. In other words, a gun show is, almost by definition, a "gathering of individuals to collectively express their constitutional rights to protest or assemble" (subsection s) and, thus, the CCIA appears to entirely ban gun shows. I currently plan to attend the upcoming Albany gun show, and I intend to carry my firearm with me when I do, in violation of the CCIA, but based on my understanding of this Court's recent opinion and the Supreme Court's decision in *Bruen* that "'sensitive places' may not include all 'places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available.'" *Antonyuk* at *87.

17. I currently live in an apartment complex in Albany County. In other words, I am a tenant, and I have a landlord. Although I have certain property rights as a leaseholder, it is my understanding that my apartment complex does not permit residents to post signage outside their units. Although I have given myself express consent to be armed in my own home, it is not feasible for me to expressly consent to the carry of firearms by each individual person who visits my home, including deliverymen, repairmen, friends, family, etc. Thus, the CCIA requires that I post "clear and conspicuous signage" stating that my home is pro-gun. However, I am unable to post such signage as per the terms of my lease. Certainly, I am not permitted to post signage outside my own unit, to permit visitors to my home to park in the common parking lots, and walk on the common sidewalks, when visiting my home. I am thus unable to fully "opt out" of the CCIA's taking my property and declaring it to be an anti-gun location, essentially converting my home from a "restricted location" to a "sensitive location."

18. In the past, I have attended pro-gun rallies, and done so while armed. For example, in 2013 and 2014, I attended more than one rally in Albany, before and after the New York SAFE Act was

passed, which occurred on public sidewalks and streets.  The CCIA, however, makes me choose between two constitutional rights, banning Second Amendment rights at First Amendment protected activities, potentially under multiple subsections (subsections a, d, p, r, and s).  If firearms were not already prohibited at a rally under subsection (s), then alternatively a rally likely might constitute a "special event" where a permit is required under subsection (r). The CCIA's restrictions are clearly unconstitutional, because the rallies I have attended, where guns are now banned, are in no way "sensitive locations," as they occur on public streets, sidewalks, parks, and squares.  I do not presently know of any upcoming pro-gun or pro-freedom rally currently scheduled in New York but, if there were one, I would jump at the opportunity to attend it to express my political views, and I would do so while carrying my firearm, in clear violation of the CCIA.

19. I also routinely go out to eat with my grandkids, including at restaurants such as Applebee's and Mo's Southwest Grill, which are considered "sensitive locations" by the CCIA (subsection o) because they serve alcohol, even if I am not sitting at the bar or consuming any alcoholic beverage. Neither restaurant has any signs prohibiting the carrying of firearms, nor appears to publicly state any anti-gun policy.  In other words, I would be permitted to carry when I go to eat, if not for the CCIA.  Based on this Court's recent opinion, and because neither restaurants nor anything like them appears in the Supreme Court's list of traditional sensitive locations, I intend to continue to carry my firearm when I go out to eat with my grandkids, an event that will occur within the next 30 days.

20. Not only do I intend to engage in various constitutionally-protected acts which are now made unlawful under the CCIA, but also I face a credible threat of prosecution, as my specific intentions to break the law are now made public through this filing.

21. For example, First Deputy Superintendent Steven Nigrelli of the New York State Police, has threatened persons such as me who violate the CCIA that "[w]e ensured that the lawful, responsible gun owners have the tools now to remain compliant with the law.  For those who choose to violate this law … Governor, it's an easy message.  I don't have to spell it out more than this.  We'll have zero tolerance.  If you violate this law, you will be arrested.  Simple as that.  Because the New York state troopers are standing ready to do our job to ensure ... all laws are enforced."[5]  If that is not a credible threat of enforcement, it is hard to see what would be.

22. What is more, I am far more likely (if not guaranteed) to have a run-in with law enforcement when I arrive at the airport and declare to authorities that I have a firearm to check with my baggage.  Under the CCIA's plain text, I believe there to be a strong likelihood that I could be arrested charged with a felony under the state's announced "zero tolerance" policy, when I bring my firearm to the airport to check for my upcoming flight.

I declare under penalty of perjury that the foregoing is true and correct.

September 19, 2022
**Date**

*Alfred Terrille*
**Alfred Terrille**

---

[5] https://youtu.be/gC1L2rrztQs?t=2281 (at 38:00 minutes).