IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVAN ANTONYUK; COREY JOHNSON; ALFRED TERRILLE; JOSEPH MANN; LESLIE LEMAN; and LAWRENCE SLOANE,<br><br>   Plaintiffs,<br> v.<br><br>KATHLEEN HOCHUL, in her Official Capacity as Governor of the State of New York; KEVIN P. BRUEN, in his Official Capacity as Superintendent of the New York State Police; JUDGE MATTHEW J. DORAN, in his Official Capacity as Licensing-Official of Onondaga County; WILLIAM FITZPATRICK, in his Official Capacity as the Onondaga County District Attorney; EUGENE CONWAY, in his Official Capacity as the Sheriff of Onondaga County; JOSEPH CECILE, in his Official Capacity as the Chief of Police of Syracuse; P. DAVID SOARES, in his Official Capacity as the District Attorney of Albany County; GREGORY OAKES, in his Official Capacity as the District Attorney of Oswego County; DON HILTON, in his Official Capacity as the Sheriff of Oswego County; and JOSEPH STANZIONE, in his Official Capacity as the District Attorney of Greene County,<br><br>   Defendants. | **DECLARATION OF EDWARD G. MELVIN II IN SUPPORT OF MOTION TO DISMISS**<br><br>Civil Action No. 1:22-CV-986 (GTS/CFH) |

   EDWARD G. MELVIN II, ESQ. declares the following under the penalty of perjury under the laws of the United States of America:

   1. I am a partner with Barclay Damon LLP, attorneys for Defendants Gregory Oakes, in his Official Capacity as the District Attorney of Oswego County, and Defendant Don Hilton, in his Official Capacity as the Sheriff of Oswego County (collectively "Co-Defendants Oakes and Hilton") in this action. I respectfully submit this Declaration in support of Co-Defendants Oakes

and Hilton's motion for an Order granting dismissal of the claims and relief requested in the Complaint by Plaintiff Joseph Mann in their entirety with prejudice as against Co-Defendants Oakes and Hilton pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

2. I am fully familiar with the facts and information in this Declaration through my role as counsel for Co-Defendants Oakes and Hilton in connection with this matter.

3. On July 11, 2022, Plaintiffs Ivan Antonyuk; Gun Owners of America, Inc.; Gun Owners Foundation; and Gun Owners of America New York, Inc. filed a complaint against Defendant Kevin P. Bruen, in his Official Capacity as Superintendent of the New York State Police, concerning a challenge to the Concealed Carry Improvement Act ("CCIA"). *See Antonyuk et al. v. Bruen et al*, 22-CV-0734 (N.D.N.Y. Aug. 31, 2022) ("*Antonyuk I*") at Dkt. No. 1.

4. Generally, in their Complaint, the plaintiffs in *Antonyuk I* asserted four claims against Defendant Bruen: (a) a claim for violating the Second Amendment; (b) a claim for violating the Second Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983 ("Section 1983"); (c) a claim for violating the First Amendment; and (d) a claim for violating the First Amendment, Fourteenth Amendment, and Section 1983. *See id*. Each of these claims challenged one or more of the following seven aspects of the CCIA: (a) its definition of "good moral character;" (b) its allegedly onerous requirement of an in-person interview by the licensing officer; (c) its allegedly onerous requirement that the applicant disclose a list of his or her current and past social media accounts for the past three years; (d) its allegedly onerous requirement of a t least four "character references" who can attest to the applicant's "good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others;" (e) its allegedly onerous requirement of a minimum

2

of 16-hours of in-person training (plus a minimum of two hours of live-fire training) and accompanying fees; (f) its expansive list of "sensitive locations;" and (g) its expansive definition of restricted locations." *See id.*

5.  On July 20, 2022, in *Antonyuk I,* the plaintiffs filed a motion for a temporary restraining order and preliminary injunction to prevent enforcement of the CCIA before it goes into effect. *See Antunyok I* at Dkt. No. 9.

6.  On August 15, 2022, Defendant Bruen filed his response in opposition to the motion. *See Antonyuk 1* at Dkt. No. 19.

7.  On August 22, 2022, the plaintiffs in *Antonyuk I* filed their reply in further support of the motion. *See Antonyuk I* at Dkt. No. 40.

8.  On August 23, 2022, in *Antonyuk I*, the Court held a hearing on the motion at which it received evidence and heard oral argument. *See Antonyuk I* at Dkt. No. 46.

