UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

IVAN ANTONYUK, COREY JOHNSON,
ALFRED TERRILLE, JOSEPH MANN,
LESLIE LEMAN, and LAWRENCE SLOANE,

Plaintiffs,

v.

KATHLEEN HOCHUL, in her Official Capacity as
Governor of the State of New York, KEVIN P. BRUEN, in
his Official Capacity as Superintendent of the New York
State Police, Judge MATTHEW J. DORAN, in his Official
Capacity as the Licensing-official of Onondaga County,
WILLIAM FITZPATRICK, in his Official Capacity as the
Onondaga County District Attorney, EUGENE CONWAY,
in his Official Capacity as the Sheriff of Onondaga County,
JOSEPH CECILE, in his Official Capacity as the Chief of
Police of Syracuse, P. DAVID SOARES in his Official
Capacity as the District Attorney of Albany County,
GREGORY OAKES, In his Official Capacity as the District
Attorney of Oswego County, DON HILTON, in his Official
Capacity as the Sheriff of Oswego County, and JOSEPH
STANZIONE, in his Official Capacity as the District
Attorney of Greene County,

Defendants.

Civil Action No.: 1:22-cv-986
(GTS/CFH)

---

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Susan R. Katzoff, Esq.
Corporation Counsel
*Counsel for Chief of Police Joseph Cecile*
300 City Hall
Syracuse, New York 13202
(315) 448-8400

By:    Todd M. Long, Esq.
       Senior Assistant Corporation Counsel

       Danielle R. Smith, Esq.
       Assistant Corporation Counsel

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 1

   I.   PLAINTIFF JOHNSON CANNOT NOT MEET HIS BURDEN UNDER THE HEIGHTENED PRELIMINARY INJUNCTION STANDARD JUSTIFYING THE EXTRAORDINARY REMEDY. ................................................................. 1

   II.   PLAINTIFF JOHNSON HAS NOT ADEQUATELY ASSERTED THAT HE WILL SUFFER IMMINENT AND REAL IRREPARABLE HARM ......................................... 4

      A.   The Potential Loss Of Plaintiff Johnson's Property Can Be Remedied By Money Damages ..................................................................................................... 5

      B.   Plaintiff Johnson Failed to Identify Locations He Intends to Visit Where SPD Would Likely Respond ..................................................................................... 6

         i.   Vague And Unidentified Locations Do Not Justify The Requested Relief ........... 6

         ii.   Locations Outside The City Do Not Justify The Requested Relief ....................... 7

         iii.   Rosamond Gifford Zoo Is Not Owned Or Controlled By The City ...................... 8

      C.   Chief Cecile's Comment That Enforcement of CCIA Will be "Complaint Driven" Does Not Establish an "Actual And Imminent" Harm ............................................... 9

   III.   PLAINTIFF JOHNSON CANNOT SHOW THAT HE HAS A LIKELIHOOD OF SUCCESS ON THE MERITS. ...................................................................... 11

      A.   Plaintiff Johnson Has Failed to Allege a Cognizable Nexus with the City or Chief Cecile ..................................................................................................... 12

      B.   Plaintiff Johnson Cannot Establish That He Has Standing To Bring An Action Against Chief Cecile ....................................................................................... 12

      C.   Plaintiff Johnson Failed To Meet His Burden That The Rosamond Gifford Zoo Is Not *Also* A Place Owned Or Under The Control Of Local Government, For The Purpose Of Government Administration ......................................................... 18

      D.   Plaintiffs Have Not Established A Likelihood Of Success On The Merits As To Count I Of The Complaint ...................................................................................... 21

IV.  BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR A PRELIMINARY
      INJUNCTION ................................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985)................................................................ 12

*Able v. United States,* 44 F.3d 128 (2d Cir. 1995) ...................................................................... 3

*Ali v. Wuchte*, 2022 WL 3682303 (E.D.N.Y. Aug. 25, 2022) ........................................................ 7

*Antonyuk v. Bruen*, 2022 WL 3999791 (N.D.N.Y. Aug. 31, 2022)................................................ 2

*Avitabile v. Beach*, 277 F. Supp. 3d 326 (N.D.N.Y. 2017)......................................................... 19

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) ............................................ 15

*Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011).................................................... 12, 13, 14

*Carver v. City of New York*, 621 F.3d 221 (2d Cir. 2010) ............................................................ 12

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016) .............................................................. 14

*Celotex v. Catrett*, 477 U.S. 317 (1986) ....................................................................................... 14

*Cent. Rabbinical Congress of U.S. & Can. v New York City Dept. of Health & Mental Hygiene*, 763 F.3d 183 (2d Cir. 2014) ....................................................................................................... 3

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ......................................................................... 4

*Davis v. City of Rochester*, 2022 WL 6885334 (W.D.N.Y. Oct. 12, 2022).................................... 8

*Demirayak v. City of New York*, 746 Fed. App'x 49 (2d Cir. 2018)............................................... 4

*Doe #1 v. Syracuse Univ.*, 2018 WL 3193199 (N.D.N.Y. June 28, 2018) ...................................... 3

*Does 1 - 10 v. Suffolk Cnty., New York*, 2022 WL 2678876 (2d Cir. July 12, 2022) . 10, 13, 14, 16

*Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021) .................................................................. 14

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009)........................ 4, 9

*Frey v. Bruen*, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022).................................................. 15, 16

*Geller v. Cuomo*, 476 F. Supp. 3d 1 (S.D.N.Y. 2020) .................................................................... 3

*Gen. Mills, Inc. v. Chobani, LLC*, 2016 WL 356039 (N.D.N.Y. Jan. 29, 2016) ........................... 2

*Kamerling v. Massanari*, 295 F.3d 206 (2d Cir. 2002)....................................................... 5

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ................................................................. 22

*Knife Rts., Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ................................................... 14

*Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020) ....................... 22

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................... 13, 14, 15

*Lujan v. Nat'l Wildlife Fed'n (Lujan I)*, 497 U.S. 871 (1990) ........................................ 14

*Mazurek v. Armstrong,* 520 U.S. 968 (1997)............................................................... 2, 3

*Miller v. Smith*, 2021 WL 4222981 (E.D.N.Y. Sept. 16, 2021)...................................... 12

