UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

IVAN ANTONYUK; COREY JOHNSON; ALFRED
TERRILLE; JOSEPH MANN; LESLIE LEMAN; and
LAWRENCE SLOANE,

                    Plaintiffs,

        -against-

KATHLEEN HOCHUL, in her Official Capacity as
Governor of the State of New York; KEVIN P. BRUEN,
in his Official Capacity as Superintendent of the New
York State Police; JUDGE MATTHEW J. DORAN, in
His Official Capacity as Licensing-Official of Onondaga
County; WILLIAM FITZPATRICK, in His Official
Capacity as the Onondaga County District Attorney;
EUGENE CONWAY, in his Official Capacity as the
Sheriff of Onondaga County; JOSEPH CECILE, in his
Official Capacity as the Chief of Police of Syracuse;
P. DAVID SOARES, in his Official Capacity as the
District Attorney of Albany County; GREGORY
OAKES, in his Official Capacity as the District Attorney
of Oswego County; DON HILTON, in his Official
Capacity as the Sheriff of Oswego County; and JOSEPH
STANZIONE, in his Official Capacity as the District
Attorney of Greene County,

                  Defendants.

Case No. 1:22-CV-0986
(GTS / CFH)

--------------------------------------------------------------------X

## STATE DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

                  LETITIA JAMES
                  Attorney General
                  State of New York
                  The Capitol
                  Albany, New York 12224-0341
                  Attorney for the State Defendants

James M. Thompson, Special Counsel, Bar Roll No. 703513
Michael G. McCartin, Special Counsel, Bar Roll No. 511158
Alexandria Twinem, Assistant Solicitor General, Bar Roll No. 703907
October 13, 2022

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................... 1

STATEMENT OF FACTS ........................................................... 2

STANDARD OF REVIEW .......................................................... 5

ARGUMENT ............................................................................ 6

I. THE STATE DEFENDANTS ARE NOT PROPER DEFENDANTS ............................... 6

   A. There Is No Standing Against Governor Hochul ............................................ 6

      1. The Eleventh Amendment Bars Suit Against Governor Hochul ........................... 6

      2. Any Alleged Injury From the Licensing Laws Is Not Fairly Traceable To Governor Hochul ..................................................... 8

      3. Absolute Legislative Immunity Bars Suit Against Governor Hochul ................... 9

   B. There Is No Standing Against Superintendent Bruen ................................... 10

   C. There Is No Standing Against Judge Doran .............................................. 12

II. PLAINTIFFS HAVE NOT ALLEGED AN INJURY-IN-FACT ................................. 13

   A. Plaintiff Sloane Lacks Standing to Challenge the CCIA's Licensing Provisions ................................................................. 13

      1. Plaintiff Sloane Lacks Standing on all of His Constitutional Challenges to the Licensing Provisions Because He Has Not Applied for a License ................. 13

      2. Plaintiff Sloane Lacks Standing to Challenge Penal Law § 400.00(1)(o)(v) ....... 16

      3. Plaintiff Sloane Lacks Standing to Bring a First Amendment Challenge to the Licensing Provisions for Chilling His Speech ............................... 16

   B. Plaintiffs Lack Standing to Challenge the CCIA's Sensitive Places or Private Property Provisions .................................................. 18

      1. Plaintiffs Lack Standing on All Challenges to the Sensitive Places or Private Property Provisions Because No One Has Been Prosecuted, Charged, or Threatened with Enforcement of the Provision ................................... 18

      2. Plaintiffs Lack Standing to Challenge the Prohibition on Carrying a Weapon in Libraries, Public Playgrounds, Public Parks, and Zoos ..................... 19

i

3.   Plaintiffs Lack Standing to Challenge the Prohibition on Carrying a Weapon to Certain Programs and Shelters Assisting People Coping with Addiction, Mental Health Issues, Domestic Violence, and Homelessness........................... 20

4.   Plaintiffs Lack Standing to Challenge the Prohibition on Carrying a Weapon onto Public Transportation, Public Transit, and Airports .................................... 21

5.   Plaintiffs Lack Standing to Challenge the Prohibition on Carrying a Weapon in Times Square ................................................................................................. 22

CONCLUSION........................................................................................................................ 23

**TABLE OF AUTHORITIES**

**CASES**

*Antonyuk v. Bruen* (*"Antonyuk I"*), No. 22-cv-734, 2022 WL 3999791 (N.D.N.Y. July 11, 2022)........................................................................................1, 4, 10, 12

*Aron v. Becker*,
48 F. Supp. 3d 347 (N.D.N.Y. 2014)........................................................................9

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003)....................................................................................14

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998)....................................................................................................9

*Brokamp v. James*,
573 F. Supp. 3d 696 (N.D.N.Y. 2021)....................................................................13

*Cayuga Nation v. Tanner*,
824 F.3d 321 (2d Cir. 2016)....................................................................................11

*Citizens Union of the City of N.Y. v. Attorney General of N.Y.*,
No. 16 Civ. 9592, 2017 WL 2984167 (S.D.N.Y. June 23, 2017).............................7

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)................................................................................................15

*Davis v. N.Y. State Bd. of Elections*,
689 F. App'x 665 (2d Cir. 2017) ............................................................................16

*Ex parte Young*,
209 U.S. 123 (1908)..................................................................................................6

*Frey v. Bruen*,
No. 21 Civ. 5334, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) .......................11, 18

*Hollingsworth v. Perry*,
570 U.S. 693 (2013)................................................................................................23

*In re Dairy Mart Convenience Stores, Inc.*,
411 F.3d 367 (2d Cir. 2005)......................................................................................6

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977)................................................................................................14

*Jackson-Bey v. Hanslmaier*,
115 F. 3d 1091 (2d Cir. 1997)..................................................................14

*Kelly v. New York State Civ. Serv. Comm'n*,
No. 14 CV 716, 2015 WL 861744 (S.D.N.Y. Jan. 26, 2015), aff'd sub nom.
*Kelly v. New York Civ. Serv. Comm'n*, 632 F. App'x 17 (2d Cir. 2016)..................................6

*Knife Rights, Inc. v. Vance*,
802 F.3d 377 (2d Cir. 2015)..................................................................18

