UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IVAN ANTONYUK; COREY JOHNSON; ALFRED
TERRILLE; JOSEPH MANN; LESLIE LEMAN; and
LAWRENCE SLOANE,

                             Plaintiffs,

    -against-

KATHLEEN HOCHUL, in her Official Capacity as
Governor of the State of New York; KEVIN P. BRUEN,
in his Official Capacity as Superintendent of the New
York State Police; JUDGE MATTHEW J. DORAN, in
His Official Capacity as Licensing-Official of Onondaga
County; WILLIAM FITZPATRICK, in His Official
Capacity as the Onondaga County District Attorney;
EUGENE CONWAY, in his Official Capacity as the
Sheriff of Onondaga County; JOSEPH CECILE, in his
Official Capacity as the Chief of Police of Syracuse;
P. DAVID SOARES, in his Official Capacity as the
District Attorney of Albany County; GREGORY
OAKES, in his Official Capacity as the District Attorney
of Oswego County; DON HILTON, in his Official
Capacity as the Sheriff of Oswego County; and JOSEPH
STANZIONE, in his Official Capacity as the District
Attorney of Greene County,

                             Defendants.
------------------------------------------------------------------X

Case No. 1:22-CV-0986
(GTS / CFH)

## STATE DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

                                      LETITIA JAMES
                                      Attorney General
                                      State of New York
                                      The Capitol
                                      Albany, New York 12224-0341
                                      <u>Attorney for the State Defendants</u>

James M. Thompson, Special Counsel, Bar Roll No. 703513
Michael G. McCartin, Special Counsel, Bar Roll No. 511158
Alexandria Twinem, Assistant Solicitor General, Bar Roll No. 703907
November 10, 2022


Defendants Steven A. Nigrelli, sued in his official capacity as Acting Superintendent of the New York State Police, and the Honorable Matthew J. Doran, sued in his official capacity as an Onondaga County Court Judge and as a licensing official (hereafter, the "State Defendants")[1], respectfully submit this reply memorandum of law in support of their motion to dismiss the Complaint ("Compl." ECF. No. 1) filed by Plaintiffs Ivan Antonyuk, Corey Johnson, Alfred Terrille, Joseph Mann, Leslie Leman, and Lawrence Slone (collectively, "Plaintiffs"). Because Plaintiffs lack standing to bring claims against the State Defendants, the Complaint challenging portions of the newly-enacted Concealed Carry Improvement Act ("CCIA") should be dismissed as to them.

## ARGUMENT

### POINT I

**STATE DEFENDANTS NIGRELLI AND DORAN ARE NOT PROPER PARTIES**

Plaintiffs have not demonstrated any credible threat of enforcement of the CCIA against them by Defendant Nigrelli or the State Police, and have therefore failed to demonstrate standing to sue Acting Superintendent Nigrelli.. *See* MTD, ECF No. 50-1, at 11-12. Although they have pointed to a generalized statement that the State Police will take a "zero tolerance" policy, ECF No. 76, at 21, this is no more than a restatement of the general assumption that police enforce the law, which by itself is insufficient to confer standing, as a matter of law. *See, e.g.*, *Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019). Plaintiffs have not demonstrated that the CCIA's provisions have been enforced against them or any other individual, *see Susan B. Anthony v. Driehaus*, 573 U.S. 149, 164 (2014), nor is there any record before the Court of any specific act or threat of

---

[1] This Court has already concluded that Governor Kathy Hochul was not a proper party to this case and dismissed her in its November 7 opinion. PI Decision, ECF No. 78, at 85-87, 182.

enforcement against any specific plaintiff. *See Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016).[2]

Plaintiffs also lack standing to seek relief against Judge Doran. No injury is redressable in this Court against Judge Doran because he has not been given a licensing application by any plaintiff, and no injury is traceable against Judge Doran because he has not denied one. *See Libertarian Party of Erie Co. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020) (dismissing licensing challenge against other defendants because "the only defendants to whom [plaintiffs'] alleged injuries were fairly traceable were the judges who denied their respective applications").[3] Because Plaintiff Sloane has not filed an application with Judge Doran, he is unable to grant such application even if ordered to do so by this Court. Judge Doran was thus not a proper party to this suit at the time of its inception, and should be dismissed even if Plaintiff Sloane subsequently files an application. *See Comer v. Cisneros*, 37 F.3d 775, 791 (2d Cir. 1994) (standing is measured at the time of filing and not affected by subsequent changes to circumstances). Plaintiffs' only argument in response is that it would be futile for Plaintiff Sloane to file an application, but for the reasons outlined below, that argument fails.

