IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVAN ANTONYUK; COREY JOHNSON; ALFRED TERRILLE; JOSEPH MANN; LESLIE LEMAN; and LAWRENCE SLOANE,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN A. NIGRELLI, in his Official Capacity as Superintendent of the New York State Police; JUDGE MATTHEW J. DORAN, in his Official Capacity as Licensing-Official of Onondaga County; WILLIAM FITZPATRICK, in his Official Capacity as the Onondaga County District Attorney; EUGENE CONWAY, in his Official Capacity as the Sheriff of Onondaga County; JOSEPH CECILE, in his Official Capacity as the Chief of Police of Syracuse; P. DAVID SOARES, in his Official Capacity as the District Attorney of Albany County; ANTHONY J. DIMARTINO, JR., in his Official Capacity as the District Attorney of Oswego County; DON HILTON, in his Official Capacity as the Sheriff of Oswego County; and JOSEPH STANZIONE, in his Official Capacity as the District Attorney of Greene County,<br><br>Defendants. | **DECLARATION OF J.J. PELLIGRA IN SUPPORT OF RULE 12(c) MOTION TO DISMISS**<br><br>Civil Action No. 1:22-CV-986 (GTS/ PJE) |

     J.J. PELLIGRA declares the following under the penalty of perjury under the laws of the United States of America:

     1.    I am an associate with Barclay Damon LLP, attorneys for Defendants Anthony J. DiMartino, Jr., in his Official Capacity as the District Attorney of Oswego County, and Defendant Don Hilton, in his Official Capacity as the Sheriff of Oswego County (collectively the "Oswego Defendants") in this action. I respectfully submit this Declaration in support of the Oswego

Defendants' motion for an Order granting dismissal of the claims and relief requested in the Complaint by Plaintiff Joseph Mann in their entirety with prejudice as against Oswego Defendants pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

2.      I am fully familiar with the facts and information in this Declaration through my role as counsel for the Oswego Defendants in connection with this matter.

3.      On July 11, 2022, Plaintiffs Ivan Antonyuk; Gun Owners of America, Inc.; Gun Owners Foundation; and Gun Owners of America New York, Inc. filed a complaint against Defendant Kevin P. Bruen, in his Official Capacity as Superintendent of the New York State Police, concerning a challenge to the Concealed Carry Improvement Act ("CCIA"). *See Antonyuk et al. v. Bruen et al*, 22-CV-0734 (N.D.N.Y. Aug. 31, 2022) ("*Antonyuk I*") at Doc. No. 1.

4.      Generally, in their Complaint, the plaintiffs in *Antonyuk I* asserted four claims against Defendant Bruen: (a) a claim for violating the Second Amendment; (b) a claim for violating the Second Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983 ("Section 1983"); (c) a claim for violating the First Amendment; and (d) a claim for violating the First Amendment, Fourteenth Amendment, and Section 1983. *See id*.

5.      Each of these claims challenged one or more of the following seven aspects of the CCIA: (a) its definition of "good moral character;" (b) its allegedly onerous requirement of an in-person interview by the licensing officer; (c) its allegedly onerous requirement that the applicant disclose a list of his or her current and past social media accounts for the past three years; (d) its allegedly onerous requirement of at least four "character references" who can attest to the applicant's "good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others;" (e) its allegedly onerous requirement of a minimum of 16-hours of in-person

training (plus a minimum of two hours of live-fire training) and accompanying fees; (f) its expansive list of "sensitive locations;" and (g) its expansive definition of restricted locations." *See id.*

6. On July 20, 2022, in *Antonyuk I,* the plaintiffs filed a motion for a temporary restraining order and preliminary injunction to prevent enforcement of the CCIA before it went into effect. *See Antunyok I* at Doc. No. 9.

7. On August 15, 2022, Defendant Bruen filed his response in opposition to the motion. *See Antonyuk 1* at Doc. No. 19.

8. On August 22, 2022, the plaintiffs in *Antonyuk I* filed their reply in further support of the motion. *See Antonyuk I* at Doc. No. 40.

9. On August 23, 2022, in *Antonyuk I*, the Court held a hearing on the motion at which it received evidence and heard oral argument. *See Antonyuk I* at Doc. No. 46.

10. On August 31, 2022, the Hon. Glenn T. Suddaby issued his Decision and Order on the motion for a temporary restraining order and preliminary injunction in *Antonyuk I*, which *sua sponte* dismissed the plaintiffs' complaint in its entirety without prejudice for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3) and denied the motion without prejudice as moot because (among other reasons) the plaintiffs lacked standing. *See Antonyuk I* at Doc. No. 48 ("Decision I").

