# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

IVAN ANTONYUK; COREY JOHNSON;
ALFRED TERRILLE; JOSEPH MANN;
LESLIE LEMAN; and LAWRENCE SLOANE,

        Plaintiffs,

    v.

STEVEN A. NIGRELLI, in his Official Capacity
as Superintendent of the New York State Police;
JUDGE MATTHEW J. DORAN, in his Official
Capacity as Licensing-Official of Onondaga
County; WILLIAM FITZPATRICK, in his
Official Capacity as the Onondaga County
District Attorney; EUGENE CONWAY, in his
Official Capacity as the Sheriff of Onondaga
County; JOSEPH CECILE, in his Official
Capacity as the Chief of Police of Syracuse; P.
DAVID SOARES, in his Official Capacity as the
District Attorney of Albany County; ANTHONY
J. DIMARTINO, JR., in his Official Capacity as
the District Attorney of Oswego County; DON
HILTON, in his Official Capacity as the Sheriff
of Oswego County; and JOSEPH STANZIONE,
in his Official Capacity as the District Attorney
of Greene County,

        Defendants.

Civil Action No. 1:22-CV-986 (GTS/ PJE)

## MEMORANDUM OF LAW IN SUPPORT OF
## RULE 12(c) MOTION TO DISMISS

**BARCLAY DAMON LLP**
J.J. Pelligra
Edward G. Melvin, II
*Attorneys for the Oswego Defendants*
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 425-2700

31610337.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 7

LEGAL STANDARD ............................................................................................................ 7

I.    RULE 12(c) MOTION TO DISMISS. ...................................................................... 7

ARGUMENT ......................................................................................................................... 8

I.    PLAINTIFF MANN LACKS STANDING TO CHALLENGE ANY PORTION OF THE CCIA's RESTRICTION ON FIREARM POSSESSION IN "SENSITIVE LOCATIONS." ..................................................................................................... 8

  a.    Legal requirement of standing. ........................................................................ 8

  b.    Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession in "places of worship" as a result of its amendment on May 3, 2023. ............... 11

  c.    Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession in "theaters, conference centers, and banquet halls" because the Fellowship Baptist Church is not a "banquet hall." ........................................ 13

  d.    Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at First Amendment gatherings because worship services and religious assemblies do not fall within the legislature's intended definition of § 265.01-e(2)(s). ....... 15

  e.    Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at "any place, conveyance, or vehicle used for public transportation or public transit" because his church van or bus services are meant only for the private use of its church employees. ............................................................................ 18

  f.    Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at "any location providing health, behavioral health, or chemical dependence care services" because the Fellowship Baptist Church does not fall within the legislature's intended definition of § 265.01-e(2)(b). ........................................ 20

  g.    Plaintiff Mann lacks standing to challenge the CCIA's restrictions on firearm possession in any "sensitive location" because his intended carriage is lawful under the newly amended version of the CCIA. ................................................ 23

CONCLUSION ..................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*& Pistol Association, Inc. v. Bruen,*
   597 U.S. 1 (2022) ............................................................................. 5, 17

*Antonyuk et al. v. Bruen et al,*
   22-CV-0734 (N.D.N.Y. Aug. 31, 2022) ..................................................... *passim*

*Antonyuk v. Bruen,*
   624 F. Supp. 3d 210 (N.D.N.Y. 2022) ....................................................... 9, 10

*Antonyuk, et al. v. James, et al.,*
   120 F.4th 941 (2d Cir. October 24, 2024) ................................................. *passim*

*Arriaga v. Mukasey,*
   521 F.3d 219 (2d Cir. 2008) ...................................................................... 23

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................. 8

*Bank of N.Y. v. First Millennium, Inc.,*
   607 F.3d 905 (2d Cir. 2010) ...................................................................... 8

*Cayuga Nation v. Tanner,*
   824 F.3d 321 (2d Cir. 2016) ...................................................................... 9

*Chavez v. Occidental Chem. Corp.,*
   933 F.3d 186 (2d Cir 2019) ...................................................................... 7

*Davis v. FEC,*
   554 U.S. 724 (2008) ................................................................................ 11

*De Jonge v. Oregon,*
   299 U.S. 353 (1937) ................................................................................ 16

*Does 1-10 v. Suffolk Cty.,*
   2022 U.S. App. LEXIS 19094 (2d Cir. July 12, 2022) .............................. 10, 12

*Exxon Mobil Corp. v. Healey,*
   28 F.4th 383 (2d Cir. 2022) ................................................................ 12, 24

*Frey v. Bruen,*
   2022 U.S. Dist. LEXIS 31053 (S.D.N.Y. Feb. 22, 2022) ............................... 10

*Knife Rights, Inc. v. Vance,*
   802 F.3d 377 (2d Cir. 2015) ............................................................. 9, 10, 22

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................................. 8, 10

ii

*Manning v. Barr*,
   954 F.3d 477 (2d Cir. 2020) ................................................................................. 18, 21, 23

*Nielsen v. Rabin*,
   746 F.3d 58 (2d Cir. 2014) ................................................................................................. 8

*Picard v. Magliano*,
   42 F.4th 89 (2d Cir. 2022) .................................................................................. 10, 14, 19

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ..................................................................................................... 9, 15

*Tann v. Bennett*,
   807 F.3d 51 (2d Cir. 2015) ......................................................................................... 12, 24

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*,
   389 U.S. 217 (1967) .......................................................................................................... 17

*United States v. Rahimi*,
   602 U.S. 680 (2024) ............................................................................................................ 6

*Vitagliano v. County of Westchester*,
   71 F.4th 130 (2d Cir. 2023) ............................................................................................. 10

*Wang v. Bethlehem Cent. Sch. Dist.*,
   2022 U.S. Dist. LEXIS 140153 (N.D.N.Y. Aug. 8, 2022) ............................................... 11

**Statutes**

18 U.S.C. § 922(g)(8) ............................................................................................................. 6

42 U.S.C. § 1983 .................................................................................................................. 1, 3

CCIA .............................................................................................................................. *passim*

Concealed Carry Improvement Act ........................................................................................ 1

2023 N.Y. Laws, Ch. 55, pt. F, § 4 ...................................................................................... 11

N.Y. Penal L. § 265.01-d ................................................................................................... 5, 6

N.Y. Penal L. § 265.01-e ........................................................................................... 6, 15, 16

