# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IVAN ANTONYUK, et al., )<br>)<br>Plaintiffs, )<br>) Civil Action No. 1:22-cv-986 (GTS/PJE)<br>v. )<br>)<br>STEVEN G. JAMES, in his Official )<br>Capacity as Superintendent of the )<br>New York State Police, et al., )<br>)<br>Defendants. )<br>) | |

**PLAINTIFF JOSEPH MANN'S RESPONSE IN OPPOSITION TO OSWEGO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

## **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    I.       Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.      Defendants Attempt to Read Words In and Out of the Statute . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Comes now, Plaintiff Joseph Mann ("Pastor Mann") and files this, his response to Defendants Anthony J. DiMartino, Jr., in his official capacity as the District Attorney of Oswego County, and Defendant Don Hilton, in his official capacity as the Sheriff of Oswego County ("Oswego Defendants" or "Defendants"), Motion for Judgment on the Pleadings, and states as follows:

## INTRODUCTION

Defendants filed their Motion for Judgment on the Pleadings (ECF #149) and accompanying Memorandum (ECF #149-2) ("MJP") pursuant to Fed. R. Civ. P. 12(c) on June 30, 2025. In their Motion, Defendants seek to dismiss all claims against them. Specifically, Defendants claim Pastor Mann lacks standing to challenge New York's ban on firearms in "places of worship," "banquet halls," "First Amendment gatherings," buses, certain treatment centers, and certain "sensitive locations." MJP at i. As explained in greater detail below, Pastor Mann opposes dismissal only with respect to buses.

In the early stages of this litigation, this Court preliminarily enjoined portions of New York's contemptuously enacted "*Bruen* response bill," the inaptly named Concealed Carry Improvement Act ("CCIA"). Relevant to Defendants' instant Motion, this Court enjoined the CCIA as to its ban on firearms in "buses" "as contained in Paragraph '2(n),'" among other provisions. *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 349 (N.D.N.Y. 2022).[1] The State Defendants (the Superintendent of State Police and Judge Matthew J. Doran) and the Chief of Police for Syracuse appealed this Court's preliminary injunction to the U.S.

---

[1] This Court also partially rejected these Defendants' previous Motion to Dismiss on November 17, 2022. *See Antonyuk v. Nigrelli*, 2022 U.S. Dist. LEXIS 208383, at *3 (N.D.N.Y. Nov. 17, 2022) ("The Court rejects this argument with regard to Plaintiff Mann's claims challenging Paragraphs '2.(b),' '2.(c),' '2.(f),' '2.(n),' '2.(p),' and '2.(s)' of Section 4 of the CCIA, and Section 5 of the CCIA....").

1

Court of Appeals for the Second Circuit. *See* ECF ##80, 87. Meanwhile, the Oswego Defendants did not file any appeal.

The State Defendants then filed a Motion for a Stay Pending Appeal and an Administrative Stay Pending Resolution of [their] Motion in the Second Circuit. *See* No. 22-2908, Document 18. In their Motion to Stay, the State Defendants specifically disclaimed seeking a "stay as to airports" or "buses, if the injunction is limited to private buses." *Id.* at 13 (cleaned up). Likewise, in their Opening Brief, the State Defendants specifically did "not appeal the injunction as it applies to airports, or to privately chartered vans and buses...." *See* No. 22-2908, Document 95 at 48 n.14; *see also Antonyuk v. James*, 120 F.4th 941, 960 (2d Cir. 2024) ("The State challenged each aspect of the injunction except for the portion concerning the CCIA's application to buses and airports.").

Unsurprisingly, then, the Second Circuit did not analyze or issue any opinion on New York's firearm carry ban on "buses," as no Defendant appealed this Court's preliminary injunction on that basis. Rather, the Court was silent on the issue – because it was not at issue on appeal. Even so, while affirming this Court's injunction as to social media disclosure and restricted locations, the Second Circuit's order stated that it "vacate[s] the injunction in all other respects...." *Id.*; *see* MJP at 6 ("otherwise vacating it in its entirety").[2]

---

[2] Pastor Mann disagrees with Defendants that the Second Circuit vacated this Court's preliminary injunction as to private buses. However, even if the preliminary injunction as to Pastor Mann's church bus *had* been vacated, this Court certainly may still provide permanent relief at the appropriate time. Nothing in the Second Circuit's opinion overruled, undermined, or even casts doubt on this Court's injunction as to buses because, once again, that question was not at issue on appeal.

