**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

IVAN ANTONYUK; COREY JOHNSON;
ALFRED TERRILLE; JOSEPH MANN;
LESLIE LEMAN; and LAWRENCE SLOANE,

             Plaintiffs,

    v.

STEVEN A. NIGRELLI, in his Official Capacity
as Superintendent of the New York State Police;
JUDGE MATTHEW J. DORAN, in his
Official Capacity as Licensing-Official of Onondaga
County; WILLIAM FITZPATRICK, in his
Official Capacity as the Onondaga County
District Attorney; EUGENE CONWAY, in his
Official Capacity as the Sheriff of Onondaga
County; JOSEPH CECILE, in his Official
Capacity as the Chief of Police of Syracuse; P.
DAVID SOARES, in his Official Capacity as the
District Attorney of Albany County; ANTHONY
J. DIMARTINO, JR., in his Official Capacity as
the District Attorney of Oswego County; DON
HILTON, in his Official Capacity as the Sheriff
of Oswego County; and JOSEPH STANZIONE,
in his Official Capacity as the District Attorney
of Greene County,

             Defendants.

Civil Action No. 1:22-CV-986 (GTS/ PJE)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RULE 12(c) MOTION TO DISMISS

**BARCLAY DAMON LLP**
J.J. Pelligra
Edward G. Melvin, II
*Attorneys for the Oswego Defendants*
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 425-2700

32162289.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT......................................................................................................................... 3

I.    THE SECOND CIRCUIT VACATED THE INJUNCTION WITH RESPECT TO THE CHURCH BUS BECAUSE PLAINTIFF MANN LACKED STANDING............................... 3

II.   THE OSWEGO DEFENDANTS' INTERPRETATION OF THE RELEVANT STATUTORY LANGUAGE IS CONCURRENT WITH THE ANALYSES UNDERTAKEN BY THE SECOND CIRCUIT IN ITS AMENDED OPINION. ................................................. 5

III.  PLAINTIFF MANN FAILED TO ADDRESS THE OSWEGO DEFENDANTS' ARGUMENT THAT THE AMENDED VERSION OF THE CCIA PERMITS HIM TO CARRY HIS FIREARM ON THE CHURCH BUS AND, THEREFORE, HIS CLAIM IS MOOT........................................................................................................................... 10

CONCLUSION .................................................................................................................. 11

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is respectfully submitted on behalf of Defendant Anthony J. DiMartino, Jr., in his Official Capacity as the District Attorney of Oswego County, and Defendant Don Hilton, in his Official Capacity as the Sheriff of Oswego County (collectively, the "Oswego Defendants") in further support of their Rule 12(c) motion to dismiss the claims and requested relief of Plaintiff Joseph Mann ("Plaintiff Mann") in the Complaint in their entirety.

In his response to the present motion, Plaintiff Mann "only opposes dismissal with respect to buses" and "does not seek to continue his challenge to the [other] provisions of the CCIA[.]" *See* Doc. No. 157 at 1, 3. Accordingly, the Court should dismiss those challenges of the CCIA that Plaintiff Mann is voluntarily discontinuing without further consideration.[1]

As for his challenge concerning the Fellowship Baptist Church's privately owned bus, Plaintiff Mann seemingly misconstrues[2] both the Second Circuit's Amended Opinion and the relevant statutory language in an effort to salvage his lone remaining claim. *See Antonyuk, et al. v. James, et al.,* 120 F.4th 941 (No. 22-2908) (2d Cir. October 24, 2024) ("Amended Opinion"); N.Y. Penal L. § 265.01-e(2)(n). In short, Plaintiff Mann asks this Court to disregard the Second Circuit's reversal of its prior determination on this issue, and once again come to the same conclusion that he has Article III standing to challenge the CCIA's restrictions over "any place,

---

[1] The Oswego Defendants note that, in his Declaration, Plaintiff Mann refers to two separate vehicles – a church van and a church bus – that are owned by the Fellowship Baptist Church. *See* Doc. No. 1 at ¶¶ 98, 194; Doc. No. 1-9 at ¶ 33. However, based on his response to the present motion, it appears that Plaintiff Mann is only pursuing a challenge with respect to the church bus moving forward. *See generally* Doc. No. 157. As a result, the Court should also dismiss Plaintiff Mann's challenge regarding the church van.

