UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IVAN ANTONYUK; COREY JOHNSON; ALFRED TERRILLE;
JOSEPH MANN; and LAWRENCE SLOAN,                                    1:22-CV-0986
                                                                                            (GTS/CFH)
                                                      Plaintiffs,

v.

STEVEN G. JAMES, in his Official Capacity as Acting
Superintendent of the New York State Police;[1] JUDGE MATTHEW
J. DORAN, in His Official Capacity as Licensing-Official of
Onondaga County; WILLIAM FITZPATRICK, in His Official
Capacity as the Onondaga County District Attorney; TOBIAS J.
SHELLEY, in his Official Capacity as the Sheriff of Onondaga
County; MARK RUSIN, in his Official Capacity as the Chief of
Police of Syracuse;[2] LEE C. KINDLON, in his Official Capacity as
the District Attorney of Albany County;[3] ANTHONY J.
DiMARTINO, JR., in his Official Capacity as the District Attorney
of Oswego County; and DON HILTON, in his Official Capacity as
the Sheriff of Oswego County,

                                                      Defendants.
_____

APPEARANCES:                                           OF COUNSEL:

STAMBOULIEH LAW, PLLC                         STEPHEN D. STAMBOULIEH, ESQ.
        Counsel for Plaintiffs
P.O. Box 428
Olive Branch, MS 38654

_____

[1]        The Clerk of Court is directed to automatically substitute Steven G. Hames for Steven A.
Nigrelli as a Defendant in this action, pursuant to Fed. R. Civ. P. 25(d).

[2]        The Clerk of Court is directed to automatically substitute Mark Rusin for Joseph Cecile
as a Defendant in this action, pursuant to Fed. R. Civ. P. 25(d).

[3]        The Clerk of Court is directed to automatically substitute Lee C. Kindlon for David
Soares as a Defendant in this action, pursuant to Fed. R. Civ. P. 25(d).

WILLIAM J. OLSON, P.C.                     ROBERT J. OLSON, ESQ.
   Co-Counsel for Plaintiffs
370 Maple Avenue W, Suite 4
Vienna, VA 22180

HON. LETITIA A. JAMES                      JAMES M. THOMPSON, ESQ.
Attorney General for the State of New York TIMOTHY P. MULVEY, ESQ.
   Counsel for the State Defendants       Assistants Attorney General
The Capitol                                ALEXANDRIA TWINEM, ESQ.
Albany, NY 12224                           Assistant Solicitor General

BARCLAY DAMON LLP                          EDWARD G. MELVIN, ESQ.
   Counsel for Oswego County Defendants   JOHN JOSEPH PELLIGRA, ESQ.
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202

HON. SUSAN R. KATZOFF                       TODD M. LONG, ESQ.
Corporation Counsel for the City of Syracuse DANIELLE R. SMITH, ESQ.
   Counsel for City of Syracuse Defendants DARIENN BALIN, ESQ.
233 East Washington Street                 Assistants Corporation Counsel
300 City Hall
Syracuse, NY 13202

ONONDAGA COUNTY DEPT. OF LAW               JOHN E. HEISLER, JR.
   Counsel for Onondaga County Defendants Deputy County Attorney
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, NY 13202

HON. JEFFERY JAMISON                       MICHAEL L. GOLDSTEIN ESQ.
Albany County Attorney                     PHILIP BANASZEK, ESQ.
   Counsel for Defendant Kindlon          Assistants County Attorney
112 State Street, Room 600
Albany, NY 12207

THE TOWNE LAW FIRM, P.C.                   JOHN W. LIGUORI, ESQ.
   Co-counsel for Defendant Kindlon
500 New Karner Road
P.O. Box 15072
Albany, NY 12212

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this civil rights action filed by the five above-captioned individuals ("Plaintiffs") against the eight above-captioned employees of the State of New York or one of its counties or cities, is the motion of Anthony J. DiMartino, Jr., and Don Hilton ("Oswego Defendants") for judgment on the pleadings with regard to Plaintiff Joseph Mann's claims against them pursuant to Fed. R. Civ. P. 12(c).   (Dkt. No. 149.)   For the reasons set forth below, the Oswego Defendants' motion is construed as properly arising under Fed. R. Civ. P. 12(h)(3), and that motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Relevant Procedural History

Generally, in the Complaint, Plaintiff Mann asserts claims against the Oswego Defendants under 42 U.S.C. § 1983, challenging numerous provisions of New York Concealed Carry Improvement Act ("CCIA") primarily on Second Amendment grounds.   (*See generally* Dkt. No. 1.)

Generally, in its Decision and Order of November 10, 2022, the Court found that Plaintiff Mann had standing to assert challenges to various of those provisions, including paragraph "(n)" of N.Y. Penal Law §§ 265.01-e(2), which prohibited carrying a firearm in "any place, conveyance, or vehicle used for public transportation or public transit, subway cars, train cars, buses, ferries, railroad, omnibus, marine or aviation transportation; or any facility used for or in connection with service in the transportation of passengers, airports, train stations, subway and rail stations, and bus terminal."   (*See generally* Dkt. No. 78.)   Furthermore, the Court preliminary enjoined the enforcement of various of those provisions, including paragraph "(n)." (*Id*. at 182-84.)