9.  On August 31, 2022, the Hon. Glenn T. Suddaby issued his Decision and Order on the motion for a temporary restraining order and preliminary injunction in *Antonyuk I*, which *sua sponte* dismissed the plaintiffs' complaint in its entirety without prejudice for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3) and denied the motion without prejudice as moot because (among other reasons) the plaintiffs lacked standing. *See Antonyuk I* at Dkt. No. 48 ("Decision I").

10. Thereafter, on September 20, 2022, Plaintiffs Ivan Antonyuk; Corey Johnson; Alfred Terrille, Joseph Mann; Leslie Leman; and Lawrence Sloane (collectively "Plaintiffs") filed a second complaint (the "Complaint") against Defendants Kathleen Hochul, in her Official Capacity as Governor of the State of New York; Kevin P. Bruen, in his Official Capacity as Superintendent of the New York State Police; Judge Matthew J. Doran, in his Official Capacity as

3

Licensing-Official of Onondaga County; William Fitzpatrick, in his Official Capacity as the Onondaga County District Attorney; Eugene Conway, in his Official Capacity as the Sheriff of Onondaga County; Joseph Cecile, in his Official Capacity as the Chief of Police of Syracuse; P. David Soares, in his Official Capacity as the District Attorney of Albany County; Gregory Oakes, in his Official Capacity as the District Attorney of Oswego County; Don Hilton, in his Official Capacity as the Sheriff of Oswego County; and Joseph Stanzione, in his Official Capacity as the District Attorney of Greene County (collectively "Defendants"), in which Plaintiffs assert the same claims as in *Antonyuk I* but with five new plaintiffs and against nine additional defendants. *See* Dkt. No. 1.

11.     Similar to *Antonyuk I*, in their Complaint, Plaintiffs generally assert three claims against Defendants: (1) a claim for violating the Second Amendment (as applied to the states through the Fourteenth Amendment), pursuant to 42 U.S.C. § 1983; (2) a claim for violating the First Amendment pursuant to 42 U.S.C. § 1983; and (3) a claim for violating the Fifth Amendment pursuant to 42 U.S.C. § 1983. (Id.) Each of these claims challenge one or more of the following nine aspects in the revised law: (a) its definition of "good moral character"; (b) its requirement that the applicant disclose a list of his or her "former and current social media accounts . . . from the past three years to confirm the information regarding applicant's character and conduct as required [above]"; (c) its requirement that the applicant list the names and contact information of family members and cohabitants; (d) its requirement that the applicant list at least four "character references" who can attest to the applicant's "good moral character"; (e) its requirement that the applicant provide "such other information required by the licensing officer"; (f) its requirement that the applicant attend an in-person interview by the licensing officer; (g) its requirement that the applicant receive a minimum of 16-hours of in-person firearm training and two-hours of "live-

fire" firearm training, at his or her own expense (which they estimate to be "around $400"); (h) its definition of "sensitive locations"; and (i) its definition of "restricted locations." *See id.*

12. Also, similar to *Antonyuk I*, on September 22, 2022, Plaintiffs filed an emergency motion for a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65 against Defendants to prevent enforcement of the CCIA before it goes into effect. *See* Dkt. No. 6.

13. On September 28, 2022, Defendants submitted their briefs in opposition to Plaintiffs' motion for a temporary restraining Order. *See* Dkt. Nos. 17-18.

14. On September 29, 2022, the Court conducted oral argument. At the end of oral argument, the Court reserved decision and stated that a decision would follow. *See* Dkt. No. 23.

15. On October 6, 2022, Judge Suddaby issued his Decision and Order regarding Plaintiffs' second attempt at a motion for a temporary restraining order and preliminary injunction concerning the CCIA but, in this subsequent Decision and Order, Judge Suddaby determined that the Plaintiffs had standing, and granted Plaintiffs motion in part and denied it in part. *See* Dkt. No. 27 ("Decision II").