*Monserrate v. N.Y. State Senate*, 599 F.3d 148 (2d Cir. 2010)........................................ 3

*Munaf v. Geren*, 553 U.S. 674 (2008).............................................................................. 2

*Napolitano v. Ryder*, 2019 WL 365710 (E.D.N.Y. Jan. 30, 2019)................................. 19

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015) ............... 2

*New York State Rifle & Pistol Association, Inc.  v. Bruen*, 142 S.Ct. 2111, 213 L.Ed 387 (2022) ....................................................................................................................... 19, 22

*Oneida Nation of New York v. Cuomo*, 645 F3d 154 (2d Cir. 2011)........................... 3, 12

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.,* 769 F.3d 105 (2d Cir. 2014) ........................................................................................................................ 3

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) ........................................................... 14

*Pope v. County of Albany*, 687 F3d 565 (2d Cir. 2012)................................................ 12

*Risenhoover v. Bayer Corp. Group Health Plan*, 83 F. Supp. 2d 408 (S.D.N.Y. 2000) ............... 2

*Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) ..................................................... 4

*Secured Worldwide LLC v Kinney*, 2015 WL 1514738 (S.D.N.Y. Apr. 1, 2015)......................... 2

*Sibley v. Watches*, 501 F. Supp. 3d 210 (W.D.N.Y. Nov. 16, 2020)............................. 16

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .................................................... 13

iv

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................. 15

*Sussman v. Crawford*, 488 F3d 136 (2d Cir. 2007) ...................................................... 2

*Tellock v. Davis*, 84 F. App'x 109 (2d Cir. 2003) ......................................................... 5

*Tolbert v. Koenigsmann*, 2015 WL 7871344 (N.D.N.Y. Dec. 4, 2015) ..................................... 4, 9

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27 (2d Cir. 1995)................................. 2

*Ulmer v. Corr. Officer Dibble*, 2016 WL 5940912 (N.D.N.Y. Oct. 13, 2016) ............................ 7

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .................................................... 22

*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) ............................................. 22

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008)........................................................ 1, 2

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 65, this memorandum of law is submitted on behalf of Defendant Joseph Cecile in his official capacity as Chief of Police ("Chief Cecile") for the City of Syracuse ("City") Police Department ("SPD"), in support of his Opposition to Plaintiffs' Ivan Antonyuk, Corey Johnson ("Plaintiff Johnson"), Alfred Terrille, Joseph Mann, Leslie Leman, and Lawrence Sloane (collectively "Plaintiffs"), motion for a preliminary injunction ("Motion").  *See* Dkt. No. 6. The preliminary injunction seeks, *inter alia*, to enjoin all of the named Defendants from enforcing New York State's Concealed Carry Improvement Act ("CCIA").

Plaintiff Johnson is the only plaintiff to allege a connection with the City – and that connection is tenuous. Accordingly, Chief Cecile's opposition deals squarely with Plaintiff Johnson's allegation, as asserted in his declaration (*see* Dkt. No. 1-3), that without the preliminary injunction he will suffer various harms by SPD and Chief Cecile. Chief Cecile's opposition will only briefly address the constitutionality of the CCIA as counsel for the State Defendants will no doubt present a compelling argument. For the following reasons, Chief Cecile respectfully submits that Plaintiff Johnson has failed to meet his burden of demonstrating the need for the "extraordinary remedy" of a preliminary injunction. As no other Plaintiff alleges a connection with the City, Plaintiffs, as a whole, have therefore failed to establish their entitlement to pre-trial injunctive relief.

## ARGUMENT

## I.   PLAINTIFF JOHNSON CANNOT NOT MEET HIS BURDEN UNDER THE HEIGHTENED PRELIMINARY INJUNCTION STANDARD JUSTIFYING THE EXTRAORDINARY REMEDY.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-

90 (2008)); *see also*, *Gen. Mills, Inc. v. Chobani, LLC*, 2016 WL 356039, at *4 (N.D.N.Y. Jan. 29, 2016). Indeed, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing,* carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)) (emphasis in original).

The Second Circuit has ruled that "[a] party seeking a preliminary injunction must ordinarily establish (1) 'irreparable harm'; (2) 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party'; and (3) 'that a preliminary injunction is in the public interest.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (internal quotation marks omitted)).[1] There is a *heightened* standard placed upon the moving party seeking a preliminary injunction when either: "(i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *Actavis PLC*, 787 F.3d at 650 (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 33-34 (2d Cir. 1995)); *see also Antonyuk v. Bruen*, 2022 WL 3999791, at *8 (N.D.N.Y. Aug. 31, 2022). "When either condition is met, the movant must show a 'clear' or 'substantial' likelihood of success on the merits, . . . and make a 'strong showing' of irreparable harm, . . . in addition to showing that the preliminary injunction is in the public interest." *Id*.; *see also*, *e.g.*, *Risenhoover v. Bayer Corp. Group Health Plan*, 83 F. Supp. 2d 408, 410 (S.D.N.Y. 2000).

---

[1] Courts in the Second Circuit have also employed a four-element test, interpreting the Supreme Court in *Winter*, 555 U.S. at 20, as plainly requiring "a plaintiff who establishes likelihood of success to show that the balance of hardships favors an injunction," thus making (2)(a) and (2)(b), above, elements (2) and (3) respectively. *Secured Worldwide LLC v Kinney*, 2015 WL 1514738, at *10, n. 4 (S.D.N.Y. Apr. 1, 2015).

Furthermore, when a party seeks to enjoin "'governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' that same party cannot rely on the 'fair ground for litigation' alternative even if that party seeks to vindicate a sovereign or public interest." *Oneida Nation of New York v. Cuomo*, 645 F3d 154, 164 (2d Cir. 2011) (citing *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 154 (2d Cir. 2010)). Thus, as the Court is aware, "[w]hen, as here, the preliminary injunction 'will affect government action taken in the public interest pursuant to a statutory or regulatory scheme,' it 'should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" *Cent. Rabbinical Congress of U.S. & Can. v New York City Dept. of Health & Mental Hygiene*, 763 F.3d 183, 192 (2d Cir. 2014) (citations omitted).  This standard extends to policies, as "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.,* 769 F.3d 105 (2d Cir. 2014) (citing *Able v. United States,* 44 F.3d 128, 131 (2d Cir. 1995); *see* Dkt. No. 27, pp. 10-11.