*Laird v. Tatum*,
408 U.S. 1 (1972)........................................................................ 16-17

*Lews v. Cuomo*,
575 F. Supp. 3d 386 (W.D.N.Y. 2021)......................................................9

*Li v. Lorenzo*,
712 F. App'x 21 (2d Cir. 2017) ..............................................................6

*Libertarian Party of Erie County v. Cuomo*,
300 F. Supp. 3d 424 (W.D.N.Y. 2018)......................................................8

*Libertarian Party of Erie Cty. v. Cuomo*,
970 F.3d 106 (2d Cir. 2020)....................................................... 3, 8, 12-13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................13, 21

*Maryland Shall Issue, Inc. v. Hogan*,
971 F.3d 199 (4th Cir. 2020) ..............................................................11, 18

*Nat'l Rifle Ass'n of Am. v. Vullo*,
2022 WL 4372194 (2d Cir. 2022)..........................................................11

*NYSRPA v. Bruen*, 142 S. Ct. 2111 (2022) .........................................2-3, 15

*Oneida Indian Nation v. U.S. Dep't of the Interior*,
336 F. Supp. 3d 37 (N.D.N.Y. 2018)......................................................5

*Osterweil v. Bartlett*,
No. 09-cv-825, 2010 WL 1146268 (N.D.N.Y. Feb. 24, 2010)..................................9

*Roberson v. Cuomo*,
524 F. Supp. 3d 196 (S.D.N.Y. 2021)......................................................6-7

*Seegars v. Gonzales*,
396 F.3d 1248 (D.C. Cir. 2005)..........................................................11, 18

iv

*Seminole Tribe of Florida v. Florida*,
    517 U.S. 44 (1996).................................................................................6

*Shain v. Ellison*,
    356 F.3d 211 (2d Cir. 2004)..............................................................22

*Sibley v. Watches*,
    501 F. Supp. 3d 210 (W.D.N.Y. 2020) ...........................................8, 18

*Sibley v. Watches*,
    No. 21-1986-cv, 2022 WL 2824268 (2d Cir. July 20, 2022).................9

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)...............................................................................8

*State Emps. Bargaining Agent Coal. v. Rowland*,
    494 F.3d 71 (2d Cir. 2007)...................................................................6

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017).........................................................................5

*United Food & Commercial Workers Union, Local 919 v. Centermark Props.
    Meriden Square*,
    30 F.3d 298 (2d Cir. 1994)...................................................................5

*United States v. Decastro*,
    682 F. 3d 160 (2d Cir. 2012), cert. denied, 568 U.S. 1092 (2013) ....13-14

*Warden v. Pataki*,
    35 F. Supp. 2d 354 (S.D.N.Y. 1999), aff'd sub nom. *Chan v. Pataki*, 201 F.3d
    430 (2d Cir. 1999)............................................................................7, 9

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)...........................................................................14

## CONSTITUTIONS

N.Y. Const., art. IV, § 3 ...........................................................................7

## STATE STATUTES

N.Y. Penal Law
    § 265.00..............................................................................................10
    § 265.01-d............................................................................................3
    § 265.01-e........................................................................................3, 20
    § 400.00......................................................................................3, 16-17

**RULES**

Fed. R. Civ. P. 25(d) ................................................................................................11

**MISCELLANEOUS AUTHORITIES**

New York City MTA Day-by-day ridership numbers, available at
    https://new.mta.info/coronavirus/ridership ............................................................22

Press Release, July 1, 2022, available at https://on.ny.gov/3BM6Hz7 ...........................................2

Speaker Heastie Statement on Passage of Legislation to Protect New Yorkers
    from Gun Violence (July 1, 2022), https://bit.ly/3Q8ge80 ......................................................2

Sponsor's Mem., L2022, ch. 371,  available at https://www.nysenate.gov/
    legislation/bills/2021/S5100 ......................................................................................2

Defendants, Kathy Hochul, sued in her official capacity as Governor or the State of New York, Kevin P. Bruen, sued in his official capacity as Superintendent of the New York State Police, and the Honorable Matthew J. Doran, sued in his official capacity as a Onondaga County Court Judge and as a licensing official (hereafter, the "State Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Complaint ("Compl." ECF. No. 1) filed by Plaintiffs Ivan Antonyuk, Corey Johnson, Alfred Terrille, Joseph Mann, Leslie Leman, and Lawrence Slone (collectively, "Plaintiffs"). Because Plaintiffs lack standing to bring claims against the State Defendants, and because the Eleventh Amendment bars suit against the State Defendants, the Complaint challenging portions of the newly-enacted Concealed Carry Improvement Act ("CCIA") should be dismissed with regards to them.

## PRELIMINARY STATEMENT

As in <u>Antonyuk v. Bruen</u> ("<u>Antonyuk I</u>"), No. 22-cv-734, 2022 WL 3999791 (N.D.N.Y. July 11, 2022), Plaintiffs in this action want the Court to adjudicate the constitutionality of nearly every major aspect of the CCIA, but as in <u>Antonyuk I</u>, they have not alleged sufficient facts to support the "irreducible constitutional minimum" elements of standing that would give them a right to that ruling. Governor Hochul is protected from suit by both the Eleventh Amendment's bar on suing the State and by absolute legislative immunity. And Plaintiffs have not suffered any injury traceable to any of the three State Defendants.

Moreover, Plaintiffs cannot demonstrate that they have standing to challenge the constitutionality of the CCIA's provision as to *any* Defendant. They cannot show that any Plaintiff has applied for a firearm license and is thus subject to the CCIA's licensing provisions. Nor can they show any credible threat that any Plaintiff faces as to a future prosecution for bringing a firearm to a sensitive location or onto private property. Indeed, Plaintiffs cannot even show that

they have been harmed by many of the provisions of the CCIA because they have no intention of visiting many of the sensitive places they challenge.

The State Defendants respectfully urge the Court to take note of the fact that the CCIA is a statute of extraordinary importance to public safety, and its constitutionality deserves to be adjudicated in the context of genuine challenges brought by parties with a real stake in its specific application, not simply a generalized desire to see it struck down. The Court should therefore dismiss the Complaint for lack of standing.