In addition, in its Decision and Order dated November 7, 2022, this Court at several points attributed responsibilities to Judge Doran that have no basis in the record and thus allowed claims to proceed against Judge Doran where no one has even argued that there is any injury fairly

---

[2] The Court's recent preliminary injunction opinion found that standing was present because "five of the six Plaintiffs were members of the *specific* group of citizens (concealed-carry license holders) in New York State that was orally and visibly threatened by Defendant Nigrelli," but in addition to mischaracterizing Acting Superintendent Nigrelli's statement (which was directed to the public in general), even if true it would fall far short of establishing a specific threat of enforcement against any specific plaintiff, particularly when the Court estimated the number of persons in the group to be in the tens of thousands. *See* November 7 Opinion at 31-32 & n. 20.

[3] The Court's November 7 Opinion did not cite to or acknowledge the Second Circuit's opinion in *Libertarian Party*, but it is controlling precedent and dispositive of many of the issues in this case.

traceable to him. For instance, the November 7 opinion concluded that Judge Doran was a proper defendant as to plaintiffs' challenge to the CCIA's provision prohibiting the carrying of firearms on private property absent consent of the property owner. ECF no. 78 at 84-85. But as a licensing officer, Judge Doran has no role beyond approving or denying license applications, and there is nothing in the record before the Court connecting Judge Doran to any action enforcing the CCIA.

## POINT II

### PLAINTIFFS HAVE NOT ALLEGED AN INJURY-IN-FACT

As argued in the State Defendants' opening brief, to establish standing Plaintiffs must have suffered an injury-in-fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). They have not demonstrated such injury on a host of their claims.

1. Licensing Requirements

Plaintiff Sloane lacks standing to challenge New York's licensing requirements for several reasons. Most notably, he has not filed a licensing application, and his hypothetical theories about what could happen if he *did* file a complete application are too speculative to warrant relief. MTD at 13-15. Sloane cannot assert injuries based on being potentially denied a license, having his family interrogated, or having his social media searched because he cannot demonstrate that those things would ever happen if he did apply for a license. Plaintiffs respond by generally asserting that Sloane would have to "give up his other constitutional rights" to apply, ECF No. 76 at 16, but they do not specify how.

Plaintiff Sloane has also not alleged that the challenged provisions apply to him. First, he has alleged that he is a responsible, "law-abiding person," ECF No. 1 ¶ 7, which by definition means that he cannot challenge the CCIA's good moral character requirement because he qualifies

4

for a license under that provision's definition. ECF No. 48, at 15-16. Put another way, if Plaintiff Sloane were to file an application, there does not appear to be any basis in the record to conclude that it would be denied for lack of moral character – or any other ground. *See id.* (alleging that Plaintiff Sloane "is (aside from not having a license) eligible to possess and carry firearms in the State of New York."); *cf. Libertarian Party*, 970 F.3d at 122 (no injury-in-fact where plaintiff actually applied for and "received a license"). Second, plaintiff cannot challenge the provision requiring an applicant to provide a list of family and cohabitants because he has not indicated that providing this information *injures* him.[4] ECF No. 48, at 33. Third, plaintiff cannot challenge the social media provision because he does not allege a) that he has any anonymous account, b) that he has any social media accounts that are not private and thus could be searched by a license officer, or c) that he has made or intends to make any statements on social media that he could reasonably believe would risk the granting of his firearm license such that he might be "chilled" from making such statements. *See* MTD at 16-17; ECF No. 48, at 84 & n.26. These pleading deficiencies are fatal. In plaintiffs' response, they broadly assert that Sloane has standing to challenge the social media provision because his speech will be chilled since he will have to "guess" what speech might cause him to be denied a license and will have to produce all of his speech (ECF No. 76, at 19), but this is non-responsive to the arguments above. Simply put, Plaintiff Sloane has not demonstrated that any licensing officer *could* ever see his speech, or that

---

[4] In its November 7 opinion, this Court suggested that providing the list might somehow be a burden in itself. Plaintiff Sloane has never alleged this. *See* PI Opinion at 107. He has not suggested, for instance, that the act of writing down his immediate family members' names on a piece of paper is burdensome, alleged any basis to believe that the information would be misused, suggested that it would lead to his application being denied, or demonstrated that it poses even a *de minimis* obstacle to him.

he intends to make any speech that he would reasonably believe needs to be curbed by a provision concerned with only preventing a person who is a danger to himself or others from going armed.