11. Thereafter, on September 20, 2022, Plaintiffs Ivan Antonyuk; Corey Johnson; Alfred Terrille, Joseph Mann; Leslie Leman; and Lawrence Sloane (collectively "Plaintiffs") filed a second complaint (the "Complaint") against Defendants Kathleen Hochul, in her Official Capacity as Governor of the State of New York; Kevin P. Bruen, in his Official Capacity as Superintendent of the New York State Police; Judge Matthew J. Doran, in his Official Capacity as

3

Licensing-Official of Onondaga County; William Fitzpatrick, in his Official Capacity as the Onondaga County District Attorney; Eugene Conway, in his Official Capacity as the Sheriff of Onondaga County; Joseph Cecile, in his Official Capacity as the Chief of Police of Syracuse; P. David Soares, in his Official Capacity as the District Attorney of Albany County; Anthony J. DiMartino, Jr., in his Official Capacity as the District Attorney of Oswego County; Don Hilton, in his Official Capacity as the Sheriff of Oswego County; and Joseph Stanzione, in his Official Capacity as the District Attorney of Greene County (collectively "Defendants"), in which Plaintiffs assert the same claims as in *Antonyuk I* but with five new plaintiffs and against nine additional defendants. *See* Doc. No. 1.

12. Similar to *Antonyuk I*, in their Complaint, Plaintiffs generally assert three claims against Defendants: (1) a claim for violating the Second Amendment (as applied to the states through the Fourteenth Amendment), pursuant to 42 U.S.C. § 1983; (2) a claim for violating the First Amendment pursuant to 42 U.S.C. § 1983; and (3) a claim for violating the Fifth Amendment pursuant to 42 U.S.C. § 1983. *See Id*.

13. Each of these claims challenge one or more of the following nine aspects in the revised law: (a) its definition of "good moral character"; (b) its requirement that the applicant disclose a list of his or her "former and current social media accounts . . . from the past three years to confirm the information regarding applicant's character and conduct as required [above]"; (c) its requirement that the applicant list the names and contact information of family members and cohabitants; (d) its requirement that the applicant list at least four "character references" who can attest to the applicant's "good moral character"; (e) its requirement that the applicant provide "such other information required by the licensing officer"; (f) its requirement that the applicant attend an in-person interview by the licensing officer; (g) its requirement that the applicant receive a

minimum of 16-hours of in-person firearm training and two-hours of "live-fire" firearm training, at his or her own expense (which they estimate to be "around $400"); (h) its definition of "sensitive locations"; and (i) its definition of "restricted locations." *See id.*

14. More specifically with respect to the Oswego Defendants, Plaintiff Joseph Mann, who is a resident of Oswego County, challenges the CCIA's prohibition of his firearm possession in the above mentioned "sensitive locations." *See* Doc. Nos. 1, 9.

15. Plaintiff Mann alleges that, as a pastor, he frequently carries a concealed firearm in his church, the Fellowship Baptist Church in Parish, New York, "during the course of [his] employment . . . to provide security and protection to the congregation" because his parish is a "small church" and "unable to afford to pay for [separate] private security." *See id.* Plaintiff Mann alleges that he intends to continue doing so notwithstanding the CCIA's prohibition on carrying firearms in "sensitive locations," and, therefore, will be in violation of the allegedly unconstitutional law. *See id*. In the Complaint and in his Declaration, Plaintiff Mann also states that he lives in a parsonage that is part of the same building as the sanctuary, and, therefore, the CCIA unlawfully bans his carrying of a concealed weapon in his home. *See id.* Finally, along these same lines, Plaintiff Mann alleges generally that he and his church's security team will be in violation of other portions of the CCIA's "sensitive locations" ban as a result of certain services that his church allegedly provides to its congregation, including "counseling and assistance" to the homeless, youth groups, those in domestic violence and abuse settings, and those struggling with drug addictions; nursery, summer camp, and educational services to children; and transportation services "for church business travel." *See id.*[1]

---

[1] The Oswego Defendants note, that although Plaintiff Mann alleges that his church provides for these other services, they do not change the church from a "place of worship or religious observation" to another type of "sensitive location" under the CCIA. The church is plainly a "place of worship and religious observation," and like any other church, it provides its congregation and

16. Also, similar to *Antonyuk I*, on September 22, 2022, Plaintiffs filed an emergency motion for a temporary restraining order and preliminary injunction pursuant to Fed. R. Civ. P. 65 against Defendants to prevent enforcement of the CCIA. *See* Doc. No. 6.