N.Y. Penal L. § 265.01-e(2) ....................................................................................16, 21, 22, 24

N.Y. Penal L. § 265.01-e(2)(b) ................................................................................... 6, 20, 22

N.Y. Penal L. § 265.01-e(2)(c) ........................................................................... 11, 12, 23, 24

N.Y. Penal L. § 265.01-e(2)(n) ................................................................................... 18, 19, 20

N.Y. Penal L. § 265.01-e(2)(p) ................................................................................... 4, 13, 14

iii

N.Y. Penal L. § 265.01-e's ................................................................................................ 9

N.Y. Penal L. § 400.00(1)(o)(iv) ................................................................................ 5, 6

**Other Authorities**

First Amendment ............................................................................................. 15, 16, 17

Second Amendment ............................................................................................... 5

Fourteenth Amendment ............................................................................................ 1

First, Second, Fifth, and Fourteenth Amendments ...................................................... 3

*Banquet,* Merriam-Webster.com Dictionary, available at https://www.merriam-
   webster.com/dictionary/banquet ............................................................................ 14

Cambridge Dictionary, available at
   https://dictionary.cambridge.org/us/dictionary/english/public-transport ................. 19

Fed. R. Civ. P. 65 .................................................................................................... 4

Federal Rules of Civil Procedure Rule 12(c) .......................................................... 1, 7

*Hall, Oxford English Dictionary,* available at https://doi.org/10.1093/OED/6129098993 ....................... 14

https://perma.cc/G846-QK8V] .................................................................................. 14

https://perma.cc/H3WV-LKBZ] ................................................................................. 14

Merriam-Webster.com Dictionary, available at https://www.merriam-
   webster.com/dictionary/center .............................................................................. 21

Merriam-Webster.com Dictionary, available at https://www.merriam-
   webster.com/dictionary/church .............................................................................. 21

Merriam-Webster.com Dictionary, available at https://www.merriam-
   webster.com/dictionary/health%20care ................................................................. 21

Merriam-Webster.com Dictionary, available at https://www.merriam-
   webster.com/dictionary/public%20transportation; .................................................. 19

Nos. 27, 78. Pursuant to Decision II ......................................................................... 4

Rule 12(b)(6) ........................................................................................................... 8

U.S. CONST. art. III § 2, cl. 1 .................................................................................... 8

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Defendants Anthony J. DiMartino, Jr., in his Official Capacity as the District Attorney of Oswego County, and Defendant Don Hilton, in his Official Capacity as the Sheriff of Oswego County (collectively, the "Oswego Defendants") in support of their motion brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "Rule"), to dismiss the claims and requested relief of Plaintiff Joseph Mann in the Complaint in their entirety.

As the Court is well aware, this lawsuit is the second pre-enforcement challenge to the Concealed Carry Improvement Act ("CCIA") made by Plaintiff Ivan Antonyuk. On July 11, 2022, Plaintiffs Ivan Antonyuk, Gun Owners of America, Inc., Gun Owners Foundation, and Gun Owners of America New York, Inc. filed a complaint against Defendant Kevin P. Bruen, in his Official Capacity as Superintendent of the New York State Police, which challenged the constitutionality of the CCIA. *See Antonyuk et al. v. Bruen et al*, 22-CV-0734 (N.D.N.Y. Aug. 31, 2022) ("*Antonyuk I*"). In *Antonyuk I,* the plaintiffs asserted four constitutional claims under the First, Second, and Fourteenth Amendment, and 42 U.S.C. § 1983, which disputed various aspects of the CCIA. *See id.* at Doc. No. 1. However, on August 31, 2022, on a motion for a temporary restraining order and preliminary injunction, the Hon. Glenn T. Suddaby *sua sponte* dismissed *Antonyuk I* in its entirety without prejudice because, among other reasons, Plaintiff Antonyuk lacked standing. *See id.* at Doc. No. 48 ("Decision I").

In coming to this conclusion, Judge Suddaby held that, "[t]o establish Article III standing, a plaintiff must [first] show an injury-in-fact." *See* Decision I at 33 (citations and internal marks omitted). Further, "[w]here, as here, plaintiffs challenge a law not yet in effect, . . . a plaintiff may satisfy the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a

1

credible threat of prosecution." *See id.* at 34 (citations and internal marks omitted). Moreover, Judge Suddaby held that, to show that the plaintiff "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest, [the] plaintiff [is] not required to confess that they will in fact violate the law . . . [, h]owever, some day intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do[es] not support a finding of the actual or imminent injury that our cases require." *See id.* (citations and internal marks omitted). Finally, Judge Suddaby held that, "the identification of a credible threat sufficient to satisfy the imminence requirement . . . will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that prosecution is likely, or even that a prosecution is remotely possible . . .[, and it] cannot rest on fears that are imaginary or speculative." *See id.* at 35 (citations and internal marks omitted).

Thereafter, on September 20, 2022, Plaintiffs Ivan Antonyuk, Corey Johnson, Alfred Terrille, Joseph Mann, Leslie Leman, and Lawrence Sloane (collectively, "Plaintiffs") filed a second complaint (the "Complaint") against Defendants: Kathleen Hochul, in her Official Capacity as Governor of the State of New York; Kevin P. Bruen, in his Official Capacity as Superintendent of the New York State Police; Judge Matthew J. Doran, in his Official Capacity as Licensing-Official of Onondaga County; William Fitzpatrick, in his Official Capacity as the Onondaga County District Attorney; Eugene Conway, in his Official Capacity as the Sheriff of Onondaga County; Joseph Cecile, in his Official Capacity as the Chief of Police of Syracuse; P. David Soares, in his Official Capacity as the District Attorney of Albany County; Anthony J. DiMartino, Jr., in his Official Capacity as the District Attorney of Oswego County; Don Hilton, in his Official Capacity as the Sheriff of Oswego County; and Joseph Stanzione, in his Official Capacity as the District Attorney of Greene County (collectively, "Defendants"), in which

Plaintiffs assert similar claims as in *Antonyuk I* but with five new plaintiffs and against nine additional defendants. *See* Doc. No. 1.