2

Following the Second Circuit's opinion in *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024), Pastor Mann does not seek to continue his challenge to the following provisions of the CCIA:

a)   N.Y. Penal L. § 265.01-e(2)(c) (places of worship);

b)   N.Y. Penal L. § 265.01-e(2)(b) (location providing health, behavioral health, or chemical dependance care or services);

c)   N.Y. Penal L. § 265.01-e(2)(p) (theaters, conference centers, banquet halls); and

d)   N.Y. Penal L. § 265.01-e(2)(s) (gathering of individuals);

However, Pastor Mann continues his challenge to N.Y. Penal L. § 265.01-e(2)(n), which proscribes the carry of firearms in:

> any place, conveyance, or vehicle used for public transportation or public transit, subway cars, train cars, buses, ferries, railroad, omnibus, marine or aviation transportation; or any facility used for or in connection with service in the transportation of passengers, airports, train stations, subway and rail stations, and bus terminals[.]

## SUMMARY OF ARGUMENT

Defendants claim that the word "public" modifies *all* of the words in Paragraph 2(n) of N.Y. Penal L. § 265.01-e. MJP at 18-20. Thus, because "Plaintiff Mann failed to allege that the vehicle will be driven for public use," Defendants believe his challenge to that provision fails for lack of standing. *Id.* at 20. But this Court already has rejected this argument once before, and nothing has changed since. Indeed, "the regulation lacks the words 'such as' between the words 'any … vehicle used for public transportation or public transit,' and the words 'subway cars, train cars, buses....' As a result, this regulation may be reasonably read as if to mean 'any … vehicle used for public transportation' *or* '[any]

3

… buses'" regardless of whether it is used for public transportation *Antonyuk*, 639 F. Supp. 3d at 281.  As such, as Pastor Mann stated, he "routinely take[s] [his] own church members, … and youth, and members of the public" when they travel in the church bus and van, and he "do[es] not intend to comply" with the CCIA's ban of firearms in his church bus or church van.  *See* Declaration of Pastor Mann, ECF #1-9, ¶33.  And the Second Circuit did not opine on this provision – because no defendant appealed that part of this Court's order – and it certainly did not reject this Court's conclusion.

Because Pastor Mann has standing to challenge the CCIA as to buses, Defendants' Motion as to N.Y. Penal L. § 265.01-e(2)(n) should be denied.

## ARGUMENT

**I.    Standard of Review.**

Fed. R. Civ. P. 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  The "standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).  In order "[t]o survive a Rule 12(c) motion, [Plaintiffs'] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  For a Rule 12(c) motion, this Court must "accept[] the allegations contained in the complaint as true and draw[] all reasonable inferences in favor of the nonmoving party."  *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Finally,

4

"statutory interpretation … presents a question of law...." *Jaen v. Sessions*, 899 F.3d 182, 185 (2d Cir. 2018).

II.     **Defendants Attempt to Read Words In and Out of the Statute.**

Defendants seek dismissal on the theory that N.Y. Penal L. § 265.01-e(2)(n) does not cover Pastor Mann's church bus. *See* MJP at 18-20. They claim, as a "matter of statutory interpretation," that "a van or bus privately owned by [the Church] 'is not even arguably covered' by [the statute], which prohibits firearms on types of mass 'public transportation or public transit.'" *Id.* at 18.

But neither the statute's text nor its context supports Defendants' interpretation. At the outset, the statute does not say "*government-owned* bus" or anything so limiting. And it is a "fundamental principle of statutory construction that the starting point must be the language of the statute itself." *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005). Indeed, "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012). Such context "must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires." *Id.* And of course, "[n]othing is to be added to what the text states or reasonably implies," so "a matter not covered is to be treated as not covered." Scalia & Garner, *supra*, at 93.