[2] Misleadingly, Plaintiff Mann also claims that the District Court "partially rejected these arguments" on the Oswego Defendants' prior motion to dismiss and "nothing has changed since." *See* Doc. No. 157 at n.1 and p. 3. That motion was filed before the Second Circuit reversed the District Court's determinations on these very issues and, therefore, Plaintiff Mann's comment should be treated as inaccurate and irrelevant.

1

conveyance, or vehicle used for public transportation or public transit," solely because he intends to carry a firearm on his church's bus, which is used by his congregation for "church business," "hunting trips," and "skeet shooting trips." *See* Doc. No. 1 at ¶¶ 98, 194; Doc. No. 1-9 at ¶ 33. In doing so, Plaintiff Mann not only urges the Court to overlook the Second Circuit's express vacatur of the prior injunction, but also to disregard the plain and obvious meaning of the statutory language, which clearly and exclusively addresses places and vehicles "***used for public transportation or public transit***" – not privately owned vehicles. *See* N.Y. Penal L. § 265.01-e(2)(n) (emphasis added).

In the final paragraph of its Amended Opinion, the Second Circuit vacated this portion of the District Court's injunction (and all others not explicitly mentioned), "having concluded either that the district court lacked jurisdiction because no plaintiff had Article III standing to challenge the laws or that the challenged laws do not violate the Constitution on their face." *See* Amended Opinion at 246. Further, the mere mention of the word "bus" after the location's unambiguous description as being "any places, conveyances, or vehicles used for public transportation or public transit" does not render all privately owned larger vehicles to be "sensitive locations" under the CCIA. Such a reading ignores the statute's plain and common-sense purpose, which is to protect large populations who are traveling in public transit – not to restrict individuals who are legally carrying a firearm within a privately owned vehicle. *See* Amended Opinion at 212-15, 224-28; *cf.* N.Y. Penal L. § 265.01-e(2)(n).   Moreover, Plaintiff Mann's broad interpretation of the words used in the statute would create a sweeping bar of firearm possession in all privately owned boats, planes, and vehicles with ten or more seats.  This runs contrary to the primary objective of the CCIA – to revise New York's gun laws to withstand *Bruen*, not to attempt exactly what it forbade. *See id; cf. New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1 (2022) ("*Bruen*").

For these reasons, and those set forth more fully below and in the Oswego Defendants' original motion papers, Plaintiff Mann's lone remaining challenge should be dismissed.

## ARGUMENT

### I.    THE SECOND CIRCUIT VACATED THE INJUNCTION WITH RESPECT TO THE CHURCH BUS BECAUSE PLAINTIFF MANN LACKED STANDING.

At the outset of his response, Plaintiff Mann presents a brief but inaccurate account of the procedural history surrounding his challenge to this "sensitive location." *See* Doc. No. 157 at 2. In his Preliminary Statement, Plaintiff Mann asserts that none of the defendants appealed this issue and that, as a result, the Second Circuit "unsurprisingly" declined to address it "because it was not at issue on appeal." *See id.* By making this claim, however, Plaintiff Mann omits critical portions of both the State Defendants' appellate brief and the Second Circuit's Amended Opinion, thereby creating the misleading impression that the Second Circuit did not reverse the District Court's determination with respect to the church bus.

Notably absent from Plaintiff Mann's deceptive recitation of the State Defendants' brief is the key context explaining that the CCIA does not apply to privately owned vehicles and, therefore, the District Court's injunction with respect to the church bus was inconsequential:

> State defendants do not appeal the injunction as it applies to airports, or to privately chartered vans and buses, which are the only forms of ground transportation mentioned in the complaint and in the district court's standing analysis. ***The CCIA does not apply to private buses or vans***. *See* Penal Law § 265.01-e(2)(n) (restricting firearms on "vehicle[s] used for public transportation or public transit"). The scope of the provision is confirmed by the canons of noscitur a sociis and ejusdem generis, because the examples of transportation referenced in the relevant statutory provision are forms of public transportation; none are exclusively private transportation. *Cf. City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 401-02 (2d Cir. 2008). ***And the injunction does not apply to buses used in public transit.*** The district court correctly stated that "Metropolitan Transportation Authority buses are not an issue in this action." ***Nothing in the opinion suggests that plaintiffs had standing to challenge the restriction as to any public-transit***

3

*system.* In any event, the sensitive place restriction on public
transportation is lawful for the reasons discussed infra at 52-66.