3

In their appeal, the State Defendants expressly stated in a footnote that they did "not appeal the injunction as it applies to . . . privately chartered vans and buses, which are the only forms of ground transportation mentioned in the complaint . . . and in the district court's standing analysis . . . ." *Antonyuk v. Nigrelli*, No. No. 22-2908, Brief for Appellants Nigrelli and Doran, at 61, n.14 (2d Cir. filed Jan. 9, 2023).   The reason they did not do so, stated the State Defendants, was as follows, in pertinent part:

> The CCIA does not apply to private buses or vans. . . . The scope of the provision is confirmed by the canons of *noscitur a sociis* and *ejusdem generis*, because the examples of transportation referenced in the relevant statutory provision are forms of public transportation; none are exclusively private transportation. . . .
>     And the injunction does not apply to buses used in public transit. The district court correctly stated that 'Metropolitan Transportation Authority buses are not an issue in this action.' . . . . Nothing in the opinion suggests that plaintiffs had standing to challenge the restriction as to any public-transit system. . . . .

No other Defendant did so either.   *Antonyuk v. James*, 120 F.4th 941, 960 (2d Cir. 2024) ("The State challenged each aspect of the injunction except for the portion concerning the CCIA's application to buses and airports. No Plaintiff cross-appealed or otherwise challenged any aspect of the district court's decision adverse to them.").

In its decision, the Second Circuit did not expressly analyze, or opine on, the issue of New York's firearm carry ban on "busses" or "vans."   *See generally Antonyuk*, 120 F.4th at 941-1048.   Nonetheless, the Second Circuit vacated the injunction in "all . . . respects" other than with regard to (1) social media disclosure, (2) private property held open to the general public, and (3) places of worship (i.e., it vacated the injunction with regard to the Fellowship Baptist Church bus).   *Antonyuk*, 120 F.4th at 1048.

### B.    Summary of Parties' Arguments

### 1.    Oswego Defendants' Opening Memorandum of Law

Generally, in their memorandum of law, the Oswego Defendants argue that Plaintiff Mann lacks standing to challenge any portion of the CCIA's restriction on Firearm Possession in "sensitive locations."  (Dkt. No. 149, Attach. 2, at 13.)[4]   More specifically, the Oswego Defendants assert six arguments.   (*Id.*)

First, the Oswego Defendants argue, Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession in "places of worship" as a result of its amendment on May 3, 2023.   (*Id.* at 16-17.)

Second, the Oswego Defendants argue, Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession in "theaters, conference centers, and banquet halls" because the Fellowship Baptist Church is not a "banquet hall."   (*Id.* at 18-20.)

Third, the Oswego Defendants argue, Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at First Amendment gatherings because worship services and religious assemblies do not fall within the legislature's intended definition of N.Y. Penal Law § 265.01-e(2)(s).   (*Id.* at 20-23.)

Fourth, the Oswego Defendants argue, Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at "any place, conveyance, or vehicle used for public transportation or public transit . . ." as stated in paragraph "(n)" of N.Y. Penal Law § 265.01-e(2), because, as a matter of statutory interpretation, a van or bus privately owned by the

---

[4]     The Court notes that page citations in this Decision and Order refer to the screen numbers on the Court's Case Management/Electronic Case Filing ("CM/ECF") System, not to the page numbers stated on the documents contained therein.

Fellowship Baptist Church is not even arguably covered by this paragraph, which expressly prohibits firearms only on types of mass "*public transportation or public transit*."   (*Id*. at 23-24.)   In support of this argument, the Oswego Defendants argue that the Court's understanding of the former phrase should be informed by "the company the phrase keeps," which requires the Court to consider the phrase's accompanying list of eight types of transportation: "subway cars, train cars, buses, ferries, railroad, omnibus, marine or aviation transportation."   (*Id*. at 24.) Alternatively, the Oswego Defendants argue, Plaintiff Mann fails to allege facts plausibly suggesting that he will personally carry a concealed weapon on his church bus or van when it is being used in public (to transport church members, their youth, and members of the public) in violation of the CCIA.   (*Id*. at 24-25.)

Fifth, the Oswego Defendants argue, Plaintiff Mann lacks standing to challenge the CCIA's restriction on firearm possession at "any location providing health, behavioral health, or chemical dependence care services" because the Fellowship Baptist Church does not fall within the legislature's intended definition of N.Y. Penal Law § 265.01-e(2)(b).   (*Id*. at 25-28.)

Sixth, the Oswego Defendants argue, Plaintiff Mann lacks standing to challenge the CCIA's restrictions on firearm possession in any "sensitive location" because his intended carriage is lawful under the newly amended version of the CCIA.   (*Id*. at 28-29.)

### 2.    Plaintiff Mann's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff Mann asserts three arguments. (Dkt. No. 157.)   First, Plaintiff Mann argues, it opposes only the Oswego Defendants' fourth argument (regarding "any place, conveyance, or vehicle used for public transportation or public transit," specifically buses), effectively consenting to the Oswego Defendants' remaining five arguments.   (*Id*. at 3, 5.)