16. Specifically, in his Decision and Order, Judge Suddaby held that Defendants, as well as their officers, agents, servants, employees, and attorneys (and any other persons who are in active concert or participation with them) are temporarily restrained from enforcing the following provisions of the CCIA: (a) the provisions contained in Section 1 of the CCIA requiring "good moral character" except to the extent it is construed to mean that a license shall be issued or renewed except for an applicant who has been found, by a preponderance of the evidence based on his or her conduct, to not have "good moral character," which is defined as "having the essential character, temperament and judgment necessary... to use [the weapon entrusted to the applicant] only in a manner that does not endanger oneself or others, other than in self-defense;" (b) the

provision contained in Section 1 of the CCIA requiring that the applicant "meet in person with the licensing officer for an interview;" (c) the provision contained in Section 1 of the CCIA requiring the "names and contact information for the applicant's current spouse, or domestic partner, any other adults residing in the applicant's home, including any adult children of the applicant, and whether or not there are minors residing, full time or part time, in the applicants home;" (d) the provision contained in Section 1 of the CCIA requiring "a list of former and current social media accounts of the applicant from the past three years;" and (e) the "sensitive locations" provision contained in Section 4 of the CCIA except with regard to the following sensitive locations (where the restrictions remain): (i) "any place owned or under the control of federal, state or local government, for the purpose of government administration, including courts" (as contained in paragraph "2(a)" of Section 4); (ii) "any location being used as a polling place" (as contained in paragraph "2(q)" of Section 4); (iii) "any public sidewalk or other public area restricted from general public access for a limited time or special event that has been issued a permit for such time or event by a governmental entity, or subject to specific, heightened law enforcement protection, or has otherwise had such access restricted by a governmental entity, provided such location is identified as such by clear and conspicuous signage" (as contained in paragraph "2(r)" of Section 4); (iv) "any place of worship or religious observation" (as contained in paragraph "2(c)" of Section 4), except for those persons who have been tasked with the duty to keep the peace at the place of worship or religious observation; (v) "nursery schools" and "preschools" (as contained in paragraph "2(f)" of Section 4); (vi) "any building or grounds, owned or leased, of any educational institutions, colleges and universities, licensed private career schools, school districts, public schools, private schools licensed under article one hundred one of the education law, charter schools, non-public schools, board of cooperative educational services, special act schools,

preschool special education programs, private residential or non-residential schools for the education of students with disabilities, and any state-operated or state-supported schools" (as contained in paragraph "2(m)" of Section 4); (vii) "any gathering of individuals to collectively express their constitutional rights to protest or assemble" (as contained in paragraph "2(s)" of Section 4); and (f) the "restricted locations" provision contained in Section 5 of the CCIA except for fenced-in farmland owned by another or fenced-in hunting ground owned by another (where the restriction stands). Further, Judge Suddaby held that the Plaintiffs are excused from giving security; and that this temporary restraining order shall remain in effect pending a hearing and ruling on Plaintiffs' motion for a preliminary injunction. *See* Dkt. No. 27.

17. Subsequently, on October 6, 2022, Defendants Hochul, Bruen, and Doran filed a Notice of Appeal to the Second Circuit concerning Decision II. *See* Dkt. No. 28.

18. On October 10, 2022, Defendant Cecile also filed a Notice of Appeal to the Second Circuit concerning Decision II. *See* Dkt. No. 31.

19. On October 6, 2022, Defendants-Appellants Hochul, Bruen, and Doran requested a stay of Judge Suddaby's Decision and Order that granted Plaintiffs' motion in part pending the appeal. *See Antonyuk et al v. Hochul et al,* Case No. 22-2379 at Dkt. No. 40.

20. On October 12, 2022, the Second Circuit issued an Order, which referred said motion for a stay pending appeal to a three-judge motions panel, and stayed Judge Suddaby's Decision and Order temporarily pending a decision by said motion panel. *See id.*

21. On October 13, 2022, Co-Defendants Oakes and Hilton filed the present pre-answer motion to dismiss the claims and relief requested in the Complaint by Plaintiff Joseph Mann pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

22. In sum, as argued more fully in Co-Defendants' Oakes and Hilton's Memorandum of Law, dated October 13, 2022, Plaintiff Joseph Mann's claims and relief requested should be dismissed in their entirety for those very same reasons that *Antonyuk I* was *sua sponte* dismissed for lack of subject matter jurisdiction in Decision I.

23. More specifically, Plaintiff Joseph Mann has failed to show facts demonstrating a credible threat of prosecution by Co-Defendants Oakes and Hilton other than speculative fears of prosecution. *See generally* Complaint.

24. Accordingly, this Court should dismiss the Complaint as to Co-Defendants Oakes and Hilton.

WHEREFORE, it is respectfully requested that the Court grant Co-Defendant Oakes and Hilton's motion to dismiss Plaintiff Joseph Mann's claims and relief requested in their entirety as against Co-Defendant Oakes and Hilton, together with such other and further relief as the Court deems just and proper.

DATED: October 13, 2022

Edward G. Melvin, II
(Bar Roll No. 509037)