Thus, courts have cautioned that a preliminary injunction is such an extraordinary and drastic remedy, it is "one that should not be granted unless the movant, by *a clear showing*, carries the burden of persuasion." *Geller v. Cuomo*, 476 F. Supp. 3d 1, 11 (S.D.N.Y. 2020) (emphasis in original) (quoting *Mazurek,* 520 U.S. at 972).  When a plaintiff moves for a preliminary injunction, the plaintiff as movant "bears the burden of proof with regard to each prong of the preliminary injunction test, [and] where a court concludes that a plaintiff fails to meet its burden with regard to one prong, it is not necessary for the court to consider the other prongs. *Doe #1 v. Syracuse Univ.*, 2018 WL 3193199, at *2 (N.D.N.Y. June 28, 2018).

As set forth above, the heightened standards for the movants for a preliminary injunction are applicable as to Plaintiffs' claims, as their motion—and indeed the thrust of their Complaint—squarely implicates government action in the statutory scheme of the CCIA. Moreover, here, the preliminary injunctive relief that Plaintiffs seek in this motion, as evidenced in the conjunctive title,[2] substantially subsumes the totality of relief they seek in their Complaint. With particular attention to the limited allegations made by Plaintiff Johnson against Chief Cecile, for the reasons stated below, Plaintiff Johnson has not met his burden of persuasion by means of a clear showing that he is entitled to injunctive relief as to each and every prong.

## II.   PLAINTIFF JOHNSON HAS NOT ADEQUATELY ASSERTED THAT HE WILL SUFFER IMMINENT AND REAL IRREPARABLE HARM

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)); *see also Demirayak v. City of New York*, 746 Fed. App'x 49, 51 (2d Cir. 2018). "Speculative, remote or future injury is not the province of injunctive relief." *Tolbert v. Koenigsmann*, 2015 WL 7871344, at *2 (N.D.N.Y. Dec. 4, 2015) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction they *will* suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (emphasis supplied) (quoting *Faiveley*, 559 F.3d at 118).

Plaintiff Johnson claims that he intends to violate the CCIA by bringing a concealed weapon to various locations in New York State where concealed weapons are prohibited. *See*

[2] In their Order to Show Cause, Plaintiffs state that they are seeking upon the same motion "a Temporary Restraining Order ("TRO") and Preliminary Injunction and/or Permanent Injunction ("PI") and Order to Show Cause why a TRO and PI should not issue." Dkt. No. 6-3, p. 1.

4

*generally*, Dkt. No. 1-3. Plaintiff Johnson's alleged irreparable harm, at least as it relates to Chief Cecile, is based solely on Chief Cecile's attendance at a press conference that was then reported in the local news. *Id.* at ¶23. Indeed, Chief Cecile is mentioned only *once* in Plaintiff Johnson's declaration. *Id.* The City itself is also notably absent from the declaration only appearing in connection with the Rosamond Gifford Zoo ("Zoo"). *Id.* at 17. No other plaintiff claims a connection with Chief Cecile or the City.

The only assertion made by Plaintiff Johnson is based on conjecture that he faces the possibility of a felony arrest or "having a firearm seized by police and a carry license revoked." *See id.* at ¶¶23-24. This conjecture falls far short of the required standard espoused by courts which have specifically found that speculative or future injury does not satisfy a movant's burden. *See Tolbert*, 2015 WL 7871344, at *2.

For the foregoing reasons, Plaintiff Johnson has failed to establish the imminent and irreparable harm necessary to warrant the "extraordinary remedy" of a preliminary injunction.

### A.   The Potential Loss Of Plaintiff Johnson's Property Can Be Remedied By Money Damages

Based purely on a press conference that Chief Cecile attended, Plaintiff Johnson asserts that a violation of the CCIA could result in "having [his] a firearm seized by police and [his] carry license revoked." Dkt. No. 1-3, ¶23. For the reasons stated below, Chief Cecile maintains that Plaintiff Johnson's request for emergency injunctive relief should be denied as purely speculative and lacking a cognizable nexus with the City.

The potential loss of a firearm or license does not justify the extraordinary relief of a preliminary injunction relief. The law is clear that a preliminary injunction should be denied unless "money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002); *see also Tellock v. Davis*, 84 F. App'x 109, 112 (2d Cir. 2003) (plaintiff "has

not demonstrated that he will suffer an imminent and irreparable injury" where he "can be compensated by money damages"). Plaintiff Johnson does allege, with any degree of specificity, harm that can not be remedied by monetary damages.  Thus, if Plaintiff Johnson's firearm is confiscated by SPD – an unlikely scenario given that Plaintiff Johnson has not identified *any* City owned properties he intends to visit – that loss can be easily remedied by "money damages."

The same is true for any damages Plaintiff Johnson would sustain from the temporary loss of his license pending the outcome of this matter. Plaintiff Johnson has not alleged that the potential loss of his license could or would lead to further injury – the loss of the license itself is the injury. Accordingly, Plaintiff has failed to establish that "money damages" would not remedy the temporary loss of his license in the purely speculative event that it was revoked following interaction with SPD.

**B.     Plaintiff Johnson Failed to Identify Locations He Intends to Visit Where SPD Would Likely Respond**

Plaintiff Johnson asserts that he intends to visit various locations within New York State while carrying his concealed weapon. *See generally* Dkt. No. 1-3. However, for the reasons set forth below, Plaintiff Johnson – who does not claim to be a resident of the City – has failed to establish *any* of the locations he intends to visit are owned or controlled by the City. Plaintiff Johnson has therefore failed to establish that he faces an imminent threat of arrest or harm by SPD or, by extension, Chief Cecile.

**i.     Vague And Unidentified Locations Do Not Justify The Requested Relief**

In addition to various named locations, discussed below, Plaintiff Johnson claims that he "often take[s] extended snowmobile trips throughout public parks and roads," and "go[es] shopping at various locations in Onondaga County, such as gas stations, grocery stores, home

improvement stores, big box stores, etc." Dkt. No. 1-3, ¶¶12, 18. Plaintiff Johnson does not assert that any of these parks, roads and/or shopping locations are within the City or otherwise under the purview of Chief Cecile.