## STATEMENT OF FACTS

On July 1, 2022, the CCIA was passed by the New York State Legislature in special session, then promptly signed into law by Governor Hochul. The bill was designed "to align with the Supreme Court's recent decision in []Bruen," 142 S. Ct. 2111 (2022). See Press Release, July 1, 2022, available at https://on.ny.gov/3BM6Hz7.

The New York State Legislature met in a special session to enact statutory language to comply with the dictates of the Supreme Court's Bruen decision and respect the requirements of the Second Amendment, while also addressing the ongoing gun violence crisis, which has continued to shock the nation's conscience after mass shootings at a Tops grocery store in Buffalo and an elementary school in Uvalde, Texas. See Speaker Heastie Statement on Passage of Legislation to Protect New Yorkers from Gun Violence (July 1, 2022), https://bit.ly/3Q8ge80 ("[W]e will not accept tragedies like the racist shooting in Buffalo or the school shooting in Uvalde, Texas as the cost of access to firearms."). Although many of New York's lawmakers vehemently disagreed with Bruen, New York nonetheless respected and complied with the decision and shifted its laws to stand side-by-side with the 43 "shall-issue" states whose laws were endorsed by the Bruen majority. See Sponsor's Mem., L2022, ch. 371, available at

2

http://www.nysenate.gov/legislation/bills/2021/S51001 (discussing the purpose of the statute, explaining that "[a]s a result of this decision, the State must amend the State's laws on concealed carry permits . . . . The proposed legislation changes the concealed carry permitting process and adds specific eligibility requirements").

New York clarified its requirement that concealed carry licensees must have "good moral character," which had previously been upheld by the Second Circuit on the first prong of the Heller test, see Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 126-27 (2d Cir. 2020), by defining that phrase to mean "the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others. In order to make that determination, New York's new law provided for specific elements of every application, including an in-person meeting with a licensing officer, providing four character references, providing a list of any adults living in the applicant's home and indicating whether any children live there, disclosure of any social media accounts the applicant has used in the last three years, and "such other information" as the licensing officer may require. N.Y. Penal Law § 400.00(1)(o)(i)-(v).

New York also enumerated categories of sensitive locations where guns are not permitted subject to criminal penalties, N.Y. Penal Law § 265.01-e, in keeping with "longstanding . . . laws forbidding the carrying of firearms in sensitive places," which are "presumptively lawful," Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (quoting District of Columbia v. Heller, 554 U.S. 570, 626-27 (2008)). And New York prohibited carrying a firearm onto another's private property if the carrier knows or should know that they do not have the express consent of the property owner. N.Y. Penal Law § 265.01-d.

In the prior case, filed on July 11, 2022, Plaintiff Antonyuk and several organizations challenged the CCIA in essentially the same manner that Plaintiffs challenge that new statute in this action. On August 31, 2022, this Court issued a lengthy opinion concluding that each of the plaintiffs involved lacked standing to bring their claims against the sole defendant in that case, Superintendent Bruen. See generally Antonyuk v. Bruen, No. 22 Civ. 736, 2022 WL 3999791, at *15-16 (N.D.N.Y. Aug. 31, 2022) ("Antonyuk I").

On September 20, 2022, Plaintiff Antonyuk, now joined by four other individual named plaintiffs, filed the present suit. On October 6, 2022, this Court granted Plaintiffs a TRO on several of their claims. See October 6 Opinion, ECF No. 27. In that opinion, this Court noted that there might *not* be standing as concerns Governor Hochul. Id. at 16 & n.9. Nevertheless, the Court determined that the Superintendent of the State Police was a proper Defendant to the extent that the Court explained in Antonyuk I, i.e., "due to his involvement of the enforcement of the CCIA's sensitive-location provision and restricted-location provision by state police members, and his involvement in requiring a certification of completion of 18-hours of firearm training in concealed-carry applications." October 6 Opinion at 16. Finally, the Court determined Judge Doran was a proper defendant—despite having never received, considered, or denied a license application from any Plaintiff—because he would "essentially be *required* to deny an application that omits a list of social media accounts, character references and family members," and it would thus be futile for a Plaintiff to apply. Id. at 17.

State Defendants respectfully ask the Court to reconsider the standing issues presented in this case after the more complete briefing offered here, and to grant this motion to dismiss with regards to the State Defendants. Plaintiffs lack standing against each and every State Defendant

and further have not sufficiently demonstrated standing on a host of individual claims, warranting dismissal.

## **STANDARD OF REVIEW**

"Unless a plaintiff has Article III standing, a court lacks subject matter jurisdiction to hear their claim." Oneida Indian Nation v. U.S. Dep't of the Interior, 336 F. Supp. 3d 37, 44 (N.D.N.Y. 2018) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "To establish Article III standing, a plaintiff bears the burden of establishing three 'irreducible constitutional minimum' elements." Id. (quoting Lujan, 504 U.S. at 560). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant(s), and (3) that is likely to be redressed by a favorable judicial decision." Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1651 (2017). "[W]hen there are multiple plaintiffs," as there are in this case, then at least "one plaintiff must have standing to seek each form of relief requested in the complaint." Id. The burden must be carried by the plaintiff without the Court filling in the blanks on its behalf, because "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Oneida, 336 F. Supp. 3d at 44 (quoting Shipping Fin. Servs. Corp. v. Drakos, 14 F.3d 129, 131 (2d Cir. 1998)). And "[w]here jurisdiction is lacking" because of a lack of standing, then "dismissal is mandatory." United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square, 30 F.3d 298, 301 (2d Cir. 1994).

# ARGUMENT

## I. THE STATE DEFENDANTS ARE NOT PROPER DEFENDANTS

### A.   There Is No Standing Against Governor Hochul

This Court has already indicated that Governor Hochul may not be a proper party. October 6 Opinion, at 16. That conclusion is correct for three separate reasons: first, the Eleventh Amendment bars suit against Governor Hochul because she has no particular duty to enforce the CCIA's provisions, second, Plaintiffs cannot allege any injury that is fairly traceable to Governor Hochul's conduct, and third, Governor Hochul is entitled to absolute legislative immunity for her role in enacting the CCIA. Any one of these grounds is sufficient to dismiss all claims against the Governor.