Finally, Plaintiff Sloane lacks standing to challenge a catch-all provision that he cannot demonstrate will ever apply to him. MTD at 16. Plaintiff Sloane concedes that he has no non-speculative risk of being subject to this provision, but asks this Court to overlook that deficiency and issue an advisory opinion that the provision would be unconstitutional to hypothetical future applicants to whom it might be applied. ECF No. 76, at 17-18. Plaintiff Sloane has not been asked any question under this provision and has not provided any basis to believe that he will be asked any question under this provision, let alone any basis to believe that any hypothetical answer to any hypothetical question would result in a denial of his license application. *Cf. Libertarian Party*, 970 F.3d at 122 (affirming dismissal of claims because "[a]ssertions that [plaintiffs] feared their licenses would be revoked were speculative, such apprehensions being insufficiently concrete to constitute injury-in-fact.")

Plaintiffs attempt to bypass standing by arguing that it would have been futile for Sloane to submit his application. They are wrong. MTD at 14-15. First, Sloane has not alleged that if he turned in a complete application, he would be categorically barred from receiving a license. Nor has he alleged that the *very act of submitting a complete application*, without relying on subsequent, hypothetical acts of a licensing officer, would result in constitutional injury. Second, to the extent he argues that applying is futile based on the alleged length of time before he can be interviewed by Sheriff Conway, that may potentially give rise to a Second Amendment claim against the Sheriff, *see Bruen* 142 S.Ct. 2111, 2138 n.9 (2022), but it does not demonstrate futility as against any State Defendant, nor demonstrate that a proper application would not succeed once

reviewed.[5] It does not authorize him or this Court to speculate about what harm *totally unrelated provisions* of the CCIA might cause if he were ever subject to them. Nor can the Plaintiffs create their own futility through voluntary noncompliance; instead, the Second Circuit has repeatedly emphasized that "to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) (quoting *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997)).

    2.   Sensitive Places and Private Property Provisions

In its Decision and Order dated November 7, 2022, this Court concluded that plaintiffs lacked standing to challenge many of the CCIA's sensitive places provisions. The State Defendants therefore do not address those provisions here. In addition, to the extent plaintiffs lack standing on these provisions as a whole because there has been no credible threat of enforcement, defendants have addressed that argument above. *See supra* at 2-3. But plaintiffs also lack any connection to many of the specific provisions they challenge, and standing is therefore lacking.

First, Plaintiff Mann (along with the remaining plaintiffs) lacks standing to challenge the CCIA's restriction on carrying firearms to locations "providing health, behavioral health, or chemical dependance care or services." N.Y. Penal Law § 265.01-e(2)(b). In his affidavit, he states that his church has provided religious counseling to persons addicted to drugs, but that falls short of demonstrating that his church thus constitutes a location providing "chemical dependence care or services," which is intended to cover facilities at which such vulnerable individuals regularly congregate. Such a strained reading of the statute would create absurd results, rendering any place where an individual with addiction issues sought personal solace as a sensitive location. At the

---

[5] Futility is particularly inapt as to Judge Doran because there is no allegation that he has played any role in the Sheriff's alleged delay in processing applications, nor is there any suggestion in the record that Judge Doran would fail to promptly act on any application presented to him.

very least, it was *plaintiffs'* burden to demonstrate that Plaintiff Mann's church would be considered by a reasonable enforcement agent as a location providing "chemical dependence care or services," which they failed to do. *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 84-95 (2d Cir. 2014) (plaintiff bears the burden of demonstrating standing, including that injury is more than hypothetical). In its November 7 Decision and Order (at 26-27), this Court faulted the State Defendants for the parties' joint stipulation agreeing not to call witnesses to testify in person, but in doing so it improperly shifted the burden, requiring the defendants to demonstrate that Plaintiff Mann *lacked* standing, in contravention to established and controlling law. *See e.g., Marcavage v. City of N.Y.*, 689 F.3d 98, 103 (2d Cir. 2012) ("Article III . . . requires, among other things, that a plaintiff sustain the burden of establishing standing."); *see also id.* ("To obtain prospective relief, such as a declaratory judgment or injunction . . . . a plaintiff must demonstrate a 'certainly impending' future injury." (emphasis and quotation omitted)).