17. On September 28, 2022, Defendants submitted their briefs in opposition to Plaintiffs' motion for a temporary restraining order. *See* Doc. Nos. 17-18.

18. On September 29, 2022, the Court conducted oral argument on Plaintiffs' motion for a temporary restraining order, and at the end of oral argument, the Court reserved decision and stated that it would follow at a later date. *See* Doc. No. 23.

19. On October 6, 2022, Judge Suddaby issued his Decision and Order regarding Plaintiffs' second attempt for a temporary restraining order concerning the CCIA but, in this Decision and Order, Judge Suddaby determined that the Plaintiffs had standing, and granted Plaintiffs' motion in part and denied it in part pending a hearing and ruling on Plaintiffs' motion for a preliminary injunction. *See* Doc. No. 27.

20. On October 13, 2022, Defendants submitted their briefs in opposition to Plaintiffs' motion for a preliminary injunction. *See* Doc. Nos. 45-49.

21. On October 22, 2022, Plaintiffs submitted their reply papers in further support of their motion for a preliminary injunction. *See* Doc. Nos. 68-69.

22. On October 25, 2022, the Court conducted oral argument on Plaintiffs' motion for a preliminary injunction, and at the end of oral argument, the Court reserved decision and stated that it would follow at a later date. *See* Doc. No. 72.

---

employees with other services related to that religious observation, and does not separately become another type of "sensitive location" under the CCIA such as a health or chemical dependence center, school, homeless shelter, public transportation, or performance venue.  In fact, like most congregations, Plaintiff Mann acknowledges that the church merely provides initial assistance to individuals struggling with these issues "in order to counsel them *to seek help and voluntarily enter treatment*" centers elsewhere.  *See* Doc. No. 9 at ¶ 28 (emphasis added).

6

23. On November 7, 2022, Judge Suddaby issued his Decision and Order, which mirrored his prior Decision and Order granting Plaintiffs' motion for a temporary restraining order, by determining that Plaintiffs had standing, and granting their motion in part and denying it in part for those same reasons. *See* Doc. No. 78 ("Decision II"); *cf.* Doc. No. 27.

24. More specifically, the court held that Plaintiff Sloane had standing to challenge the CCIA's licensing requirements, *see* Doc. No. 78 at 261; that each Plaintiff had standing to challenge the restricted-locations provision, *id*. at 293–94; and that at least one Plaintiff had standing to challenge the following sensitive-location provisions: (1) any location providing behavioral health or chemical dependence care or services; (2) any place of worship; (3) public playgrounds, public parks, and zoos; (4) nursery schools and preschools; (5) buses and airports; (6) any place that is licensed for on-premise alcohol consumption; (7) theaters, conference centers, and banquet halls; and (8) any gathering of individuals to collectively express their constitutional rights to protest or assemble, *see id*. at 266–67, 269–72, 275, 282–83, 285, 288, 291–92.

25. Second, the court held that the CCIA violated the Second Amendment by conditioning the issuance of a license on an applicant's good moral character and disclosure of a list of the applicant's current spouse and all adult cohabitants, a list of all former and current social media accounts from the preceding three years, and such other information as the licensing officer may require. The court declined, however, to enjoin the requirements that an applicant attend an in-person meeting, provide four character references, and undergo firearms training. *See id*. at 305-16.

26. Third, the court enjoined the sensitive-locations provisions as applied to each place that any Plaintiff had standing to challenge except for polling places, public areas restricted from

general public access for a limited time by a governmental entity, public playgrounds, nursery schools, and preschools. *See id*. at 288, 327–28, 349.

27.   Fourth, the court enjoined the restricted-locations provision in its entirety on First Amendment compelled-speech and Second Amendment grounds. *See id*. at 340–47, 78–85.

28.   Fifth, and for purposes of this motion, Judge Suddaby took Plaintiff Mann "at his word" that he intends to carry a concealed firearm while working in the Fellowship Baptist Church and, therefore, determined that he had asserted a sufficiently concrete and imminent intent to violate the CCIA's prohibition, and a substantial likelihood of success on the merits, with respect to the following "sensitive locations" – (a) "any place of worship or religious observation;" (b) "any location providing health, behavioral health, or chemical dependence care services;" (c) "nursery schools, preschools, and summer camps;" (d) "any place, conveyance, or vehicle used for public transportation or public transit;" (e) "banquet halls;"[2] and (f) "any gathering of individuals to collectively express their constitutional rights to protest or assemble." Therefore, Judge Suddaby found that Plaintiff Mann had standing and showed a substantial likelihood of success on the merits with respect to these sensitive locations. *See id.* at 25-33, 47-50, 57-63, 68-80.