In their second Complaint, Plaintiffs generally assert three constitutional claims against Defendants under the First, Second, Fifth, and Fourteenth Amendments, and 42 U.S.C. § 1983, all of which challenge nine different aspects of the CCIA. *See id.* More specifically, with respect to the Oswego Defendants, Plaintiff Joseph Mann, who is a resident of Oswego County, alleges that, as a pastor, he frequently carries a concealed firearm in his church, the Fellowship Baptist Church in Parish, New York, "during the course of [his] employment . . . to provide security and protection to the congregation" because his parish is a "small church" and "unable to afford to pay for [separate] private security." *See* Doc. Nos. 1, 9. Plaintiff Mann alleges that he intends to continue doing so notwithstanding the CCIA's prohibition on carrying firearms in "sensitive locations," and, thus, will be in violation of the allegedly unconstitutional law. *See id.* In his Declaration, Plaintiff Mann further states that he lives in a parsonage that is part of the same building as the sanctuary, and, therefore, the CCIA unlawfully prohibits his carrying of a concealed weapon in his home. *See* Doc. No. 9. Additionally, along these same lines, Plaintiff Mann alleges generally that he and his church's security team will be in violation of other portions of the CCIA's "sensitive locations" ban as a result of certain services that his church provides to its congregation, including: "counseling and assistance" to the homeless, youth groups, those in domestic violence and abuse settings, and those struggling with drug addictions; nursery, summer camp, and educational services to children; and transportation services to employees and members of his congregation "for church business travel." *See id.*

After commencing this second lawsuit, and similar to *Antonyuk I*, on September 22, 2022, Plaintiffs filed an emergency motion for a temporary restraining order and preliminary injunction

pursuant to Fed. R. Civ. P. 65 against Defendants to prevent enforcement of the CCIA.  *See* Doc. No. 6.  On November 7, 2022, Judge Suddaby issued his Decision and Order  regarding Plaintiffs' motion for a preliminary injunction ("Decision II") but, this time, granted the motion in part.  *See* Doc. Nos. 27, 78.  Pursuant to Decision II, and in contrast to his prior holdings in Decision I, Judge Suddaby determined that, "Plaintiffs have sufficiently shown that they each have standing and that each Defendant is a proper party for the reasons stated in their Complaint, declarations, motion papers, and oral argument."  *See id.*

In Decision II, Judge Suddaby took Plaintiff Mann "at his word" that he intends to carry a concealed firearm while working in the Fellowship Baptist Church, and determined that Plaintiff Mann had asserted a sufficiently concrete and imminent intent to violate the CCIA's prohibition with respect to the following "sensitive locations:" (a) "any place of worship or religious observation;" (b) "any location providing health, behavioral health, or chemical dependence care services;" (c) "nursery schools, preschools, and summer camps;" (d) "any place, conveyance, or vehicle used for public transportation or public transit;" (e) "banquet halls;"[1] and (f) "any gathering of individuals to collectively express their constitutional rights to protest or assemble."  *See* Doc. No. 78.  However, Judge Suddaby found that Plaintiff Mann lacked standing to challenge the CCIA's prohibition with respect to: (a) "the location of any location of any program . . . that provides services to children, youth, . . . [and] any legally exempt childcare provider;" (b) "the location of any program . . . regulated, . . . operated, or funded by [the] office of addiction services and supports; (c) "homeless shelters, . . . family shelters, . . . domestic violence shelters, and emergency shelters;" (d) "any building or grounds . . . of any educational institutions, colleges . .

---

[1] Judge Suddaby determined that Plaintiff Mann had standing to challenge the CCIA's prohibition under Section 265.01-e(2)(p) only with respect to "banquet halls," and not "place[s] used for the performance, art entertainment, gaming, or sporting events."  *See* Doc. No. 78 at 68-74; *cf.* N.Y. Penal L. § 265.01-e(2)(p).

. , school districts . . . , [or] private schools;" and (e) "any place used for the performance, art entertainment, gaming, or sporting events" (see Footnote 2 above). *See generally id.* Further, Judge Suddaby also determined that Plaintiff Mann failed to establish a substantial likelihood of success on the merits with respect to "nursery schools, preschools, and summer camps" because "the Supreme Court ha[d] already recognized the permissibility of this restriction." *See generally id.* [2]

Subsequently, Defendants Hochul, Bruen, Doran, and Cecile filed Notices of Appeal to the Second Circuit concerning Decision II. *See* Doc. Nos. 28, 31, 80, 87. On December 8, 2023, the Second Circuit issued its consolidated Opinion on Defendants' Appeal, which vacated the District Court's injunction in its entirety, except with respect to N.Y. Penal L. § 400.00(1)(o)(iv) (social media disclosure) and N.Y. Penal L. § 265.01-d (restricted locations) as applied to private property held open to the general public because "no plaintiff had Article III standing to challenge the laws, or that the challenged laws do not violate the Constitution on their face." *See generally* Doc. No. 107.

Plaintiffs then petitioned the Supreme Court for certiorari raising two primary issues: (1) whether, when conducting a history and tradition analysis for Second Amendment challenges under *New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1 (2022) ("*Bruen*"), courts must rely exclusively on historical evidence from the Founding; and (2) whether the Second Circuit's vacatur of the injunction of the CCIA's "good moral character" requirement contravened the *Bruen* framework. *See Petition for Writ of Certiorari, Antonyuk,* 144 S. Ct. 2709 (2024) (No. 23-910). Ultimately, the Supreme Court granted certiorari to Plaintiffs, summarily vacating the

---

[2] Because Judge Suddaby has already determined that Plaintiff Mann lacks standing or failed to establish a substantial likelihood of success with respect to many of his claims and relief sought, and these issues were not appealed by Plaintiffs, they are not addressed again herein, and the Court should dismiss them in their entirety for those same reasons.

Second Circuit's Opinion and Judgment in this case, and remanded it to the Second Circuit for further consideration in light of its recent decision in *United States v. Rahimi*, 602 U.S. 680 (2024) ("*Rahimi*"), which upheld the facial constitutionality of 18 U.S.C. § 922(g)(8), a law that criminalizes the possession of firearms by certain individuals subject to a domestic violence restraining order. *See Petition for Writ of Certiorari, Antonyuk,* 2024 U.S. LEXIS 2929 (2024) (No. 23-910).