Applying those principles, the statute conspicuously omits use of "such as," "for example," "including," or any other qualification of the words following "public transit." Thus, the statute is most naturally read to encompass *all* of the conveyances listed, and not only those relegated for "public transportation" or "public transit." Indeed, this Court

5

previously concluded that "this regulation may be reasonably read as if to mean 'any … vehicle used for public transportation' *or* '[any] … buses'" regardless of whether it is used for public transportation. *Antonyuk*, 639 F. Supp. 3d at 281. Governor Hochul would appear to agree. *See* Complaint, ECF #1, at ¶105 ("when a reporter questioned whether she was 'shutting off all the public places,' and asked 'what would be left?' Governor Hochul quipped 'probably some streets.'").

In any case, Pastor Mann's bus *is* treated by state law in the same way as other "public" buses. The New York Department of Motor Vehicles, in Article 19-A of the New York State Vehicle and Traffic Law, specifically mandates that "carriers … that have a seating capacity of 11 or more … which are used to transport persons under 21 or disabled persons of any age to school, day care, or religious instruction" must register with the state, a requirement which includes Pastor Mann's church bus. *See* https://dmv.ny.gov/forms/cdl15.pdf at 5. This statute thus treats the Pastor's church bus the same as a school bus or a daycare van, further demonstrating that the Pastor's bus would seem to qualify as "public transportation" under the CCIA. *See also Antonyuk*, 639 F. Supp. 3d at 281 (emphasis in original) ("N.Y. Veh. & Traf. Law § 509-a ('[B]us shall mean every motor vehicle, owned, leased, rented or otherwise controlled by a motor carrier, which … has a seating capacity of more than ten adult passengers in addition to the driver and which is used for the transportation of persons under the age of twenty-one or persons of any age who are mentally or physically disabled to a place of vocational, academic or *religious instruction* or religious service including nursery *schools, day care* centers and camps....')...."). Even if Defendants' constrained reading of the statutory text were correct, Pastor Mann still would have standing.

6

Left without support in the text, Defendants appeal to legislative intent. They claim that Pastor Mann's bus is "hardly comparable to a government owned bus driving the general public to and from their daily destinations, or driving the public on regular routes, as the legislature intended." MJP at 20. But as Justice Scalia once put it, "we are a Government of laws, not of committee reports." *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 621 (1991) (Scalia, J., concurring in the judgment). Indeed, "legislative history" cannot override the text that is actually enacted. Scalia & Garner, *supra*, at 56. *See also Conroy v. Aniskoff,* 507 U.S. 511, 519 (1993) (Scalia, J., concurring) ("The greatest defect of legislative history is its illegitimacy. We are governed by laws, not by the intentions of legislators."). In urging a contrary interpretation, Defendants' understanding requires adding words to the statute, and inferring that what "[the New York legislature] really meant to say" is something different than what it actually said. *Nat'l Ass'n of Mfrs. v. DOD*, 583 U.S. 109, 123 (2018). But "those are not the words that [the New York legislature] wrote, and this Court is not free to 'rewrite the statute' to the Government's liking." *Id.*

## CONCLUSION

This Court previously did not accept "the State Defendants' argument that this regulation does not apply to Plaintiff Mann's church bus and van." *Antonyuk,* 639 F. Supp. 3d at 281. Since then, nothing has changed. There is no new law that would change the Court's prior reasoning and order enjoining the regulation at issue, and the Second Circuit did not analyze the issue in any way, much less undermine this Court's prior conclusion, because the question was not raised. With respect to N.Y. Penal L. § 265.01-e(2)(n), Defendants' Motion for Judgment on the Pleadings should be denied.

7

Dated: August 8, 2025.

Respectfully Submitted,

*/s/ Stephen D. Stambouliah*
Stephen D. Stambouliah
Stambouliah Law, PLLC
P.O. Box 428
Olive Branch, MS  38654
(601) 852-3440
stephen@sdslaw.us
NDNY Bar Roll# 520383

Robert J. Olson
William J. Olson, PC
370 Maple Ave. West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (T)
703-356-5085 (F)
rob@wjopc.com
NDNY Bar Roll# 703779
*Counsel for Plaintiff Joseph Mann*

## CERTIFICATE OF SERVICE

I, Stephen D. Stamboulieh, counsel for Plaintiff Joseph Mann, hereby certify that on this day, I have caused to be filed the foregoing document or pleading with the District Court's ECF, which sent a notice and a copy of the foregoing to all counsel of record.

Dated: August 8, 2025

/s/ *Stephen D. Stamboulieh*
Stephen D. Stamboulieh