*Antonyuk, et al. v. James, et al.,* No. 22-2908, Doc. No. 95 at 48 n.14 (emphasis added).

As Plaintiff Mann acknowledges, it is unsurprising that the Second Circuit did not address
this issue in more detail – but not for the reasons he suggests. The Second Circuit found no need
to analyze the issue because it agreed that ***the CCIA does not apply to privately owned vehicles***.
Consequently, the District Court's injunction concerning Plaintiff Mann's church bus was
effectively inconsequential as it did not enjoin the CCIA's application to "any places, conveyances,
or vehicles used for public transportation or public transit." *See* N.Y. Penal L. § 265.01-e(2)(n).
The Second Circuit therefore "vacate[d the injunction] ***in all other respects***," including as applied
to the Fellowship Baptist Church bus, "having concluded either that the district court lacked
jurisdiction because no plaintiff had Article III standing to challenge the laws or that the challenged
laws do not violate the Constitution on their face." *See* Amended Opinion at 246 (emphasis added).

Stated another way, had the Second Circuit determined that Plaintiff Mann had standing to
challenge N.Y. Penal Law § 265.01-e(2)(n) based on his intent to carry a firearm on the church
bus, it would not have vacated the District Court's injunction related to same – just as it left intact
the injunctions concerning N.Y. Penal L. § 400.00(1)(o)(iv) (social media disclosure) and N.Y.
Penal L. § 265.01-d (restricted locations) as applied to private property held open to the general
public. *See id.* As explained in both the State Defendants' appeal brief and the Oswego
Defendants' original motion papers, N.Y. Penal Law § 265.01-e(2)(n) only applies to places and
vehicles used for "***public transportation or public transit.***" It does not cover privately owned
vehicles such as the church bus, which is used exclusively by Plaintiff Mann's congregation for
its own private purposes. The mere presence of "members of the public" on the church bus does
not transform it into a vehicle used for public transportation within the statute's meaning.

4

The Court should reject Plaintiff Mann's request to disregard the Second Circuit's reversal and vacatur of the injunction relating to the church bus, and dismiss this challenge for lack of standing in accordance with that binding decision.

## II.    THE OSWEGO DEFENDANTS' INTERPRETATION OF THE RELEVANT STATUTORY LANGUAGE IS CONCURRENT WITH THE ANALYSES UNDERTAKEN BY THE SECOND CIRCUIT IN ITS AMENDED OPINION.

Plaintiff Mann's primary response to the present motion is that the Oswego Defendants "attempt to read words in and out of the statute," and that the church's privately owned bus should qualify as a "sensitive location" under the CCIA because the word "bus" appears in Section 265.01-e(2)(n). However, this argument is false and misguided.

In their initial submissions, the Oswego Defendants applied the same common-sense interpretive approach to Section 265.01-e(2)(n) that the Second Circuit employed in its Amended Opinion when analyzing First Amendment gatherings and banquet halls.  *See* Amended Opinion at 212-15, 224-28.[3]  In both instances, the Second Circuit looked to the ordinary meaning of the statute's words and read them in context with the surrounding language to arrive at a single reasonable interpretation – one that avoids rendering the CCIA either overbroad or redundant. *See id.*  Applying this same approach here, the words of paragraph (2)(n) strongly (if not obviously) suggest that the legislature was concerned about firearms in public transit where large populations congregate daily and, therefore, intended to restrict those locations.  *See* Amended Opinion at 226.