Second, Plaintiff Mann argues that, with regard to the Oswego Defendants' fourth argument, the Oswego Defendants impermissibly attempt to read words into or out of the statute for the following reasons: (a) the Court has already rejected the Oswego Defendants' argument that the word "public" modifies all of the words in paragraph "(n)" of N.Y. Penal L. § 265.01-e(2), reasoning that the regulation lacks the words "such as" between the words "any . . . vehicle used for public transportation or public transit," and the words "subway cars, train cars, buses . . ."; (b) because no Defendant appealed that part of this Court's Decision and Order, the Second Circuit did not opine on, or reject, this Court's conclusion regarding this provision;[5] and (c) left without support in the text, the Oswego Defendants attempt to improperly rely on legislative intent, which cannot override the text actually enacted.   (*Id*. at 5-9.)

Third, Plaintiff Mann argues, in any event, his church bus would, in fact, qualify as a form of "public transportation" under the CCIA, because that bus is treated by state law in the same way as other "public" buses.   (*Id.* at 8.)

### 3.    Oswego Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the Oswego Defendants assert four arguments.  (Dkt. No. 158.)   First, the Oswego Defendants argue, because Plaintiff Mann opposes only the Oswego Defendants' fourth argument, the Court should accept the Oswego Defendants' other five arguments.   (*Id*. at 3.)   Indeed, the Oswego Defendants argue, because Plaintiff Mann sets forth arguments with regard to only the church bus (and not also the church van), the Court should accept the Oswego Defendants' fourth argument with regard to vans.

---

[5]    Plaintiff Mann alternatively argues that, even if the preliminary injunction as to his church bus had been vacated (which he disputes), that fact would not require the dismissal of that claim because the Court may still provide permanent relief on that claim at the appropriate time. (Dkt. No. 157, at 4, n.2.)

(*Id*. at 3, n.1.)

Second, the Oswego Defendants argue that the Second Circuit vacated the injunction with regard to the church bus because Plaintiff Mann lacked standing.   (*Id*. at 5-7.)   Most notably, the Oswego Defendants argue that the reason that no Defendant appealed that part of this Court's Decision (and Order and the Second Circuit did not expressly opine on it) is that, in their appellate brief, the State Defendants expressly conceded that "[t]he CCIA does not apply to private buses or vans."   (*Id*.)   The Oswego Defendants further argue that, apparently agreeing that the CCIA does not apply to privately owned vehicles, the Second Circuit vacated the injunction in "all . . . respects" other than with regard to (1) social media disclosure, (2) private property held open to the general public, and (3) places of worship (i.e., it vacated the injunction with regard to the Fellowship Baptist Church bus).   (*Id.*)

Third, the Oswego Defendants' interpretation of the relevant statutory language is concurrent with the analysis undertaken by the Second Circuit in its amended opinion.   (*Id*. at 7-12.)   Most notably, the Oswego Defendants argue that, even setting aside the above-referenced concession, their interpretation of the relevant statutory language is supported by the use of the canon of statutory construction *noscitur a sociis* (requiring that the meaning of an unclear word or phrase be determined by the words immediately surrounding it).   (*Id*. at 7-9.)   The Oswego Defendants also argue that their interpretation is consistent with (a) the CCIA's central objective (to prohibit firearm possession in publicly owned and operated locations and areas where large numbers of people are likely to gather), (b) the CCIA's general practice of expressly distinguishing between "public" and "private" locations where intended, and (c) the Supreme Court's admonition against "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement . . . ."   (*Id*. at 10-12.)

Fourth, the Oswego Defendants argue, Plaintiff Mann has failed to address their argument that the version of the CCIA that was amended on May 3, 2023, permits him to carry his firearm to provide security and protection to his congregation while on church property (including its bus), rendering his claim moot.   (*Id*. at 12-13.)

## II.    GOVERNING LEGAL STANDARD

Although the Oswego Defendants cast their motion as one for judgment on the pleadings arising under Fed. R. Civ. P. 12(c), it is "proper[ly]" construed as one to dismiss for lack of subject-matter jurisdiction under either Fed. R. Civ. P. 12(b)(1) or 12(h)(3).   *See Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co*., 436 F.3d 82, 88, n.6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1) . . . , the proper procedural route is a motion under Rule 12(b)(1). . . . Presenting and considering a challenge to lack of Article III standing under Rule 12(b)(1) avoids the needs to fashion a modified approach to a Rule 12(b)(6) motion that concerns standing [so that the court may render findings of fact].") (citations omitted).

Indeed, the Oswego Defendants' prior attempt to challenge Plaintiff Mann's claims against them based on a lack of standing was cast as one to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).   (Dkt. No. 46.)   Although the subsequent filing of an Answer rendered Fed. R. Civ. P. 12(b)(1) "technically no[] [longer] the correct procedural vehicle" for a renewed such motion for lack of subject-matter jurisdiction, it did nothing to render Fed. R. Civ. P. 12(h)(3) unavailable.   *Greystone Bank v. Tavarez*, 09-CV-5192, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) ("[T]he Court notes that, because Defendant has answered, a 12(b)(1) motion is technically not the correct procedural vehicle for its challenge to the Court's subject matter jurisdiction.   However, Fed. R. Civ. P. 12(h)(3) provides that '[i]f the

court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'"   Other than the ability to be filed after an Answer, the distinction between a motion filed under Fed. R. Civ. P. 12(b)(1) and one filed under Fed. R. Civ. P. 12(h)(3) is "largely academic."   *Greystone Bank*, 2010 WL 3325203, at *1 ("Accordingly, the Court will construe the motion as a motion pursuant to Rule 12(h)(3).   Except for the pre-answer limitation on Rule 12(b)(1) motions, the distinction between a Rule 12(b)(1) motion and a Rule 12(h)(3) motion is largely academic, and the same standards are applicable to both types of motions.").