The law is clear that vague allegations of a potential future harm are insufficient to warrant the "extreme remedy" of a preliminary injunction. *See Ulmer v. Corr. Officer Dibble*, 2016 WL 5940912, at *2 (N.D.N.Y. Oct. 13, 2016) ("Preliminary injunction requests are 'frequently denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65.'"); *Ali v. Wuchte*, 2022 WL 3682303, at *2 (E.D.N.Y. Aug. 25, 2022) ("Conclusory allegations lacking supporting evidence are insufficient to sustain a request for a preliminary injunction."). This is particularly true where, as here, Plaintiff Johnson fails to even allege that the unidentified parks, roads and stores are within the City.

### ii.    Locations Outside The City Do Not Justify The Requested Relief

Plaintiff Johnson names the following locations within New York State where he intends to visit and carry his concealed firearm: Mercer Park, Bowman Lake State Park, the New York State Fairgrounds ("Fairgrounds"),[3] Longhorn Steakhouse and the Zoo. *See generally*, Dkt. No. 1-3. However, all locations, except the Zoo (discussed below), are outside the City limits.

At the outset, Plaintiff Johnson does not claim that any of his named locations, except the Zoo, are located within the City limits. Indeed, Plaintiff Johnson acknowledges that both Mercer Park (Baldwinsville, New York) and Bowman Lake State Park (Oxford, New York) are in different municipalities.[4] Dkt. No. 1-3, ¶¶ 7, 9.

---

[3] Plaintiff Johnson does not assert an imminent future intent to visit the Fairgrounds. *See* Dkt. No. 1-3, ¶13. Instead, Plaintiff Johnson referenced the Fairgrounds as a location he would have visited had it not been for the possibility of being searched and his concealed weapon discovered. *Id.* Nevertheless, Chief Cecile will address the Fairgrounds as if Plaintiff Johnson intends to visit in the near future.

[4] Plaintiff Johnson does not specifically state that Bowman Lake Sate Park is in Oxford, New York. However, Plaintiff Johnson's footnoted link directs the reader to the New York State Parks webpage which identifies the location of Bowman Lake State Park as Oxford, New York. Dkt. No. 1-3, p. 3, n.1; Declaration of Todd M. Long, Esq., ¶12.

As for other the locations, Plaintiff Johnson does not identify the address of the Longhorn Steakhouse he intends to visit. Dkt. No. 1-3, ¶11. However, a review of the website maintained by Longhorn Steakhouse reveals two locations in Onondaga County ("County"), neither of which is in the City. *See* Exhibit 9.[5]

The same is true for the New York State Fairgrounds ("Fairgrounds").[6] Although the Fairgrounds has a Syracuse mailing address, it is not located within the City, but, upon information and belief, within the Town of Geddes. This fact is established by the attached City Zoning Map. *See* Exhibit 7. The Zoning Map depicts the relevant portion of the western edge of the City. *Id.* The City's western edge lies *east* of the Fairgrounds.[7] Also, as the name suggests, presumably the *New York State* Fairgrounds, is owned and controlled by New York State.

Accordingly, whether Plaintiff Johnson may suffer some speculative harm *while in a different jurisdiction with non-SPD police officers responding* does not warrant an injunction against Chief Cecile.

### iii.       Rosamond Gifford Zoo Is Not Owned Or Controlled By The City

As for the final location, Plaintiff Johnson assumes that the Zoo is a City-owned park because it is located within the City. However, as the Commissioner of the Department of Parks, Recreation & Youth Programs explains, "[n]ot all parks and public spaces within City limits are owned, controlled, or operated by the City." Affirmation of Commissioner Julie LaFave, ¶6. The Zoo is one such example. *Id.* at ¶7. Although the Zoo is within the confines of the City, the Commissioner believes that it is owned and controlled by the County. *Id.* at ¶8.

---

[5] All Exhibits are attached to the Declaration of Todd M. Long, Esq., dated October 13, 2022.

[6] Importantly, Plaintiff Johnson indicates that he previously did not attend the New York State Fair in late August of 2022, and he articulates no concretized plans to attend the 2023 New York State Fair (as the 2022 New York State Fair has ended).

[7] Insofar as is necessary, this Court may take judicial notice of maps. *See Davis v. City of Rochester*, 2022 WL 6885334, at *8 (W.D.N.Y. Oct. 12, 2022).

This fact is further established by publicly available County tax and ownership documents (Exhibits 1, 2) as well as a County website identifying the Zoo as a County Park (Exhibit 3). Unsurprisingly, the law enforcement officers at County Parks are County Park Rangers. *See* Exhibit 4. Notably, Plaintiff Johnson does not claim that he has observed SPD officers during any of his visits to the Zoo.

Chief Cecile is not suggesting that SPD would decline to respond to an emergency at the Zoo.[8] Nor is Chief Cecile suggesting that County Park Rangers would be wrong to arrest an individual for a CCIA violation at the Zoo. Chief Cecile is merely pointing out that the Zoo is not owned or controlled by the City. Thus, *if* someone asserts a complaint against Plaintiff Johnson while he is visiting the Zoo,[9] County Park Rangers may be the likely initial responding agency (if at all) and not SPD. The County's ownership and presence of their own specialized police force for County Parks, renders it all the more speculative that Plaintiff Johnson would suffer any harm by SPD while visiting the Zoo.

**C.     Chief Cecile's Comment That Enforcement of CCIA Will be "Complaint Driven" Does Not Establish an "Actual And Imminent" Harm**

As previously noted, it is Plaintiffs' burden to establish that "absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent." *Tolbert*, 2015 WL 7871344, at *2 (N.D.N.Y. 2015) (quoting *Faively*, 559 F.3d at 118); *see also Does 1 - 10 v. Suffolk Cnty., New York*, 2022 WL 2678876, at *3 n.2 (2d Cir. July

---

[8] With the Zoo being located within the City of Syracuse, Chief Cecile does not doubt that SPD has jurisdiction to make arrests, and would indeed respond to high priority calls or crimes in progress, but with another government entity having ownership and control of the Zoo and its own designated park police force, it decreases the likelihood of an SPD response to the Zoo as opposed to other non-County controlled properties within the City of Syracuse.  And so further pushing Plaintiff Johnson's inferences into the deep well of speculation.