#### 1.   The Eleventh Amendment Bars Suit Against Governor Hochul

The Eleventh Amendment prohibits lawsuits against a state without that state's unambiguous consent or an act of Congress. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54-55 (1996). This immunity "includes suits against state officials in their official capacities," like Governor Hochul. Li v. Lorenzo, 712 F. App'x 21, 22 (2d Cir. 2017) (citing Davis v. New York, 316 F.3d 93, 101-02 (2d Cir. 2002)). Under the narrow exception to sovereign immunity set forth in Ex parte Young, 209 U.S. 123 (1908), a federal court may hear a suit against a state officer where the plaintiff seeks prospective relief based on an ongoing violation of federal law. State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007). But for the exception to apply, "the state officer against whom a suit is brought 'must have some connection with the enforcement of the act.'" In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372-73 (2d Cir. 2005) (quoting Young, 209 U.S. at 157). A general enforcement duty is insufficient; there must be some "particular duty" to enforce the law being challenged. Roberson v. Cuomo, 524 F. Supp. 3d 196, 223 (S.D.N.Y. 2021); see also Kelly v. New York State Civ. Serv. Comm'n, No. 14 CV 716,

2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015), aff'd sub nom. Kelly v. New York Civ. Serv. Comm'n, 632 F. App'x 17 (2d Cir. 2016).

The Eleventh Amendment bars Plaintiffs' suit against Governor Hochul. "Governor [Hochul]'s general duty to execute the laws is not sufficient to make [her] a proper party." Robertson, 524 F. Supp. 3d at 223; see also Citizens Union of the City of N.Y. v. Attorney General of N.Y., No. 16 Civ. 9592, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017) (dismissing Governor as a defendant where he only had a "general duty to 'take care that the laws are faithfully executed'" (quoting N.Y. Const., art. IV, § 3)). Indeed, "the vast majority of courts to consider the issue have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." Warden v. Pataki, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999), aff'd sub nom. Chan v. Pataki, 201 F.3d 430 (2d Cir. 1999) (collecting cases).

Plaintiffs fail to establish either that Governor Hochul is committing an ongoing violation of federal law or that she has a particular duty to enforce any of the CCIA's provisions. In fact, the Complaint acknowledges that "Governor Hochul is not the official to whom the Legislature delegated responsibility to implement the provisions of the challenged statutes." Compl. ¶ 9. Nevertheless, they attempt to establish standing by pointing to her public statements, her role in enacting the CCIA, and the fact that the State Police work for her. See id. ¶¶ 9, 62, 105, 106, 128. But none of these demonstrate that Governor Hochul has any role in enforcement of the CCIA's provisions. To the contrary, Plaintiffs seemingly recognize that Governor Hochul's statements are her expressing her *personal opinions* on the CCIA's meaning. See id. ¶¶ 9 (criticizing Governor Hochul for "certainly appear[ing] to believe she is" an authority on the CCIA's enforcement), 105 (describing the Governor as "quipp[ing]" about what she thinks the CCIA *probably* means), 128

(describing the Governor sarcastically as "apparently the preeminent authority on all things CCIA" and noting that she "opined" that applications not ruled on by September 1, 2022 would be void). Plaintiffs thus cannot overcome the Eleventh Amendment's jurisdictional bar: Because Governor Hochul has no particularized duty to enforce the law, suit against her is improper.

        2.        Any Alleged Injury From the Licensing Laws Is Not Fairly Traceable To Governor Hochul

Plaintiffs also lack standing to sue Governor Hochul because they have not alleged that they suffered any injury in fact that is fairly traceable to her. The "'case or controversy' limitation of Article III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42 (1976). In the context of firearm licensing cases, courts have repeatedly held that the proper defendant is the licensing officer who denies the plaintiff's application. See, e.g., Libertarian Party of Erie County v. Cuomo, 300 F. Supp. 3d 424, 436 (W.D.N.Y. 2018) (dismissing claims against governor and superintendent, among other defendants, for lack of standing and reasoning that the plaintiffs' injuries were "'fairly traceable' only to [the judges], because none of the other Defendants were involved with [plaintiff]'s injury"); Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 122 (2d Cir. 2020) (affirming district court's decision and finding "no error in the district court's determination that . . . the only defendants to whom [plaintiffs'] alleged injuries were fairly traceable were the judges who denied their respective applications"); Sibley v. Watches, 501 F. Supp. 3d 210, 234 (W.D.N.Y. 2020) (Governor, State Police Superintendent, and county District

Attorney);[1] Aron v. Becker, 48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014) (Governor); Osterweil v. Bartlett, No. 09-cv-825, 2010 WL 1146268, at *2 (N.D.N.Y. Feb. 24, 2010) (Governor and Attorney General).

Plaintiffs lack standing against Governor Hochul because she is not a licensing officer, and Plaintiffs fail to allege that any injury they have suffered is fairly traceable to her, or that any alleged ongoing injury could be redressed by an injunction against her. Plaintiffs' only allegations regarding Governor Hochul's involvement are her role in originally enacting the CCIA and public statements she has made about it. But they do not allege that these statements have directly injured them or are an ongoing action that could be redressed through an injunction. Nor do they allege a concrete injury arising from the Governor's role in enacting the CCIA, which is also covered by absolute immunity in any case. See infra Section I.A.3. Indeed, Plaintiffs cannot cite to any evidence indicating that Governor Hochul has directed or influenced local licensing or enforcement officers with her public statements or that she is having any hand whatsoever in how the enacted law is enforced.

3.    Absolute Legislative Immunity Bars Suit Against Governor Hochul

Governor Hochul is entitled to absolute immunity from civil liability for her role in signing a piece of legislation. Bogan v. Scott-Harris, 523 U.S. 44, 46, 54-55 (1998); Warden v. Pataki, 35 F. Supp. 2d 354, 358 (S.D.N.Y. 1999). Legislative immunity exists to allow legislators and governors "to perform their jobs without fear of personal liability and reflects a judgment that problems can best be addressed through the political process." Lews v. Cuomo, 575 F. Supp. 3d 386, 400 (W.D.N.Y. 2021); accord Bogan, 523 U.S. at 50-52. Here, Plaintiffs do not allege that

---

[1] Although the Second Circuit recently vacated a subsequent opinion in the Sibley case and remanded for further proceedings in light of Bruen, see No. 21-1986-cv, 2022 WL 2824268 (2d Cir. July 20, 2022), the dismissal of the Governor, Superintendent, and District Attorney was not affected.