Second, even assuming that Plaintiff Terrille has sufficiently alleged standing with respect to the playground at Thatcher State Park (Nov. 7 Opinion at 36) and Plaintiff Johnson has sufficiently alleged standing with respect to the Rosamond Gifford Zoo (*id.* at 42), plaintiffs lack standing to challenge the CCIA's provision prohibiting the carrying of firearms into public parks, playgrounds, and zoos as it applies to *any other* parks or zoos. MTD at 19. No plaintiff has alleged that they intend to carry a firearm to any other park or zoo, and thus plaintiffs cannot demonstrate a concrete, particularized risk that they would be injured by application of this provision outside of Thatcher State Park or Rosamond Gifford Zoo. Plaintiffs argue that they "are not required to visit *every* park and *every* zoo in order to challenge the facial constitutionality of a prohibition on possessing a firearm in *any* park or *any* zoo." ECF No. 76, at 22. But that's exactly the point of standing: plaintiffs can only challenge a law that might actually harm them. Here, no plaintiff will

be harmed by application of the CCIA's prohibition to playgrounds or zoos they do not intend to visit: such a suit would serve only to vindicate their general political preferences, *not* protect them from a concrete risk of constitutional injury. If an individual ever seeks to bring their firearm to a playground or zoo elsewhere in the state, that person is free to bring suit.

      Third, plaintiffs lack standing to challenge the CCIA's provision prohibiting the carrying of firearms on "buses," contained within a provision applying to "public transit." Plaintiff Mann alleges only that his church maintains a private van for its *private* use for "church business." No reasonable interpretation of the CCIA's provision applies to such private use of a private vehicle. MTD at 21. Indeed, such a reading would violate the well-established statutory-interpretation canons of *noscitur a sociis* and *ejusdem generis*, which would require "buses," as well as other covered forms of transportation to be limited to their use as forms of public transit, to say nothing of plaintiffs' interpretation violating common sense.[6] Plaintiff Mann's affidavit does not indicate that his private church bus is publicly funded, government-operated, or provides services to the general public (rather than sometimes transporting non-church-members on church business). And plaintiffs' argument that they are required to register their bus, ECF No. 76 at 24 n.28, makes little sense, as virtually all privately-owned vehicles are required to be so registered. *See, e.g.,* N.Y. Vehicle & Traffic Law § 401(1) ("No motor vehicle shall be operated or driven upon the public highways of this state without first being registered . . ."). Because plaintiffs bear the burden of proving standing and cannot establish the "irreducible constitutional minimum" elements of injury-in-fact, traceability, and redressability, *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), their omissions are fatal.

---

[6] Indeed, the Court itself recognized that this would be an "unlikely interpretation" of the statute, Nov. 7 Opinion at 60, but nevertheless concluded Plaintiff Mann had standing because some of the types of transportation listed are sometimes owned privately.

**CONCLUSION**

For the foregoing reasons, as well as those in the State Defendants' moving papers, and upon all prior proceedings, the State Defendants respectfully request that the Court grant the instant motion, dismiss this action in its entirety, and grant such other relief as it deems just and proper.

Dated: Albany, New York
November 10, 2022

                        LETITIA JAMES
                        Attorney General
                        State of New York

By: _____
     James M. Thompson
     Special Counsel
     Bar Roll No. 703513
     28 Liberty Street
     New York, NY 10005
     (212) 416-6556
     james.thompson@ag.ny.gov

     Michael G. McCartin
     Special Counsel
     Bar Roll No. 511158
     Alexandria Twinem
     Assistant Solicitor General
     Bar Roll No. 703907
     The Capitol
     Albany, NY 12224
     Tel.: (518) 776-2620
     Michael.McCartin@ag.ny.gov
     Alexandria.Twinem@ag.ny.gov

     *Attorney for the State Defendants*