29.   However, Judge Suddaby determined that Plaintiff Mann lacked standing to challenge the CCIA's prohibition with respect to (a) "the location of any location of any program . . . that provides services to children, youth, . . . [and] any legally exempt childcare provider;" (b) "the location of any program . . . regulated, . . . operated, or funded by [the] office of addiction services and supports; (c) "homeless shelters, . . . family shelters, . . . domestic violence shelters,

---

[2] The Oswego Defendants note that, here, Judge Suddaby found that Plaintiff Mann lacked standing to challenge the CCIA's prohibition in "any place used for the performance, art entertainment, gaming, or sporting events," with the exception of "banquet halls" only. *See* Doc. No. 78 at 68-74; *cf.* N.Y. Penal L. § 265.01-e(2)(p).

31554183.1

and emergency shelters;" (d) "any building or grounds . . . of any educational institutions, colleges . . . , school districts . . . , [or] private schools;" and (e) "any place used for the performance, art entertainment, gaming, or sporting events" (see Footnote 2 above). *See id.* at 45-47, 50, 55-57, 68-74.

30. In sum, the District Court enjoined the CCIA's: (1) licensing requirements that (a) an applicant have good moral character and (b) disclose to a licensing officer (i) a list of the applicant's current spouse and all adult cohabitants, (ii) a list of all former and current social media accounts from the preceding three years, and (iii) such other information as the officer may require; (2) sensitive-locations provisions concerning (a) locations providing behavioral health or chemical dependence care or services; (b) places of worship; (c) public parks and zoos; (d) buses and airports; (e) places that are licensed for on-premise alcohol consumption; (f) theaters, conference centers, and banquet halls; and (g) gatherings of individuals to collectively express their constitutional rights to protest or assemble; and (3) restricted-locations provision. *See* Doc. No. 78.

31. Defendants Hochul, Bruen, Doran, and Cecile timely filed Notices of Appeal to the Second Circuit concerning Decision II, challenging each aspect of the injunction except for the portion concerning the CCIA's application to buses and airports. *See* Doc. Nos. 28, 31, 80, 87.

32. No Plaintiff cross-appealed or otherwise challenged any aspect of the District Court's Decision II.

33. Around this time, as a result of other similar actions within the Circuit that were dismissed for lack of subject matter jurisdiction, and prior to the District Court's issuance of its Decision II on Plaintiffs' motion for a preliminary injunction, on October 13, 2022, the Oswego Defendants filed a Rule 12(b)(1) pre-answer motion to dismiss the claims and relief sought in the

Complaint by Plaintiff Mann as against the Oswego Defendants in their entirety for lack of subject-matter jurisdiction based on those analogous cases. *See* Doc. No. 46.

34. However, on November 17, 2022, the District Court denied the Oswego Defendants' motion for those same reasons it determined that Plaintiff Mann had standing in Decision II. *See* Doc. No. 85.

35. On November 30, 2022, the parties jointly requested a stay of the District Court proceedings pending the aforementioned appeal, and the Court granted same on December 1, 2022. *See* Doc. Nos. 90-92.

36. Further, on December 7, 2022, the Second Circuit granted Defendants-Appellants Hochul, Bruen, Doran, and Cecile a stay of Judge Suddaby's Decision and Order that granted Plaintiffs' motion for a preliminary injunction (in part) pending their appeal. *See Antonyuk et al v. Hochul et al,* Case No. 22-2972 at Doc. No. 36; *see also* Doc. No. 97.

37. While the Second Circuit appeal was being briefed and argued, on May 3, 2023, the CCIA was amended to narrow its provisions applicable to places of worship, which took immediate effect. In particular, "places of religious observation" is no longer covered, and persons "responsible for security" at places of worship are now exempt from the place-of-worship prohibition. *See* N.Y. Penal Law § 265.01-e.

38. On December 8, 2023, the Second Circuit issued a consolidated Opinion on this case and three related cases (*Hardaway v. Chiumento*, 22-2933, *Christian v. Chiumento*, 22-2987, and *Spencer v. Chiumento*, 22-3237). *See Antonyuk et al v. Hochul et al,* Case No. 22-2972 at Doc. No. 320; *see also* Doc. No. 123.

39. In that consolidated Opinion, the Second Circuit vacated the District Court's injunction in its entirety, except with respect to N.Y. Penal L. § 400.00(1)(o)(iv) (social media

disclosure) and N.Y. Penal L. § 265.01-d (restricted locations) as applied to private property held open to the general public. *See id.*

40. The Second Circuit vacated the injunction almost in its entirety, and specifically with respect to Plaintiff Mann's claims, because it found that the parties lacked Article III standing to challenge the CCIA and that the challenged laws did not violate the Constitution on their face. *See id.* at 261.