On October 24, 2024, the Second Circuit issued an Amended Opinion ("Amended Opinion") on this case in consideration of the Supreme Court's Decision in *Rahimi*, which came to the same conclusion as its original Opinion by affirming the injunction only with respect to N.Y. Penal L. § 400.00(1)(o)(iv) (social media disclosure) and N.Y. Penal L. § 265.01-d (restricted locations) as applied to private property held open to the general public, but otherwise vacating it in its entirety. *See generally* Doc. No. 123; *Antonyuk, et al. v. James, et al.,* 120 F.4th 941 (No. 22-2908) (2d Cir. October 24, 2024) ("Amended Opinion"). Again, the Second Circuit came to this conclusion because Plaintiffs lacked Article III standing to challenge the CCIA and because the challenged laws did not violate the Constitution on their face. *See id.* In both its original and Amended Opinion, the Second Circuit determined that Plaintiff Mann lacked standing to challenge any sections of the CCIA except for Section 265.01-e(2)(b) concerning "location[s] providing health, behavioral health, or chemical dep[e]ndance care or services." *See generally id.* The Second Circuit ultimately held that Plaintiff Mann's challenge to Section 265.01-e(2)(b) failed on the merits under the *Bruen* (as modified in *Rahimi*). *See id.*

Moreover, on May 3, 2023 the CCIA was amended to narrow its provisions applicable to places of worship and public parks, and those amendments took immediate effect. *See* N.Y. Penal L. § 265.01-e. Previously, the CCIA criminalized possession of a firearm in "any place of worship

or religious observation." However, under the amended CCIA, places of "religious observation" are no longer considered "sensitive locations," and the provision created an exception for "those persons responsible for security at such place of worship." In the Amended Opinion, the Second Circuit reviewed the amended statute and determined that the CCIA no longer prohibits Plaintiff Mann from doing precisely what he seeks to do as he can now "freely designate himself and the church security team as 'persons responsible for security' . . . and thereby except them from the scope of the CCIA's criminal prohibition." *See* Amended Opinion at 158-59. Accordingly, Plaintiff "Mann's challenge to the place of worship provision is moot." *See id*.

As a result of the amended CCIA, and for those reasons that the Second Circuit determined that Plaintiff Mann lacked standing, the Oswego Defendants move again to dismiss the claims and relief sought by Plaintiff Mann in the Complaint as against the Oswego Defendants in their entirety.

## STATEMENT OF FACTS

Because this is a motion to dismiss pursuant to Rule 12(c), the operative statement of facts are the facts alleged in Plaintiffs' Complaint. *See* Doc. No. 1 ("Complaint"). In addition, the Oswego Defendants refer the Court to the Declaration of J.J. Pelligra, dated June 30, 2025, for a full recitation of the procedural history relevant to the present motion.

## LEGAL STANDARD

### I.    RULE 12(C) MOTION TO DISMISS.

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *See* Fed. R. Civ. P. 12(c); *see also Chavez v. Occidental Chem. Corp*., 933 F.3d 186, 195 (2d Cir 2019). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion

7

to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).

On a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, the Court is not required to credit legal conclusions, bare assertions or conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain enough factual matter to state a claim to relief that is plausible on its face. *Id*. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Consequently, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. at 680 (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

## I.     PLAINTIFF MANN LACKS STANDING TO CHALLENGE ANY PORTION OF THE CCIA'S RESTRICTION ON FIREARM POSSESSION IN "SENSITIVE LOCATIONS."

### a.     Legal requirement of standing.

Article III courts have power to decide only "cases" or "controversies."  U.S. CONST. art. III § 2, cl. 1.  The requirement that a claimant have "standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "'The doctrine of standing gives meaning to these constitutional limits,' by requiring a plaintiff to 'allege such a personal stake in the outcome of the controversy as to warrant

his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Knife Rights, Inc. v. Vance,* 802 F.3d 377, 383 (2d Cir. 2015) (alteration adopted) (quoting *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157 (2014); *Warth v. Seldin,* 422 U.S. 490, 498–99 (1975)).

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Antonyuk v. Bruen,* 624 F. Supp. 3d 210, 234 (N.D.N.Y. 2022) (internal marks omitted) (quoting *Susan B. Anthony List,* 573 U.S. at 157-58 (quoting *Lujan,* 504 U.S. at 560))). "The injury-in-fact requirement helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *Id.* (internal marks omitted) (quoting *Susan B. Anthony List,* 573 U.S. at 158 (quoting *Warth,* 422 U.S. at 498)). "Accordingly, [a]n injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or 'hypothetical.'" *Id.* (quoting *Susan B. Anthony List,* 573 U.S. at 158 (quoting *Lujan,* 504 U.S. at 560)) (internal marks omitted).

As stated in the Second Circuit's Amended Opinion, Plaintiff Mann has not been arrested or prosecuted under N.Y. Penal L. § 265.01-e's restriction on the carriage of firearms in "sensitive locations." *See* Amended Opinion at 133-34. However, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List,* 573 U.S. at 158. Pre-enforcement challenges are "cognizable under Article III." *Cayuga Nation v. Tanner,* 824 F.3d 321, 331 (2d Cir. 2016). A plaintiff has Article III standing to bring a pre-enforcement challenge to a criminal statute if he or she can "demonstrate: (1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is 'proscribed by' the challenged law; and (3) that 'there exists a credible threat of prosecution

thereunder.'" *Vitagliano v. County of Westchester,* 71 F.4th 130, 136 (2d Cir. 2023) (quoting *Driehaus,* 573 U.S. at 159).

However, judicial "precedent permits pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Antonyuk,* 624 F. Supp. 3d at 234 (quoting *Susan B. Anthony List,* 573 U.S. at 159).  Determining whether a plaintiff has alleged a "credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue." *Knife Rights, Inc.*, 802 F.3d at 384.  To establish standing for a pre-enforcement challenge, an "allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Does 1-10 v. Suffolk Cty.*, 2022 U.S. App. LEXIS 19094, *7 (2d Cir. July 12, 2022) (quoting *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (quoting *Susan B. Anthony List*, 573 U.S. at 158))).  Fears of prosecution may not, for instance, be "imaginary or speculative." *Id.* (quotations omitted).  Further, the imminence requirement is not "evident where plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" *Id.* (citations omitted); *see also Picard v. Magliano,* 42 F.4th 89, 98 (2d Cir. 2022) (quoting *Cayuga Nation,* 824 F.3d at 331) (holding that "'[t]he identification of a credible threat sufficient to satisfy the imminence requirement . . . necessarily depends on the particular circumstances at issue," and "will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that prosecution is likely, or even that a prosecution is remotely possible.'").  "'[S]ome day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564; *see Frey*

*v. Bruen*, 2022 U.S. Dist. LEXIS 31053, at *5 (S.D.N.Y. Feb. 22, 2022); *Antonyuk,* 2022 U.S. Dist. LEXIS 157874 at *45-46.