As Plaintiff Mann states, it is a "fundamental principle of statutory construction that the starting point must be the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."  *Morenz v.*

---

[3] Although Plaintiff Mann has withdrawn his challenges concerning First Amendment gatherings and banquet halls, the Court should still consider the Oswego Defendants' prior arguments on those provisions, as they apply the Second Circuit's interpretive approach and are expressly referenced in the Defendants' arguments regarding the church bus. *See* Doc. No. 149-2 at 13-18.

5

*Wilson-Coker*, 315 F.3d 230, 234 (2d Cir. 2005) (citation omitted).  Section 265.01-e begins as follows: "[a] person is guilty of criminal possession of a firearm, rifle or shotgun in a sensitive location when such person possesses a firearm, rifle or shotgun in or upon a ***sensitive location***, and ***such person knows or reasonably should know such location is a sensitive location***."  *See* N.Y. Penal L. § 265.01-e(1) (emphasis added).  In other words, this statute is intended to provide protections to those individuals located in areas that are deemed to be "sensitive" and the possessor of a firearm ***would or should know*** they are sensitive.  *See id* (emphasis added).  The statute then lists twenty separate, specific locations that are deemed to be sensitive.  *See id.*

The fourteenth location – paragraph (2)(n) – is described as "***any place, conveyance, or vehicle <u>used for public transportation or public transit</u>.***"  *See* N.Y. Penal L. § 265.01-e(2)(n) (emphasis added).  This is the exact language used in the statute without "reading words in or out" as Plaintiff Mann suggests.  *See id.* If it is not already obvious, these words unambiguously and explicitly describe all locations that are "used for public transportation or public transit."  *See id.* Immediately thereafter, and again without adding or removing any words, the statute goes on to list a number of places, conveyances, or vehicles, including "subway cars, train cars, buses, ferries, railroad, omnibus, marine or aviation transportation; or any facility used for or in connection with service in the transportation of passengers, airports, train stations, subway and rail stations, and bus terminals."  *See id.*  Again, if this was not already obvious, these "places, conveyances, and vehicles" are typically found in "public transportation or public transit."  *See, e.g., Public Transit*, U.S. Dept. of Transportation, https://www.transportation.gov/public-transit; *Public Transport*, Wikipedia, https://en.wikipedia.org/wiki/Public_transport; *Types of Public Transport*, Wikipedia, https://en.wikipedia.org/wiki/Outline_of_public_transport.  Moreover, applying this same common-sense approach, a person possessing a firearm "knows or should know" that places and

6

vehicles used for public transportation are sensitive locations given the large number of people traveling on it each day. *See* N.Y. Penal L. § 265.01-e(1). Thus, it is plausible and reasonable to interpret the statute as restricting firearm possession in areas associated with public transportation or public transit, and that the word "bus" (like the other places and vehicles listed) refers only to those buses used in public transportation or public transit – not privately owned vehicles. *See* N.Y. Penal L. § 265.01-e(2)(n); *cf.* Amended Opinion at 212-15, 224-28.

However, even if the Court were to set aside this "intuitive interpretation" of the word "bus" as it used within N.Y. Penal L. § 265.01-e(2)(n), and, instead, accept Plaintiff Mann's claim that the term carries multiple meanings, the outcome would be the same, as the Oswego Defendants' reading is further "confirmed by an examination of the company the phrase keeps." *See* Amended Opinion at 214. "[*Noscitur a sociis*] is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *McDonnell v. United States,* 579 U.S. 550, 569 (2016) (quoting *Jarecki v. G.D Searle & Co.,* 367 U.S. 303, 307 (1961)). "[*Noscitur a sociis*] counsels that a word is given more precise content by the neighboring words with which it is associated." *Homaidan v. Sallie Mae, Inc.,* 3 F.4th 595, 604 (2d Cir. 2021) (quoting *Freeman v. Quicken Loans, Inc.,* 566 U.S. 624, 634–35 (2012)).