Generally, a challenge to standing can be either "facial" (i.e., based solely on the complaint and the documents attached to it) or "fact-based" (i.e., based also on record evidence outside the pleadings).   *See Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ("A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based.").   In addition, the standing that is challenged can be either "constitutional" in nature (arising under Article III of the Constitution) or "prudential" in nature.   *See Warth v. Seldin,* 422 US 490, 498, 95 S. Ct. 2197 (1975) ("[Standing asks] whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues . . . This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.").

Where (as here) a defendant asserts a facial challenge based on lack of constitutional standing, the plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest the plaintiff has standing to sue in federal court.   *See Carter*, 822 F.3d at 56 ("When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden . . . . The task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly

suggest that the plaintiff has standing to sue.") (internal quotation marks and citation omitted).

However, when deciding such a challenge, the court must not only accept as true all material factual allegations in a complaint but draw all reasonable inferences in favor of the plaintiff. *See John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) ("When the defendant asserts a 'facial' challenge to standing, therefore, it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor and are to presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal quotation marks omitted); *Carter,* 822 F.3d at 57 ("On appeal, we review the district court's decision on such a facial challenge de novo, . . . accepting as true all material factual allegations of the complaint . . . , and drawing all reasonable inferences in favor of the plaintiff.") (internal quotation marks and citations omitted); *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("When (as here) a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff.").

## III.    ANALYSIS

All of the Oswego Defendants' arguments challenge Plaintiff Mann's standing. Generally, "a plaintiff has Article III standing to bring a pre-enforcement challenge to a criminal statute if he or she can demonstrate: (1) an intention to engage in a course of conduct arguably affected with a constitutional interest; (2) that the intended conduct is proscribed by the challenged law; and (3) that there exists a credible threat of prosecution thereunder." *Antonyuk v. James*, 120 F.4th 941, 1004 (2d Cir. 2024) (internal quotation marks omitted).   In applying this standard, "courts are to consider whether the plaintiff's intended conduct is *arguably* proscribed by the challenged statute, not whether the intended conduct is *in fact* proscribed."

*Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (internal quotation marks omitted).    Thus, "if a plaintiff's interpretation of a statute is reasonable enough[,] and under that interpretation, the plaintiff may legitimately fear that it will face enforcement of the statute, then the plaintiff has standing to challenge the statute." *Picard*, 42 F.4th at 98.

### A.    All Arguments Other than Those Regarding N.Y. Penal Law § 265.01-e(2)(n)

The Court accepts all of the Oswego Defendants' arguments other than those regarding N.Y. Penal Law § 265.01-e(2)(n) for the first reason set forth in the Oswego Defendants' reply memorandum of law (i.e., Plaintiff Mann's failure to oppose those arguments).    *See, supra,* Part I.B.3. of this Decision and Order.

Generally, in this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.    *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

Here, the Court finds at least facial merit to each of these unopposed arguments for the reasons set forth in the Oswego Defendants' opening memorandum of law.    *See, supra,* Part I.B.1. of this Decision and Order.

B.    **Arguments Regarding N.Y. Penal Law § 265.01-e(2)(n)**

    1.    **Arguments Other than Those Regarding Concession, Vacatur and Statutory Construction**

The Court begins by observing that it is not persuaded by the alternative argument set forth in the Oswego Defendants' opening memorandum of law (i.e., that Plaintiff Mann has failed to allege facts plausibly suggesting that he will personally carry a firearm on his church bus or van when it is being used in public in violation of the CCIA). *See, supra,* Part I.B.1. of this Decision and Order. Granted, previously the Court found that Plaintiff Mann does not *expressly* allege that he has routinely carried his licensed handgun concealed *while* riding on his church bus in public. (Dkt. No. 78, at 59.) However, the Court hastened to add that it "finds that inference to be reasonable based on his other sworn assertions (including his assertion that he considers it his duty to "protect [his] congregation, including [its] children," and his assertion that he "frequently ha[s] traveled to the homes of persons addicted to drugs" as part of his addiction-recovery ministry and has "carried [his] firearm" when doing so)." (*Id.*)