[9] As discussed below, SPD's enforcement of CCIA is "complaint driven."

12, 2022). However, Plaintiff Johnson's threat of future harm by Chief Cecile is pure speculation and conjecture.

The Complaint, Plaintiff Johnson's declaration and Plaintiffs' motion for pre-trial injunctive relief, all reference the same press conference news article in support of Plaintiffs' overarching argument that Chief Cecile will cause irreparable harm. Dkt. No. 1, ¶14; Dkt. No. 1-3, ¶23; Dkt. No. 6-1, pp. 6-7. However, respectfully, Chief Cecile's comments at the press conference, as documented in the news article, fail to establish that Plaintiff Johnson faces anything beyond a "remote," "future" or "speculative" injury. *See generally,* Exhibit 6.

According to the article, "[l]aw enforcement won't be proactively enforcing the new law by trying to catch legal gun-owners in prohibited locations, Syracuse Police Chief Joseph Cecile said. 'It will be complaint-driven,' the chief said.'" Exhibit 6. Thus, to succeed on this motion against Chief Cecile, Plaintiff Johnson must plausibly allege that he intends to visit a location where someone would "complain" about his CCIA violation to SPD. However, Plaintiff Johnson has not even set forth a conclusory allegation to that effect, let alone sufficient facts on which this Court could reasonably find that a "complaint" would reach SPD.

Indeed, Plaintiff Johnson does not even allege he intends to visit a City location where he could be subject to a search. Rather, Plaintiff Johnson claimed that he previously avoided the Fairgrounds for fear that the "Bag Check Areas" and potential scanning devices would discover his concealed weapon. Dkt. No. 1-3, ¶13. Plaintiff Johnson does not assert he intends to visit the Fairgrounds before the conclusion of this lawsuit such that a preliminary injunction would be necessary. Also, again, the Fairgrounds are not within the City meaning that any "complaint" of a CCIA violation would likely be transmitted to the County Sherriff or New York State Police and

*not* to SPD. Notably, Plaintiff Johnson has not alleged that he was subject to a search on any of his visits to the Zoo, which is the *sole* identified location within the City.

Plaintiff also identified two prior incidents where his fishing license was checked by a New York State Environmental Conservation Officer. Dkt. No. 1-3, ¶24. According to Plaintiff Johnson, if, in the future, "an officer saw a bulge from my concealed firearm while [he] was retrieving my fishing license and driver's license from my wallet, [he] could be arrested charged with a felony under the state's clearly-announced 'zero tolerance' policy." *Id.* Notwithstanding the speculative nature of this allegation, Plaintiff Johnson claims that the "interactions [occurred] along the Erie Canal in Camillus," *id.*, which is a different municipality than the City. Thus, assuming *arguendo* that Plaintiff Johnson was arrested for a CCIA violation because he returned to Camillus, an Environmental Conservation Officer requested his license and "saw a bulge," that arrest could not be attributed to SPD or Chief Cecile.

Also, the likely outcome of a CCIA violation in the County is, as Plaintiff Johnson acknowledges, the seizure of his firearm and the revocation of his carry license. Exhibit 6; Dkt. No. 1-3, ¶23. Injuries for which money damages are an adequate remedy. *See supra*, Argument II.A.

In sum, Plaintiff is requesting a preliminary injunction because he *could* visit an unidentified location in the City where someone *could* notice his concealed weapon who *could* complain to SPD which *could* result in his arrest. Respectfully, this purely speculative scenario, fails to meet the very high standard for imposition of a preliminary injunction.

## III. PLAINTIFF JOHNSON CANNOT SHOW THAT HE HAS A LIKELIHOOD OF SUCCESS ON THE MERITS.

As the Court aptly laid forth in its Decision and Temporary Restraining Order, with regard to the first part of the "likelihood of success" element, this heightened standard places the burden

11

on Plaintiffs requiring "a demonstration of a 'better than fifty percent' chance of success." Dkt. No. 27, p. 8 (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *disapproved on other grounds*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, n.2 (1987)).  Moreover, a party seeking a preliminary injunction must satisfy each factor of the analysis, and where a court finds that the plaintiff is unable to clearly show a likelihood of success on their constitutional claims, the court need not consider the remaining preliminary injunction factors. *Miller v. Smith*, 2021 WL 4222981, at *10 (E.D.N.Y. Sept. 16, 2021) (internal citation omitted) (citing *Pope v. County of Albany*, 687 F3d 565, 570, n.3 (2d Cir. 2012) ("Because this appeal fails on the likelihood of success factor, we need not consider the balance of equities further."); *see, e.g. Oneida Nation*, 645 F.3d at 164 (where movant failed to satisfy its burden of establishing a likelihood of success on the merits, "there is no need to address the other prongs of the [preliminary injunction] analysis).

A.     **Plaintiff Johnson Has Failed to Allege a Cognizable Nexus with the City or Chief Cecile**

As previously stated, Plaintiff Johnson has not identified any locations in the City controlled by Chief Cecile where he intends to violate the CCIA by bringing a concealed weapon. *See supra*, Argument II. Nor do Chief Cecile's statements at the press conference establish a likeliness that Plaintiff Johnson's rights will be violated. *See supra*, Argument II. Accordingly, Plaintiff Johnson has not demonstrated any harm, imminent, irreparable, or otherwise, that would warrant success on the merits.

B.     **Plaintiff Johnson Cannot Establish That He Has Standing To Bring An Action Against Chief Cecile**

Generally, "[s]tanding is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010)). In particular, "a plaintiff must

demonstrate standing for each claim and form of relief sought." *Cacchillo*, 638 F.3d at 404

(quoting *Baur v. Veneman*, 352 F.3d 625, 642, n. 15 (2d Cir. 2003)). "Thus, in order to seek

**injunctive relief**, a plaintiff must show the three familiar elements of standing: injury in fact,

causation, and redressability." *Cacchillo*, 638 F.3d at 404 (quoting *Summers v. Earth Island Inst.*,

555 U.S. 488 (2009)) (emphasis supplied, citation omitted). Stated more specifically, to establish

constitutional standing when seeking such injunctive relief a plaintiff must allege: (1) he has

suffered an injury in fact which is "concrete and particularized" and "actual or imminent, not

conjectural or hypothetical," (2) there is "a causal connection between the injury and the conduct

complained of," and (3) it is likely "that the injury will be redressed by a favorable decision." *Does*

*1 – 10,* 2022 WL 2678876, at *2 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

A plaintiff's burden to demonstrate standing increases over the course of litigation.