Governor Hochul has enforced the CCIA against them, but rather attempt to hold Governor Hochul liable because she "pushed enactment" of the CCIA and signed it into law. Compl. ¶ 9. This is exactly what the doctrine of legislative immunity forecloses, and Governor Hochul must therefore be dismissed from this case.

B.    There Is No Standing Against Superintendent Bruen

Plaintiffs likewise have failed to demonstrate that they have standing to sue Superintendent Bruen. As an initial matter, although the Superintendent *is* a licensing officer for retired members of the Division of State Police, N.Y. Penal Law § 265.00(10), no Plaintiff alleges that they are a retired state police officer who would apply to the Superintendent for a firearm license. And Plaintiffs' other claims are not fairly traceable to Superintendent Bruen's conduct.

In Antonyuk I, the Court concluded that Superintendent Bruen may be a proper defendant for challenges to the CCIA's training requirements, prohibition on carrying guns in sensitive locations, and prohibition on carrying guns on other people's property without their consent. See 2022 WL 3999791, at *15; October 6 Opinion at 16-17. But even assuming that the Superintendent may be a proper defendant in some circumstances, Plaintiffs have failed to allege that the Superintendent is a proper defendant *in this case*. With respect to sensitive locations and private property, Plaintiffs have not alleged that any of them face a specific threat of enforcement of the CCIA's provisions by *any* law enforcement agency or municipal department, much less the State Police controlled by the Superintendent. Indeed, none of them have even alleged with particularity that they intend to take their firearms to a sensitive location or private property where the State Police would be the proper enforcement agency. Superintendent Bruen has no authority to dictate how the CCIA is enforced by municipal law enforcement departments, so Plaintiffs' lack of specific allegations is fatal to their claims.

Plaintiffs quote Deputy Superintendent Steven Nigrelli's[2] statement at a press conference announcing a general intent to enforce the CCIA, but this is insufficient to demonstrate standing. The Second Circuit has regularly cautioned that generalized statements made by government officials in the press do not necessarily constitute legally significant speech by the government itself. See, e.g., Nat'l Rifle Ass'n of Am. v. Vullo, 2022 WL 4372194, at *9-10 (2d Cir. 2022) (concluding that guidance letters did not constitute coercion of enforcement actors, but rather legitimate speech aimed at convincing others of beliefs); and even if they did, the statement would not create the required imminent threat of enforcement against any specific Plaintiff, see Maryland Shall Issue, Inc. v. Hogan, 971 F.3d 199, 218 (4th Cir. 2020) (statements that officials are ready to perform duty do not demonstrate imminent harm); Seegars v. Gonzales, 396 F.3d 1248, 1255 (D.C. Cir. 2005) (no threat of imminent prosecution even where District had said it would "prosecut[e] all violators of the statute," because "plaintiffs allege[d] no prior threats against them or any characteristics indicating an especially high probability of enforcement against them" for "engaging in specified conduct" (cleaned up)); Frey v. Bruen, No. 21 Civ. 5334, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) (no standing to bring pre-enforcement claim against Superintendent where plaintiffs have "not alleged any facts showing that they have been prosecuted in the past or have been threatened with enforcement of any of the statutes they are challenging"). This generalized public statement that the police will enforce laws is distinct from the statements at issue in Cayuga Nation v. Tanner, 824 F.3d 321, 331 (2d Cir. 2016), in which an official had announced an explicit intent to imminently enforce the law against the plaintiff in particular. Here,

---

[2] Deputy Superintendent Nigrelli will become Acting Superintendent on October 19, 2022, following Superintendent Bruen's resignation from public service, and will become the proper defendant in this case at that time. See Fed. R. Civ. P. 25(d).

there has been no specific threat of enforcement by the State Police directed at any individual Plaintiff.

Plaintiffs have also failed to demonstrate that they have standing to sue Superintendent Bruen for his role in approving the training curriculum and materials required by the CCIA, see Antonyuk I, 2022 WL 3999791, at *12 (concluding that Superintendent Bruen may be a proper defendant to such a claim), because they have not alleged any injury in fact based on the curriculum or course materials. To be sure, Plaintiff Sloane expresses in passing that he does not want to attend training about suicide prevention. PI Mem. at 31-32. But he does not assert that this requirement *alone* places an unconstitutional burden on his Second Amendment rights, and thus this sole allegation is insufficient to keep Superintendent Bruen as a defendant in this case.

C.    There Is No Standing Against Judge Doran

Plaintiffs also lack standing to seek an injunction against Judge Doran. No Plaintiff alleges that they have an injury-in-fact that is fairly traceable to Judge Doran. Plaintiffs do not allege that any Plaintiff has actually filed an application in Onondaga County that went to Judge Doran, that Judge Doran denied any Plaintiff's application, or that Judge Doran has taken any action whatsoever that has impacted any Plaintiff.  The October 6 Opinion concluded that Judge Doran "is a proper defendant because he is a relevant licensing officer," id. at 16, but he is not *any Plaintiff's* licensing officer, and would not be unless someone submitted an application to him.  In other words, while redressability might be present with respect to Judge Doran, the other two irreducible elements of standing, injury and traceability, are lacking, which requires that he be dismissed as a defendant.[3]   See Libertarian Party, 970 F.3d at 122 (affirming dismissal of

---

[3] The October 6 Opinion also asserted that the State Defendants "appeared to acknowledge during oral argument that Defendant Doran would essentially be *required* to deny an application that omits certain information."  The State Defendants made no such concession, and in fact refused to speculate as to how Judge Doran would rule.  See Oral

defendants who were not involved in considering plaintiffs' applications and concluding that "the only defendants to whom their alleged injuries were fairly traceable were the judges who *denied* their respective applications" (emphasis added)).