41. Plaintiffs then petitioned the Supreme Court for certiorari raising two primary issues: (1) whether, when conducting *Bruen's* history and tradition analysis for Second Amendment challenges, courts must rely exclusively on historical evidence from the Founding; and (2) whether the Second Circuit's vacatur of the injunction of the CCIA's "good moral character" requirement contravened the *Bruen* framework. *See Petition for Writ of Certiorari, Antonyuk,* 144 S. Ct. 2709 (2024) (No. 23-910).

42. On June 21, 2024, the Supreme Court decided *United States v. Rahimi*, 602 U.S. 680, 144 S. Ct. 1889 (2024), upholding the facial constitutionality of 18 U.S.C. § 922(g)(8), which criminalizes the possession of firearms by certain individuals subject to a domestic violence restraining order.

43. *Rahimi* expressly declined to reach the first issue raised in Plaintiffs' petition for certiorari. *See Rahimi*, 144 S. Ct. at 1898 n.1.

44. As for the second issue raised in Plaintiffs' petition, *Rahimi* added to the relevant body of precedent to consider when analyzing Second Amendment challenges. *See generally id.*

45. As a result, the Supreme Court granted certiorari to Plaintiffs, summarily vacating the Second Circuit's Opinion and Judgment in this case, and remanded it to the Second Circuit for

11

further consideration in light of *Rahimi*. *See Petition for Writ of Certiorari, Antonyuk,* 144 S. Ct. 2709 (2024) (No. 23-910).

46. On October 24, 2024, the Second Circuit issued an Amended Opinion on this case in consideration of the Supreme Court's Decision in *Rahimi*, in which it came to the same conclusion as its original Opinion, and for the same reasons, by vacating the injunction in its entirety, except with respect for N.Y. Penal L. § 400.00(1)(o)(iv) (social media disclosure) and N.Y. Penal L. § 265.01-d (restricted locations) as applied to private property held open to the general public (again) because Plaintiffs lacked Article III standing to challenge the CCIA or because the challenged laws did not violate the Constitution on their face. *Antonyuk et al v. Hochul et al,* Case No. 22-2972 at Doc. No. 450-1.

47. As for Plaintiff Mann's claims against the Oswego Defendants, the Second Circuit determined that he lacked standing for all challenges to the CCIA, except for "locations providing health, behavioral health, or chemical dependence care services," but was skeptical with respect to this claim. *See id.* ("Mann's allegations suffice under this *forgiving standard*. Paragraph (2)(b) is intentionally broad: rather than applying only to locations providing treatment, as the State would have it, the law refers to 'care or services.' The RU Recovery program may not provide 'chemical dependence care,' but addiction counseling is at least arguably a 'chemical dependence service.' Since Mann has alleged an intention to violate the law by carrying a gun at a location that (*arguably*) 'provid[es] . . . chemical depend[e]nce . . . services' . . he has standing to seek an injunction[.]")

48. Regardless, the Second Circuit determined that this claim failed on the merits, and that Plaintiff Mann failed to show a likelihood of success on the merits. *See id.*

49. On January 27, 2025, Plaintiffs petitioned the Supreme Court for certiorari for a second time raising similar questions as their initial petition; however, this petition was denied in its entirety on April 4, 2025. *See Petition for Writ of Certiorari, Antonyuk,* 221 L.Ed.2d 646 (2025) (No. 24-795).

50. Accordingly, the parties jointly requested lifting the stay of the District Court case and continue with proceedings on April 29, 2025. *See* Doc. Nos. 136-37.

51. Based on the findings and determinations reached in the Second Circuit's Amended Opinion, dated October 24, 2024, which held that Plaintiff Mann lacks standing and that the CCIA does not violate his constitutional rights, and for those reasons argued more fully in the Oswego Defendants' accompanying Memorandum of Law, dated June 30, 2025, Plaintiff Joseph Mann's claims and relief sought in the Complaint should be dismissed in their entirety pursuant to Fed. R. Civ. P. 12(c).

WHEREFORE, it is respectfully requested that the Court grant the Oswego Defendants' motion to dismiss claims and relief requested by Plaintiff Joseph Mann in the Complaint as against the Oswego Defendants in their entirety, together with such other and further relief as the Court deems just and proper.

DATED: June 30, 2025

                                                 J.J. Pelligra, Esq.
                                                 (Bar Roll No. 701404)