Lastly, "[s]tanding is not dispensed in gross.  Rather, [each] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal marks omitted) (quoting *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000))); *see also Wang v. Bethlehem Cent. Sch. Dist*., 2022 U.S. Dist. LEXIS 140153, at *4 (N.D.N.Y. Aug. 8, 2022) (Kahn, S.J.) ("[S]tanding is not dispensed in gross, and, accordingly, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.").

Therefore, Plaintiff Mann must demonstrate standing for each claim he is pursuing, which he has failed to do.

> **b.**    **Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession in "places of worship" as a result of its amendment on May 3, 2023.**

Plaintiff Mann alleges that, as pastor, he frequently carries a concealed firearm in his church, the Fellowship Baptist Church in Parish, New York, "during the course of [his] employment . . . to provide security and protection to the congregation" because his parish is a "small church" and "unable to afford to pay for [separate] private security," and that he intends to continue doing so notwithstanding the CCIA's prohibition on carrying firearms in places of worship.  *See* Doc. No. 9 at ¶¶ 9-11.  However, since the filing of the Complaint, the CCIA was amended on May 3, 2023 to allow Plaintiff Mann to do precisely what he seeks to do, and this amendment took immediate effect.  *See* § 265.01-e(2)(c).

Previously, the CCIA criminalized possession of a firearm in "any place of worship or religious observation." 2023 N.Y. Laws, Ch. 55, pt. F, § 4. However, as discussed in the Second

11

Circuit's Amended Opinion, the New York legislature amended this paragraph on May 3, 2023 to remove "places of religious observation," and to provide an exception for "those persons responsible for security at such places of worship." *See* § 265.01-e(2)(c). Section 265.01-e(2)(c) of the CCIA now criminalizes possession of a firearm only in "place[s] of worship, except for those persons responsible for security at such place of worship." N.Y. Penal L. § 265.01-e(2)(c). As a result of this amendment, Plaintiff Mann can now freely designate himself and his church security team as "persons responsible for security," and thereby exempt themselves from the scope of the CCIA's criminal prohibition, and lawfully carry firearms at the Fellowship Baptist Church. *See id.*

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Tann v. Bennett,* 807 F.3d 51, 52 (2d Cir. 2015) (internal quotation marks omitted). It remains live if "a court can fashion some form of meaningful relief to award the complaining party." *Exxon Mobil Corp. v. Healey,* 28 F.4th 383, 392 (2d Cir. 2022) (internal quotation marks omitted). Here, the issues presented by Plaintiff Mann are no longer live and there is no meaningful relief that the Court can award due to the amendments of the CCIA. *See id.* The "threatened injury" asserted by Plaintiff Mann is no longer "certainly impending" nor is "there a substantial risk that the harm will occur" as he can freely carry his concealed firearm at his church (and at his home) for security purposes. Accordingly, the Court must dismiss his claim in its entirety. *See Does 1-10*, 2022 U.S. App. LEXIS 19094, at *7 (quoting *Dorce,* 2 F.4th at 95) (quoting *Susan B. Anthony List*, 573 U.S. at 158))).

      **c.     Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession in "theaters, conference centers, and banquet halls" because the Fellowship Baptist Church is not a "banquet hall."**

In Decision II, the District Court determined that Plaintiff Mann lacked standing to challenge this paragraph of the CCIA except with respect to "banquet halls." *See* Doc. No. 78. Judge Suddaby held that the Court "has trouble finding that the pews of Plaintiff Mann's Fellowship Baptist Church in Parish, New York, constitute a 'performance venue' or 'concert' venue under paragraph (2)(p) of Section 4 of the CCIA when the Church is 'play[ing] music before, during, and after worship services,' because, in addition to appearing to be relatively brief, the performances appear to be part of the worship services[.]  As a result, as currently described by Plaintiff Mann, his church does not appear to constitute a 'performance venue' or 'concert' venue." *See id.*  Plaintiffs never appealed this determination and there is no need to reargue it here.

As for "banquet halls," Plaintiff Mann asserts that his church "additionally has a banquet hall as [parishioners] often break bread together." *See* Doc. No. 9.  The District Court accepted this characterization and found that, given his stated intention to carry a gun at the church, Plaintiff Mann had established injury-in-fact due to this "banquet hall" function.   *See* Doc. No. 78. However, the Second Circuit disagreed in its Amended Opinion, stating that "a church is not even arguably a 'banquet hall'" within the meaning of § 265.01-e(2)(p) simply because the people "break bread together" there, and, therefore, Plaintiff Mann lacks standing. *See* Amended Opinion at 212-13.

In coming to this determination, the Second Circuit held that Plaintiffs' interpretation of "banquet hall" does not comport with its ordinary meaning. *See id.* (citing *Manning v. Barr,* 954 F.3d 477, 482 (2d Cir. 2020) (holding that "words will be interpreted as taking their ordinary, contemporary, common meaning." (quoting *Arriaga v. Mukasey,* 521 F.3d 219, 225 (2d Cir. 2008)))).  Just as "banquet" is not a synonym for "meal," a "banquet hall" is not *any* place people

eat together.  *See Banquet,* Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/banquet [https://perma.cc/H3WV-LKBZ] ("a sumptuous feast, especially an elaborate and often ceremonious meal for numerous people often in honor of a person; a meal held in recognition of some occasion or achievement"); *cf. Hall, Oxford English Dictionary,* available at https://doi.org/10.1093/OED/6129098993 [https://perma.cc/G846-QK8V] ("[a] large room or building for the transaction of public business . . . or any public assemblies, meetings, or entertainments," or in this case, banquets).  Instead, the phrase ordinarily refers more specifically to a commercial space made available for special events: weddings, reunions, fundraisers, etc. *See* Amended Opinion at 213.  Plaintiffs' expansive definition of "banquet hall" would include a cafe, picnic tables in the park, or the dining room of a private residence.  *See id.*

Further, the Second Circuit held that this understanding is confirmed by an examination of the company the phrase keeps.  *See* Amended Opinion at 214 (citing *Homaidan v. Sallie Mae, Inc.,* 3 F.4th 595, 604 (2d Cir. 2021) ("[*Noscitur a sociis*] counsels that a word is given more precise content by the neighboring words with which it is associated." (quoting *Freeman v. Quicken Loans, Inc.,* 566 U.S. 624, 634–35 (2012)))).  As used in paragraph (2)(p), "banquet hall" is only an example of a "place used for the performance, art entertainment . . . , gaming, or sporting events."  A church – even one hosting collective bread-breaking – is not such a place.  The other listed examples immediately preceding "banquet halls" in § 265.01-e(2)(p), such as theaters, stadiums, concerts, amusement parks, and racetracks, further confirm this clear definition of the term. Therefore, "the legislature could hardly have intended for 'banquet hall' to cover all sites of group meals, including churches."  *See* Amended Opinion at 214.