As discussed above, the surrounding language within the same paragraph unequivocally establishes that this "sensitive location" involves "places, conveyances, and vehicles used for public transportation or public transit" as this is the precise language employed. *See* N.Y. Penal L. § 265.01-e(2)(n). Further, these are literally the only descriptive words in the paragraph, as the remainder is a list of examples. *See id.* In contrast, there are no words within this paragraph (or anywhere else in the CCIA) that would support the argument that privately owned vehicles (whether they are buses, boats, or planes) are considered "sensitive locations." *See id.*

7

Moreover, the legislature uses the words "public" and "private" throughout this statute, which is also instructive. *See generally* N.Y. Penal L. § 265.01-e(2). In the various paragraphs describing these twenty sensitive locations, the legislature explicitly distinguishes between locations that are "public" versus those that are "private." *See id.* For example, paragraphs (n) and (r) use the word "public" to describe specific locations, whereas paragraphs (d) and (m) use the word "private." *See id.* Taking this one step further, paragraphs (d) and (m) use both "public" and "private" to describe and distinguish between locations within those paragraphs. *See id.* Accordingly, following this same logic, had the legislature wished to include privately owned vehicles (like Plaintiff Mann's bus) in addition to those "places, conveyances, and vehicles used in public transportation or public transit," it would have expressly stated so given its use of these words throughout the statute – rather than only describe places, conveyances, and vehicles used for "public" transportation. *See generally* N.Y. Penal L. § 265.01-e.

Additionally, and further supporting the Oswego Defendants' interpretation, the surrounding statutory language makes clear that a central objective of the CCIA was to prohibit firearm possession in publicly owned and operated locations, *see* N.Y. Penal L. § 265.01-e(2)(a), (d), (e), (g)-(j), (n), (q), (r), as well as areas where large numbers of people are likely to gather, *see* N.Y. Penal L. § 265.01-e(2)(p), (s), (t). This fundamental goal of the CCIA is also reflected in the Second Circuit's Amended Opinion and our Nation's longstanding tradition of firearm regulation. *See, e.g.,* Amended Opinion at 152 (finding that the "evidence establishes a tradition of prohibiting firearms in locations where vulnerable populations congregate"); at 174 (holding that "the tradition of regulating firearms in quintessentially crowded places was continued throughout the history of our Nation."); at 193 (finding that § 265.01-e(2)(o)"is aimed at reducing the threat of gun violence resulting from intoxicated persons gathered in large groups in confined spaces," and that "both §

8

265.01-e(2)(o) and its historical 'crowded space' analogues achieve their purpose by prohibiting carriage in heavily-trafficked spaces"); at 215 (holding that "the State once again bore the burden of proving that § 265.01-e(2)(p), the purpose of which is to reduce the threat of gun violence toward large groups in confined locations, was consistent with the national tradition.").

In contrast, Plaintiff Mann asks the Court to disregard the Second Circuit's framework and, instead, adopt an artificially broad construction of the statute, treating every conceivable definition of the word "bus" as applicable regardless of its textual context. *See* Doc. No. 157 at 5-6. Plaintiff Mann believes that the legislature intended to restrict firearms from any and all vehicles that have a seating capacity of ten or more simply as a result of the word "bus," and that such privately owned vehicles are subject to CCIA enforcement. *See* Doc. No. 157 at 6. If the Court were to adopt Plaintiff Mann's interpretation, the restriction would extend not only to privately owned vehicles, but also privately owned boats and planes, regardless of their actual use. *See* N.Y. Penal L. § 265.01-e(2)(n) (listing ". . . buses, . . .marine or aviation transportation . . ."). Under this same logic, it could even encompass the Fellowship Baptist Church itself, as the church would then qualify as a "facility used for or in connection with service in the transportation of passengers" simply because it operates the bus. *See id.* That is precisely the interpretive error the Second Circuit cautioned against in its Amended Opinion when reviewing Plaintiff Mann's broad statutory interpretation of the CCIA with respect to First Amendment gatherings:

> It is highly unlikely that the legislature would slip in a prohibition of such sprawling breadth as one of many entries in an enumeration of twenty sensitive locations. Such a sweeping bar would also offend the Supreme Court's admonition against "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement. The CCIA is in conversation with *Bruen:* the legislature may have overreached in certain respects, but the general point was to revise New York's gun laws to *withstand Bruen,* not to attempt exactly what it forbade."

Amended Opinion at 226-27.