Similarly, the Court is not persuaded by the fourth argument set forth in the Oswego Defendants' reply memorandum of law (i.e., that the May 2023 amendment to the CCIA creates an exception for Plaintiff Mann to carry his firearm to provide security and protection to his congregation while on church property including its bus, rendering his claim moot). *See, supra,* Part I.B.3. of this Decision and Order. The CCIA's "except[ion] for those persons responsible for security" is expressly limited to their possession of a firearm "at any place of worship." N.Y. Penal Law § 265.01-e(2)(c). Under the circumstances, the Court need not rely on the fact that, under New York State law, the term "place of worship" generally appears to refer to a

building or structure at a fixed location.[6]   More important is the fact that the very provision at

issue in the Oswego Defendants' motion (regarding public transportation) expressly

distinguishes between "place[s]" and "vehicle[s].   *See* N.Y. Penal Law § 265.01-e(2)(n) ("any

place, conveyance, or vehicle used for public transportation or public transit . . .") (emphasis

added).   In any event, Plaintiff Mann does not allege that he intends to use the bus as a place of

worship; rather, he alleges that he uses the bus "to take church members, youth, and members of

the public with [him] when [he] travel[s]," including for "church business to travel to various

locations," as well as "hypothetically . . . to go on a hunting trip, or to the shooting range," or "on

a skeet shooting trip . . . ."   (Dkt. No. 1, at ¶¶ 98, 195; Dkt. No. 1, Attach. 9, at ¶ 33.)[7]

## 2.    Arguments Regarding Concession and Vacatur

A closer question is presented by the second argument presented in the Oswego

Defendants reply memorandum of law (i.e., that, in their appellate brief, the State Defendants

expressly conceded that "[t]he CCIA does not apply to private buses or vans," and that the

Second Circuit must have agreed with that concession because it vacated the portion of the

preliminary injunction that regarded the church bus and van), but ultimately the Court has

---

[6]    *See, e.g.,* N.Y. Alc. Bev. Con. § 64(7)(a) ("No retail license for on-premises consumption shall be granted for any premises which shall be . . . on the same street or avenue and within two hundred feet of a building occupied exclusively as a school, church, synagogue or other place of worship . . . ."); *Winterton Properties, LLC v. Town of Mamakating Zoning Bd. of Appeals*, 132 A.D.3d 1141, 1142 (N.Y. App. Div., 3d Dep't 2015) (defining a "neighborhood place of worship" as meaning "a building or location set aside in a certain area for any form of religious devotion, ritual, or service showing reverence"); *cf. Geisinsky v. Village of Kings Point*, 226 A.D.2d 340, 341 (N.Y. App. Div., 2d Dep't 1996) (holding that "a tent temporarily erected" for Yom Kippur services was not a "house of worship" within the meaning of a village code).

[7]    The Court notes that Plaintiff Mann's declaration was both attached to and incorporated by reference in his Complaint.

trouble relying on that argument.   *See, supra,* Part I.B.3. of this Decision and Order.[8]

The State Defendants' concession narrowly interpreting N.Y. Penal Law § 265.01-e(2)(n) during the course of this litigation does not destroy Plaintiff Mann's standing, because nothing (including the doctrine of judicial estoppel) prevents the State Defendants from changing their view of the law.   *See Vermont Right to Life Committee v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) ("The State also argues that VRLC's fear of suit could not possibly be well-founded because the State has no intention of suing VRLC for its activities. While that may be so, there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation."); *accord, Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1192-93 (10th Cir.2000) (citing *Vt. Right to Life* when rejecting the state's reliance on its representation that the plaintiffs will not be prosecuted).

Similarly, under the circumstances, the Second Circuit's vacatur concerning the church bus and van does not destroy Plaintiff Mann's standing.   Of course, generally, a federal circuit court may vacate a portion of a preliminary injunction that was never challenged on appeal (i.e., *sua sponte*) if (1) its jurisdiction has been triggered by an appellate challenge to other portions of that preliminary injunction, and (2) the challenged portions are inextricably intertwined with the unchallenged portion (such that a review of the unchallenged portion is necessary to ensure a

---

[8]     The Court notes that is so even though the Oswego County Defendants have made a similar concession on their current motion.   (*See* Dkt. No. 149, Attach. 2 [Oswego Defs.' Memo. of Law, arguing that "as a matter of statutory interpretation, a van or bus privately owned by the Fellowship Baptist Church is not even arguably covered by this paragraph, which prohibits firearms on types of mass public transportation or public transit"] [internal quotation marks omitted].)

meaningful review of the challenged portions).   *S.E.C. v. Smith*, 710 F.3d 87, 94 (2d Cir. 2013).

However, when a federal circuit court does not state its grounds for vacating an unchallenged

portion of the preliminary injunction, generally it would be imprudent for a district court on

remand to infer those grounds.   *Cf. Matter of Fed. Bureau of Prisons' Execution Protocol

Cases*, 485 F. Supp.3d 233, 240 (D.D.C. 2020) ("[I]t would be improper for the court to interpret

the Supreme Court's vacatur as an indication of how this court should resolve the dispute on the

merits.").   This is because a circuit court's vacatur can have been based on other grounds,

including the likelihood of success, irreparable harm, balance of equities, public interest, an

intervening change of controlling law, or simply to allow the district court to reconsider the

matter in light of the circuit court's other holdings.   Here, the most the Second Circuit indicated

on the subject was that it had "concluded either that the district court lacked jurisdiction because

no plaintiff had Article III standing to challenge the laws *or that the challenged laws do not

violate the Constitution on their face*."   *Antonyuk v. James*, 120 F.4th 941, 1048 (2d Cir. 2024)

(emphasis added).   Simply stated, the Court would be hazarding a guess akin to flipping a coin

if it were to apply the law-of-the-case doctrine (or specifically, the mandate rule) to the issue of

Plaintiff Mann's standing to challenge N.Y. Penal Law § 265.01-e(2)(n).