*Cacchillo*, 638 F.3d at 404 (citing *Lujan*, 504 U.S. at 561). "[E]ach element [of standing] must be

supported in the same way as any other matter on which the plaintiff bears the burden of proof,

i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id*.

The plaintiff "bears the burden of showing that he has standing for each type of relief sought,"

including injunctive relief. *Does 1 - 10*, 2022 WL 2678876, at *2 (quoting *Summers*, 555 U.S. at

493). When a preliminary injunction is sought, a **plaintiff's burden to demonstrate standing**

"will normally be no less than that required on a **motion for summary judgment**.[10]" *Cacchillo*,

---

[10] As this Court has written, the standard for granting summary judgment is only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." *West v. Harkness*, 9:17-CV-0621 (GTS/DJS), 2021 WL 4289515, at *10 (N.D.N.Y. Sept. 21, 2021), reconsideration denied, 2021 WL 5321958 (N.D.N.Y. Nov. 16, 2021), and appeal withdrawn, 21-2679, 2022 WL 1224721 (2d Cir Jan. 21, 2022) (quoting Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." Id. (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law .... Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Id*. (quoting *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying

638 F.3d at 404 (emphasis supplied) (quoting *Lujan v. Nat'l Wildlife Fed'n (Lujan I)*, 497 U.S. 871, 907, n. 8 (1990)).

Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot "rest on such 'mere allegations,' [as would be appropriate at the pleading stage] but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Cacchillo*, 638 F.3d at 404 (quoting *Lujan*, 504 U.S. at 561).

With respect to pre-enforcement challenges, such as has been alleged here by Plaintiff Johnson, they are "cognizable under Article III." *Does 1 - 10*, 2022 WL 2678876, at *2 (quoting *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)). "Determining whether a plaintiff has alleged a 'credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue.'" *Id.* (quoting *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015)). To establish standing for a pre-enforcement challenge, an "allegation of future injury will be sufficient **only if** 'the threatened injury is **certainly** impending, **or** there is a **substantial risk** that the **harm will occur**.'" *Id.* (emphasis supplied) (quoting *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021)). "Fears of prosecution may not, for instance, be 'imaginary or speculative.'" *Id.* (quoting *Vance*, 802 F.3d at 384). "Further, the imminence requirement is not evident where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Id.* (internal quotations omitted); *see also Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (quoting *Cayuga Nation*, 824 F.3d at 331) (holding that "'[t]he identification of a credible

---

those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Id.* (quoting *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986)). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. *Id.* (citing Fed. R. Civ. P. 56(a), (c), (e)).

threat sufficient to satisfy the imminence requirement . . . necessarily depends on the particular circumstances at issue," and "will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that prosecution is likely, or even that a prosecution is remotely possible.'").

Finally, to show that the plaintiff "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest," the plaintiff is not required "to confess that [they] will in fact violate the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014) (citing *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 301 (1979)). However, "'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (emphasis in original); *see Frey v. Bruen*, 2022 WL 522478, at *4 (S.D.N.Y. Feb. 22, 2022) (court finding no standing at preliminary injunction stage in firearms case based on "no concrete plans to violate the New York Penal Laws" and plaintiffs' failure to allege "a credible threat of prosecution").

In *Frey v. Bruen*, the plaintiffs were licensed gun owners who sought to remove New York State restrictions on their concealed carry permits, receive a license to carry concealed in New York City, and openly carry handguns throughout the New York state. *See id.*, 2022 WL 522478, at *2-3 (S.D.N.Y. Feb. 22, 2022)). In denying their request for a preliminary injunction, the district court held that the plaintiffs lacked standing because they had not alleged an actual injury or imminent threat of prosecution. *Id.* at *5-6. The plaintiffs' claims that they "intend[ed]" to violate the limitations on their licenses was insufficient. *Id.* at *5 (citing *Lujan*, 504 U.S. at 564). The plaintiffs also failed to allege a credible threat of prosecution to themselves individually because they did not establish "any facts showing that they have been prosecuted in the past or have been

15

threatened with enforcement of any of the statutes they are challenging." *Frey*, 2022 WL 522478, at *5. **The mere existence of a law under which the plaintiffs could theoretically have been prosecuted was insufficient to grant them standing** in the absence of actual enforcement or threat of prosecution. *Id*. at *5 (emphasis supplied) (citing *Sibley v. Watches*, 501 F. Supp. 3d 210, 218 (W.D.N.Y. Nov. 16, 2020)).

The recent decision of the Second Circuit Court of Appeals in *Does 1 - 10 v. Suffolk County, New York*, is even more illustrative as to Plaintiff Johnson's lack of standing. *See id.*, 2022 WL 2678876, at *1. The plaintiffs were each purchasers of a Delta Level Defense CT4-2A firearm. *See id.*, at *1. The plaintiffs had received letters from the Suffolk County Police Department which informed them that possession of said firearm was unlawful under New York law, requested that the firearm be presented to police, and stated that they could be subject to arrest and/or prosecution for failure to comply. *Id*. The district court dismissed the plaintiffs' complaint and denied their request for a preliminary injunction for lack of standing. *Id*. at *2. In affirming the district court's dismissal, the Second Circuit held that the plaintiffs had not suffered an injury in fact because they had not been arrested or had the firearms at issue confiscated and therefore had not established that their prosecution was likely. *Id*. at *3.

Here, there is only but a mere *allegation* of a future injury as to Plaintiff Johnson within the Plaintiffs' collective Complaint, which fails to meet the standard espoused by the Supreme Court for the summary judgment standard set forth in a motion for a preliminary injunction. *See* Dkt. No. 1, ¶¶ 158-159. Plaintiff Johnson's sworn statement, his only demonstrable evidence, is bereft of any specific facts as to any actual damages suffered or risked by going to the Zoo—the only location alleged with any (barely) cognizable nexus to Chief Cecile. *See*, *generally*, Dkt. No. 1-3. Instead, Plaintiff Johnson has one paragraph devoted to his anticipatory sojourn to the Zoo

and one paragraph as to his understanding of Chief Cecile's aforementioned statement in a news article covering a press conference.  *See, generally,* Exhibit 6.  Neither of these declaratory statements pass this entry level element in the test for standing in a preliminary injunction.