## II. PLAINTIFFS HAVE NOT ALLEGED AN INJURY-IN-FACT

To establish standing, Plaintiffs must have suffered an injury-in-fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560-61. In the context of a pre-enforcement challenge to a criminal statute such as the one raised in this case, to plead an injury-in-fact, a plaintiff "must allege both a concrete intention to violate the law and the credible threat of prosecution if []he were to do so." Brokamp v. James, 573 F. Supp. 3d 696, 705 (N.D.N.Y. 2021). Plaintiffs have failed to demonstrate that they have suffered a concrete, particularized injury on all of their claims, instead resorting to pure speculation.

### A. Plaintiff Sloane Lacks Standing to Challenge the CCIA's Licensing Provisions

#### 1. Plaintiff Sloane Lacks Standing on all of His Constitutional Challenges to the Licensing Provisions Because He Has Not Applied for a License

Plaintiff Sloane is the only Plaintiff who does not currently possess a carry license, and he is therefore the only Plaintiff who could ever be subject to the CCIA's licensing provisions. But Plaintiff Sloane has not alleged an injury in fact that is fairly traceable to any provision of the CCIA because he does not allege that he has submitted an application for a license or that it has been denied. That is fatal to his claim. See United States v. Decastro, 682 F. 3d 160, 164 (2d Cir. 2012) (holding that plaintiff who failed to apply for a New York gun license lacked standing to challenge the state's licensing laws), cert. denied, 568 U.S. 1092 (2013).

---

Arg. Tr. 49:5-11 ("I think it would be entirely speculative to say how Judge Doran would refer applications that no plaintiff has put in front of him . . . I think that would be an exercise in hypotheticals"). As to the October 6 opinion's suggestion that there is futility because of Defendant Conway's alleged delay in processing applications, that would do nothing to create standing as against Defendant *Judge Doran*. See Libertarian Party, 970 F.3d at 116 (standing requires "connection between the asserted injury-in-fact and the alleged actions *of the defendant*." (emphasis added)).

Indeed, Plaintiff Sloane's challenge to the constitutionality of the licensing provisions is almost entirely speculative, which is insufficient to confer standing. See Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003) ("To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" (quoting Lujan, 504 U.S. at 560)). For instance, Plaintiff Sloane alleges that if he meets with a licensing officer, provides the identities of other adults living in his home, or provides character references, the licensing officer will interrogate everyone, asking invasive questions, or will deny Plaintiff's application if anyone fails to subject themselves to expansive questioning. See Compl. ¶¶ 78-79, 223; ECF No. 1-4 ¶¶ 10-11, 15-17. But this speculation is baseless and has no relevance to determine a facial challenge. See Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008) (courts on facial challenge "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases").

While the threshold requirement that a plaintiff must first apply for a license before bringing suit may be excused "if he made a 'substantial showing' that submitting an application 'would have been futile," Decastro, 682 F.3d at 164 (quoting Jackson-Bey v. Hanslmaier, 115 F. 3d 1091, 1096 (2d Cir. 1997)), Plaintiff Sloane's allegations of futility are unavailing. The futility exception is exceedingly narrow: only where the facts on their face demonstrate that a plaintiff was categorically barred from receiving the desired benefit constitute futility. Compare Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365-66 (1977) (non-white person need not apply for job with explicit "whites only" policy), with Jackson-Bey, 115 F.3d at 1097-98 (plaintiff not excused from requirement of registering his religion before challenging prison's policies as religiously discriminatory despite marshaling some evidence suggesting that prison would not

have recognized his religion had he so registered). Plaintiff Sloane's arguments do not meet this high bar.

First, Plaintiff Sloane cannot demonstrate futility by stating that he will refuse to disclose his social media accounts on his application or provide character references and the names of adults living in his home. Contra October 6 Opinion, at 17. All of Plaintiff Sloane's alleged hypothetical future constitutional injuries occur not by *disclosure* of this information, but rather by what a licensing officer will subsequently *do* with the information—reviewing his social media posts and denying his application, interrogating his friends and family, or asking invasive questions in a lengthy interview with him. Refusing to submit the application based on a speculative fear of what *might* happen in a far-fetched scenario is exactly the kind of ploy to manufacture standing that the Supreme Court has rejected. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 402 (2013) ("[R]espondents cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."). Second, the Court concluded that it would be "futile" for Plaintiff Sloane to apply for a license because he will have to wait a year for an appointment with Defendant Conway, the Onondaga County Sheriff. October 6 Opinion, at 17. But that is not a futility argument: as the Supreme Court discussed in Bruen, a lengthy wait time to receive a firearm license may itself be a Second Amendment violation. Bruen, 142 S. Ct. at 2138 n.9. Plaintiff's remedy, then, would be to challenge the constitutionality of the current wait time and seek an injunction requiring the county to process his application expeditiously. But Plaintiff cannot use his speculative fear of another hypothetical violation as a vehicle to circumvent Article III's standing requirement and ask this Court to issue a broad ruling based on how Plaintiff believes the CCIA might hypothetically be applied to him someday.

2.     Plaintiff Sloane Lacks Standing to Challenge Penal Law § 400.00(1)(o)(v)

While Plaintiff Sloane's failure to apply for a firearm license deprives him of standing to challenge *all* of the CCIA's licensing provisions, his challenge to the provision allowing a license officer to request "such other information" as is "reasonably necessary and related to the review of the licensing application," Penal Law § 400.00(1)(o)(v), is particularly inappropriate. It is entirely speculative whether, if Plaintiff applied for a firearm license, a licensing officer would request additional information from him. As a result, he cannot demonstrate that he will *ever* be subject to this provision, let alone whether the information requested would create a burden on his rights under the Second Amendment. Thus, he has not demonstrated an injury in fact that would allow him to challenge the constitutionality of this provision.