Plaintiff Mann's proffered interpretation of this paragraph is not "reasonable enough" that he "may legitimately fear that [he] will face enforcement of the statute."  *See Picard,* 42 F.4th at

98 (quotation omitted).  Consequently, Plaintiff Mann has not alleged an intention to engage in conduct that is "arguably proscribed by the law" he challenges, and has failed to establish an injury-in-fact with respect to the CCIA's application to banquet halls specifically.  As a result, the Court should dismiss this claim.  *See Susan B. Anthony List,* 573 U.S. at 162.

> ### d.  Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at First Amendment gatherings because worship services and religious assemblies do not fall within the legislature's intended definition of § 265.01-e(2)(s).

In Decision II, the District Court found that Plaintiff Mann had standing to challenge this portion of the CCIA because it determined that paragraph (2)(s)'s prohibition with respect to First Amendment gatherings applied to Sunday worship at his church ("expressive religious assemblies").  *See* Decision II at 163; *cf.* Amended Opinion at 224.  The District Court found that, since Plaintiff Mann intends to carry a gun during worship services, he had alleged a credible threat of prosecution for violating paragraph (2)(s). *See id*  However, and similar to its analysis described in the previous section above, the Second Circuit determined in its Amended Opinion that, "as a matter of statutory interpretation, neither a worship service, nor other 'express religious assemblies' are even arguably covered by paragraph (2)(s)" and, therefore, Plaintiff Mann lacks standing to challenge this portion of the CCIA.  *See* Amended Opinion at 224.

In coming to this conclusion, the Second Circuit held that this inquiry depends on the provision's purpose, which is that "guns are banned only when people gather to collectively express their constitutional rights to protest or assemble."  *See id*.  Therefore, the Second Circuit found that it would be unreasonable to interpret this text to include every gathering or even every "expressive gathering" as "that would render wholly superfluous" other provisions of § 265.01-e, which "would be swallowed by paragraph (2)(s)."  *See id.; cf.* Section I(c) above.  For example, the CCIA's restrictions over "places of worship," "theaters," "performance venues," "exhibits,"

conference centers," and "banquet halls" could all be categorized as "expressive gatherings," and wholly defeating their individual purposes. *See id.; see also* N.Y. Penal L. § 265.01-e(2). The Second Circuit stated that the "CCIA may be broad, but [it] will not read it to be redundant," which would be the case if Plaintiff Mann's interpretation of paragraph (2)(s) were to include church services. *See id.; cf.* Section I(c) above.

The Second Circuit also determined that paragraph (2)(s)'s placement within § 265.01-e further confirmed that it was aimed at protests and other demonstrations rather than at an undifferentiated category of gatherings that would include worship services. *See id.* The Second Circuit recognized that, within § 265.01-e(2), related sensitive locations tend to be grouped together – for example, "childcare and other youth programs appear back-to-back with nursery schools, preschools, and summer camps," *see* Amended Opinion at 225 (citing N.Y. Penal L. § 265.01-e(2)(e)-(f)), and "programs for the vulnerable (persons suffering from addiction, mental illness, poverty, disability, and homelessness) all appear in the same sequence," *see id.* (citing §§ 265.01-e(2)(g)–(k)). "It is thus probative that paragraph (2)(s) immediately follows a ban on guns at: any public sidewalk or other public area restricted from general public access for a limited time or special event that has been issued a permit for such time or event by a governmental entity, or subject to specific, heightened law enforcement protection." *See* Amended Opinion at 225 (citing § 256.01-e(2)(r)). The Second Circuit held that this pattern of grouping by affinity suggests that subparagraph (s) deals with "assemblies" similar to those on a sidewalk or on a road closed by police, and not expressions of worship within a church. *See id.* Moreover, the Second Circuit stated in its Amended Opinion that the "constitutional right to assemble" is more usually discussed as being "cognate to those of free speech and free press," *De Jonge v. Oregon,* 299 U.S. 353, 364-65 (1937), and "intimately connected both in origin and in purpose with the other First Amendment

16

rights of free speech and free press," *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967), rather than freedom of religious expression.  *See* Amended Opinion at 226. In addition, the Second Circuit held that the legislature's pairing of "assembl[y]" with "protest" in § 265.01-e(2)(s) strongly suggests that the legislature was concerned with protest-type demonstrations rather than attempting to reach *any* assembly conceivably protected by the First Amendment. *See* Amended Opinion at 226-27 (citing *McDonnell v. United States,* 579 U.S. 550, 569 (2016) ("[*Noscitur a sociis*] is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." (quoting *Jarecki v. G.D Searle & Co.,* 367 U.S. 303, 307 (1961)))).