Plaintiff Mann's reading of the statute is inconsistent with its text and surrounding provisions, and, therefore, plainly implausible. *See* Amended Opinion at 227. Plaintiff Mann's challenge to the CCIA's restriction on public transportation rests entirely on the factual assertion that his church-owned bus is used for church business travel, hunting trips, and visiting the shooting range. *See* Doc. No. 1 at ¶¶ 98, 194; Doc. No. 1-9 at ¶ 33. A straightforward, common-sense reading makes clear that this type of travel or firearm possession is not the type of conduct that N.Y. Penal L. § 265.01-e(2)(n) is intended to regulate. Plaintiff Mann faces no threat of CCIA prosecution for carrying a firearm on his church bus for these purposes, let alone one that is "concrete and particularized and actual or imminent." *See Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Accordingly, the Oswego Defendants ask this Court to take a pragmatic approach when interpreting this statute and dismiss Plaintiff Mann's claim for lack of standing.

**III.    PLAINTIFF MANN FAILED TO ADDRESS THE FACT THAT THE AMENDED VERSION OF THE CCIA PERMITS HIM TO CARRY HIS FIREARM ON THE CHURCH BUS AND, THEREFORE, HIS CLAIM IS MOOT.**

Plaintiff Mann's response overlooks the fact that the CCIA was amended on May 3, 2023 to allow Plaintiff Mann to do precisely what he seeks to do, and this amendment took immediate effect, thereby mooting his claims. *See* Doc. No. 149-2 at 23-24; Amended Opinion at 157-58.

In his Complaint and Declaration, Plaintiff Mann alleges that, as pastor, he frequently carries a concealed firearm on Fellowship Baptist Church property (which is also his home residence), "during the course of [his] employment . . . ***to provide security and protection to the congregation***" because his parish is a "small church" and "unable to afford to pay for [separate] private security," and that he intends to continue doing so notwithstanding the CCIA's prohibition on carrying firearms in places of worship. *See* Doc. No. 9 at ¶¶ 9-11 (emphasis added). Plaintiff

10

Mann also attests that the primary purpose for his carrying a firearm on church property (which would include the church's privately owned bus) is to provide security.  *See id.*

As argued in the Oswego Defendants' original motion papers, and as acknowledged by the Second Circuit in its Amended Opinion, the New York legislature amended the CCIA to provide an exception for "those persons responsible for security." *See* Doc. No. 149-2 at 23-24; Amended Opinion at 157-58.  As a result, Plaintiff Mann can now freely designate himself and his church's security team as "persons responsible for security," and exempt themselves from the scope of the CCIA, and lawfully carry firearms on Fellowship Baptist Church property.  *See id.*  Further, as acknowledged by Plaintiff Mann in both the Complaint and his Declaration, the vehicle at issue here is owned by the Fellowship Baptist Church and is used for church business.  *See* Doc. No. 1 at ¶¶ 98, 194; Doc. No. 1-9 at ¶ 33.  Thus, even if the Court were to accept his interpretation of paragraph (2)(n), Plaintiff Mann could designate himself as a "person responsible for security" at the Fellowship Baptist Church and exempt himself from the scope of that provision while traveling on the church's bus for church business travel and the congregation's recreational activities.

Consequently, the amendment to the CCIA rendered all of Plaintiff Mann's challenges moot as they all involve his carrying a firearm for the purpose of providing security on Fellowship Baptist Church property.  *See Tann v. Bennett,* 807 F.3d 51, 52 (2d Cir. 2015) (holding that "a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.").

## CONCLUSION

For the foregoing reasons, the Oswego Defendants respectfully request that the Court grant the present motion to dismiss Plaintiff Mann's Complaint in its entirety, together with such other and further relief as the Court deems just and proper.

**DATED**:  August 22, 2025          **BARCLAY DAMON, LLP**

By: _____
          J.J. Pelligra
        (Bar Roll No. )
      Edward G. Melvin, II
      (Bar Roll No. 509037)

*Attorneys for Oswego Defendants*

Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone:   (315) 425-2700
Facsimile:    (315) 425-2701
Email:        jpelligra@barclaydamon.com
                emelvin@barclaydamon.com

12