### 3.    Arguments Regarding Statutory Construction

However, having said all of that, the Court largely accepts the threshold argument set

forth in the Oswego Defendants' opening memorandum of law and the third argument set forth

in their reply memorandum of law (i.e., that a careful construction of the statute requires a

finding that it does not apply to Plaintiff Mann's church bus or van).   *See, supra,* Parts I.B.1.

and I.B.3. of this Decision and Order.

Before conducting a statutory construction, the Court must first consider whether the

statutory text is clear on its face.   In its entirety, N.Y. Penal Law § 265.01-e(2)(n) provides as

follows: "For the purposes of this section, a sensitive location shall mean . . . any place,

conveyance, or vehicle used for public transportation or public transit, subway cars, train cars,

buses, ferries, railroad, omnibus, marine or aviation transportation; or any facility used for or in

connection with service in the transportation of passengers, airports, train stations, subway and

rail stations, and bus terminals."

Thus, the sentence begins with a definitional phrase ("any place, conveyance, or vehicle

used for public transportation or public transit") then immediately proceeds to a list of nouns

("subway cars, train cars, buses, ferries, railroad, omnibus, marine or aviation transportation"),

each of which refers to places, conveyances or vehicles that may be public in nature (potentially

rendering the list grammatically redundant), and some of which refer to places, conveyances or

vehicles that may be private in nature (rendering the list ambiguous).[9]  Moreover, the lack of a

syntactic marker (e.g., "such as," "including," "specifically," or a colon) between the definitional

phrase and the list of nouns obscures whether the listed nouns are intended to function as

examples falling within the scope of the definitional phrase (whether exhaustive or merely

illustrative in nature) or independent nouns subject to a different scope.   For these reasons, the

language is reasonably susceptible to more than one meaning and in need of statutory

interpretation.[10]

---

[9]      Specifically, private "buses," "marine [transportation]," and "aviation transportation"
exist in New York State.   Indeed, it appears arguable that private "ferries," "railroads," and
"train cars" also exist in New York State.

[10]      Under the circumstances, the Court need not rely on the fact that the sentence does not
make clear whether the word "any" modifies only the immediately following nouns ("place,
conveyance, or vehicle used for public transportation or public transit") or whether it also
governs the subsequently listed nouns, which themselves vary in grammatical number and form,

Here, the Court finds it appropriate to begin its statutory interpretation by considering the application of the "commonsense" canon of *noscitur a sociis*.[11]    2A Sutherland Statutory Construction § 47.16 (7th ed.); *see, e.g., Antonyuk v. James*, 120 F.4th 941, 1036 (2d Cir. 2023) ("Our intuitive understanding is confirmed by an examination of the company the phrase keeps.").    "Noscitur a sociis means literally 'it is known from its associates,' and means practically that a word may be defined by an accompanying word, and that, ordinarily, the coupling of words denotes an intention that they should be understood in the same general sense."    2A Sutherland Statutory Construction § 47.16 (7th ed.).

In arguing that the canon of *noscitur a sociis* applies, the Oswego Defendants ask the Court to rely on the Second Circuit's examination of the company kept by the specific term "banquet halls" after the general term "any place used for . . . performance, art entertainment,

---

alternating between plural nouns ("subway cars," "train cars," "buses," "ferries"), singular nouns ("railroad," "omnibus"), and abstract nouns ("marine or aviation transportation"). The Court also need not rely on the fact that the list terminates irregularly, lacking a coordinating conjunction before the compound phrase "marine or aviation transportation."

[11]    The Court notes that, in their Appellate Brief, the State Defendants expressly relied also on the related canon of *ejusdem generis*.    "*Ejusdem generis* means 'of the same kind,' and is a variation of the maxim *noscitur a sociis*.    *Ejusdem generis* instructs that, where general words follow specific words in an enumeration describing a statute's legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.").    2A *Sutherland Statutory Construction* § 47.17 (7th ed.).    Granted, the canon of *ejusdem generis* can apply where, as here, the general term *precedes* (not follows) the specific enumeration.    *Id*. ("The doctrine applies equally to the opposite sequence, i.e., specific words following general ones, to restrict application of the general terms to things that are similar to those enumerated.").    However, the Court has been unable to find any cases applying the doctrine so as to restrict, limit or narrow the construction of the *specific* words or terms in a statute (in light of the *general* words or terms in a statute), as desired by the Oswego County Defendants here; rather, the doctrine appears to be properly applied only to restrict, limit or narrow the construction of the *general* words or terms (in light of the *specific* words or terms). This makes sense given that the express focus of the doctrine appears to be on determining what unlisted terms are "of the same kind" as the general terms (in light of the specific terms listed).

18

gaming, or sporting events" in N.Y. Penal Law § 265.01-e(2)(p).   (Dkt. No. 158, at 9.)

Granted, the Court has some trouble relying on that examination, because the specific term in §

265.01-e(2)(p) is expressly prefaced by the syntactic marker "such as" – which is conspicuously

missing from N.Y. Penal Law § 265.01-e(2)(n).   *Antonyuk*, 120 F.4th at 1036.[12]   However, the

Court has no trouble relying on the Second Circuit's application of the canon of *noscitur a sociis*.