In paragraph "17" of his declaration, Plaintiff asserts that "CCIA makes it a crime to possess a firearm at a zoo, and that he is going to "visit the zoo this fall as well, at least once, within the next 90 days . . . [and] . . . intend[s] to carry" his firearm there. Dkt. No. 1-3, ¶ 17. Thereafter in paragraph "20," Plaintiff Johnson avers in a speculatory fashion—based on a press conference—that Chief Cecile's mere presence[11] at a press conference discussing CCIA would lead him to conclusorily allege that "[i]n other words, the top law enforcement officials where I live have expressed a specific intent to enforce the provisions of the CCIA against violators, which might include having a firearm seized by police and a carry license revoked."  To be clear, Plaintiff Johnson does not affirm that it was any statement made by Chief Cecile to the general public that was "concrete and particularized" regarding the imminence of anyone's arrest, let alone that Plaintiff Johnson himself would actually or imminently be harmed (by arrest or other means) if he went to the Zoo with his concealed firearm.  *See* Dkt. No. 1-3, ¶ 23.

Even assuming the mere allegations pleaded in the Complaint that Plaintiff Johnson joined (but he himself did not verify), it is completely speculative for Plaintiff Johnson to assert that his injury in-fact would be from Chief Cecile solely based on Chief Cecile's statement that he "would enforce the CCIA on a 'complaint driven' basis."  Dkt. No. 1, ¶ 14.[12]  Thus, like the plaintiffs in *Frey v. Bruen*, Plaintiff Johnson has not articulated actual injury or imminent threat of prosecution causally descending from Chief Cecile.  Thus, there is a causal chasm that Plaintiff Johnson cannot

---

[11] Although in the Complaint, Plaintiffs allege appropriately that Chief Cecile did make a statement at the same press conference.

[12] This is the only paragraph in the entirety of the Complaint that Chief Cecile is individually identified.  He is not identified in any of the sections specific to Plaintiff Johnson, i.e., Dkt. No. 1, ¶¶ 149-161.

close.  Instead, Plaintiff Johnson relies on the mere existence of the CCIA and a brief generic statement by Chief Cecile to infer theoretical prosecution, which is patently insufficient.

Moreover, Plaintiff Johnson's assertion that he intends to violate the CCIA by going to the Zoo with his firearm is itself insufficient. The Second Circuit in *Does 1 - 10 v. Suffolk County* found that there was no standing for plaintiffs where the Suffolk County Police Department sent directed threats of taking action to individual firearm owners by sending letters that requested the firearm be presented to police and stating that they could be subject to arrest and/or prosecution for failure to comply.  Here, Plaintiff Johnson merely relies on his inference from the one statement from Chief Cecile that any enforcement would be "complaint driven."  Much like the plaintiffs in *Does 1 - 10 v. Suffolk County*, Plaintiff Johnson has failed to establish standing.

Thus, because Plaintiff Johnson has not established he has been threatened with certain confiscation of his firearm, revocation of his license, or prosecution pursuant to the CCIA if he goes to the Zoo with his concealed firearm. Nor has he demonstrated that the initiation of an arrest on the County-owned property will be by an SPD officer pursuant to the dictates of Chief Cecile. As such, Plaintiff Johnson does not have standing to bring this pre-enforcement action against Chief Cecile.   Simply stated, there has been no demonstrable proof offered by Plaintiff Johnson that there is an impending injury, or a substantial risk that the harm will occur, from SPD if Plaintiff Johnson goes to the Zoo with his gun. Accordingly, Plaintiff Johnson has not demonstrated a likelihood of success on the merits.

    **C.**     **Plaintiff Johnson Failed To Meet His Burden That The Rosamond Gifford Zoo Is Not *Also* A Place Owned Or Under The Control Of Local Government, For The Purpose Of Government Administration**

As the Court ruled in its Decision and Temporary Restraining Order,

> the Court need not collect in a footnote citations to the many
> historical analogues restraining the right to carry a firearm in "any

place owned or under the control of federal, state or local government, for the purpose of government administration, including courts" as stated in paragraph "2(a)" of Section 4. This is because the Supreme Court has already expressly acknowledged the permissibility of these restrictions. *See NYSRPA*, 142 S. Ct. 2133 ("[T]he historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited . . . [other than, for example, *legislative assemblies*, polling places, and courthouses].") (emphasis added); *Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on . . . laws forbidding the carrying of firearms in sensitive places such as . . . government buildings . . . ."). As a result, this provision may stand.

Dkt. No. 27, pp. 31-32. As such, New York State's regulation of the concealed carry of a firearm by a civilian in government buildings; namely "2(a)" of Section 4 of the CCIA survived this Court's initial review for TRO purposes. Thus, based on the historical analogues that have been presented to the Court so far, the Court has found "it impermissible for New York State to restrict concealed carry" at, *inter alia*, zoos "(as stated in subsection "2(d)" of the CCIA)." Dkt. No. 27, p. 43.

Notwithstanding, it is respectfully submitted that the Zoo may in fact be a location of historical analog entitled to protection as a "sensitive location."

As the Court is abundantly aware, by dispensing with a judicial "means-end test such as strict or intermediate scrutiny" in *NYSRPA v. Bruen*,[13] the remaining analysis—as this Court wrote—is reliant upon judicial reasoning by means of seeking a historical analogue to the site of the government's Second Amendment limitation or restriction:

> "[T]his historical inquiry . . . will often involve reasoning by analogy . . . ." *NYSRPA*, 142 S. Ct. at 2132. Such "analogical reasoning requires only that the government identify a well-

---

[13] Prior to *NYSPA v. Bruen*, courts have found New York's licensing regime to pass constitutional muster under the appropriate standard, namely, intermediate scrutiny. *Napolitano v. Ryder*, 2019 WL 365710, at *8 (E.D.N.Y. Jan. 30, 2019) (citing *Avitabile v. Beach*, 277 F. Supp. 3d 326, 334 (N.D.N.Y. 2017)) ("[D]istrict courts in this Circuit have continually chosen to apply 'intermediate scrutiny' to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of [weapons] in the home.").