3.     Plaintiff Sloane Lacks Standing to Bring a First Amendment Challenge to the Licensing Provisions for Chilling His Speech

Plaintiff Sloane argues that the CCIA's licensing requirements will chill his protected speech because he will not know what he can and cannot say in his private life and social media, Compl. ¶ 248, and because he will be unable to speak anonymously on the Internet, ECF No. 6-1, at 21, 24. But he lacks standing to bring such a challenge. A cognizable claim that government action has chilled protected speech requires a plaintiff to allege more than "the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual." Laird v. Tatum, 408 U.S. 1, 11 (1972). Put another way, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Id. at 13-14; accord Davis v. N.Y. State Bd. of Elections, 689 F. App'x 665, 669 (2d Cir. 2017). It is not enough that Plaintiff Sloane would rather the government not know he has social media accounts – he must

plausibly allege that his protected speech poses a realistic threat of future harm. Here, Plaintiff has not plausibly alleged that he has a reasonable fear of the State denying him his firearm license (or harming him in any other manner) based on any speech protected by the First Amendment that he has actually made or will make.

Contrary to Plaintiff's core assertion, the CCIA does not provide licensing officers with unbounded discretion to question applicants or their references, go through an applicant's non-public social media, or deny a licensing application. Plaintiff Sloane's assertion that a licensing officer could deny his application based on "[e]ntirely legitimate First Amendment speech" such as criticizing the government, see Compl. ¶¶ 250, 251; ECF No. 6-1, at 22-24, is flat wrong. To the contrary, the CCIA expressly limits licensing officers to using character references and social media information only to confirm that an individual has a proper temperament to wield a firearm and does not pose a danger to themselves or the public. See N.Y. Penal Law § 400.00(1)(o). Thus, Plaintiff Sloane's argument that he will self-censor because he does not think it's the "government's business" what he posts on social media, ECF No. 1-4, ¶ 9, fails to confer standing to raise a First Amendment chilling claim. Laird, 408 U.S. at 11-12.

And to the extent Plaintiff Sloane makes a bare assertion that he fears he could be denied a license if the licensing officer reviews social media posts about his politics, beliefs, hobbies, travel, or other benign topics, this subjective belief is unreasonable and unsupported by the statute, which falls equally short of conferring standing for a facial challenge. If such a thing were to happen in real life, Plaintiff Sloane could raise an as-applied challenge, but fearful hypotheticals are no basis to attack a law on its face.

B.   Plaintiffs Lack Standing to Challenge the CCIA's Sensitive Places or Private Property Provisions

1.   Plaintiffs Lack Standing on All Challenges to the Sensitive Places or Private Property Provisions Because No One Has Been Prosecuted, Charged, or Threatened with Enforcement of the Provision

"Although courts generally presume that the government will enforce its laws, 'the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing.'" Sibley v. Watches, 501 F. Supp. 3d 210, 222 (W.D.N.Y. 2020) (quoting Adam v. Barr, 792 F. App'x 20, 22 (2d Cir. 2019)). Rather, where plaintiffs bring a pre-enforcement challenge, they must demonstrate a credible threat of prosecution, which cannot be "imaginary or speculative." Knife Rights, Inc. v. Vance, 802 F.3d 377, 384 (2d Cir. 2015). No credible threat of prosecution exists where "plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." Id. Importantly, the threat of enforcement must be against *the specific plaintiff*, not simply an intent to enforce the statute in general.  Maryland Shall Issue, Inc., 971 F.3d at 218 (statements that officials are ready to perform duty do not demonstrate imminent harm); Seegars, 396 F.3d at 1255 (no threat of imminent prosecution even where District had said it would "prosecut[e] all violators of the statute," because "plaintiffs allege[d] no prior threats against them or any characteristics indicating an especially high probability of enforcement against them" for "engaging in specified conduct" (cleaned up)); Frey, 2022 WL 522478 (no standing to bring pre-enforcement claim against Superintendent where plaintiffs have "not alleged any facts showing that they have been prosecuted in the past or have been threatened with enforcement of any of the statutes they are challenging").

Here, Plaintiffs do not allege that they have been prosecuted, charged, or threatened with prosecution because they have brought a firearm to a sensitive location or onto private property.

They do not even allege that law enforcement in their municipalities have threatened, charged, or prosecuted *a single person* with violating the CCIA's provisions. Absent any particularized allegations that they face an imminent risk of prosecution for violations of the CCIA, Plaintiffs cannot satisfy the requirement that they demonstrate a definite, non-speculative constitutional injury attached to their continued carrying of firearms to sensitive locations or onto private property without consent of the property owner.

> 2. Plaintiffs Lack Standing to Challenge the Prohibition on Carrying a Weapon in Libraries, Public Playgrounds, Public Parks, and Zoos

Even assuming that Plaintiffs could sufficiently demonstrate an injury in fact as to *some* of the CCIA's prohibitions on carrying firearms in sensitive places, they have not demonstrated sufficient injury with respect to Penal Law § 265.01-e(2)(d). As a threshold matter, no Plaintiff has even alleged that he intends to bring a firearm to any library, and thus no Plaintiff has standing to seek an injunction of the prohibition on guns in those locations. At most, then, Plaintiffs have standing to challenge the constitutionality of the CCIA's prohibition on bringing firearms to public parks, playgrounds, and zoos. But even here, Plaintiffs have alleged only that one Plaintiff intends to bring a firearm to *one* state park (which has a playground in it), Compl. ¶ 95; ECF No. 1-10 ¶ 8, and one Plaintiff intends to bring his firearm to *one* zoo, Compl. ¶ 158; ECF No. 1-3 ¶ 17. These claims do not create standing to challenge the law as applied to any person and any public park or zoo in the State. Moreover, neither Plaintiff has alleged that either faces a threat of enforcement of the CCIA's prohibition if they carry their guns to Thatcher State Park or Rosamond Gifford Zoo, depriving them of standing. See supra Section II.B.1.

3.  Plaintiffs Lack Standing to Challenge the Prohibition on Carrying a Weapon to Certain Programs and Shelters Assisting People Coping with Addiction, Mental Health Issues, Domestic Violence, and Homelessness

No Plaintiff has alleged that they intend to bring a firearm to any of the sensitive locations prohibited by Penal Law § 265.01-e(2)(b), (g)-(*l*). Accordingly, Plaintiffs cannot demonstrate a concrete injury arising from the prohibition, and they lack standing to challenge its constitutionality.