The Court thus concluded that "it is implausible that the New York legislature meant for paragraph (2)(s) to apply wherever people gather for social or political purposes (which is everywhere), or whenever people engage in lawful discussion (which is all the time)," and "it is highly unlikely that the legislature would slip in a prohibition of such sprawling breadth as one of many entries in an enumeration of twenty sensitive locations." *See* Amended Opinion at 226-27. "Such a sweeping bar would also offend the Supreme Court's admonition against 'expanding the category of "sensitive places" simply to all places of public congregation that are not isolated from law enforcement.'" *See id.* (citing *Bruen,* 597 U.S. at 31). As stated by the Second Circuit*:* the legislature may have overreached in certain respects, but the general point was to revise New York's gun laws to *withstand Bruen,* not to attempt exactly what it forbade.  *See id.*

Lastly, in coming to the conclusion that Plaintiff Mann's church could not be considered a "First Amendment gathering," the Second Circuit determined that it was easy to infer what the legislature had in mind here – "[p]eaceful demonstrations petitioning the government to take or desist from particular actions are a vital part of democratic discourse; [whereas] demonstrations

by armed mobs are something else." *See* Amended Opinion at 227. "Similarly, counter-demonstrations often lead to dangerous confrontations" as are "peaceful protests met by counter-demonstrators who are armed." *See id.* Consequently, the Second Circuit found it reasonable to assume here that the legislature was concerned that "carrying firearms in connection with such protests conveys intimidation rather than free expression, a concern that would not extend to ordinary religious or social gatherings at which people exercise their rights to gather and speak with each other." *See id.*

Accordingly, for those same reasons restated above from the Second Circuit's Amended Opinion, Plaintiff Mann's worship services at his church are not arguably "gathering[s] of individuals to collectively express their constitutional rights to protest or assemble." Therefore, Plaintiff Mann has not alleged a credible or sufficiently imminent injury-in-fact with respect to paragraph (2)(s), and the Court should dismiss this claim in its entirety for lack of standing.

> **e.      Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at "any place, conveyance, or vehicle used for public transportation or public transit" because his church van or bus services are meant only for the private use of its church employees.**

In accordance with the Second Circuit's analyses described in the prior two sections, this Court should also find that Plaintiff Mann failed to allege a "credible threat sufficient to satisfy the imminence requirement of an injury in fact" with respect to § 265.01-e(2)(n) because, again, "as a matter of statutory interpretation," a van or bus privately owned by the Fellowship Baptist Church "is not even arguably covered" by this paragraph, which prohibits firearms on types of mass "*public transportation or public transit*." *See* Amended Opinion at 212, 224; *cf.* N.Y. Penal L. § 265.01-e(2)(n) (emphasis added). Words within a statute should be interpreted as taking their ordinary, contemporary, and common meaning. *See Manning*, 954 F.3d at 482 (quoting *Arriaga*, 521 F.3d at 225). The term "public transportation" means "a system of trains, buses, etc., that is

paid for or run by the government. *See public transportation,* Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/public%20transportation; *see also public transport,* Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/public-transport ("a system of vehicles such as buses and trains that operate at regular times on fixed routes and are used by the public"). The Fellowship Baptist Church's van and bus are not a system of vehicles, operating at regular times, on fixed routes, used by the public, or paid for or run by the government but, rather, a privately owned vehicle used by the church employees and their congregation for "church business travel." *See* Doc. No. 9 at ¶ 33.

This understanding is further confirmed by "the company the phrase keeps." *See* Amended Opinion at 214 (citing *Homaidan* 3 F.4th at 604 (quoting *Freeman,* 566 U.S. at 634-35)). Paragraph (2)(n) lists the following types of places, conveyances, and vehicles used for "public transit or public transportation:" "subway cars, trains, cars, buses, ferries, railroad, omnibus, marine or aviation transportation . . . , airports, train stations, subway and rail stations, and bus terminals." *See* § 265.01-e(2)(n). Simply because the word bus is listed in those examples does not mean the church's privately owned van or bus is used for "public transit or public transportation." The legislature could hardly have intended for "public transit or public transportation" to include any and all private vehicles so long as they transport a single member of the public, let alone vans used for a church's business trips. *See* Amended Opinion at 214. Such an interpretation is not "reasonable enough" that Plaintiff Mann "may legitimately fear that [he] will face enforcement of the statute." *See Picard,* 42 F.4th at 98.

Regardless, Plaintiff Mann fails to sufficiently allege that his church van or bus will actually be used for public "transportation or public transit" *and* that he will be personally carrying

a firearm in said vehicle in violation of the CCIA. *See* Doc. No. 9; *cf.* N.Y. Penal L. § 265.01-e(2)(n). Even assuming arguendo that the Court were to accept all of Plaintiff Mann's allegations as true, his church van and bus are admittedly not used for "public transportation," but instead for the church's private use. *See* Doc. No. 9 at ¶ 33. In his Declaration, Plaintiff Mann makes one allegation regarding this challenge to the CCIA, which states that his church "maintains both a church bus and a church van which we use *for church business* to travel to various locations. We routinely take our own church members, our youth, and members of the public with us when we travel." *See id.* Plaintiff Mann then provides an analogy where a group of the church's members may use the vehicle for personal hunting trips. *See id.* These examples are hardly comparable to a government owned bus driving the general public to and from their daily destinations, or driving the public on regular routes, as the legislature intended. Moreover, in Decision II, the District Court also acknowledged that Plaintiff Mann failed to expressly allege that he has routinely carried his licensed handgun concealed while riding on his church's bus in public. *See* Decision II at 59. Accordingly, Plaintiff Mann failed to allege that the vehicle will be driven for public use and that he will be personally carrying a concealed weapon during those uses. *See* Doc. No. 9. at ¶ 33.

As a result, Plaintiff Mann has not alleged a "concrete and particularized and actual or imminent" injury-in-fact required for such a pre-enforcement constitutional challenge but, instead a "conjectural or hypothetical" one. *Antonyuk,* 2022 U.S. Dist. LEXIS 157874, at *44 (quoting *Susan B. Anthony List*, 573 U.S. at 157-58) (quoting *Lujan*, 504 U.S. at 560))).

> **f.    Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at "any location providing health, behavioral health, or chemical dependence care services" because the Fellowship Baptist Church does not fall within the legislature's intended definition of § 265.01-e(2)(b).**

In line with the three sections above, Plaintiff Mann's interpretation of N.Y. Penal L. § 265.01-e(2)(b) is unreasonable because it would render "wholly superfluous" the other provisions

of 265.01-e(2). The Fellowship Baptist Church is plainly not a "location providing health, behavioral health, or chemical dependence care services," but only a "place of worship."

In his Declaration, Plaintiff Mann acknowledges that the church only provides initial assistance to individuals struggling with these health issues and that he "counsel[s] them *to seek help and voluntarily enter treatment*" *elsewhere*. *See* Doc. No. 9 at ¶ 28 (emphasis added). This is because the Fellowship Baptist Church is a church and not an organization established to provide health care or substance dependence care. *See* N.Y. Penal L. § 265.01-e(2).