This is because both of the cases relied on by the Second Circuit involved the construction of

particular terms in light of other particular terms (not the construction of particular terms in light

of a general term followed by the syntactic marker "such as").   *Id.* (citing *Homaidan v. Sallie*

*Mae, Inc.*, 3 F.4th 595, 604 [2d Cir. 2021] and *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624,

634-35 [2012]).[13]

Turning to an application of the canon *noscitur a sociis* then, here, the disputed noun

"buses" appears alongside the nouns "subway cars," "train cars," "ferries," "railroad,"

"omnibus," "marine [transportation]," and "aviation transportation."   As stated above, each of

these eight nouns refers to a place, conveyance, or vehicle of transportation that may be public in

---

[12]    The Court believes that the syntactic marker "such as" (like the syntactic markers "for example" or "including") were not used in N.Y. Penal Law § 265.01-e(2)(n) because the list of nouns appears to be exhaustive.   Instead, the syntactic markers "specifically" or "in particular" could have been used to introduce that exhaustive list.   The use of such a syntactic marker would have obviated the need to invoke the canon of *ejusdem generis*.   *Cf. Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 280 (3d Cir. 1995) ("But the rule of *ejusdem generis* applies only if the provision in question does not express a contrary intent. . . .   Thus, since the phrase 'including, but not limited to' plainly expresses a contrary intent, the doctrine of *ejusdem generis* is inapplicable.") (citations omitted).

[13]    Specifically, in *Homaidan*, the Second Circuit relied on the canon of *noscitur a sociis* to restrictively construe the term "educational benefit" in accordance with its accompanying terms "scholarship" and "stipend."   *Homaidan*, 3 F.4th at 604.   Similarly, in *Freeman*, the Second Circuit relied on the canon of *noscitur a sociis* to restrictively construe the terms "portion" and "percentage" in accordance with the intervening term "split."   *Freeman*, 566 U.S. 624, 634-35 (2d Cir. 2012).

nature; and, indeed, one of the eight nouns ("subway cars") refers to a vehicle that is clearly exclusively public in nature.   Moreover, none of these eight nouns refers to a place, conveyance, or vehicle of transportation that is exclusively private in nature.   Granted, the Court is given pause by the fact that three (and arguably six) of the eight nouns refers to place, conveyance, or vehicle of transportation that may be private in nature.   *See, supra,* note 9 of this Decision and Order).   However, the Court finds the case of *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), to be instructive.

In *Gustafson,* the Supreme Court interpreted the term "communication" in § 2(10) of the Securities Act of 1933 to refer to a *public* communication, rather than *any* written communication (i.e., public or private), because the term "communication" appeared in a list along with the terms "prospectus, notice, circular, advertisement, [or] letter," each of which "apparent[ly] . . . refer[red] to documents of wide dissemination." *Gustafson*, 513 U.S. at 575-76. The Supreme Court rendered that finding even though the term "letter" could obviously refer to a document of wide *or narrow* dissemination in a different context – just as the terms "buses," "marine [transportation]," and "aviation transportation" could refer to public *or private* means of transportation in a different context.

The Supreme Court did so because it is attention to the *current* context that is demanded by the canon of *noscitur a sociis.*   And, in the current context, not only do all eight nouns in N.Y. Penal Law § 265.01-e(2)(n) refer to a place, conveyance, or vehicle of transportation that may be public in nature, but all eight nouns are immediately preceded by the definitional phrase "any . . . vehicle used for public transportation or public transit."   As a result, upon further reflection, the Court finds that a careful examination of the noun "buses" in light of its accompanying language favors an interpretation of "buses" as meaning "public buses" rather

20

than "public or private buses," as if the entire list of eight nouns had been preceded by the syntactic marker "specifically" (or perhaps "such as" if the list were not intended to be exhaustive).

Such a construction is consistent with the "elementary rule" of statutory construction that "effect must be given, if possible, to every word . . . of a statute."   *See* 2A *Sutherland Statutory Construction* § 46.6 (7th ed.) ("It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute. Courts construe a statute to give effect to all its provisions, so that no part is inoperative or superfluous . . . , unless a provision is the result of obvious mistake or error.") (internal quotation marks and footnotes omitted).   This is because, if the Court were to interpret N.Y. Penal Law § 265.01-e(2)(n) as if the syntactic marker "specifically" (or perhaps "such as") were *not* implied before the list of eight nouns (which appear to encompass *all* of the any place, conveyance, or vehicle of transportation that may be public in nature in New York State), then the definitional phrase "any . . . vehicle used for public transportation or public transit" would be rendered grammatically redundant or superfluous.