> established and representative historical analogue, not a historical
> twin. So even if a modern-day regulation is not a dead ringer for
> historical precursors, it still may be analogous enough to pass
> constitutional muster."

Dkt. No. 27, p. 13.  The question before the Court is whether Plaintiff Johnson has established that

the Zoo falls outside of the categories of sensitive locations with historical analog to 1791.

Upon information, the Zoo's use and purpose falls under a variety of other categories that

have been well-established from *Heller* and its progeny.

First, the Zoo is owned and operated primarily by a government entity: the County. *See,*

*generally*, LaFave Decl.; *see also* Exhibits 1, 2, and 3.  Moreover, upon information and belief,

the Zoo maintains on its campus buildings with administrative offices for various staff members

all "owned or under the control of . . . local government, for the purpose of government

administration." Dkt. No. 27, p. 31 (quoting the CCIA) (citing cases).

Second, the Rosamond Gifford Zoo is also used as an educational facility, such facilities

previously recognized as a sensitive location by the Court.  In April of 2022 the Zoo opened a new

Animal Health Center at the Rosamond Gifford Zoo.[14]  "The new 20,000 square-foot facility

provides world-class health care from prenatal to geriatric, to every animal at the zoo and **expands**

**the zoo's role as a teaching hospital for Cornell University College of Veterinary Medicine's**

**zoological medicine program**."[15]  Given this, Plaintiff Johnson is unlikely to be successful on the

merits as this Court has acknowledged the historical analog in New York State to restrict concealed

carry in " 'any **building or grounds**, owned or leased, **of any educational institutions**, colleges

and universities . . .' (as contained in paragraph "2(m)" of Section 4 [of the CCIA])."  *See* Dkt. 27,

p. 36 (quoting the CCIA) (citing cases), or in any governmental administrative buildings.

---

[14] *See* https://www.rosamondgiffordzoo.org/experience/animal-health-center/.
[15] *Id.*

An additional issue that seemingly has not been addressed by the courts, is whether or not any judicial analysis exists under the historical analog process set forth in *NYSPA v. Bruen* as to the varied and mixed uses of purported sensitive locations; or a judicial constitutional analysis equivalent of a forum analysis to determine if such "hybrid" use or purpose locations can to some degree be regulated by a statutory scheme for the purposes of regulating the right to carry a concealed weapon under the Second Amendment (i.e., locations that have both portions with elements of historical analog and others not).

The Zoo—in whole or in part—constitutes either a "sensitive location" with a historical analog as a government administrative location or an educational facility.  Under either scenario, Plaintiff Johnson is unlikely to be successful on the merits.

### D.    Plaintiffs Have Not Established A Likelihood Of Success On The Merits As To Count I Of The Complaint

As previously stated, the focus of Chief Cecile's opposition is to demonstrate Plaintiffs' failure to justify the "extraordinary remedy" of a preliminary injunction against Chief Cecile or the City. Chief Cecile will not directly here address Plaintiffs' constitutional arguments because, even if compelling, a likelihood of success on the merits satisfies only one of the requirements for pre-trial injunctive relief. Chief Cecile maintains that Plaintiffs have not met the remaining requirements – particularly establishing an imminent and irreparable harm. Furthermore, the State Defendants are better positioned to argue the constitutionality of the CCIA. Nevertheless, Chief Cecile respectfully submits Plaintiffs have failed to establish a likelihood of success on the merits on Count I of the Complaint as the CCIA's provisions are constitutional.[16] *See Libertarian Party*

---

[16] Counts II and III of the Complaint assert causes of action against "All Defendants" for allegedly violating Plaintiffs' rights in the concealed carry permitting process. *See* Dkt. No. 1, ¶¶246-65. However, none of the individual Plaintiffs assert that either Chief Cecile or the City processes applications for concealed carry permits. Nor do any of the Plaintiffs claim that their concealed carry applications were somehow impeded by Chief Cecile or the City.

*of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020); *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019);

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *NYSRPA*, 213 L. Ed. 2d at 387.

## IV.   BALANCE OF EQUITIES AND PUBLIC INTEREST DISFAVOR A PRELIMINARY INJUNCTION

As with all requirements for a preliminary injunction, Plaintiffs bear the burden of demonstrating that the balance of equities and the public interest weighs in their favor. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (noting that "[w]hen the government is a party to the suit, our inquiries into the public interest and the balance of the equities merge"). However, Plaintiffs have failed to satisfy this burden as to Chief Cecile.

As previously stated, Plaintiff Johnson is the only plaintiff to assert a connection with the City. Plaintiff Johnson, however, does not claim to be a resident of the City or even a frequent visitor. Indeed, Plaintiff Johnson identifies the Zoo as the sole location in the City that he intends to visit at some point in the future. Again, the Zoo is not City owned rendering it unlikely that SPD would be involved in any alleged violation of the CCIA at the Zoo.

Respectfully, Plaintiff Johnson's lack of standing, tenuous City connection and the speculative future harm he may incur at a County-owned facility in the City are dwarfed by the City's moral imperative to protect its citizens – a moral imperative that has been impeded by ever-changing gun laws. A preliminary injunction would only add to the confusion and further hinder Chief Cecile's compelling need to protect the City's residents.

---

Accordingly, Plaintiffs have not established a nexus with the City or Chief Cecile such that this Court could find a likelihood of success on the merits as to Counts II or III.

**<u>CONCLUSION</u>**

For the reasons set forth above Defendants respectfully request this Court deny Plaintiff's

Motion for a Preliminary Injunction, in its entirety, with prejudice, and grant such other and further

relief the Court deems just and proper.


Dated: October 13, 2022                       SUSAN R. KATZOFF, ESQ.
                                              CORPORATION COUNSEL-CITY OF SYRACUSE


                               By:    */S/ Todd M. Long*_____
                                      Todd M. Long, Esq. (Bar No. 519301)
                                      Danielle R. Smith, Esq. (Bar No. 517775)
                                      *Attorneys for Defendant Chief Cecile*
                                      300 City Hall
                                      233 East Washington Street
                                      Syracuse, New York 13202
                                      Tel. No. 315-448-8400
                                      Fax No. 315-448-8381
                                      Email: tlong@syrgov.net
                                      Email: dsmith@syrgov.net