Subsections (g) through (j) and (*l*) of the challenged statute each specifically refer to programs "licensed, regulated, certified, operated, or funded" by a specific State agency.  See, e.g. N.Y. Penal Law § 265.01-e(2)(g) ("any program licensed, regulated, certified, operated, or funded by the office for people with developmental disabilities").  However, the Complaint does not allege that any Plaintiff, including Plaintiff Mann, operates such a program, only that his church provides "counseling and assistance" to certain members of vulnerable groups and that his church has an addiction recovery ministry in which he sometimes travels to addicts' homes or invites them to church. See Compl. ¶ 93; ECF No. 1-9 ¶¶ 26, 28, 29. Similarly, Plaintiffs' purported standing regarding subsection (k) of the challenged law is based on an averment that Plaintiff Mann's church "has provided counseling and assistance" to certain groups of vulnerable people, including "to the homeless, youth, in the domestic violence and abuse setting, and others." See Compl. ¶ 96 (citing ECF No. 1-9 at 26-27).  But subsection (k) specifically focuses on residential settings, covering "homeless *shelters*, runaway homeless youth *shelters*, family *shelters*, *shelters* for adults, domestic violence *shelters*, and emergency *shelters*, and *residential* programs for victims of domestic violence."  N.Y. Penal Law § 265.01-e(2)(k) (emphasis added).  The Plaintiffs do not allege that any of them have run or are involved in such a residential program.

If there is any possible connection between Plaintiff Mann and the laws above, it would be based on a finding that any place where a pastor counsels a parishioner is a "location providing

health, behavioral health, or chemical dependence care or services." But there is no basis to believe that New York has ever or would ever apply such a strained reading of the statute, and Plaintiffs themselves seem to acknowledge this, saying that the statute would only "appear to prohibit their possession of firearms," "to the extent that the church operates in that capacity." Compl. ¶ 189 (cleaned up) (quoting ECF No. 1-9 ¶ 26); see id. ¶ 191 (making assertions "to the extent that the [provision regarding behavioral health] applies to the church"). It was the Plaintiffs' burden to make this showing, and they have not done so. See Lujan, 504 U.S. at 560-61 (injury must be "concrete and particularized," "actual or imminent, not conjectural or hypothetical.").

4.  Plaintiffs Lack Standing to Challenge the Prohibition on Carrying a Weapon onto Public Transportation, Public Transit, and Airports

Plaintiffs likewise lack standing to challenge Penal Law § 265.01-e(2)(n). No Plaintiff has alleged that he intends to take a firearm onto any form of public transit. The closest allegation to the subject occurs in Paragraph 98 of the Complaint, in which Plaintiffs object that the prohibition on guns in public transportation is "broad[] and without nuance," suggests that the ban would prohibit plaintiff Terille from "checking his firearm into his luggage at the airport," and that it would somehow prevent "Pastor Mann's church from using the church van and bus," despite the fact that the two vehicles clearly are not *public* transportation. Even Plaintiffs do not directly argue that the church bus or church van is "public transportation." The cited affidavit speaks only about how "banning firearms in 'public transportation' vehicles . . . appears as if it *might* ban possession of a firearm in our 'bus' . . . if, hypothetically, a group of men from the church met with their firearms to go on a hunting trip." ECF No. 1-9 ¶ 33. This is no basis for the Court to issue an injunction of such sweeping policy impact, potentially affecting public buses, boats, subways, and trains despite no Plaintiff alleging he will carry a firearm to such location, and endangering the

lives of the over four million riders who take New York public transportation each day. See Day-by-day ridership numbers, available at https://new.mta.info/coronavirus/ridership.

Plaintiffs' standing with regards to airports is little better. Only Plaintiff Terrille discusses airports, see Compl. ¶ 98, and his allegation is that he has been "planning" a trip to Tennessee, and "will take a trip there," but that he has not bought a ticket; instead, he "ha[s] done some research into flights . . . will continue watching prices, and will purchase a ticket in the coming weeks, for travel within the next two months. ECF No. 1-10 ¶ 9. The affidavit is bereft of any allegations that he has actually bought a ticket, or that any State Defendant (or any other defendant) has taken any enforcement action against him with regard to his hypothetical trip through the airport, or even threatened it, or even contemplated it. See id.; cf. Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) (plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" (quoting City of L.A. v. Lyons, 461 U.S. 95, 101-02 (1983)).

5. Plaintiffs Lack Standing to Challenge the Prohibition on Carrying a Weapon in Times Square

Times Square is another key example of the standing issues with Plaintiffs' complaint. No Plaintiff alleges that he has been injured by the prohibition on guns in Times Square, that he has any concrete plans to take guns into Times Square, or that there is any imminent threat that any State Defendant will enforce the ban on guns in Times Square against him. The Complaint mentions Times Square only once, when block-quoting the entire list of sensitive locations. See Compl. ¶ 28. The Court noted at oral argument that Times Square was outside the scope of the case, see Oral Arg. Tr. 47:16-17 ("We have enough issues here, I don't know if we need to drag Times Square into it."), but the October 6 Opinion nonetheless explicitly reached the question of Times Square and enjoined its protection as a sensitive location. Id. at 42-43. Such a ruling runs

contrary to the doctrine of standing, under which, "for a federal court to have authority under the constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm.  The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Article III's requirements."  <u>Hollingsworth v. Perry</u>, 570 U.S. 693, 704 (2013) (quotation omitted).

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should grant the State Defendants' motion to dismiss this action and grant such other relief as it deems just and proper.

Dated: Albany, New York
      October 13, 2022

LETITIA JAMES
Attorney General
State of New York
Attorney for Superintendent Bruen

By: _____
James M. Thompson
Special Counsel
Bar Roll No. 703513
28 Liberty Street
New York, NY 10005
(212) 416-6556
 james.thompson@ag.ny.gov

By: s/ Michael McCartin
Michael G. McCartin
Assistant Attorney General | Special Counsel
Bar Roll No. 511158
Alexandria Twinem
Assistant Solicitor General
Bar Roll No. 703907
The Capitol
Albany, New York 12224
Tel.: (518) 776-2620
Michael.McCartin@ag.ny.gov