Again, a statute should be interpreted by the words' "ordinary, contemporary, [and] common meaning." *See Manning,* 954 F.3d at 482. A church is "a building for public and especially Christian worship." *See church,* Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/church. Whereas a healthcare center is a location with a system in place where trained and licensed professionals maintain, restore, or promote someone's physical, mental, or emotional well-being. *See healthcare,* Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/health%20care ("efforts made to maintain, restore, or promote someone's physical, mental, or emotional well-being especially when performed by trained and licensed professionals"); *See center,* Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/center ("a place for a particular activity or service"). If the members of the Fellowship Baptist Church (or any members of the public who come to the church) are seeking medical assistance or substance dependence care, the church's employees and pastors do not attempt to provide that care but, instead, properly guide them to seek help and voluntarily obtain treatment at such a location.

If the Court were to accept Plaintiff Mann's interpretation that the Fellowship Baptist Church is a "location providing health, behavioral health, or chemical dependence care services,"

then it would make numerous other "sensitive locations" under § 265.01-e(2) redundant, which the Second Circuit held to be improper in its Amended Opinion. *See* Amended Opinion at 224. For example, paragraphs (2)(a), (c), (e), (g), (h), (i), (j), (k), (l), and (m) could all be categorized as potential "locations providing health, behavioral health, or chemical dependence care services," and wholly defeating their individual purposes. *See id.* As concluded by the Second Circuit, the "CCIA may be broad, but [it] will not read it to be redundant," which would be the case if Plaintiff Mann's interpretation is accepted here. *See id.; cf.* Section I(c), (d), and (e) above.

However, even if the Court were to accept his allegations as true, Plaintiff Mann does not allege that the church itself is a "location providing health, behavioral health, or chemical dependence care services," or that he himself is providing those services at the church, but rather, Plaintiff Mann states that he provides such services *outside of the church* (i.e., "the homes of persons addicted to drugs") and that he counsels those individuals to go "seek help and voluntarily enter treatment" *elsewhere*. *See id.* at ¶ 28. This allegation does not give rise to a "credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue" with respect to the Fellowship Baptist Church and § 265.01-e(2)(b). *See Knife Rts., Inc.*, 802 F.3d at 384. Simply because Plaintiff Mann makes a general allegation that the RU Recovery program has "brought persons in the program to church property for counseling and care" does not mean that Plaintiff Mann himself is a part of those services, or that he will be personally carrying a firearm while at a "location providing health, behavioral health, or chemical dependence care services." *See* Doc. No. 9 at ¶ 29. These facts were inferred by the courts in Decision II and the Amended Opinion, and is insufficient to find standing.

Plaintiff Mann's Fellowship Baptist Church is plainly a "place of worship" under its commonsense definition, and it does not become a different "sensitive location" under § 265.01-

e(2) simply because it provides other services as part of its religious observation.   Thus, Plaintiff Mann lacks standing to challenge this aspect of the CCIA and, as a result, the Court should dismiss the claim in its entirety.

### g.   Plaintiff Mann lacks standing to challenge the CCIA's restrictions on firearm possession in any "sensitive location" because his intended carriage is lawful under the newly amended version of the CCIA.

Plaintiff Mann alleges that he intends to carry his firearm in various "sensitive locations" in violation of the CCIA.  *See generally* Doc. No. 9.  However, in contrast to this general and untrue claim, Plaintiff Mann only intends to carry a firearm at the Fellowship Baptist Church for the purpose of security and protection.  *See id.*  Each of the other alleged "sensitive locations" mentioned cursorily in his Declaration either takes place at the Fellowship Baptist Church itself or as a part of the church's services to its congregation.  *See id.* at ¶¶ 9-11 (alleging that Fellowship Baptist Church maintains a church security team because his church is small and cannot afford private security, which would have been in violation of the CCIA's ban of firearms at places of worship); ¶¶ 12-13 (acknowledging that the church is also his residence); ¶ 26 (alleging that in addition to the church ministry, the Fellowship Baptist Church provides counseling and assistance at the church to the homeless, youth, and those in domestic violence and abuse settings); ¶ 28 (alleging that the Fellowship Baptist Church provides an addiction recovery ministry through RU Recovery, in which Plaintiff Mann counsels addicts to seek help and voluntarily enter treatment); ¶ 33 (alleging that his church also maintains a church bus and a church van that their members use for church business to travel to various locations).  Accordingly, Plaintiff Mann's alleged conduct should fall only within § 265.01-e(2)(c) "places of worship" under the statute's ordinary and commonsense meaning.  *See Manning,* 954 F.3d at 482; *Arriaga v. Mukasey,* 521 F.3d at 225.

Simply because the Fellowship Baptist Church provides other services to its congregation does not convert the location from a "place of worship" to a completely different "sensitive

location" (such as a place of "public transportation," "performance venue," or "banquet hall"). The Fellowship Baptist Church is plainly and only a "place of worship" under the CCIA's definition, and Plaintiff Mann may now lawfully carry a firearm at his church and during church services as part of the church's security team pursuant to the recent amendment. As discussed above, if the Court were to accept Plaintiff Mann's assertion that the Fellowship Baptist Church should be considered as numerous different "sensitive locations," it would render those paragraphs of § 265.01-e(2) redundant. Stated another way, a church would not be able to have a security team under the newly enacted § 265.01-e(2)(c) exception if it provides any other service to its members beyond a place of worship.

The amendment to the CCIA permits Plaintiff Mann to do precisely what he seeks – to carry a firearm at the Fellowship Baptist Church for the purpose of providing security to his congregation. Therefore, Plaintiff Mann lacks standing to challenge any of the "sensitive location" restrictions, and his claims are now moot. *See Exxon Mobil Corp.,* 28 F.4th at 392; *Tann,* 807 F.3d at 52 (2d Cir. 2015).

## CONCLUSION

For the foregoing reasons, Co-Defendants DiMartino and Hilton respectfully request that the Court grant the present motion to dismiss Plaintiff Mann's Complaint in its entirety, together with such other and further relief as the Court deems just and proper.

**DATED**:  June 30, 2025                                    **BARCLAY DAMON, LLP**

By: _____
                              J.J. Pelligra
                          (Bar Roll No. )
                      Edward G. Melvin, II
                      (Bar Roll No. 509037)

24

*Attorneys for Oswego Defendants*

Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone:   (315) 425-2700
Facsimile:   (315) 425-2701
Email:       jpelligra@barclaydamon.com
             emelvin@barclaydamon.com

25