Such a construction is also consistent with the "cardinal rule" of statutory construction that "the general purpose, intent or purport of the whole act shall control, and that all the parts are subsidiary and harmonious to its manifest object, and if the language is susceptible of two constructions, one which will carry out and the other defeat such manifest object, it should receive the former construction."   *See* 2A *Sutherland Statutory Construction* § 46.5 (7th ed.). This is because N.Y. Penal Law § 265.01-e(2)(n) does not merely list "any place, conveyance, or vehicle used for public transportation or public transit, subway cars, train cars, buses, ferries, railroad, omnibus, marine or aviation transportation"; it also lists "any facility used for or in

21

connection with service in the transportation of passengers, airports, train stations, subway and rail stations, and bus terminals."   With the exception of "airports," all of the five facilities listed appear exclusively public in nature.   As a result, reading the earlier list of places, conveyances, or vehicles as including private vehicles would appear to introduce an inconsistency between the statute's treatment of places, conveyances, or vehicles and its treatment of facilities.

Finally, the Court must address Plaintiff Mann's third argument in his opposition memorandum of law (i.e., that his church bus would, in fact, qualify as a form of "public transportation" under the CCIA, because that bus is treated by state law in the same way as other "public" buses).   *See, supra,* Part I.B.2. of this Decision and Order.   Even if the Court were to accept Plaintiff Mann's representation that the church must register its bus with the state pursuant to Article 19-A of the N.Y. Veh. & Traf. Law,[14] that fact (even when combined with the fact that the church bus transports some members of the public on church business or recreational trips) does not mean that the church bus is arguably a vehicle used for "public transportation" for purposes of the N.Y. Penal Law.

Article 19-A of the N.Y. Veh. & Traf. Law primarily addresses driver qualification and safety requirements. *See, e.g.,* N.Y. Veh. & Traf. Law § 509-b (establishing qualification

---

[14]    *See* N.Y. Veh. & Traf. Law § 509-a(1) ("[B]us shall mean every motor vehicle, owned, leased, rented or otherwise controlled by a motor carrier, which . . . has a seating capacity of more than ten adult passengers in addition to the driver and which is used for the transportation of persons under the age of twenty-one or persons of any age who are mentally or physically disabled to a place of . . . religious instruction or religious service including . . . camps . . . ."); N.Y. Veh. & Traf. Law § 509-a(3) ("[M]otor carrier shall mean any person . . . or entity, public or private, who directs one or more bus drivers and who operates a bus wholly within or partly within and partly without this state . . . in the operation or administration of any . . . place of . . . religious instruction or religious service for persons under the age of twenty-one or persons of any age who are mentally disabled . . . ."). For the sake of brevity, the Court will assume that it may take judicial notice of Form CDL-15 from the New York State Department of Motor Vehicles website under Fed. R. Evid. 201.

standards, including requirements that bus drivers possess valid driver's licenses or permits, pass physical examinations, and not be disqualified under the statute); N.Y. Veh. & Traf. Law § 509-c (addressing disqualification of bus drivers generally); N.Y. Veh. & Traf. Law § 509-d (addressing qualification procedures for bus drivers, maintenance of files and availability to subsequent employers); N.Y. Veh. & Traf. Law § 509-e (requiring annual review of driving record); N.Y. Veh. & Traf. Law § 509-k (prohibiting ill or fatigued operators).

In contrast, the N.Y. Penal Law generally treats term "public transportation" as meaning a transportation service held out to the general public for a fee such as a service operated by a common carrier.   *See New York v. Correa,* 643 N.Y.S.2d 310, 312 (Crim. Ct., City of N.Y., Richmond Cnty. 1996) (referring to "public transportation" as something that requires "fares," and citing as examples "the Staten Island Rapid Transit Railroad," "the Staten Island Ferry," and the "subway . . . in Manhattan"); *New York v. Bridgman*, 622 N.Y.S.2d 431, 433 (City Ct., City of Canandaigua, N.Y. 1995) (equating a defendant's access to "public transportation" to his access to a "taxi service" in evaluating "extreme hardship"); *New York v. Lee*, 336 N.Y.S.2d 18, 22 (Crim. Ct., City of N.Y., N.Y. Cnty. 1972) ("[A] private limousine service is not a public transportation service within the meaning of the Penal Law [§ 165.15(3), which proscribes the theft of services] since unlike the enumerated forms of transportation enunciated as public transportation [i.e., railroads, subways, buses, taxis, etc.], it is not a common carrier."); *cf.* N.Y. Penal Law. Section 240.00(2) (defining "transportation facility" as meaning "any conveyance . . . used for or in connection with *public passenger transportation* . . . includ[ing] aircraft, watercraft, railroad cars, buses, school buses" and related terminals) [emphasis added].

Here, Plaintiff Mann's Complaint and Declaration appear bereft of any allegations or assertions that the church bus either is held out to the *general* public or is so held out for a *fee*.

(Dkt. No. 1, at ¶¶ 98, 195; Dkt. No. 1, Attach. 9, at ¶ 33.) As a result, the Oswego Defendants'

motion must be, and is, granted in its entirety.

ACCORDINGLY, it is

ORDERED that the Oswego Defendants' motion to dismiss (Dkt. No. 149) is

**GRANTED**; and it is further

ORDERED that the remaining claims of Plaintiff Mann in his Complaint (Dkt. No. 1)

are **DISMISSED** without prejudice.[15]

Dated: February 23, 2026
         Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

[15]      Generally, dismissals for lack of subject-matter jurisdiction due to a lack of Article III standing must be without prejudice. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("One other wrinkle: when a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss [the] case with prejudice. . . . As a result, where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed without prejudice.") (internal quotation marks and citation omitted).