Associated Reporters Int'l., Inc.                     www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

STATE OF NEW YORK

COURT OF CLAIMS

IVAN ANTONYUK, et al,

Claimant,

V

STEVEN G. JAMES, in his Official

Capacity as Superintendant of the

New York State Police; et al,

Defendant.

_____X

DEPOSITION OF: ALFRED TERRILLE

DATE:          April 20, 2026

TIME:          9:53 a.m. to 1:01 p.m.

VENUE:         Teams

Reported by Charles Batts

Exhibit 2

800-523-7887                                          ARII@courtsteno.com

Serving all of New York State

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

APPEARANCES:

    FOR THE CLAIMANT:

        STAMBOULIEH LAW PLLC

        BY:  STEPHEN STAMBOULIEH, ESQ.

        P.O. Box 428

        Olive Branch, Mississippi 38654

    FOR THE DEFENDANT:

        OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL

        BY:  JAMES THOMPSON, A.A.G.

        28 Liberty Street

        New York, New York 10005

    FOR THE DEFENDANT:

        OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL

        BY:  TIMOTHY P. MULVEY, A.A.G.

        300 South State Street, Suite 300A

        Syracuse, New York 13202

    FOR THE COUNTY OF ALBANY:

        ALBANY COUNTY

        BY:  PHILIP BANASZEK, ESQ.

        State Harriman Campus, Room 509

        Albany, New York 12226

800-523-7887                                 ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 3

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

ALSO PRESENT:

SHALEEN SPAETH, NOTARY PUBLIC

TODD LONG, SYRACUSE REP.

JOHN HEISLER JR., ONONDOGA COUNTY REP.

800-523-7887                                      ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 4

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

                I N D E X    O F   P R O C E E D I N G S

ALFRED TERRILLE; Sworn

Direct Examination by Mr. Thompson                    12

Cross Examination by Mr. Banaszek                    103

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 5

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

E X H I B I T   I N D E X

Marked as

Described as

One                                                              29

Introductory Statement

Two                                                              30

10/14/26 Conceal Carry Permit

Three                                                            33

6/30/24 Original license

Four                                                             84

Regal Policy on firearms

Five                                                             96

Complaint

Page 6

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the respective parties hereto that:

All rights provided by the Civil Practice Law and Rules, including the right to object to any question, except as to form, or to move to strike any testimony at this examination is reserved. And, in addition, the failure to object to any question or to move to strike testimony at this examination shall not be a bar or waiver to make such motion at, and is reserved for the trial of this action;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that this examination may be sworn to by the witness being examined before a Notary Public, other than the Notary Public before whom this examination was begun, but the failure to do so, or to return the original of this examination to counsel, shall not be deemed a waiver of the rights provided by Rule 3116 and 3117 of the Civil Practice Law and Rules, and shall be controlled thereby;

IT IS FURTHER STIPULATED AND AGREED by

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 7

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

and between counsel for the respective parties hereto, that this examination may be utilized for all purposes as provided by the Civil Practice Law and Rules;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that the filing and certification of the original of this examination shall be, and the same hereby are waived;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that a copy of the within examination shall be furnished to counsel representing the witness testifying without charge;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that all rights provided by the Civil Practice Law and Rules, and Part 221 of the Uniform Rules for the Conduct of Depositions, including the right to object to any question, except as to form, or to move to strike any testimony at this examination, is reserved.  And, in addition, the failure to object to any question, or to move to strike any testimony, at this examination, shall not

800-523-7887                                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

be a bar or waiver to make such motion at, and is reserved to, the trial of this action.

IT IS HEREBY STIPULATED AND AGREED by and between counsel for all parties present that pursuant to CPLR section 3113(d) this deposition is to be conducted by video conference, that the court reporter, all counsel, and the witness are all in separate remote locations (except the witness and his counsel are in the same physical location) and participating via videoconference meeting under the control of Associated Reporters International, Inc. (ARII), that the officer administering the oath to the witness need not be in the place of the deposition and the witness shall be sworn in remotely by the court reporter after confirming the witness's identity, that this videoconference will not be recorded in any manner and that any recording without the express written consent of all parties shall be considered unauthorized, in violation of law, and shall not be used for any purpose in this litigation or otherwise.

IT IS FURTHER STIPULATED that exhibits may be marked by the attorney presenting the exhibit to the witness, and that a copy of any exhibit

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

presented to a witness shall be e-mailed to or otherwise in possession of all counsel prior to any questioning of a witness regarding the exhibit in question.  Unless otherwise agreed upon, all parties shall bear their own costs in the conduct of this deposition by video conference, notwithstanding the obligation by CPLR to supply a copy of the transcript to the deposed party by the taking party in civil litigation matters.

CPLR § 3113 Conduct of Examination (d) states:

(d) The parties may stipulate that a deposition be taken by telephone or other remote electronic means and that a party may participate electronically. The stipulation shall designate reasonable provisions to ensure that an accurate record of the deposition is generated, shall specify, if appropriate, reasonable provisions for the use of exhibits at the deposition; shall specify who must and who may physically be present at the deposition; and shall provide for any other provisions appropriate under the circumstances. Unless otherwise stipulated to by the parties, the officer administering the oath shall be physically present at

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Page 10

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

the place of the deposition and the additional costs of conducting the deposition by telephonic or other remote electronic means, such as telephone charges, shall be borne by the party requesting that the deposition be conducted by such means.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

(The deposition commenced at 9:53 a.m.)

COURT REPORTER:  On the record.

NOTARY PUBLIC:  Okay.  My name is Shaleen Spaeth, and I work with Associated Reporters International, and I'll be swearing in the witness today.  But before I do that, can I please have counsel place their appearances on the record?

MR. STAMBOULIEH:  Stephen Stamboulieh for the Plaintiffs.

MR. THOMPSON:  Good morning, everybody.  James Thompson, from the Office of the Attorney General, 28 Liberty Street, New York, New York for Superintendent James.

MR. MULVEY:  Should I go on too?  Yes. Timothy Mulvey, Assistant Attorney General, Syracuse Regional Office, co-counsel with Mr. Thompson.

NOTARY PUBLIC:  Okay.

MR. BANASZEK:  Philip Banaszek, Assistant Attorney for the County Of Albany, representing District Attorney of Albany, at 112 State Street, Albany, New York.

NOTARY PUBLIC:  Thank you.

MR. LONG:  Hi, good morning.  My name

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

is Todd Long.  I'm an attorney for the City of Syracuse.  Since we're all giving addresses, I'm at 233 East Washington Street in the City of Syracuse. I am representing Chief of Police Mark Rusin (phonetic spelling).

NOTARY PUBLIC:  Thank you very much. Mr. Terrille, could you please raise your right hand? Do you swear or affirm that the testimony you are about to give in this cause will be the truth, the whole truth, and nothing but the truth?

MR. TERRILLE:  Yes.

[ALFRED TERRILLE:  Sworn]

NOTARY PUBLIC:  Okay.  You can lower your hand.  And can you please state and spell your name for the record?

THE WITNESS:  Alfred Terrille, A-L-F-R-E-D, T-E-R-R-I-L-L-E.

NOTARY PUBLIC:  Okay.  Thank you very much, and everybody have a great morning.

MR. STAMBOULIEH:  Thank you.

THE WITNESS:  Thank you.

DIRECT EXAMINATION

BY MR. THOMPSON:

Q.   So thanks so much, everybody.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Thank you, Mr. Terrille.  My name is James Thompson. I'm an attorney here at the office of the Attorney General, and I represent the Superintendent of State Police in this lawsuit.  So during the deposition, it's essentially sort of a Q and A.  I ask you questions, you answer the question.  But there are a handful of things to remember for the aid of the court reporter so that we can get a -- a clean transcript for everybody.  So the first is, please wait until the end of my question before you begin your answer.  The hardest thing for the folks who take the transcript is if there's more than one person talking at the same time.

If at any point I ask you a question that you don't understand, feel free to ask me to clarify it.  If you give me an answer, I'll assume you understood the question.  Does that make sense?

A.    Yes.

Q.    Similarly, you know, in real conversation, people will say uh-huh, uh-uh, shrug their shoulders, shake their head.  None of that comes through on the transcript.  So please make sure that all of your answers are verbal.  From time to time, your attorney may make an objection.  Unless

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Mr. Stambolian instructs you not to answer based on a claim of privilege, you should still answer the question that I've asked.  And lastly, if you need to take a break at any point, just ask me and we'll take one.  I'll ask you to finish responding to the que -- the single question that I asked or -- or possibly to the line of questioning.  But we're always happy to take a break anytime you need it, including and especially, if your parking meter is up.

A.    Okay.

Q.    So Mr. Terrille, have you ever been deposed before?

A.    No.

Q.    And do you understand that you're under oath today?

A.    Yes.

Q.    Are you suffering from any illness or other condition that could a -- affect your ability to give truthful answers?

A.    No.

Q.    Do you take any medication that could affect your ability to --

A.    No.

Q.    -- answer questions?  Is there

800-523-7887                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

any other reason why you might not be able to give complete and truthful answers to the questions that you're asked today?

A. No.

Q. Mr. Terrille, are you represented by counsel today?

A. Yes, I am.

Q. And is that Mr. Stamboulieh?

A. Yes, it is.

Q. Without inquiring into any of the things that you might have specifically discussed with Mr. Stamboulieh, can you tell me what you did to prepare for today's deposition?

A. Yes. I just went over my declaration.

Q. Did -- and did you meet together?

A. Yes, we -- we conversed over the phone.

Q. And for approximately how long?

A. Approximately --

MR. STAMBOULIEH: I'm just going to object to that, but you can a -- you can answer if you -- if you remember.

A. Okay. It was about an hour or

800-523-7887                    ARII@courtsteno.com

Serving all of New York State

Associated Reporters Int'l., Inc.                                 www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille so.

Q.    And other your -- other than your attorney, have you discussed your deposition today with anyone else?

A.    A family member in passing.

Q.    Can I ask which one?

A.    I -- I -- I don't remember.

Q.    All right.  Did you discuss how you plan to answer any certain questions?

A.    No.  I just told him I was involved in a suit.

Q.    And other than your declaration, what else did you review?  Did you review any other documents?

A.    Just information my lawyer sent me.

Q.    Okay.  And again, just going forward, it's worth assuming I'm -- I'm never asking you about the conversations that you have with Mr. Stamboulieh or the -- the information that you've exchanged with.  That's privileged, and we're not going to inquire into that.  So Mr. Terrille, can you tell me a little bit about yourself?

A.    Yes.  I'm sixty-four years old,

800-523-7887                                             ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

retired.  I live alone.  I have two beautiful daughters.

Q.    Congratulations.  And do you live here in Albany County?

A.    Yes, I do.

Q.    And where in?

A.    In Watervliet.

Q.    Do you have any other residences?

A.    No.

Q.    And you said you're retired. What did you do for work?

A.    I was a field technician for a beverage company.

Q.    And approximately when did you retire?

A.    Sixty-two.

Q.    And did you work for that beverage company for the majority of your career?

A.    No.

Q.    What did you do before that?

A.    I was in food sales.

Q.    And for whom did you work?

A.    I worked for several different companies.  Carvel Corporation, LePage Bakeries,

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 18

Antonyuk, et al v James – 4-20-26 – Alfred Terrille
Cedar Foods.

Q.    And I apologize for asking.  Are you now or have you ever been a lawyer or an attorney?

A.    No.

Q.    And sir, are you a member of the Gun Owners of America?

A.    Yes.

Q.    For approximately how long?

A.    For at least eight years.

Q.    And so what is the Gun Owners of America?

A.    They are a Civil Rights organization.

Q.    And who runs the G.O.A.?

A.    Currently, I'm not exactly sure of the hierarchy structure, but Erich Pratt (phonetic spelling), I believe, is the president.

Q.    And what, in your opinion or understanding, makes G.O.A. different from other groups that work on this issue or file lawsuits about guns?

A.    To be honest with you, I don't know the -- the specific of the other companies, so I

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

really couldn't answer to that.

Q.   Are you active in Gun Owners of America?

A.   Just as far as a paying member.

Q.   So do you have any kind of leadership position?

A.   No, I do not.

Q.   Do you attend meetings or events?

A.   No.

Q.   Do you do anything else in connection with your membership in the Gun Owners of America?

A.   No.

Q.   And are you a member of any other groups that take political or legal stands on the gun issue?

A.   Not currently.

Q.   So if I could ask why -- you know, why of all the groups that work on this issue did you choose the G.O.A. to be affiliated with?

A.    I've been following them for a long time, and people that I follow online always recommend them and speak highly of them, and that's pretty much it.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   And which people online?

A.   One in particular that I follow is a -- a YouTube channel called Guns and Gadgets.

Q.   And there's a gentleman who runs that, right?  What -- do you know his name?

A.   Yes, his name is Jared.

Q.   Jared.  Do you know his last name?

A.   I do not.

Q.   Are you a member of any other political or legal groups other than on the guns issue?

A.   No.

Q.   And Mr. Terrille, do you regularly use e-mail?

A.   Yes.

Q.   Have you e-mailed anyone other than Mr. Stamboulieh and your counsel on this case?

A.   No.

Q.   Have you e-mailed anyone, again, other than counsel about the issues that are raised in this case?

A.   No.

Q.   Do you have any accounts on

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

social media?

  A. No.

  Q. No Facebook?  No Instagram?  No nothing?

  A. No.

  Q. Why not?

  A. When I first -- well, my family first started -- told me to go on Facebook, I did specifically for them.  But then it -- it was just too political for me, so I -- I quit.

  Q. I feel the same way, for what it's worth.  Do you post on any internet forums?

  A. No.

  Q. And Mr. Terrille, have you ever been a party to any lawsuit other than this one?

  A. Yes.

  Q. Can you tell me about that?

  A. It was a work-related injury case.

  Q. Approximately, do you recall what court that lawsuit was in?

  A. It was Albany County, so I never had to go to court for it.  It was -- my lawyer took care of everything.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 22

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   And were you the Plaintiff or the Defendant?

A.   I was the Plaintiff.

Q.   And can you tell me about the sum and substance of that case?

A.   Just I injured myself at work.

Q.   For which company?

A.   Oh, that was Lepage Bakeries.

Q.   And do you recall approximately when that case was?

A.   It's -- it resolved in mid '90s, to the best of my recollection.

Q.   And when you say it resolved, how did it resolve?

A.   I won the -- I won the case and got a settlement.

MR. STAMBOULIEH:  I'm -- I'm sorry to do this.  Can I just take a brief like two minutes?

MR. THOMPSON:  Yeah, of course.

MR. STAMBOULIEH:  Just for me myself. Give me one second.  I'm very sorry.

(Off the record at 10:05 a.m.)

(On the record at 10:06 a.m.)

COURT REPORTER:  All right.  Great.

800-523-7887                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

We're now back on the record.

BY MR. THOMPSON:  (Cont'g.)

Q.   So thank you Mr. Terrille.  You said that that proceeding settled, correct?

A.   Yes.

Q.   And do you mind me asking approximately what did it settle for?

A.   If you don't mind, I'll refuse to answer that.

Q.   Can you give me a ballpark?

A.   Around sixty grand.

Q.   Was there any sort of injunctive or equitable relief involved?

A.   No.

Q.   Were you involved in a case called Alfred L. Terrille versus Consolidated Rail Corporation in the Northern District of New York sometime in the late eighties?

A.   No, that was my dad.

Q.   Were you involved in a motor vehicle case called Alfred Terrille versus Benjamin Price in the Supreme Court, Saratoga County?  The index number is from 2008, if that helps place it.

A.   My daughter was involved in a

800-523-7887                                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 24

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

lawsuit.

Q.   At approximately that time?

A.   To be honest with you, I don't -- I don't know.

Q.   Were you involved in any kind of motor vehicle incident involving someone named Benjamin Price around 2008?

A.   My daughter was.

Q.   Can you tell me sort of the sum and substance of what happened in that case?

A.   Yes, he ran her over with a car.

Q.   Oh, God, I'm sorry.  And were you -- were you a party to that case?

A.   No.  The only way I got -- I was involved is I hired a lawyer for my -- my daughter.

Q.   And is it correct to say neither of these cases, either your workplace injury case or this motor vehicle case involved firearms or 2nd Amendment issues?

A.   No.

Q.   No, they did not?

A.   No, they did not involve firearms.

Q.   Understood.  Mr. Terrille, have

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 25

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

you ever been involved in any criminal proceeding?
Even if it was dismissed or sealed?

A.   Yes.

Q.   Can you tell me about that?

A.   It was a stupid thing I did when
I was a teenager.  I just switched a price tag.

Q.   And approximately when was this?

A.   1979-ish.  I -- I'm not exactly
sure.

Q.   And can you tell me in sum and
substance what happened in that case?

A.   The -- as far as I can remember,
the -- the judge is -- I never was in trouble before
and the judge said that if I kept my nose clean, I
believe it was for six months, then it would be
either dropped or -- I'm not exactly sure, but it was
such a long time ago I don't remember exactly.

Q.   And did it result in any sort of
conviction?

A.   No.

Q.   Was it a -- are you familiar with
the term adjournment in contemplation of dismissal?

A.   I'm not familiar with that.

Q.   And do you know was the charge a

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

felony charge or a misdemeanor charge?

A.   It definitely was not a felony, so I don't -- I don't exactly know because I -- I believe it was dropped.  I -- I don't -- I don't remember.  It's so long ago.

Q.   Understood.  And did that case in any way involve a firearm?

A.   No.

Q.   And what was -- what was the object on which you swapped the price tag?

A.   I was getting my father a -- a birthday present, and I didn't have enough money.  So it was a -- it was a baseball glove.

Q.   Understood.  Have you ever been involved in any administrative proceeding, not in front of a court, but in front of an administrative agency?

A.   I don't believe so.  I'm not exactly sure what that is.

Q.   So certain administrative agencies have sort of court like proceedings.  You probably know if you had been involved in one of them.

A.   I was divorced.  I'm not sure if

800-523-7887                                    ARII@courtsteno.com

Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

that's what you're talking about.

Q.   I'm sorry or -- or congratulations, as appropriate.  Mr. Terrille, have you ever had any interactions with the New York State Police?

A.   Speeding tickets.

Q.   And approximately how many?

A.   With the New York State Police, I -- I believe two overall over the course.  I drove for forty years in the course of my job, so --

Q.   And do you remember approximately when those were?

A.   I would have to say this -- this -- this last speeding ticket I got was at least ten years ago, at least.

Q.   And were the members of the State Police that you interacted with professional in those instances?

A.   Yes.

Q.   Has any member of the State Police ever threatened you?

A.   No.

Q.   And have you ever been a member of the State Police or worked for the State Police?

800-523-7887                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                      www.courtsteno.com

Page 28

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    No.

Q.    Have you ever been -- or worked for any other law enforcement agency?

A.    No.

Q.    Other than the incident we discussed with the price tag, have you ever been arrested by a law enforcement agency?

A.    No.

Q.    And have you ever tried to buy a firearm and had a background check denied?

A.    No.

Q.    All right.  Mr. Terrille, I'm going to give you a document if I can dig it out here.  And I realize for the folks who are here by video conference, I have not yet sent the exhibits around.  I'll do that next time we have a break.  But the document that I sent is -- well, actually why don't I ask you.  Mr. Terrille, do you recognize this document?

A.    Yes.

Q.    What is it?

A.    This is the -- No, I'm not exactly sure what -- what you call it.

Q.    Is it your responses to the

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

interrogatories in this case?

A.   Yes.

Q.   And going to the final page, on page seven, is that your signature verifying this document?

A.   Yes.

Q.   Could I ask that this document be marked as Exhibit One?  And so you read through and verified the responses in this document, correct?

A.   Yes.

Q.   Do you have any reason to believe that it's incomplete or that there's anything that you want to add?

A.    I have no reason to believe it's incomplete.

Q.   All right.  You know, actually why don't we go off the record for five minutes, and I will just e-mail everyone the exhibits because I've not done that yet, so that we could be on the same page.  Is that all right with everybody here?

MR. STAMBOULIEH:  Yeah.

(Off the record at 10:15 a.m.)

(On the record at 10:22 a.m.)

COURT REPORTER.  We are now back on.

800-523-7887                         ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

BY MR. THOMPSON:  (Cont'g.)

Q.    All right.  And Mr. Terrille, I'm going to show you a -- another document, if you would.  And do you recognize this document, sir?

A.    Yes.

Q.    And what is it?

A.    It's my concealed carry license.

Q.    And this document has Bates stamps on the lower left that say Terrille zero zero four and Terrille zero one zero, correct.

MR. STAMBOULIEH:  I'm just going to point it to him.  It's right there on that side if you flip it like that.

THE WITNESS:  Yes.

MR. THOMPSON:  And Charles, can I request that this be marked as Exhibit Two?

COURT REPORTER:  Uh-huh.

MR. STAMBOULIEH:  No objection.

BY MR. THOMPSON:  (Cont'g.)

Q.    So these pages were not produced in order.  Is this the front and back of the same document?

A.    No.

Q.    Can you explain?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 31

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    This is the front, and then this is the secondary card --

Q.    Okay.

A.    -- that has all -- all the pistols listed.

Q.    So is there any information on the back of your pistol permit?

A.    Yes, there is.

Q.    And is there any information on the back of the secondary card?

A.    No.

Q.    And what information is on the back of the pistol permit?

A.    It's your fingerprint and a small paragraph.  I don't recall what it says.

MR. THOMPSON:  And just for the purpose of completeness, Stephen, could we request a photo of the back of the permit as well?

MR. STAMBOULIEH:  Sure.  Yeah.

BY MR. THOMPSON:  (Cont'g.)

Q.    Similarly, it looks like there's a bit of text that's cut off at the top of the picture of the permit.  Do you know what that text is?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    Not without looking at my -- my actual permit.  I believe it says New York State. I'm not -- I'm not sure quite honestly.

Q.    Understood.  There's a note on the bottom left that says restriction, see back, correct?

A.    Yes.

Q.    Does your license have any restrictions?

A.    None.

Q.    Can you tell me the process that you went through to obtain a pistol license?

A.    Yes, I had to fill out a bunch of paperwork, take a rifle hunting course.  And the -- the local police department had to do a investigation, and then I was issued a permit approximately a year and a half later.

Q.    And approximately, when did you do that?

A.    It was approved in 1994.

Q.    And Mr. Terrille, I'm going to ask you -- do you recognize this?

A.    Yes.

Q.    And what is it?

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                           www.courtsteno.com

Page 33

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    That's my -- my original license.

MR. THOMPSON:    And Charles, could I ask this be marked as Exhibit Three?

MR. STAMBOULIEH:  No objection.

BY MR. THOMPSON:  (Cont'g.)

Q.    And so has your permit been in effect from 1994 until today?

A.    Yes.

Q.    And the licensing process that you went through, was that run by Albany County or by the State Police?

A.    That was run by Albany County.

Q.    Are you aware of the State Police having any role in that licensing process?

A.    No.

Q.    And who made the ultimate decision on your permit application?

A.    That would have to be the Judge, Lawrence Kahn (phonetic spelling).

Q.    And for -- for us practitioners in the Northern District of New York, do you know -- is that the same Lawrence Kahn that is currently a federal judge here?

A.    I do not know.

800-523-7887                                      ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 34

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   Could the Superintendent of State Police grant or deny you a license?

A.   In '94, I don't believe so.

Q.   Could he today?

A.   I assume he could.

Q.   And do you have any reason to believe that the State Police controls the licensing process in Albany County?

A.   Could you repeat the question?

Q.   Do you have any reason to believe that the New York State Police controls the licensing process in Albany County?

A.   No.

Q.   Mr. Terrille, are you familiar with the terms renewal and recertification as used in connection with pistol licensing?

A.   Yes.

Q.   And what's your understanding of those two terms?

A.   That a -- licenses that are issued now have to be recertified after a certain amount of time.

Q.   And what's your understanding of renewal?

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 35

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    I'm not sure where the difference is.

Q.    Do you know if renewal is required for licenses that are issued upstate?

A.    I'm not sure.

Q.    So what's your understanding of recertification?

A.    Well, I understand people who get a license have to recertify after a certain amount of time.

Q.    And have you recertified your license?

A.    No.  Mine was issued lifetime.

Q.    Understood.  And your license doesn't have an expiration date?

A.    No.

Q.    So turning to page two of Exhibit Two, the one marked Terrille -- I'm sorry, Terrille zero one zero.  The second page there.  You said this was a secondary card, correct?

A.    Yes.

Q.    And what is listed on that card?

A.    These are all the pistols I owned.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   And so these are all handguns, correct?

A.   Yes.

Q.   Do you own any rifles, shotguns or other firearms?

MR. STAMBOULIEH:  Object to that as we objected in the interrogatory responses, and he can answer it if he wants to.

THE WITNESS:  I take advice of counsel on this.

MR. STAMBOULIEH:  Well, I'm not telling you not to answer it.  I'm just making an objection for the record.

THE WITNESS:  No, I -- I object.

MR. THOMPSON:  So you're refusing to answer the question?

THE WITNESS:  Yes.

MR. THOMPSON:  Let's -- let me ask you a couple more questions.  Tell me if you're willing to answer them or if you refuse.  Do you own any semiautomatic rifles?

MR. STAMBOULIEH:  Same objection.

THE WITNESS:  I refuse.

BY MR. THOMPSON:  (Cont'g.)

800-523-7887                         ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 37

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q. Do you --

A. Respectfully, I refuse.

Q. Do you have a semiautomatic rifle permit or a semiautomatic rifle endorsement on your pistol permit?

A. Could you repeat that question?

Q. Do you have a semiautomatic rifle permit or a semiautomatic rifle endorsement on your pistol permit?

A. O -- one more time. I'm sorry.

Q. Let me see if I can answer the -- ask the question another way. Are you familiar with the fact that a -- permit is now required to purchase a semiautomatic rifle in New York State?

A. Yes.

Q. And do you have such a permit?

A. I do not.

Q. Do you own anything that meets the definition of an assault weapon?

MR. STAMBOULIEH: Same objection.

THE WITNESS: I respectfully decline to answer.

MR. THOMPSON: Do you own a registered assault weapon under the laws of New York?

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

MR. STAMBOULIEH:  Same objection.

THE WITNESS:  I respectfully -- or I'm sorry.  I respectfully decline to answer.

BY MR. THOMPSON:  (Cont'g.)

Q.   Do you own any weapons that you keep outside the State of New York?

A.   No.

Q.   So Mr. Terrille, do you usually carry a weapon with you in your day-to-day life?

A.   Most days.

Q.   Why?

A.   Because it's my right.

Q.   Which weapon do you usually take with you?

A.   I respectfully decline to answer that question.

Q.   And how do you carry your weapon?

A.   Concealed, obviously.

Q.   In a holster?

A.   Yes.

Q.   And what variety of holster?

A.   I have -- I have several.

Q.   Is your weapon ever visible?

A.   No.

800-523-7887                         ARII@courtsteno.com
Serving all of New York State

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.    Would you say you carry your weapon most days?

A.    Yes.

Q.    Would you say you carry your weapon every day?

A.    No.

Q.    How do you decide when to carry your weapon and not carry your weapon?

A.    It's just a daily choice.

Q.    And what factors do you consider when you're making that daily choice?

A.    Pretty much whether I feel like it or not feel like it.  There's no criteria for me to --

Q.    Is there anything you particularly consider when deciding if you feel like it?

A.    Could you repeat the question? I'm sorry.

Q.    Is there any particular factor that you consider in deciding when you feel like carrying a gun?

A.    No.

Q.    Where do you carry your gun?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

MR. STAMBOULIEH:  I'm going to object only to the extent that -- to the extent that that question involves the admittance of committing any crimes.  I'm going to instruct you not to answer it. To the extent that it's places that are lawful for you to carry, you're free to answer.

BY MR. THOMPSON:  (Cont'g.)

Q.  So -- well, first, Mr. Terrille, can you answer the question?

A.  Could you repeat the question? I'm sorry.

Q.  Where do you carry your gun?

MR. STAMBOULIEH:  And I would just give the same objection.

A.  Yeah -- yeah, I -- I refuse to answer that question.

Q.  All right.  Let's go off the record.  Actually, no, let's --

MR. STAMBOULIEH:  Let's -- can I confirm with you?  Let's go off the record.

MR. THOMPSON:  Sure.  Let's go off the record for --

(Off the record at 10:36 a.m.)

(On the record at 10:47 a.m.)

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 41

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

COURT REPORTER:  All right, so we're back on.  All right.  Time is ten forty-seven.  We are back on the record.

MR. THOMPSON:  So Mr. Stamboulieh, we had a quick conversation between you and me off the record where I said that your client has the right to invoke the 5th Amendment should he choose, but that absent that these questions are germane to a lawsuit that you brought against our clients, and we do require an answer to them.  You conferred with your client.  Have you changed your mind about whether he'll answer?

MR. STAMBOULIEH:  Yes.  I explained to my client that he needs to specifically invoke his 5th Amendment right on questions that could lead to an answer that would be admitting to a crime.  And the witness has been instructed to now take his 5th Amendment right against self-incrimination for any question that you asked that might elicit an answer that admits to some kind of crime.

MR. THOMPSON:  All right.  So let's go back and ask some of those questions that did not get an answer.

MR. STAMBOULIEH:  Fair enough.

800-523-7887                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 42

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

BY MR. THOMPSON:  (Cont'g.)

Q.   Mr. Terrille, are the weapons that are listed in the document marked Terrille O ten all the -- all of the guns that you own?

A.   Yes.

Q.   Do you own any rifles, shotguns, or other firearms?

A.   I invoke my 5th Amendment right against self-incrimination.

Q.   Do you own a semiautomatic rifle?

A.   I invoke my 5th Amendment right against self-incrimination.

Q.   Do you own anything that meets the definition of an assault weapon?

A.   I invoke my 5th Amendment right to self-incrimination.

Q.   Which weapon do you usually carry with you for day-to-day purposes?

A.   I invoke my 5th Amendment right to self-incrimination.

Q.   And where do you carry your firearms?

A.   I invoke my 5th Amendment right to self-incrimination.

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Page 43

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   When is the last time you carried your firearm outside the house?

A.   I invoke my 5th Amendment right to self-incrimination.

Q.   Can you describe to me anytime you've carried your gun outside the house?

A.   I invoke my 5th Amendment right to self-incrimination.

Q.   And when you say your 5th Amendment right to self-incrimination, do you mean your 5th Amendment right against self-incrimination?

A.   Yes.

Q.   Have you ever used your firearm, sir?

MR. STAMBOULIEH:  Object to the form. You can answer the question.

A.   Can you repeat the question?

Q.   Withdrawn.  That's a vague question.

Have you ever used your firearm against another person?

A.   No.

Q.   Have you ever been involved in a situation where you needed to use a firearm for self-

800-523-7887                          ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

defense?

A. No.

Q. Have you ever needed to draw or brandish your firearm?

A. No.

Q. Are you currently under any particular threat that would mean you need a firearm for self-defense?

MR. STAMBOULIEH:  Object to form.

MR. THOMPSON:  You can answer.

MR. STAMBOULIEH:  Yeah.  Sorry.

THE WITNESS:  Could you repeat the question?

BY MR. THOMPSON:  (Cont'g.)

Q. Are you currently under any particular threat that would mean that you need a firearm for self-defense?

A. No.

Q. Have you ever been under a threat that would mean that you needed a firearm for self-defense?

A. No.

Q. So Mr. Terrille, can you tell me why you're suing New York?

800-523-7887                              ARII@courtsteno.com

Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    Yes, because they like to violate the rights of the people of New York State.

Q.    When you say they, who do you mean?

A.    I mean the government and all aspects of the government in New York State.

Q.    All aspects of the government?

A.    Yes.

Q.    Can you tell me what you mean by that?

A.    With the governor, the legislative branch, everyone that votes on unconstitutional gun laws.

Q.    When you say unconstitutional gun laws, what do you refer to?

A.    Gun laws that violate the 2nd Amendment.

Q.    Do you believe all gun laws violate the 2nd Amendment?

A.    If they infringe, yes.  Infringe on the right, yes.

Q.    And how do you tell if something infringes on the 2nd Amendment right?

A.    If it restricts, hinders, delays,

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 46

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

denies, prevents bans?  Those are examples on infringements.

Q.    So do you believe that any law restricting firearms violates the 2nd Amendment?

A.    Yes.

Q.    Do you believe that any sensitive places law violates the 2nd Amendment?

A.    Yes.

Q.    So asked another way.  Is there any location where you believe it would be constitutional to prohibit guns?

A.    Constitutional to prohibit -- prohibit guns?

Q.    Yes.

A.    I don't believe so.

Q.    Mr. Terrille, how did you get involved in this lawsuit?

A.    A person that I used to follow contacted me and asked me if I'd be interested in the lawsuit and into entering into a lawsuit with Gun Owners of America.

Q.    And who is that person?

A.    His name is John Crump (phonetic spelling).

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   And what did he do?

A.   He got me in contact with G.O.A.

Q.   Let me ask the question again. What did he do professionally?

A.   I believe his official title -- he's a journalist.

Q.   With what organization?

A.   I forget the -- the -- I forget the publication he writes for.  I -- I -- I can't remember the name of it offhand.  I'm sorry.

Q.   And when you say you used to follow him, how did you follow him?

A.   On YouTube.

Q.   Do you have an account on YouTube?

A.   I don't have an app or anything. I just go on YouTube and --

Q.   Did he have a YouTube channel?

A.   Yes.

Q.   And what was the name of that channel?

A.   I think it was just his name, John Crump.

Q.   And you said you used to follow

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 48

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

him.  Is there -- did there come a time when you stopped following him?

A.  Not on purpose.  He just doesn't come into -- yeah, I guess the algorithm doesn't -- I don't see him anymore online, so I --

Q.  And you testified that Mr. Crump contacted you, correct?

A.  Yes.

Q.  How did he know to contact you?

A.  I sent him an e-mail first, and then he contacted me and then got me involved or got me connected with G.O.A.

Q.  How did you know to send him an e-mail?

A.  Through one of his videos.

Q.  Did he indicate that he was looking for plaintiffs?

A.  He was looking for New York State residents that -- yeah, he was looking for New York State residents.

Q.  And do you remember approximately when that was?

A.  It was after the Bruen decision, I believe.  22' -- 2022, I believe.  I'm -- I can't

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                        www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

remember exactly.

Q.   And you previously testified that you had not e-mailed anybody about the -- this case or the subjects in it, correct?

A.   Yes.

Q.   So why did you say that if you had e-mailed Mr. Crump?

A.   I didn't -- I didn't e-mail him about this case.  He -- He asked if there's any New York State residents, and I e-mailed him my information and he called me.

Q.   Is there anyone else that you have e-mailed about this case or about the issues in it?

A.   Not other than my lawyer.

Q.   And when Mr. Crump called you, what was the sum and substance of that conversation?

A.   He essentially just asked me where I was in New York, and if I'd be interested in joining the lawsuit.  And I said yes.

Q.   Was there anything else said in that conversation?

A.   Just a brief introduction to each other.  He asked if I would be interested in joining

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 50

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

a lawsuit and I said yes, absolutely.

Q.    Do you know if Mr. Crump received any compensation in connection with finding plaintiffs?

A.    I -- I wouldn't have no idea.

Q.    And have you received any compensation --

A.    No.

Q.    -- in connection with this lawsuit?  Do you recall what Mr. Crump had to say in the video that you saw?

A.    Just that G.O.A. was looking for New Yorkers that have been armed and looking for people to join them, the lawsuit.

Q.    Anything else you can recall?

A.    No.

Q.    Did you retain the -- any e-mails that you sent to Mr. Crump?

A.    I just -- no, I didn't retain anything.  No.

Q.    Have you deleted the e-mails?

A.    Yes.

Q.    Approximately when?

A.    I don't know.  I -- I delete my

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 51

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

e-mails every day.

Q.    So did you delete the e-mail right after you sent it?

A.    No.

Q.    Did you delete the e-mail the day that you sent it?

A.    I don't recall when I deleted the e-mail, but recently I started deleting my e-mails every day because I had so much spam junk in my e-mail, so I started deleting my e-mails every single day.  But back then, I -- I didn't do that.  But I do not recall when I deleted his e-mails because I delete -- I delete a bunch of e-mails at a time.

Q.    Do you think it was before or after you joined this case?

A.    It was before because I -- I got his phone number and that's all I needed, and he got me in contact with G.O.A. and that's all I needed so --

MR. THOMPSON:  So Stephen --

MR. STAMBOULIEH:  Yeah.

MR. THOMPSON:  -- we'd just like to request on the record any e-mail conversation between Mr. Crump and any of the Plaintiffs or the Gun Owners

800-523-7887                                ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 52

Antonyuk, et al v James – 4-20-26 – Alfred Terrille of America.

MR. STAMBOULIEH:  Any e-mails between Crump and Gun Owners of America, who is not a Plaintiff in this case and the Plaintiffs.  I mean, the discovery deadline runs in like a week and a half, two weeks.

MR. THOMPSON:  These are e-mails we didn't know about until, you know, ten minutes ago.

THE WITNESS:  There was just one e-mail that -- between John Crump and I.

MR. THOMPSON:  True, but presumably, Mr. Crump e-mailed the organization as well.

MR. STAMBOULIEH:  Yeah, I mean, he -- he can check his e-mail for it.  As far as like just a Plaintiff wide or a G.O.A. wide, I would object to that, obviously.

MR. THOMPSON:  On what basis?

MR. STAMBOULIEH:  Like it's late.  I mean, I know you say you didn't learn about it until today, but we had the same issues in the Higbie (phonetic spelling) case where you had the same things with Jared and --

MR. THOMPSON:  Sometimes you learn things in a deposition that you didn't know before.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 53

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

MR. STAMBOULIEH:  I understand -- I understand that's what you're saying.  Yeah, I mean, I'll -- I'll discuss it with him after this to -- to look at the e-mails.  I don't -- I don't mind you requesting it for him.  But I mean, for G.O.A. who is not a Plaintiff, is com -- completely irrelevant to the case.

MR. THOMPSON:  I -- I'm not sure if I'd agree.

MR. STAMBOULIEH:  That's okay.

MR. THOMPSON:  Why don't we put a pin in it --

MR. STAMBOULIEH:  Yeah.

MR. THOMPSON:  -- and tell me by the end of the day if -- if you agree or refuse and --

MR. STAMBOULIEH:  Yeah.

MR. THOMPSON:  -- you know, we end up with a bucket of issues that we need to talk about with the magistrate, that could be one.

MR. STAMBOULIEH:  Yeah, but for him, I don't -- I mean, totally fine.  We'll have him look at it.

BY MR. THOMPSON:  (Cont'g.)

Q.   So other than Mr. Crump and other

800-523-7887                         ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 54

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

than counsel, did anyone else play a role in

connecting you or recruiting you to this lawsuit?

A.   No.

Q.   And Mr. Terrille, are you paying

for your lawyers in this lawsuit?

A.   No.

Q.   Do you know who is?

A.   Yes, G.O.A.  I believe I don't

know for sure.

Q.   So Mr. Terrille, I'd like to ask

you some questions about sensitive locations.  Do you

understand what I mean by sensitive locations?

A.   Yes.

Q.   And what -- what is your

understanding of sensitive locations?

A.    Federal buildings, schools,

government buildings.

Q.   So let's go back to Exhibit One,

and I would -- let me direct you to page three,

bottom of page three, top of page four, and the

response to interrogatory number three.  If I could

ask you to read that real quick.

A.    Which part did you want me to

read?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 55

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   Just question number three and your response and let me know when you're done.

A.   Okay.  Can you repeat the question?

Q.   I don't think I had a question. I was just asking you to read it.  But Mr. Terrille, this is a list of the sensitive locations that you're challenging in this case, correct?  I'm referring specifically to the second paragraph.

A.   A lot of these locations are private property, open to the public, which are -- which are, from my understanding, lawful to carry.

Q.   So let me ask you the same question in a different way.  Is there any sensitive location that you're challenging in this case that's not on this list?

A.   Sensitive as the state now defines, I'm challenging all of it.

Q.   When you say I'm challenging all of it, what do you mean?

A.   I -- I believe it's -- I believe that places that were previously lawful to carry still should be lawful to carry.

Q.   I'm not sure if I understand your

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 56

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

answer.

A.   Before the C.C.I.A. was enacted, all of these places were lawful to carry, and I believe they all still should be lawful to carry.

Q.   Understood.  I -- I'm not -- I'm not sure if I'm asking this clearly.  Is there any sensitive location that you are putting at issue other than the ones that's listed in paragraph two here?

A.   I mean, these are just some of the places that I object to the law restricting, but there's so many more if that's -- If that's the question you're a -- you're asking.

Q.   Well, I guess the follow-up question then is, why didn't you list those other places?

A.   Because they were -- they're so numerous that I -- these are just the ones that I frequent often.  But there's so many more that are restricted that -- that were once lawful to carry that are now unlawful to carry in.  They may be places that I've never been to but may want to go to in the future, but as far as this list right here, these -- these are all the places that I -- I go on a

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

regular basis or many times during the year.

Q.   Sitting here today, is there any other place that you have gone to or plan on going to that's a sensitive location that is not listed here?

A.   Well, there's many places in the Adirondacks that I've never been to that I always wanted to go to and that's considered by New York State a sensitive place.

Q.   Other than that, any place else?

A.   I'm -- I'm sure there is.  I just can't think of any at this moment.

Q.   Okay.  So when -- at the bottom, the -- the last paragraph on page four you write, Plaintiff has no knowledge that any manager of any particular place he has visited, visits or intends to visit prior to the enactment of the Concealed Carry Improvement Act banned the carry of lawfully owned firearms.  Do you see that?

A.   Yes.

Q.   Can you explain what you mean by that?

A.   Yes, when -- when the C.C.I.A. was first enacted, you know, I -- I -- I am not a -- on a first name basis with managers.  I don't know --

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 58

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

places I frequent, do not have a sign out -- out front.  And I don't know the manager's personal opinion on carrying in their locations.  That's what I meant by that.

Q.   So you don't specifically know whether the people who run each of these places allow or prohibit guns?

A.   Correct.  Yes.

Q.   All right.  So let's start with the parks that you list.  Can you describe the Town of Colonie Town Park?

A.   Yes.  It's -- it's -- it's a park that's in the -- pretty much in the center of the Town of Colonie.

Q.   And it's got swimming pools in it and water parks and playgrounds, correct?

A.   Oh, that -- that park does, yes. I'm sorry.  The -- the second one is the one I was thinking of the Crossings in Colonie.

Q.   We'll -- we'll get -- we'll get to that in just a second.  And does the Town of Colonie charge a -- a entrance fee?

A.   Yes, it does.

Q.   And about how often do you go to

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 59

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

the town park in -- in Colonie?

A.   I go -- I take my dog there all the time.

Q.   When was the last time you visited?

A.   Today is Monday -- Saturday.

Q.   Do you take your gun to the town park in the Town of Colonie?

MR. STAMBOULIEH:  Hold on.  Objection, to the extent that you're ask -- to the extent that the Colonie Town Park is a prohibited location under the C.C.I.A., I'm going to instruct the witness to invoke your 5th Amendment right against self-incrimination and not to answer the question.

A.   I invoke my 5th Amendment right against self-incrimination.

Q.   Why would you take your gun to the town park in the Town of Colonie?

A.   I invoke my 5th Amendment right against self-incrimination.

Q.   How do you think the kids and families who use the park would feel if they knew you had a gun?

A.   Could you repeat the question?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 60

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   How do you think that the kids and families who use the town park would feel if they knew you had a gun?

A.   I would have no way of knowing how they would feel.

Q.   Could you guess?

MR. STAMBOULIEH:  I would object to him guessing.

BY MR. THOMPSON:  (Cont'g.)

Q.   You can answer.

A.   You want me to guess how other people would feel, right?

Q.   Yes.

A.   I can only speak for myself.  I don't know how anybody else would feel.  I'm sorry.

Q.   Do you think some people might feel uncomfortable knowing that there were guns around the playground, in the swimming pool, and the water park?

MR. STAMBOULIEH:  Same objection.

A.   Yeah.  I'm going to plead the 5th -- invoke my 5th Amendment right to self -- against self-incrimination.

Q.   Can you describe the Crossings in

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 61

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Colonie?

A.   Yeah, that's the town park that's in the center of Colonie.  It has a pond and walking path and a playground.

Q.   And the Crossings has a -- is adjacent to a school, correct?

A.   I don't believe so.

Q.   Do you know if guns are allowed in the Crossings?

A.   I've never seen any signage restricting guns.

Q.   And about how often do you go to the Crossings?

A.   Generally, once a week with my dog.

Q.   When is the last time you visited?

A.   Maybe Wednesday of last week.

Q.   Do you bring your gun to the Crossings?

MR. STAMBOULIEH:  I object to that question to the extent that the -- that specific park is a sensitive location under the C.C.I.A. and instruct the witness to invoke his 5th Amendment

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 62

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

right against self-incrimination.

A.   I invoke my 5th Amendment right against self-incrimination.

Q.   Can you describe to me Thacher Park in Albany County?

A.   Thacher Park is a beautiful park. It's huge, has many walking trails, hiking trails, a playground, overlook.

Q.   Would you say that it's an urban park or a rural park?

A.   Rural.

Q.   But as you say, it also has playgrounds and grilling areas and recreation spots, correct?

A.   Yes.

Q.   How often do you go to Thacher Park?

A.   At least four times a year.

Q.   When is the last time you visited?

A.   In the fall.

Q.   Have you carried a handgun in Thacher Park?

MR. STAMBOULIEH:  I object to that

Associated Reporters Int'l., Inc.                www.courtsteno.com

Page 63

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

question to the extent that -- that park is a sensitive place under the C.C.I.A. and instruct the witness to invoke his 5th Amendment right.

A.    I invoke my 5th Amendment right against self-incrimination.

Q.    Are you aware of whether hunting is permitted in Thacher State Park?

A.    I am not aware.

Q.    Would you be surprised to know that it is?

A.    I -- I would not be surprised.

Q.    Why not?

A.    It's such a huge park.  It's a huge park.  I -- it's so much more than just the road through it, the playground, the hiking trails.  It's -- It's a huge park.

MR. THOMPSON:  Let's go off the record.

(Off the record at 11:20 a.m.)

(On the record at 11:40 a.m.)

COURT REPORTER:  We're now back on the record.

BY MR. THOMPSON:  (Cont'g.)

Q.    All right.  So Mr. Terrille, I

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

think the last question was about whether you knew that hunting was permitted in Thacher State Park, and I was going to ask you, do you have a hunting license?

A.    I do not.

Q.    Do you ever hunt?

A.    No.

Q.    All right.  Can you -- can you describe Saratoga Spa State Park?

A.    Yes.  That's my dog's favorite place to go.  It's a beautiful park.  It has a concert venue.  It has hiking trails, it has an awesome stream that runs through it.

Q.    And it's -- it's more or less in Saratoga, correct?

A.    Yes.

Q.    It's got a pool, water slides, tennis courts?

A.    It has two pools.  I'm not sure, but it does have a playground.  I'm not sure about tennis courts.

Q.    Do you know if guns are allowed in Saratoga Spa State Park?

A.    I don't -- I don't believe they

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

are.

Q.    And about how often do you go to Saratoga Spa?

A.    It's my dog's favorite spot, so we go once a month.  I mean, once a week generally.

Q.    And have you carried a gun in Saratoga Spa State Park?

MR. STAMBOULIEH:  I'm going to object to that question to the extent that C.C.I.A. deems the Saratoga State Park a sensitive location and instruct the witness to invoke his 5th Amendment right against self-incrimination.

A.    I invoke my 5th Amendment right against self-incrimination.

Q.    Can you describe Lake George in Adirondack State Park?

A.    Lake George is huge, thirty-seven miles.  It's considered the queen of lakes.  It's just an absolute beautiful body of water.

Q.    And as you said, Lake George is quite big, right?

A.    Yes.

Q.    So when you mentioned it in your interrogatory responses, was there a specific part of

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Lake George or a specific area by Lake George that you were thinking of?

A.    The Village -- Lake George Village has a lot of shops, a lot of restaurants. It's a fun place to go.  They have water -- they have boats that I take -- take tours on, which I love.  I love taking my dog to the beach there.

Q.    So you're not thinking of a specific park or other location near Lake George. You're -- you're thinking of the village?

A.    Primarily, yes.

Q.    Mr. Terrille, are you familiar with the term forest preserve?

A.    Forest preserve, I've heard it. I've heard of it, yes.

Q.    What's your understanding of the forest preserve?

A.    It's just woodlands that's deemed to be off limits from any type of development.

Q.    And are you aware that the Adirondack Park and the Catskill Park are technically forest preserves rather than parks?

A.    I was not aware of that.

Q.    Do you know if guns are permit --

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 67

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

permitted or prohibited in the Adirondack State Park?

A.    I believe -- I believe New York State considers that a sensitive area.

Q.    Have you ever been threatened while visiting any one of these parks?

MR. STAMBOULIEH:  Object to form.

Q.    You can answer.

A.    No.

Q.    Have you ever feared for your safety while visiting one of these parks?

A.    No, but there are a lot of -- a lot of bears in the Adirondacks.

Q.    Do you think that the presence of a gun would disrupt the recreation of other people at this park?

A.    I don't believe so.

Q.    Why not?

A.    I -- just by what I believe.  It wouldn't bother me if I saw someone carrying.

Q.    Do other people think differently?

MR. STAMBOULIEH:  Object to form.

Q.    You can answer.

A.    I assume they do.

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Page 68

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   And so do you think other people might not want their kids around someone with a gun?

MR. STAMBOULIEH:  Object to form.

Q.   You can answer.

A.   I am sure other people object.

Q.   Do you think they have a right to object?

A.   But people have a right to carry. So their objection does not -- should not take away somebody else's right.  No more than their objection to -- free speech should not take away someone's right to free speech.

Q.   So would it be correct to say that you think your right to carry a gun is more important than their right to have a place that's free of guns?

A.   Could you repeat the question?

Q.   Sure.  Let me see if I can get the exact words.  Do you think that your right to carry a gun in that location is more important than their right to be -- and have their kids be in a location that's free of guns?

A.   I can't know what other people think or believe.  I only know that I believe that

800-523-7887                          ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

everyone has a right to keep and bear arms and that right should be exercised.

Q. But you testified that you thought some people would be uncomfortable with someone having a gun in these locations, right?

A. Just human nature. I assume -- I assume, yes.

Q. And so I guess that's what I'm trying to get at. If someone is carrying a gun and they know that the presence of that gun makes other people, parents, kids feel unsafe or threatened, why would you want to make people feel that way?

A. New York State doesn't have open carry, so no one -- nobody would know that a person is carrying a weapon. So they -- they just would not know that another person is carrying to protect himself, themselves, or their families. And it's not that person's fault if those people do not like guns or do not want to carry guns to protect themselves or their families. It's just one person's rights. If they so choose to exercise those rights, which are guaranteed by the 2nd amendment, should not be infringed whether someone likes gun -- the other person likes guns or not. But the -- the bottom line

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Page 70

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

is New York State is not an open carry state.  It's a concealed carry state, and nobody would know that people are carrying.

Q.   Let me ask the same question a different way.  Do you think those other people have the right to a gun-free space anywhere?

A.   They have a right to feel any way they -- they so choose.

Q.   That's not quite the question though.  The question is, do those other people who don't carry guns have the right to any public space that's gun free?

A.   Do they have a right to -- again, they have a right to feel any -- any way they -- they so choose or they feel.  That should not burden another person's right.

Q.   I know, but that's not quite the question that was asked.  The question is, do those other people have the right to any public space that's gun free?

A.   Do they have the right?  They may feel they have the perceived right, but they do not have a right to hinder somebody else's ability to exercise their rights.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   So is that a no, there's no right to any gun free space in public?

A.   Well, the 2nd Amendment guarantees the right to keep and bear arms.  It doesn't say except if people are upset.  It's -- it's absolute.  It says, they had the right to keep and bear arms.

Q.   Sure.  But I'm asking a yes or no question.  Do people without guns have a right to have any gun free space anywhere in public?  And I'd appreciate a yes or no answer.

A.   Do they have a -- a right?  No.

Q.   Okay.  So next I'd like to talk about theaters.  You identified in your interrogatory responses the Regal Movie Theater in Clifton Park or Colonie Center, correct?

A.   Yes.

Q.   And correct me if I'm wrong, but I don't think any of these other locations are theaters, correct?

A.   Below that, no.

Q.   So theaters are crowded spaces, correct?

A.   They can be, yes.

800-523-7887                                ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q. And they have limited exit points, correct?

A. Yes.

Q. And there have been mass shootings in movie theaters, correct?

A. Yes.

Q. Are you familiar with the mass shooting that took place in a movie theater in Aurora, Colorado?

A. Yes, I am.

Q. And what's your understanding of that mass shooting?

A. If there were more people armed or allowed to be armed, he wouldn't have murdered as many people as he did.

Q. Can you explain that to me a little further?

A. Yes. Nobody else in that theater was armed, and he was the only one that was armed. They were sitting ducks. If more people were able to protect themselves, there wouldn't have been as much carnage.

Q. Let me ask you. A movie theater is a dark crowded place, correct?

800-523-7887                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                         www.courtsteno.com

Page 73

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    Correct.

Q.    And you generally can't see much in a movie theater except for the screen, correct?

A.    When your eyes adjust, you can see pretty well in a -- in a theater with the film going.  Yes.

Q.    Do you think it's possible to fire a weapon in a movie theater without endangering innocent people?

A.    I do believe yes, you can.

Q.    And what is the basis of that belief?

A.    My training.

Q.    Can you explain to me a little further?

A.    I would safeguard my grandkids, get them down and just isolate -- isolate the -- the shooter.  And when there's a clear shot, take it. It's not like the Wild West, as some people call it.

Q.    Do you think that in a crowded movie theater with a couple of hundred panicking people in it, you could isolate the shooter?

A.    It has been done, and I believe it can be done.  Yes.

Associated Reporters Int'l., Inc.                        www.courtsteno.com

Page 74

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.    Do you believe you could do it?

A.    I believe I could, yes.

Q.    You also mentioned getting a clear shot.  Do you believe that in a crowded movie theater of a couple hundred people panicking, you would be able to get a clear shot?

A.    All I know is I would run towards the target.  I would not -- I would do my best to save as many lives as possible.

Q.    But it would be a chaotic situation, right?

A.    Oh, undoubtedly.

Q.    And there would be a lot of people running for a lot of different directions, right?

A.    Yes.

Q.    I guess my question is, do you really think that you could, in that chaotic situation, isolate the shooter and safely engage him with your firearms without shooting or endangering someone innocent?

A.    Do I believe that I could?

Q.    Yes.

A.    Is that -- is that the question?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

I believe I would certainly try to save as many lives as possible.

Q.   But that wasn't the question.

A.   I've never been in that situation, but I believe -- I believe I could.

Q.   And you're very well trained, right, Mr. Terrille?

A.   Yes.

Q.   Can you tell me about some of the training that you've gone through?

A.   I just -- I train at the range I go to, I train all the time and practice scenarios and do drills.

Q.   When you say practice scenarios and do drills, can you explain to me a little bit more what you mean?

A.   I'm one of those people that -- that walk with my head on a swivel, so I don't walk with my phone in my face.  So I'm aware of my surroundings.  And just to go back to the theater situation, if -- if the Aurora shooter came in through that opened exit door, which he did, I would be aware of that.  That's part of my mindset and how I train is to keep your eyes on a swivel.  So going

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

back to your question, you know, stop the threat before he -- he engages is -- is probably the best -- best way and that's some of the things that I plan for in my training when I train.

Q.    Is it safe to say that most people who own guns are not as well trained as you?

A.    I'm sorry, could you repeat that?

Q.    Is it correct to say that most people who own guns are not as well trained as you are?

A.    I can't attest to that.  I -- I don't know.

Q.    Do you think that everyone who owns a gun could get in a firefight in a crowded movie theater without endangering other people?

A.    I believe that everybody has a right to be able to defend themselves in that situation.

Q.    Got it, but that's not quite the question.  So the question is, do you think that every gun owner could get in a firefight in a crowded theater without endangering innocent people?

A.    The only way I can answer that question is that everybody has a right to be able to

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 77

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

defend themselves in that situation.

Q.   Understood.  But I didn't ask you if they had a right to defend themselves.  I asked you if you thought they were capable of defending themselves with a gun without endangering innocent?

A.   Yeah.  I can't speak for most people, but the people I -- I -- I've trained with more than likely could.

Q.   You trust every one of them to get into a firefight in a crowded theater and not shoot anybody innocent?

A.   Would I trust them?  Yes.

Q.   Okay.  How do you think the audience in the theater would feel if they discovered that somebody in that theater carried a gun?

MR. STAMBOULIEH:  Objection.

Q.   You can answer.

A.   Could you repeat the question?

Q.   Sure.  How do you think the audience in a crowded theater would feel if they discovered that somebody in that theater had a gun?

A.   I can't pretend to know how they would feel.

Q.   Do you think some people would

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 78

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

panic?

A.    Are -- are you talking about a shooter coming into a theater?  Is that what you're --

Q.    No, I'm talking about --

A.    Just an ordinarily law abiding citizen.

Q.    Well, do you know who sits next to you in a movie theater?

A.    Other than my grandsons, no.

Q.    No.  I think most people don't know who it is sitting next to them in the movie theater, other than their family or friends.  So how do you think people would react if they discover that a stranger in the movie theater has a gun?

A.    Again, I can't speak to how other people would feel.  I can only speak to how I would feel.

Q.    Don't you think that some people would be afraid?

A.    I'm sure some people would.

Q.    Don't you think that some people might worry that that person was a potential mass shooter?

800-523-7887                                ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    Could you repeat the question?

Q.    Don't you think that some people would be worried that that person was a potential mass shooter?

A.    All I can say to that question is possibly.

Q.    Do you think people have the right to go to the movies without worrying that someone is going to bring a gun in the theater?

A.    Again, we're going back to people have a right to feel whichever way they -- they choose.

Q.    Let me ask the question a different way.  Do you think people have a right to have a movie theater be a gun-free space?

A.    No, because their rights take away other people's rights.  If -- if -- if they're right to a gun free movie theater takes away another person's right to defend themselves and their family, heaven forbid another Aurora like attack happens, it just makes them sitting ducks as in Aurora, they were sitting ducks.

Q.    So is that a no?

A.    Do they have a right?  The answer

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 80

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

is no.

Q.    Okay.  Have you ever carried a gun to Regal Theaters?

MR. STAMBOULIEH:  I will object to the extent that the C.C.I.A. bans firearms in regal cinema or theater.  I'll instruct the witness to invoke his 5th Amendment right against self-incrimination.

A.    I invoke my 5th Amendment right against self-incrimination.

Q.    Regal Movie Theater is a private company, correct?

A.    I believe so.

Q.    And the theater is private property, correct?

A.    I believe so.

Q.    Do you believe that private companies have the right to prohibit weapons on private property?

A.    Private property open to the public, no.

Q.    So yes or no, do you believe that Regal Cinemas has the right to prohibit guns in its movie theaters?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 81

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.   No.

Q.   Mr. Terrille, I'm going to show --

A.   If -- if -- if they allowed security -- if -- if they had security.

Q.   Can you explain to me what you mean by that?

A.   If they prohibited guns in their theaters, they should supply security.

Q.   Well, you have to go through a ticket taker, correct?

A.   Yes.

Q.   And when you go to the movies and you bring a bag in, that person will often check your bag, correct?

A.   I -- I've never carried a bag into a movie theater, so I -- I don't know.

Q.   If I represent to you that Regal Theaters has a bag check policy would that surprise you?

A.   Yes.

Q.   Is that enough security in your estimation?

A.   If they're prohibiting people

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 82

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

from carrying -- protecting themselves, they should supply security.

Q.   Understood.  I guess the question is how much security?

A.   I'm -- I'm not sure to be honest with you.

Q.   So you don't know how much security would be required?

A.   I -- I don't know.

Q.   Do you mean an armed guard in every theater?

A.   If they're prohibiting people from protecting themselves.

Q.   Do you think the constitution requires that?

A.   No, the constitution requires that people have the right to keep and bear arms.

Q.   Do you believe that a metal detector would be required at the threshold of a movie theater in order for them to prohibit guns?

A.   Do I believe?

Q.   Yes.

A.   Is that -- was that the question?

Q.   In order -- let me rephrase it.

800-523-7887                         ARII@courtsteno.com
Serving all of New York State

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

In order for Regal Movie Theaters to prohibit guns, do you believe that they would be required to have a metal detector at the threshold of the building?

A.   That's certainly their prerogative.  I would not advocate for it.

Q.   Why not?

A.   Again, it goes back to my right to protect my -- my grandchildren.  If heaven forbid, something should happen.

Q.   All right.  Mr. Terrille, I'm going to show you a document.

MR. STAMBOULIEH:  Is this number four?

Q.   Yeah.  And Mr. Terrille, do you recognize this document?

A.   Do I recognize this?

Q.   Yes.

A.   No.

Q.   I'll represent to you that this is the admitted procedures policy for Regal Cinemas.  Does that at least appear correct?

A.   Yeah, this is the first I -- I've ever seen this, so --

Q.   Understood.  Charles, could I ask that this be marked as Exhibit Four?  So Mr.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Terrille, can I direct you to the last full paragraph of the first section on page one just before outside food or drink, beginning with protecting the safety. Could I ask you to -- to read that out loud?

A.    Protecting the safety of our clientele and cast members is always the to -- top priority at Regal Entertainment Group.  Therefore, R.E.G. does not allow admission to our locations for guests of any -- any age wearing masks, face paint, face obscuring a hood or possessing weapons, props or fake weapons, face masks or health and safety see -- safety reasons are allowed.

Q.    So would it be correct to say that Regal prohibits weapons in its theaters?

A.    Yes.

Q.    Does this change whether you would carry a weapon into Regal theaters?

A.    I refuse to answer on -- I -- excuse me, I invoke my 5th Amendment right to self-incrimination.

Q.    Would you carry a weapon into a Regal theater despite the fact that they prohibit them?

A.    I invoke my 5th Amendment right

800-523-7887                                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille against self-incrimination.

Q.   And if I represented to you that carrying a weapon into a building without the permission of its owner is first degree trespass in New York State, would that change your answer?

A.   Could you repeat that question? I'm sorry.

Q.   Sure.  Let me withdraw it and start from the beginning.

I'll represent to you that the definition of first-degree trespassing in New York State is entering a building or staying in a building with a weapon without the permission or against the permission of the owner.  Does that change whether you would bring a weapon into Regal Cinemas?

A.   I refuse to answer.  I mean I invoked my 5th Amendment right against self-incrimination.

Q.   Understood.  So next -- and going back to Exhibit One your response on page three.  I'd like to ask about restaurants that serve alcohol.  So you list a -- a number of locations Buffalo Wild Wings, Moe's Southwest Grill, DeMarco's, and handful of others.  Could I ask you just to look at the

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 86

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

locations that you've listed and identify for me which ones serve alcohol?

A.   I know DeMarco's in Central Avenue.  That's the only one on here I see.  I'm not sure if Moe's does or not.

Q.   Do you understand Buffalo Wild Wings to serve alcohol?

A.   Oh, Buffalo, yeah.  Yes, they do. Oh, Bentley's and -- yes, Bentley's does as well.

Q.   Any of the others?

A.   I believe that's it.

Q.   Okay.  Do you ever have a drink at any of these restaurants?

A.   Do I?  No.

Q.   Do you drink?

A.   No, I do not.

Q.   Understood.  But other people drink at these restaurants, correct?

A.   Yes, other people do.

Q.   Would you want other people who are drinking in these restaurants to have a gun while you're there with your family?

A.   Would I want?  I would have no problem.  The answer is yes.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   Why would you have no problem with people drinking while having guns?

A.   Yes, they have a right to if they so choose.

Q.   Is that true even if they're drunk?

A.   Would that be true if -- if they were drunk?  They would still have that right.

Q.   Yes.  Let -- can we go off the record for a couple minutes?

(Off the record at 12:20 p.m.)

(On the record at 12:24 p.m.)

MR. THOMPSON:  Well, why don't we go on the record and -- and ask.

COURT REPORTER:  We could repeat. Yeah, of course.

BY MR. THOMPSON:  (Cont'g.)

Q.   So back on the record.  Same question -- or I guess we were off the record when -- when Charles raised it.  But was that your complete answer to the last question?

A.   Could you repeat the last question?  I'm sorry.

Q.   You know what, I honestly don't

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

remember it, so let's -- let's just move forward.

MR. STAMBOULIEH:  I -- I think he answered it.

Q.   Yeah.  So let me ask just as a general principle.  Do you think it's a good idea for people to drink alcohol when they have a gun?

A.   I would never do it.

Q.   Why not?

A.   Number one) I don't -- I don't drink.  Number two) I -- I -- for the same reason I wouldn't get behind a car, your ability is impaired.

Q.   Alcohol lowers people's inhibitions, right?

A.   It does, yes.

Q.   And sometimes people who are drinking alcohol make bad decisions that they wouldn't if they didn't drink, correct?

A.   Yes.

Q.   Okay.  And similarly, people who have been drinking sometimes get into fights that they -- or conflicts that they wouldn't get into if they were sober, correct?

A.   Yes.

Q.   So don't all of those indicate

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James - 4-20-26 - Alfred Terrille

that it's a good idea to keep people who are drinking alcohol from also carrying firearms and to keep people who have firearms from carrying it in places where there's alcohol?

MR. STAMBOULIEH:  Object to the compound question.

Q.    Sure.  Let me break that up.  So don't those facts indicate that it's a good idea to keep firearms out of places that serve alcohol?

A.    No.  People still have a right to defend themselves and their families no matter where they go.

Q.    And no matter what state they're in?

MR. STAMBOULIEH:  Object to form.

Q.    You can answer.

MR. STAMBOULIEH:  Can you just ask a clarifying question?  Do you mean what's --

BY MR. THOMPSON:  (Cont'g.)

Q.    You can answer the question if you would.

A.    Restaurants are mostly family places.  It's not like a -- a -- a -- a dive bar or a bar that just serves alcohol.  They're -- they're

800-523-7887                              ARII@courtsteno.com
                    Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 90

Antonyuk, et al v James - 4-20-26 - Alfred Terrille

family oriented, and I've never seen anybody drunk at -- at DeMarco's, so I -- I think people have a right.

Q.   Do you think the question would be different at a bar or a dive bar?

A.   If there's no food and it's just alcohol, that's a different story in my opinion.

Q.   So do you think that this law would be constitutional to the extent that it's covering bars that don't serve -- or don't -- that don't serve food?

A.   Do I believe it would be constitutional to prevent people from drinking?  Is that -- was that the question?

Q.   Yes.  Well, let me rephrase the question and see if that -- that helps.  So this law bars -- well, that's the unfortunate word to choose. Let me start again.  This law prohibits firearms in places that serve alcohol.  Do you think that's constitutional in places that serve alcohol only and not food?

A.   Do I think it's constitutional, no.

Q.   Why not?

A.   Because it's restricting

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 91

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

someone's rights.

Q. So you think that even in a bar or a dive bar where people are only drinking alcohol, it's unconstitutional to prohibit guns?

A. Yes.

Q. Understood. So you identified, if I recall, three of these restaurants DeMarco's, Buffalo Wild Wings, and Bentley's as places that serve alcohol, correct?

A. Yes.

Q. Do you know whether any of these restaurants has an owner that allows or prohibits guns?

A. No.

Q. Do you believe that the owners of these places have a right to prohibit guns if they want?

A. Do I -- could you repeat -- repeat the question? I'm sorry.

Q. Sure. Do you believe that the owner of these establishments has the right to prohibit guns in their establishment if they choose to do so?

A. Yes.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 92

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   Why?

A.   It's their prerogative.

Q.   You testified earlier that you thought that Regal Cinemas did not have the right to do so; is that right?  Can you explain to me the difference?

A.   I was thinking from a -- a -- a -- I -- a private person as opposed to a -- a -- a corporate -- corporate policy.  That's what I was thinking of a person.  The question was, do they have a right?  Is that the question?

Q.   The question is, do the owners of Bentley's, DeMarco's, and Buffalo Wild Wings have the right to prohibit guns in their establishment?

A.   I say yes.

Q.   But a corporation like Regal would not?

A.   I guess -- I guess what I was -- what I was thinking about -- they would have the right, but the State does not have a right to prohibit that.

Q.   So you agree that property owners have the right to prohibit other people from carrying guns onto their property?

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 93

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.   Yes.

Q.   And is that true for corporate property owners and for individual property owners?

A.   Yes.

Q.   Do you believe that property owners have the right to know when somebody is bringing a gun onto their property?

A.   No.

Q.   Why not?

A.   It's not their concern.

Q.   It's their property, though.

A.   How another person chooses to protect himself is not their concern.

Q.   So I'll represent to you that one of the New York laws at issue in this case requires people to get express consent of the owner or lessee or occupier of the property before bringing a gun on to private property.  Does that sound correct?

A.   I'm sorry.  Could you repeat that?

Q.   Sure.  Do you understand that one of the laws that you're challenging requires people to get express consent of a property owner or lessee before bringing a gun onto their property?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    Yes.

Q.    Do you believe that it's unconstitutional to require people to ask the owner or the lessee if it's all right to bring a gun?

A.    I believe it's unconstitutional for the State to require you do so.

Q.    Why?  How does that infringe your right, just to ask?

A.    Because I believe you should not have to.

Q.    Does it make a difference if the property that we're talking about is someone's home?

A.    No.

Q.    So is it correct to say you don't think that this law is constitutional even when talking about bringing a gun into somebody's home?

A.    I'm sorry, could you repeat that?

Q.    Sure.  Is it correct to say that you don't believe this law is constitutional even when applied in the situation of bringing a gun into somebody else's home?

A.    I believe it's unconstitutional.

Q.    Would you bring a gun into someone else's home without asking their permission?

800-523-7887                                   ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 95

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.    I invoke my 5th Amendment right.

Q.    Have you ever brought --

A.    -- against --

Q.    Oh, I apologize.  You can go.

A.    -- against self-incrimination.

Q.    Have you ever brought a gun into somebody else's home without their permission?

A.    I invoke my 5th Amendment right just -- against self-incrimination.

Q.    Would you want other people to bring a gun onto your property without your permission?

A.    Yes.

Q.    You wouldn't want them to ask your permission first?

A.    No.

Q.    Even if they were a stranger?

A.    No.  And if they meant me harm, then that's another story.

Q.    All right.  Lastly, can you tell me why you're suing in regard to airports?

A.    Yes.  At the time this was enacted, I was planning a trip to Tennessee and there was no clear directive, and there's still none as far

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

as going to county off airport run by the county, which is government agency.

Q.   So Mr. Terrille, I'm going to show you a document.  It's a large one, but we don't have to look at the whole thing.  And sir, do you recognize this document?

A.   Yes.

Q.   And what is it?

A.   This is the initial filing of complaint.

Q.   And Charles, could I ask that this be marked as Exhibit Five?

MR. STAMBOULIEH:  No objection.

Q.   Thank you.  And --

A.   I don't have my reading glasses on, so I'm sorry.

Q.   Oh, yeah, that's sure.  That's fine.  Let me direct you to page fifty-one, paragraph number one hundred and sixty-eight.

A.   I'm sorry, what page?

Q.   Fifty-one, bottom of page fifty-one.  And let me know when you find paragraph one sixty-eight.

A.   Got it.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   So this says, in the next sixty days, Plaintiff Terrille will visit the State of Tennessee, correct?

A.   Yes.

Q.   And is this the trip that you mentioned?

A.   Yes.

Q.   Did you in fact fly to the State of Tennessee with a checked firearm?

A.   I did not.

Q.   You did not.  Why not?

A.   Like I said, at the time there was no clarity as far as going into a government facility.  So I did not -- I did not want to be arrested.

Q.   So you did not bring your firearm?

A.   I did not go to Tennessee.

Q.   Oh, you didn't go to Tennessee. Okay.  Have you since then at any point flown with a firearm?

A.   No.

Q.   So let me direct you a little further to paragraph one hundred seventy on the next

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 98

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

page.  And can I ask you just to read that out loud?

A.   (Reading) Plaintiff Terrille within the next sixty days will travel to Tennessee via airplane and intends to bring a firearm in his check luggage and full compliance with 18 U.S.C. Section 926 A and T.S.A. regulations.

Q.   So is what's described in paragraph one hundred and seventy the relief that you're asking the court to give in this case?

A.   I -- I'm not a lawyer.  I -- I'm just -- I know how New York State is, and they arrest people at airports all the time.  So I did not want to chance it, so that's why I didn't go to Tennessee.

Q.   Sure.  Let me ask you the question in a -- in a slightly different way that hopefully is a little clearer.  Is the conduct that you're intending to do bringing a firearm in checked luggage in compliance with T.S.A.? regulations?

A.   Yes, it is.

Q.   Are you intending to carry a weapon onto a plane?

A.   No.

Q.   Are you intending to carry a weapon through airport security?

800-523-7887                              ARII@courtsteno.com
                   Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

A.   No.

Q.   Are you intending to carry a weapon on the airport grounds?

MR. STAMBOULIEH:  Object to form.

Q.   You can answer.

A.   Are -- are you talking about going from the parking lot to T.S.A.?

Q.   I'm asking you whether you intend to carry a concealed weapon --

A.   Oh.

Q.   -- on the grounds of the airport?

A.   No.  Sorry, I --

Q.   Understood.  So Mr. Terrille, do you ever attend gun shows?

A.   Yes.

Q.   What gun shows do you attend?

A.   I -- generally when they have the -- have one, it's over in Albany.

Q.   So what was the most recent gun show that you went to?

A.   It's been a couple years since I've been to one.

Q.   Okay.  Ballpark?

A.   I would've to say -- had to be

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 100

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

2024.

Q.   And do you recall the specific gun show in question?

A.   It was at the Clovis Community Center.  I believe it's run by Northeast.  I'm not exactly sure what the acronym is.  I'm sorry.

Q.   And have any of the gun shows that you attend been shut down because they're at a sensitive location?

A.   No.

Q.   Understood.  Let's take a quick five-minute break.  Is that all right?

MR. STAMBOULIEH:  Yeah.

MR. THOMPSON:  Back at twelve fifty?

MR. STAMBOULIEH:  Yeah.

(Off the record at 12:45 p.m.)

(On the record at 12:52 p.m.)

COURT REPORTER:  Yeah.  Now we're back on.

BY MR. THOMPSON:  (Cont'g.)

Q.   Okay.  So Mr. Terrille, is there any part of your testimony today that you would like to add to or change or clarify?

A.   At this point in time, no.

800-523-7887                               ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   Okay.  No further questions from the State.  Todd and John and Philip, do any of you?

MR. LONG:  No questions for the City of Syracuse.

MR. HEISLER:  Onondaga County, no questions.

MR. THOMPSON:  Philip, are you -- do you hear us?  Can we send Philip an e-mail?

MR. STAMBOULIEH:  Should we send Phillip an e-mail.

MR. THOMPSON:  Yeah.

MR. STAMBOULIEH:  Because it would be terrible if he said I had a question.

MR. THOMPSON:  Yeah, everybody come back.

MR. STAMBOULIEH:  Yeah.  We'd say no.

MR. THOMPSON:  All right.  I just shot him in the e-mail.  While we're waiting, I -- Stephen, I don't know if I want to -- if -- I don't mean to put you on the spot.

MR. STAMBOULIEH:  Yeah.

MR. THOMPSON:  But you know, with the caveat that Philip hasn't asked anything yet, do you have any questions?

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 102

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

MR. STAMBOULIEH:  No.

MR. THOMPSON:  Okay.

MR. STAMBOULIEH:  Did -- we'll wait for him.  But did you want me to explain to him his right to read and sign or did you want to --

MR. THOMPSON:  It's up to you.

MR. STAMBOULIEH:  You have the right to read and sign the transcript that the court reporter is going to prepare.  It's completely up to you.  All that basically means is that he's going to send you a copy of it.  You have -- I don't even remember, it's thirty days or some amount of days to read it and make sure that the court reporter takes down all the information that you gave orally and that it matches what you said in the transcript.  And then if there's a -- a problem with the transcript, like if you said uh-huh, and it was actually no, you would want -- or if you got down the wrong word, you would want to correct the word.  You can't change your testimony, so you can only correct it if it's incorrect in the transcript.  So do you want to exercise that right to read and sign?

THE WITNESS:  Yes.

MR. STAMBOULIEH:  Okay.  Good.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 103

Antonyuk, et al v James - 4-20-26 - Alfred Terrille

MR. THOMPSON:  So I -- I mean, I defer to you guys.  Do we want to like break for another ten or fifteen minutes just to see if Philip --

MR. STAMBOULIEH:  Can we -- can we call him, maybe?

MR. THOMPSON:  Yeah, that's actually -- that's a good idea.

MR. STAMBOULIEH:  Do you want to go all off the record and we'll --

(Off the record at 12:55 p.m.)

(On the record at 12:59 p.m.)

COURT REPORTER:  The time is twelve fifty-nine.  We're now on the record.

MR. BANASZEK:  Are we on record?

COURT REPORTER:  Yes.

MR. STAMBOULIEH:  Yes.

CROSS EXAMINATION

BY MR. BANASZEK:

Q.   All right, sir.  Okay.  So I just have a couple questions specifically regarding the Albany County District Attorney.  So I'll start.  Why did you include Albany County District Attorney in the lawsuit?

A.   Are -- are you asking me?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

Q.   Yes.  Do -- do you know why you included the Albany County District Attorney as a Defendant in this case?

A.   I do not know.

Q.   Okay.  You live in Albany County; is that correct?

A.   Yes.

Q.   Okay.  Have you ever been prosecuted by the Albany County District Attorney for violating the C.C.I.A.?

A.   No.

Q.   Okay.  Have you ever been threatened with prosecution for -- by the Albany County District Attorney for violating the C.C.I.A.?

A.   No.

Q.   Have you heard the District Attorney of Albany County ever say that they're going to enforce the provisions of the C.C.I.A.?

A.   No.

Q.   Okay.  And you're not aware of the Albany County District Attorney making any such statements?

A.   No.

Q.   Okay.  Let me ask you this.  Do

Associated Reporters Int'l., Inc.                                www.courtsteno.com

Page 105

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

you know who the current Albany County District Attorney is?

A.   I know it was David Soares.

Q.   Do you know if it's still David Soares right now?

A.   Now it's -- I -- I -- I know who it is.  I just can't recall his name right at the moment.

Q.   Okay.  I don't have any further questions.  Thank you.

MR. STAMBOULIEH:  Okay.  And I have no follow up.

MR. THOMPSON:  So I think that's -- I think that's a wrap.

COURT REPORTER:  All right.  Now we are off the record.

(The deposition concluded at 1:01 p.m.)

Associated Reporters Int'l., Inc.                      www.courtsteno.com

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

STATE OF                    )

COUNTY OF                   )

          I, ALFRED TERRILLE, have read the foregoing record of my testimony taken at the time and place noted in the heading hereof and do hereby acknowledge: (Please check one)

          ( ) That it is a true and correct transcript of same.

          ( ) With the exceptions noted in the attached errata sheet, it is a true and correct transcript of same.

                              X_____

                              ALFRED TERRILLE

Sworn to before me this

_____day of _____, 2026.

X_____

NOTARY PUBLIC

My Commission Expires:

_____

800-523-7887                              ARII@courtsteno.com

Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 107

Antonyuk, et al v James – 4-20-26 – Alfred Terrille

I, CHARLES BATTS, do hereby certify that the foregoing testimony of ALFRED TERRILLE was taken by me, in the cause, at the time and place, and in the presence of counsel, as stated in the caption hereto, at Page 1 hereof; that before giving testimony said witness was duly sworn to testify the truth, the whole truth and nothing but the truth; that the foregoing typewritten transcription, consisting of pages number 1 to 105, inclusive, is a true record prepared by Associated Reporters Int'l., Inc. from materials provided by me.

CHARLES BATTS, Reporter

800-523-7887                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 108

Antonyuk, et al v James – 4-20-26 – Alfred Terrille
         ASSOCIATED REPORTERS INTERNATIONAL, INC.
                      (800) 523-7887

Date:
Case Name:  Ivan Antonyuk, et al v Steven G. James
Claim Number:
Deponent:  Alfred Terrille
Deposition Date:  4-20-26
Examining Attorney:  James Thompson, A.A.G.
Dear Mr. Terrille:

Please read and make any changes and/or corrections in
your testimony and sign the transcript in the presence of

a notary public.  Please do so within thirty (30) days.
If you fail to sign the transcript within thirty (30)
days, it will be delivered to the appropriate parties
without signature.  Return the transcript with
corrections, if any, to:

             OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL
             BY:  JAMES THOMPSON, A.A.G.
             28 Liberty Street
             New York, New York 10005

CORRECTIONS:

_____        Word or phrase: _____
                Corrected to:   _____

_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____

                Corrected to:   _____
_____

Date Signed                           _____
                                      ALFRED TERRILLE

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

## A

**A-L-F-** 12:17
**A.A.G** 2:10,15 108:6,13
**a.m** 1:14 11:3 22:23,24 29:23 29:24 40:24,25 63:20,21
**abiding** 78:7
**ability** 14:20,23 70:24 88:12
**able** 15:2 72:21 74:7 76:18 76:25
**absent** 41:9
**absolute** 65:20 71:7
**absolutely** 50:2
**account** 47:15
**accounts** 20:25
**accurate** 9:17
**acknowledge** 106:4
**acronym** 100:7
**Act** 57:18
**action** 6:14 8:3
**active** 19:3
**actual** 32:3
**add** 29:14 100:24
**addition** 6:10 7:23
**additional** 10:2
**addresses** 12:3
**Adirondack** 65:17 66:22 67:2
**Adirondacks** 57:7 67:13
**adjacent** 61:7
**adjournment** 25:23
**adjust** 73:5
**administering** 8:13 9:25
**administrative** 26:16,17,21
**admission** 84:9
**admits** 41:21
**admittance** 40:4
**admitted** 83:20
**admitting** 41:17
**advice** 36:10
**advocate** 83:6
**affect** 14:19,23
**affiliated** 19:21
**affirm** 12:9
**afraid** 78:21
**age** 84:10
**agencies** 26:22

**agency** 26:18 28:4,8 96:3
**ago** 25:18 26:6 27:16 52:9
**agree** 53:10,16 92:23
**agreed** 6:3,15,25 7:6,11,16 8:4 9:5
**aid** 13:8
**airplane** 98:5
**airport** 96:2 98:25 99:4,12
**airports** 95:22 98:13
**al** 1:1,4,9 2:1 3:1 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1,3 106:9 107:1,3 108:1,5,25
**algorithm** 48:5
**allow** 58:7 84:9
**allowed** 61:9 64:23 72:15 81:5 84:13
**allows** 91:13
**amendment** 24:20 41:8,16 41:19 42:9,12,16,20,24 43:4,8,11,12 45:18,20,24 46:5,8 59:14,16,20 60:23 61:25 62:3 63:4,5 65:13,14 69:23 71:4 80:8,10 84:20 84:25 85:18 95:2,9
**America** 18:8,13 19:4,13 46:22 52:2,4
**amount** 34:23 35:10 102:13
**and/or** 108:8
**answer** 13:7,12,17 14:2,3,25 15:23 16:10 19:2 23:10 36:9,13,17,21 37:12,23 38:4,16 40:5,7,10,17 41:11 41:13,17,20,24 43:17 44:11 56:2 59:15 60:11 67:8,24 68:5 71:12 76:24 77:18 79:25 84:19 85:6,17 86:25 87:22 89:17,21 99:6
**answered** 88:4
**answers** 13:24 14:20 15:3
**Antonyuk** 1:1,4 2:1 3:1 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1

**Albany** 2:18,19,22 11:21,22 11:23 17:5 21:23 33:11,13 34:9,13 62:6 99:19 103:22 103:23 104:3,6,10,14,18,22 105:2
**alcohol** 85:22 86:3,8 88:7,13 88:17 89:3,5,10,25 90:7,19 90:20 91:4,10
**Alfred** 1:1,12 2:1 3:1 4:1,3 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1,13,17 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1,17,22 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1

16:1 17:1 18:1 19:1 20:1
21:1 22:1 23:1 24:1 25:1
26:1 27:1 28:1 29:1 30:1
31:1 32:1 33:1 34:1 35:1
36:1 37:1 38:1 39:1 40:1
41:1 42:1 43:1 44:1 45:1
46:1 47:1 48:1 49:1 50:1
51:1 52:1 53:1 54:1 55:1
56:1 57:1 58:1 59:1 60:1
61:1 62:1 63:1 64:1 65:1
66:1 67:1 68:1 69:1 70:1
71:1 72:1 73:1 74:1 75:1
76:1 77:1 78:1 79:1 80:1
81:1 82:1 83:1 84:1 85:1
86:1 87:1 88:1 89:1 90:1
91:1 92:1 93:1 94:1 95:1
96:1 97:1 98:1 99:1 100:1
101:1 102:1 103:1 104:1
105:1 106:1 107:1 108:1,4
**anybody** 49:4 60:16 77:12
 90:2
**anymore** 48:6
**anytime** 14:9 43:6
**apologize** 18:3 95:5
**app** 47:17
**appear** 83:21
**appearances** 2:2 11:9
**application** 33:18
**applied** 94:21
**appreciate** 71:12
**appropriate** 9:19,23 27:4
 108:10
**approved** 32:21
**approximately** 15:20,21
 17:15 18:10 21:21 22:10
 23:8 24:3 25:8 27:8,12
 32:18,19 48:22 50:24
**April** 1:13
**area** 66:2 67:4
**areas** 62:14
**ARII** 8:13
**armed** 50:14 72:14,15,20,20
 82:11
**arms** 69:2 71:5,8 82:18
**arrest** 98:12
**arrested** 28:8 97:16

**asked** 14:4,7 15:4 41:20
 46:10,20 49:10,19,25 70:19
 77:4 101:24
**asking** 16:19 18:3 23:7 55:7
 56:7,14 71:9 94:25 98:10
 99:9 103:25
**aspects** 45:7,8
**assault** 37:20,25 42:15
**Assistant** 11:17,21
**Associated** 8:12 11:6 107:10
 108:2
**assume** 13:17 34:6 67:25
 69:7,8
**assuming** 16:19
**attached** 106:6
**attack** 79:21
**attend** 19:9 99:15,17 100:9
**attest** 76:12
**attorney** 2:9,14 8:24 11:14
 11:17,21,22 12:2 13:3,3,25
 16:4 18:5 103:22,23 104:3
 104:10,15,18,22 105:3
 108:6,12
**audience** 77:15,21
**Aurora** 72:10 75:22 79:21,22
**Avenue** 86:5
**aware** 33:14 63:7,9 66:21,24
 75:20,24 104:21
**awesome** 64:14

---

**B**

**B** 5:2
**back** 23:2 29:25 30:22 31:8
 31:11,14,19 32:6 41:3,4,23
 51:12 54:19 63:22 75:21
 76:2 79:11 83:8 85:21
 87:19 100:15,19 101:16
**background** 28:11
**bad** 88:17
**bag** 81:15,16,17,20
**Bakeries** 17:25 22:9
**ballpark** 23:11 99:24
**Banaszek** 2:20 4:5 11:20,20
 103:15,19
**banned** 57:18
**bans** 46:2 80:6

**bar** 6:12 8:2 89:24,25 90:5,5
 91:3,4
**bars** 90:10,17
**baseball** 26:14
**based** 14:2
**basically** 102:11
**basis** 52:18 57:2,25 73:12
**Bates** 30:9
**Batts** 1:21 107:2,13
**beach** 66:8
**bear** 9:6 69:2 71:5,8 82:18
**bears** 67:13
**beautiful** 17:2 62:7 64:12
 65:20
**beginning** 84:4 85:10
**begun** 6:20
**belief** 73:13
**believe** 18:19 25:16 26:5,19
 27:10 29:12,15 32:3 34:4,8
 34:11 45:19 46:4,7,11,16
 47:6 48:25,25 54:9 55:22
 55:22 56:5 61:8 64:25 67:3
 67:3,17,19 68:25,25 73:11
 73:24 74:2,3,5,23 75:2,6,6
 76:17 80:14,17,18,23 82:19
 82:22 83:3 86:12 90:12
 91:16,21 93:6 94:3,6,10,20
 94:23 100:6
**Benjamin** 23:22 24:8
**Bentley's** 86:10,10 91:9
**Bentley's** 92:14
**best** 22:13 74:9 76:3,4
**beverage** 17:14,19
**big** 65:22
**birthday** 26:13
**bit** 16:24 31:23 75:16
**boats** 66:7
**body** 65:20
**borne** 10:5
**bother** 67:20
**bottom** 32:6 54:21 57:13
 69:25 96:22
**Box** 2:6
**branch** 2:7 45:13
**brandish** 44:5
**break** 14:5,9 28:17 89:8

Associated Reporters Int'l., Inc.                    www.courtsteno.com

100:13 103:3
**brief** 22:19 49:24
**bring** 61:20 79:10 81:15
  85:16 94:5,24 95:12 97:17
  98:5
**bringing** 93:8,18,25 94:17,21
  98:18
**brought** 41:10 95:3,7
**Bruen** 48:24
**bucket** 53:19
**Buffalo** 85:23 86:7,9 91:9
  92:14
**building** 83:4 85:4,13,13
**buildings** 54:17,18
**bunch** 32:14 51:14
**burden** 70:16
**buy** 28:10

—————————
          **C**
—————————

**C** 4:2
**C.C.I.A** 56:3 57:23 59:13
  61:24 63:3 65:11 80:6
  104:11,15,19
**call** 28:24 73:20 103:6
**called** 20:4 23:17,22 49:12
  49:17
**Campus** 2:21
**capable** 77:5
**Capacity** 1:8
**caption** 107:5
**car** 24:12 88:12
**card** 31:3,11 35:21,23
**care** 21:25
**career** 17:19
**carnage** 72:23
**carried** 43:2,7 62:23 65:7
  77:16 80:3 81:17
**carry** 5:8 30:8 38:10,18 39:2
  39:5,8,9,25 40:7,13 42:18
  42:22 55:13,23,24 56:4,5
  56:21,22 57:17,18 68:9,15
  68:21 69:15,20 70:2,3,12
  84:18,22 98:21,24 99:3,10
**carrying** 39:23 58:4 67:20
  69:10,16,17 70:4 82:2 85:4
  89:3,4 92:24

**Carvel** 17:25
**case** 20:19,23 21:20 22:6,11
  22:16 23:16,22 24:11,14,18
  24:19 25:12 26:7 29:2 49:4
  49:10,14 51:16 52:5,22
  53:8 55:9,16 93:16 98:10
  104:4 108:4
**cases** 24:18
**cast** 84:7
**Catskill** 66:22
**cause** 12:10 107:4
**caveat** 101:24
**Cedar** 18:2
**center** 58:14 61:4 71:17
  100:6
**Central** 86:4
**certain** 16:10 26:21 34:22
  35:10
**certainly** 75:2 83:5
**certification** 7:8
**certify** 107:2
**challenging** 55:9,16,19,20
  93:23
**chance** 98:14
**change** 84:17 85:6,15 100:24
  102:20
**changed** 41:12
**changes** 108:8
**channel** 20:4 47:19,22
**chaotic** 74:11,19
**charge** 7:15 25:25 26:2,2
  58:23
**charges** 10:4
**Charles** 1:21 30:16 33:3
  83:24 87:21 96:12 107:2,13
**check** 28:11 52:15 81:15,20
  98:6 106:5
**checked** 97:10 98:18
**Chief** 12:5
**choice** 39:10,12
**choose** 19:21 41:8 69:22 70:9
  70:16 79:13 87:5 90:17
  91:23
**chooses** 93:13
**cinema** 80:7
**Cinemas** 80:24 83:20 85:16

92:5
**circumstances** 9:23
**citizen** 78:8
**City** 12:2,4 101:4
**civil** 6:6,23 7:4,18 9:9 18:14
**claim** 14:3 108:4
**Claimant** 1:5 2:3
**CLAIMS** 1:3
**clarify** 13:17 100:24
**clarifying** 89:19
**clarity** 97:14
**clean** 13:9 25:15
**clear** 73:19 74:5,7 95:25
**clearer** 98:17
**clearly** 56:7
**client** 41:7,12,15
**clientele** 84:7
**clients** 41:10
**Clifton** 71:16
**Clovis** 100:5
**co-counsel** 11:18
**Colonie** 58:12,15,20,23 59:2
  59:9,12,19 61:2,4 71:17
**Colorado** 72:10
**com** 53:7
**come** 48:2,5 101:15
**comes** 13:23
**coming** 78:4
**commenced** 11:2
**Commission** 106:13
**committing** 40:4
**Community** 100:5
**companies** 17:25 18:25
  80:19
**company** 17:14,19 22:8
  80:13
**compensation** 50:4,8
**complaint** 5:14 96:11
**complete** 15:3 87:21
**completely** 53:7 102:10
**completeness** 31:18
**compliance** 98:6,19
**compound** 89:7
**Conceal** 5:8
**concealed** 30:8 38:19 57:17
  70:3 99:10

800-523-7887                                              ARII@courtsteno.com

**concern** 93:11,14
**concert** 64:13
**concluded** 105:18
**condition** 14:19
**conduct** 7:20 9:6,11 98:17
**conducted** 8:7 10:6
**conducting** 10:3
**conference** 8:7 9:7 28:16
**conferred** 41:11
**confirm** 40:21
**confirming** 8:16
**conflicts** 88:22
**congratulations** 17:4 27:4
**connected** 48:13
**connecting** 54:3
**connection** 19:12 34:17 50:4
  50:10
**consent** 8:19 93:17,24
**consider** 39:11,17,22
**considered** 8:20 57:8 65:19
**considers** 67:4
**consisting** 107:9
**Consolidated** 23:17
**constitution** 82:15,17
**constitutional** 46:12,13 90:9
  90:13,20,22 94:16,20
**Cont'g** 23:3 30:2,20 36:25
  38:5 42:2 44:15 53:24
  60:10 63:24 87:18 89:20
  100:21
**Cont'g** 31:21 33:6 40:8
**contact** 47:3 48:10 51:19
**contacted** 46:20 48:8,12
**contemplation** 25:23
**control** 8:12
**controlled** 6:24
**controls** 34:8,12
**conversation** 13:21 41:6
  49:18,23 51:24
**conversations** 16:20
**conversed** 15:18
**conviction** 25:20
**copy** 7:13 8:25 9:8 102:12
**corporate** 92:10,10 93:3
**corporation** 17:25 23:18
  92:17

**correct** 23:5 24:17 29:10
  30:11 32:7 35:21 36:3 48:8
  49:5 55:9 58:9,17 61:7
  62:15 64:16 68:14 71:17,19
  71:21,24 72:3,6,25 73:2,4
  76:9 80:13,16 81:12,16
  83:21 84:14 86:19 88:18,23
  91:10 93:19 94:15,19 97:4
  102:20,21 104:7 106:5,7
**Corrected** 108:16,18,19,20
  108:21,22,23
**corrections** 108:8,11,15
**costs** 9:6 10:2
**counsel** 6:4,16,21 7:2,7,12,14
  7:17 8:5,8,10 9:3 11:9 15:7
  20:19,22 36:10 54:2 107:5
**county** 2:18,19 3:5 11:21
  17:5 21:23 23:23 33:11,13
  34:9,13 62:6 96:2,2 101:6
  103:22,23 104:3,6,10,15,18
  104:22 105:2 106:2
**couple** 36:20 73:22 74:6
  87:11 99:22 103:21
**course** 22:20 27:10,11 32:15
  87:17
**court** 1:3 8:7,16 11:4 13:9
  21:22,24 22:25 23:23 26:17
  26:22 29:25 30:18 41:2
  63:22 87:16 98:10 100:19
  102:9,14 103:13,16 105:16
**courts** 64:19,22
**covering** 90:10
**CPLR** 8:6 9:8,11
**crime** 41:17,21
**crimes** 40:5
**criminal** 25:2
**criteria** 39:14
**Cross** 4:5 103:18
**Crossings** 58:20 60:25 61:6
  61:10,14,21
**crowded** 71:23 72:25 73:21
  74:5 76:15,22 77:11,21
**Crump** 46:24 47:24 48:7
  49:8,17 50:3,11,19 51:25
  52:4,11,13 53:25
**current** 105:2

**currently** 18:17 19:18 33:23
  44:7,16
**cut** 31:23

**D**

**d** 4:2,2 5:2 9:11,13
**dad** 23:20
**daily** 39:10,12
**dark** 72:25
**date** 1:13 35:16 108:3,5,24
**daughter** 23:25 24:9,16
**daughters** 17:3
**David** 105:4,5
**day** 39:6 51:2,6,10,12 53:16
  106:11
**day-to-day** 38:10 42:19
**days** 38:11 39:3 97:3 98:4
  102:13,13 108:9,10
**deadline** 52:6
**Dear** 108:7
**decide** 39:8
**deciding** 39:17,22
**decision** 33:18 48:24
**decisions** 88:17
**declaration** 15:16 16:13
**decline** 37:22 38:4,16
**deemed** 6:22 66:19
**deems** 65:11
**defend** 76:18 77:2,4 79:20
  89:12
**Defendant** 1:10 2:8,13 22:3
  104:4
**defending** 77:5
**defense** 44:2,22
**defer** 103:2
**defines** 55:19
**definitely** 26:3
**definition** 37:20 42:15 85:12
**degree** 85:5
**delays** 45:25
**delete** 50:25 51:3,6,14,14
**deleted** 50:22 51:8,13
**deleting** 51:9,11
**delivered** 108:10
**DeMarco's** 85:24 86:4 90:3
  91:8 92:14

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

**denied** 28:11
**denies** 46:2
**deny** 34:3
**department** 32:16
**Deponent** 108:5
**deposed** 9:9 14:13
**deposition** 1:12 8:6,15 9:7
  9:14,18,20,21 10:2,3,6 11:2
  13:5 15:14 16:4 52:25
  105:18 108:5
**Depositions** 7:20
**describe** 43:6 58:11 60:25
  62:5 64:10 65:16
**described** 5:4 98:8
**designate** 9:16
**despite** 84:23
**detector** 82:20 83:4
**development** 66:20
**difference** 35:2 92:7 94:12
**different** 17:24 18:21 55:15
  70:6 74:15 79:15 90:5,7
  98:16
**differently** 67:22
**dig** 28:14
**direct** 4:4 12:23 54:20 84:2
  96:19 97:24
**directions** 74:15
**directive** 95:25
**discover** 78:15
**discovered** 77:15,22
**discovery** 52:6
**discuss** 16:9 53:4
**discussed** 15:12 16:4 28:7
**dismissal** 25:23
**dismissed** 25:3
**disrupt** 67:15
**District** 11:22 23:18 33:22
  103:22,23 104:3,10,15,17
  104:22 105:2
**dive** 89:24 90:5 91:4
**divorced** 26:25
**document** 28:14,18,20 29:6
  29:8,10 30:4,5,9,23 42:4
  83:12,15 96:5,7
**documents** 16:15
**dog** 59:3 61:16 66:8

**dog's** 64:11 65:5
**door** 75:23
**draw** 44:4
**drills** 75:14,16
**drink** 84:4 86:13,16,19 88:7
  88:11,18
**drinking** 86:22 87:3 88:17
  88:21 89:2 90:13 91:4
**dropped** 25:17 26:5
**drove** 27:10
**drunk** 87:7,9 90:2
**ducks** 72:21 79:22,23
**duly** 107:6

**E**

**e-** 51:10 52:10
**E** 4:2,2,2 5:2,2
**e-mail** 20:16 29:19 48:11,15
  49:9 51:3,6,9,24 52:15
  101:9,11,19
**e-mailed** 9:2 20:18,21 49:4,8
  49:11,14 52:13
**e-mails** 50:18,22 51:2,9,11
  51:13,14 52:3,8 53:5
**earlier** 92:4
**East** 12:4
**effect** 33:8
**eight** 18:11
**eighties** 23:19
**either** 24:18 25:17
**electronic** 9:15 10:4
**electronically** 9:16
**elicit** 41:20
**else's** 68:11 70:24 94:22,25
  95:8
**enacted** 56:3 57:24 95:24
**enactment** 57:17
**endangering** 73:9 74:21
  76:16,23 77:6
**endorsement** 37:5,9
**enforce** 104:19
**enforcement** 28:4,8
**engage** 74:20
**engages** 76:3
**ensure** 9:17
**entering** 46:21 85:13

**Entertainment** 84:8
**entrance** 58:23
**equitable** 23:14
**Erich** 18:18
**errata** 106:7
**especially** 14:10
**ESQ** 2:5,20
**essentially** 13:6 49:19
**establishment** 91:23 92:15
**establishments** 91:22
**estimation** 81:24
**et** 1:1,4,9 2:1 3:1 4:1 5:1 6:1
  7:1 8:1 9:1 10:1 11:1 12:1
  13:1 14:1 15:1 16:1 17:1
  18:1 19:1 20:1 21:1 22:1
  23:1 24:1 25:1 26:1 27:1
  28:1 29:1 30:1 31:1 32:1
  33:1 34:1 35:1 36:1 37:1
  38:1 39:1 40:1 41:1 42:1
  43:1 44:1 45:1 46:1 47:1
  48:1 49:1 50:1 51:1 52:1
  53:1 54:1 55:1 56:1 57:1
  58:1 59:1 60:1 61:1 62:1
  63:1 64:1 65:1 66:1 67:1
  68:1 69:1 70:1 71:1 72:1
  73:1 74:1 75:1 76:1 77:1
  78:1 79:1 80:1 81:1 82:1
  83:1 84:1 85:1 86:1 87:1
  88:1 89:1 90:1 91:1 92:1
  93:1 94:1 95:1 96:1 97:1
  98:1 99:1 100:1 101:1
  102:1 103:1 104:1 105:1
  106:1 107:1 108:1,4
**events** 19:9
**everybody** 11:13 12:20,25
  13:10 29:21 76:17,25
  101:15
**exact** 68:20
**exactly** 18:17 25:9,17,18
  26:4,20 28:24 49:2 100:7
**examination** 4:4,5 6:9,12,17
  6:19,21 7:3,9,13,23,25 9:11
  12:23 103:18
**examined** 6:18
**Examining** 108:6
**examples** 46:2

**exceptions** 106:6
**exchanged** 16:22
**excuse** 84:20
**exercise** 69:22 70:25 102:23
**exercised** 69:3
**exhibit** 8:24,25 9:4 29:9
  30:17 33:4 35:18 54:19
  83:25 85:21 96:13
**exhibits** 8:23 9:20 28:16
  29:19
**exit** 72:2 75:23
**expiration** 35:16
**Expires** 106:13
**explain** 30:25 57:21 72:17
  73:15 75:16 81:7 92:6
  102:5
**explained** 41:14
**express** 8:19 93:17,24
**extent** 40:3,3,6 59:11,11
  61:23 63:2 65:10 80:6 90:9
**eyes** 73:5 75:25

———————————
**F**

**F** 4:2
**face** 75:20 84:10,11,12
**Facebook** 21:4,9
**facility** 97:15
**fact** 37:14 84:23 97:9
**factor** 39:21
**factors** 39:11
**facts** 89:9
**fail** 108:10
**failure** 6:10,20 7:24
**Fair** 41:25
**fake** 84:12
**fall** 62:22
**familiar** 25:22,24 34:15
  37:13 66:13 72:8
**families** 59:23 60:3 69:18,21
  89:12
**family** 16:6 21:8 78:14 79:20
  86:23 89:23 90:2
**far** 19:5 25:13 52:15 56:24
  95:25 97:14
**father** 26:12
**fault** 69:19

**favorite** 64:11 65:5
**feared** 67:10
**federal** 33:24 54:17
**fee** 58:23
**feel** 13:16 21:12 39:13,14,17
  39:22 59:23 60:3,6,13,16
  60:18 69:12,13 70:8,15,16
  70:23 77:15,21,24 78:18,19
  79:12
**felony** 26:2,3
**field** 17:13
**fifteen** 103:4
**fifty** 100:15
**fifty-** 96:22
**fifty-nine** 103:14
**fifty-one** 96:19,22
**fights** 88:21
**file** 18:22
**filing** 7:8 96:10
**fill** 32:14
**film** 73:6
**final** 29:4
**find** 96:23
**finding** 50:4
**fine** 53:22 96:19
**fingerprint** 31:15
**finish** 14:6
**fire** 73:9
**firearm** 26:8 28:11 43:3,14
  43:21,25 44:5,8,18,21
  97:10,18,22 98:5,18
**firearms** 5:12 24:19,24 36:6
  42:8,23 46:5 57:19 74:21
  80:6 89:3,4,10 90:18
**firefight** 76:15,22 77:11
**first** 13:10 21:8,9 40:9 48:11
  57:24,25 83:22 84:3 85:5
  95:16
**first-degree** 85:12
**five** 5:13 29:18 96:13
**five-minute** 100:13
**flip** 30:14
**flown** 97:21
**fly** 97:9
**folks** 13:12 28:15
**follow** 19:23 20:3 46:19

  47:13,13,25 105:13
**follow-up** 56:15
**following** 19:22 48:3
**food** 17:22 84:4 90:6,11,21
**Foods** 18:2
**forbid** 79:21 83:9
**foregoing** 106:3 107:3,8
**forest** 66:14,15,18,23
**forget** 47:9,9
**form** 6:8 7:21 43:16 44:10
  67:7,23 68:4 89:16 99:5
**forty** 27:11
**forty-seven** 41:3
**forums** 21:13
**forward** 16:19 88:2
**four** 5:11 30:11 54:21 57:14
  62:19 83:13,25
**free** 13:16 40:7 68:12,13,17
  68:23 70:13,21 71:3,11
  79:19
**frequent** 56:20 58:2
**friends** 78:14
**front** 26:17,17 30:22 31:2
  58:3
**full** 84:2 98:6
**fun** 66:6
**furnished** 7:14
**further** 6:15,25 7:6,11,16
  8:23 72:18 73:16 97:25
  101:2 105:10
**future** 56:24

———————————
**G**

**G** 1:7 4:2 108:4
**G.O.A** 18:16,21 19:21 47:3
  48:13 50:13 51:19 52:16
  53:6 54:9
**Gadgets** 20:4
**general** 2:9,14 11:14,17 13:4
  88:6 108:12
**generally** 61:15 65:6 73:3
  99:18
**generated** 9:18
**gentleman** 20:5
**George** 65:16,18,21 66:2,2,4
  66:10

Associated Reporters Int'l., Inc.                    www.courtsteno.com

**germane** 41:9
**getting** 26:12 74:4
**give** 12:10 13:17 14:20 15:2 22:22 23:11 28:14 40:15 98:10
**giving** 12:3 107:6
**glasses** 96:16
**glove** 26:14
**go** 11:16 21:9,24 29:18 40:18 40:21,22 41:22 47:18 54:19 56:23,25 57:8 58:25 59:3 61:13 62:17 63:18 64:12 65:3,6 66:6 75:13,21 79:9 81:11,14 87:10,14 89:13 95:5 97:19,20 98:14 103:9
**God** 24:13
**goes** 83:8
**going** 15:22 16:18,23 28:14 29:4 30:4,12 32:22 40:2,5 57:4 59:13 60:22 64:4 65:9 73:7 75:25 79:10,11 81:3 83:12 85:20 96:2,4 97:14 99:8 102:10,11 104:18
**good** 11:12,25 88:6 89:2,9 102:25 103:8
**government** 45:6,7,8 54:18 96:3 97:14
**governor** 45:12
**grand** 23:12
**grandchildren** 83:9
**grandkids** 73:17
**grandsons** 78:11
**grant** 34:3
**great** 12:20 22:25
**Grill** 85:24
**grilling** 62:14
**grounds** 99:4,12
**Group** 84:8
**groups** 18:22 19:16,20 20:12
**guaranteed** 69:23
**guarantees** 71:5
**guard** 82:11
**guess** 48:5 56:15 60:7,12 69:9 74:18 82:4 87:20 92:19,19
**guessing** 60:9

**guests** 84:10
**gun** 18:8,12 19:3,12,16 39:23 39:25 40:13 43:7 45:14,15 45:17,19 46:21 51:25 52:4 59:8,18,24 60:4 61:20 65:7 67:15 68:3,15,21 69:6,10 69:11,24 70:13,21 71:3,11 76:15,22 77:6,16,22 78:16 79:10,19 80:4 86:22 88:7 93:8,18,25 94:5,17,21,24 95:7,12 99:15,17,20 100:4 100:8
**gun-free** 70:7 79:16
**guns** 18:23 20:4,12 42:5 46:12,14 58:8 60:18 61:9 61:12 64:23 66:25 68:17,23 69:19,20,25 70:12 71:10 76:7,10 80:24 81:9 82:21 83:2 87:3 91:5,14,17,23 92:15,25
**guys** 103:3

---

**H**

**H** 5:2
**half** 32:18 52:7
**hand** 12:8,15
**handful** 13:8 85:24
**handgun** 62:23
**handguns** 36:2
**happen** 83:10
**happened** 24:11 25:12
**happens** 79:21
**happy** 14:8
**hardest** 13:12
**harm** 95:19
**Harriman** 2:21
**he'll** 41:13
**head** 13:22 75:19
**heading** 106:4
**health** 84:12
**hear** 101:9
**heard** 66:15,16 104:17
**heaven** 79:21 83:9
**HEISLER** 3:5 101:6
**helps** 23:24 90:16
**hereof** 106:4 107:6

**hereto** 6:4,17 7:3,8,13,18 107:5
**Hi** 11:25
**hierarchy** 18:18
**Higbie** 52:21
**highly** 19:24
**hiking** 62:8 63:16 64:13
**hinder** 70:24
**hinders** 45:25
**hired** 24:16
**Hold** 59:10
**holster** 38:20,22
**home** 94:13,17,22,25 95:8
**honest** 18:24 24:4 82:6
**honestly** 32:4 87:25
**hood** 84:11
**hopefully** 98:17
**hour** 15:25
**house** 43:3,7
**huge** 62:8 63:14,15,17 65:18
**human** 69:7
**hundred** 73:22 74:6 96:20 97:25 98:9
**hunt** 64:7
**hunting** 32:15 63:7 64:3,4

---

**I**

**I'm** 55:9 58:19
**idea** 50:6 88:6 89:2,9 103:8
**identified** 71:15 91:7
**identify** 86:2
**identity** 8:17
**illness** 14:19
**impaired** 88:12
**important** 68:16,21
**Improvement** 57:18
**incident** 24:7 28:6
**include** 103:23
**included** 104:3
**including** 6:7 7:20 14:9
**inclusive** 107:10
**incomplete** 29:13,16
**incorrect** 102:22
**incrimination** 59:15 80:9 84:21 85:19
**index** 23:24

**indicate** 48:17 88:25 89:9
**individual** 93:4
**information** 16:16,21 31:7 31:10,13 49:12 102:15
**infringe** 45:21,21 94:8
**infringed** 69:24
**infringements** 46:3
**infringes** 45:24
**inhibitions** 88:14
**initial** 96:10
**injunctive** 23:13
**injured** 22:7
**injury** 21:19 24:18
**innocent** 73:10 74:22 76:23 77:6,12
**inquire** 16:23
**inquiring** 15:11
**Instagram** 21:4
**instances** 27:19
**instruct** 40:5 59:13 61:25 63:3 65:12 80:7
**instructed** 41:18
**instructs** 14:2
**Int'l** 107:11
**intend** 99:9
**intending** 98:18,21,24 99:3
**intends** 57:16 98:5
**interacted** 27:18
**interactions** 27:5
**interested** 46:20 49:20,25
**International** 8:12 11:7 108:2
**internet** 21:13
**interrogatories** 29:2
**interrogatory** 36:8 54:22 65:25 71:15
**introduction** 49:24
**Introductory** 5:6
**investigation** 32:17
**invoke** 41:8,15 42:9,12,16,20 42:24 43:4,8 59:14,16,20 60:23 61:25 62:3 63:4,5 65:12,14 80:8,10 84:20,25 95:2,9
**invoked** 85:18
**involve** 24:23 26:8

**involved** 16:12 23:14,16,21 23:25 24:6,16,19 25:2 26:16,23 43:24 46:18 48:12
**involves** 40:4
**involving** 24:7
**irrelevant** 53:7
**isolate** 73:18,18,23 74:20
**issue** 18:22 19:17,20 20:13 56:8 93:16
**issued** 32:17 34:22 35:5,14
**issues** 20:22 24:20 49:14 52:21 53:19
**it's** 21:13
**Ivan** 1:4 108:4

**J**

**James** 1:1,7 2:1,10 3:1 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1,13,15 12:1 13:1,2 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1,4,6,13
**Jared** 20:7,8 52:23
**job** 27:11
**John** 3:5 46:24 47:24 52:11 101:3
**join** 50:15
**joined** 51:16
**joining** 49:21,25

**journalist** 47:7
**JR** 3:5
**judge** 25:14,15 33:19,24
**junk** 51:10

**K**

**Kahn** 33:20,23
**keep** 38:7 69:2 71:5,7 75:25 82:18 89:2,3,10
**kept** 25:15
**kids** 59:22 60:2 68:3,22 69:12
**kind** 19:6 24:6 41:21
**knew** 59:23 60:4 64:2
**know** 13:20 18:25 19:20 20:6 20:8 24:5 25:25 26:4,23 29:17 31:24 33:22,25 35:4 48:10,14 50:3,25 52:9,9,20 52:25 53:18 54:8,10 55:3 57:24,25 58:3,6 60:16 61:9 63:10 64:23 66:25 68:24,25 69:11,15,17 70:3,18 74:8 76:2,13 77:23 78:9,13 81:18 82:8,10 86:4 87:25 91:12 93:7 96:23 98:12 101:20,23 104:2,5 105:2,4 105:5,7
**knowing** 60:5,18
**knowledge** 57:15

**L**

**L** 23:17
**Lake** 65:16,18,21 66:2,2,4,10
**lakes** 65:19
**large** 96:5
**lastly** 14:4 95:21
**late** 23:19 52:19
**law** 2:4 6:7,23 7:4,19 8:20 28:4,8 46:4,8 56:12 78:7 90:8,16,18 94:16,20
**lawful** 40:6 55:13,23,24 56:4 56:5,21
**lawfully** 57:18
**Lawrence** 33:20,23
**laws** 37:25 45:14,16,17,19 93:16,23

**lawsuit** 13:5 21:16,22 24:2 41:9 46:18,21,21 49:21 50:2,11,15 54:3,6 103:24
**lawsuits** 18:22
**lawyer** 16:16 18:4 21:24 24:16 49:16 98:11
**lawyers** 54:6
**lead** 41:16
**leadership** 19:7
**learn** 52:20,24
**left** 30:10 32:6
**legal** 19:16 20:12
**legislative** 45:13
**LePage** 17:25 22:9
**lessee** 93:17,24 94:5
**let's** 36:19 40:18,19,20,21,22 41:22 54:19 58:10 63:18 88:2,2 100:12
**Liberty** 2:11 11:14 108:13
**license** 5:10 30:8 32:9,13 33:2 34:3 35:10,13,15 64:5
**licenses** 34:21 35:5
**licensing** 33:10,15 34:8,12 34:17
**life** 38:10
**lifetime** 35:14
**likes** 69:24,25
**limited** 72:2
**limits** 66:20
**line** 14:8 69:25
**list** 55:8,17 56:16,24 58:11 85:23
**listed** 31:6 35:23 42:4 56:9 57:5 86:2
**litigation** 8:21 9:10
**little** 16:24 72:18 73:15 75:16 97:24 98:17
**live** 17:2,4 104:6
**lives** 74:10 75:2
**local** 32:16
**location** 8:10 46:11 55:16 56:8 57:5 59:12 61:24 65:12 66:10 68:21,23 100:10
**locations** 8:9 54:12,13,16 55:8,11 58:4 69:6 71:20

84:9 85:23 86:2
**long** 3:4 11:25 12:2 15:20 18:10 19:23 25:18 26:6 101:4
**look** 53:5,22 85:25 96:6
**looking** 32:2 48:18,19,20 50:13,14
**looks** 31:22
**lot** 55:11 66:5,5 67:12,13 74:14,15 99:8
**loud** 84:5 98:2
**love** 66:7,8
**lower** 12:14 30:10
**lowers** 88:13
**luggage** 98:6,19

---

### M

**magistrate** 53:20
**mail** 51:11 52:11
**majority** 17:19
**making** 36:13 39:12 104:22
**manager** 57:15
**manager's** 58:3
**managers** 57:25
**manner** 8:18
**Mark** 12:5
**marked** 5:3 8:24 29:9 30:17 33:4 35:19 42:4 83:25 96:13
**masks** 84:10,12
**mass** 72:5,8,13 78:24 79:5
**matches** 102:16
**materials** 107:11
**matter** 89:12,14
**matters** 9:10
**mean** 43:11 44:8,17,21 45:5 45:6,10 52:5,14,20 53:3,6 53:22 54:13 55:21 56:11 57:21 65:6 75:17 81:8 82:11 85:17 89:19 101:21 103:2
**means** 9:15 10:4,6 102:11
**meant** 58:5 95:19
**media** 21:2
**medication** 14:22
**meet** 15:17

**meeting** 8:11
**meetings** 19:9
**meets** 37:19 42:14
**member** 16:6 18:7 19:5,15 20:11 27:21,24
**members** 27:17 84:7
**membership** 19:12
**mentioned** 65:24 74:4 97:7
**metal** 82:19 83:4
**meter** 14:10
**mid** 22:12
**miles** 65:19
**mind** 23:7,9 41:12 53:5
**mindset** 75:24
**Mine** 35:14
**minutes** 22:19 29:18 52:9 87:11 103:4
**misdemeanor** 26:2
**Mississippi** 2:7
**Moe's** 85:24
**Moe's** 86:6
**moment** 57:12 105:9
**Monday** 59:7
**money** 26:13
**month** 65:6
**months** 25:16
**morning** 11:12,25 12:20
**motion** 6:13 8:2
**motor** 23:21 24:7,19
**move** 6:8,11 7:22,24 88:2
**movie** 71:16 72:6,9,24 73:4,9 73:22 74:5 76:16 78:10,13 78:16 79:16,19 80:12,25 81:18 82:21 83:2
**movies** 79:9 81:14
**Mulvey** 2:15 11:16,17
**murdered** 72:15

---

### N

**N** 4:2,2 5:2
**name** 11:5,25 12:16 13:2 20:6,7,9 46:24 47:11,21,23 57:25 105:8 108:4
**named** 24:7
**nature** 69:7
**near** 66:10

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Page 118

**need** 8:14 14:4,9 44:8,17
  53:19
**needed** 43:25 44:4,21 51:18
  51:19
**needs** 41:15
**neither** 24:17
**never** 16:19 21:23 25:14
  56:23 57:7 61:11 75:5
  81:17 88:8 90:2
**New** 1:2,9 2:9,12,12,14,17,22
  11:14,14,23 23:18 27:5,9
  32:3 33:22 34:12 37:15,25
  38:7 44:25 45:3,7 48:19,20
  49:10,20 50:14 57:8 67:3
  69:14 70:2 85:6,12 93:16
  98:12 108:12,14,14
**Northeast** 100:6
**Northern** 23:18 33:22
**nose** 25:15
**notary** 3:3 6:18,19 11:5,19
  11:24 12:7,14,19 106:12
  108:9
**note** 32:5
**noted** 106:4,6
**notwithstanding** 9:7
**number** 23:24 51:18 54:22
  55:2 83:13 85:23 88:10,11
  96:20 107:9 108:4
**numerous** 56:19

**O**

**O** 4:2,2 37:11 42:4
**oath** 8:13 9:25 14:16
**object** 6:7,10 7:21,24 15:23
  26:11 36:7,15 40:2 43:16
  44:10 52:16 56:12 60:8
  61:22 62:25 65:10 67:7,23
  68:4,6,8 80:5 89:6,16 99:5
**objected** 36:8
**objection** 13:25 30:19 33:5
  36:14,23 37:21 38:2 40:15
  59:10 60:21 68:10,11 77:17
  96:14
**obligation** 9:8
**obscuring** 84:11
**obtain** 32:13

**obviously** 38:19 52:17
**occupier** 93:18
**offhand** 47:11
**office** 2:9,14 11:13,18 13:3
  108:12
**officer** 8:13 9:24
**official** 1:7 47:6
**Oh** 22:9 24:13 58:18 74:13
  86:9,10 95:5 96:18 97:20
  99:11
**okay** 11:5,19 12:14,19 14:11
  15:25 16:18 31:4 53:11
  55:4 57:13 71:14 77:14
  80:3 86:13 88:20 97:21
  99:24 100:22 101:2 102:3
  102:25 103:20 104:6,9,13
  104:21,25 105:10,12
**old** 16:25
**Olive** 2:7
**once** 56:21 61:15 65:6,6
**ones** 56:9,19 86:3
**online** 19:23 20:2 48:6
**Onondaga** 101:6
**ONONDOGA** 3:5
**open** 55:12 69:14 70:2 80:21
**opened** 75:23
**opinion** 18:20 58:4 90:7
**opposed** 92:9
**orally** 102:15
**order** 30:22 82:21,25 83:2
**ordinarily** 78:7
**organization** 18:15 47:8
  52:13
**oriented** 90:2
**original** 5:10 6:21 7:9 33:2
**outside** 38:7 43:3,7 84:3
**overall** 27:10
**overlook** 62:9
**owned** 35:25 57:18
**owner** 76:22 85:5,15 91:13
  91:22 93:17,24 94:4
**owners** 18:8,12 19:3,12
  46:22 51:25 52:4 91:16
  92:13,23 93:4,4,7
**owns** 76:15

**P**

**P** 2:15 4:2
**p.m** 1:14 87:12,13 100:17,18
  103:11,12 105:19
**P.O** 2:6
**page** 29:4,5,21 35:18,20
  54:20,21,21 57:14 84:3
  85:21 96:19,21,22 98:2
  107:5
**pages** 30:21 107:9
**paint** 84:10
**panic** 78:2
**panicking** 73:22 74:6
**paperwork** 32:15
**paragraph** 31:16 55:10 56:9
  57:14 84:2 96:19,23 97:25
  98:9
**parents** 69:12
**park** 58:12,13,18 59:2,9,12
  59:19,23 60:3,20 61:3,23
  62:6,7,7,11,11,18,24 63:2,8
  63:14,15,17 64:3,10,12,24
  65:8,11,17 66:10,22,22
  67:2,16 71:16
**parking** 14:10 99:8
**parks** 58:11,17 66:23 67:6
  67:11
**part** 7:19 54:24 65:25 75:24
  100:23
**participate** 9:15
**participating** 8:11
**particular** 20:3 39:21 44:8
  44:17 57:16
**particularly** 39:17
**parties** 6:4,16 7:2,7,12,17
  8:5,19 9:5,13,24 108:10
**party** 9:9,9,15 10:5 21:16
  24:14
**passing** 16:6
**path** 61:5
**paying** 19:5 54:5
**people** 13:21 19:23 20:2 35:9
  45:3 50:15 58:7 60:13,17
  67:15,21 68:2,6,9,24 69:5
  69:12,13,19 70:4,6,11,20
  71:6,10 72:14,16,21 73:10

Serving all of New York State

73:20,23 74:6,15 75:18
76:7,10,16,23 77:8,8,25
78:12,15,18,20,22,23 79:3
79:8,11,15 81:25 82:13,18
86:18,20,21 87:3 88:7,16
88:20 89:2,4,11 90:3,13
91:4 92:24 93:17,23 94:4
95:11 98:13
**people's** 79:18 88:13
**perceived** 70:23
**permission** 85:5,14,15 94:25
95:8,13,16
**permit** 5:8 31:8,14,19,24
32:3,17 33:7,18 37:5,6,9,10
37:14,17 66:25
**permitted** 63:8 64:3 67:2
**person** 13:14 43:22 46:19,23
69:15,17,25 78:24 79:4
81:15 92:9,11 93:13
**person's** 69:19,21 70:17
79:20
**personal** 58:3
**Philip** 2:20 11:20 101:3,8,9
101:24 103:4
**Phillip** 101:11
**phone** 15:19 51:18 75:20
**phonetic** 12:6 18:18 33:20
46:24 52:22
**photo** 31:19
**phrase** 108:16,17,18,19,20
108:21,22
**physical** 8:10
**physically** 9:21,25
**picture** 31:24
**pin** 53:12
**pistol** 31:8,14 32:13 34:17
37:6,10
**pistols** 31:6 35:24
**place** 8:14 10:2 11:9 23:24
57:4,9,10,16 63:3 64:12
66:6 68:16 72:9,25 106:4
107:4
**places** 40:6 46:8 55:23 56:4
56:12,17,23,25 57:6 58:2,7
89:4,10,24 90:19,20 91:9
91:17

**Plaintiff** 22:2,4 52:5,16 53:7
57:15 97:3 98:3
**plaintiffs** 11:11 48:18 50:5
51:25 52:5
**plan** 16:10 57:4 76:4
**plane** 98:22
**planning** 95:24
**play** 54:2
**playground** 60:19 61:5 62:9
63:16 64:21
**playgrounds** 58:17 62:14
**plead** 60:22
**please** 11:8 12:8,15 13:10,23
106:5 108:8,9
**PLLC** 2:4
**point** 13:15 14:5 30:13 97:21
100:25
**points** 72:3
**police** 1:9 12:5 13:5 27:6,9
27:18,22,25,25 32:16 33:12
33:14 34:3,8,12
**policy** 5:12 81:20 83:20
92:10
**political** 19:16 20:12 21:11
**pond** 61:4
**pool** 60:19 64:18
**pools** 58:16 64:20
**position** 19:7
**possessing** 84:11
**possession** 9:3
**possible** 73:8 74:10 75:3
**possibly** 14:7 79:7
**post** 21:13
**potential** 78:24 79:4
**practice** 6:7,23 7:4,19 75:13
75:15
**practitioners** 33:21
**Pratt** 18:18
**prepare** 15:14 102:10
**prepared** 107:10
**prerogative** 83:6 92:3
**presence** 67:14 69:11 107:4
108:8
**present** 3:2 8:5 9:21,25
26:13
**presented** 9:2

**presenting** 8:24
**preserve** 66:14,15,18
**preserves** 66:23
**president** 18:19
**presumably** 52:12
**pretend** 77:23
**pretty** 19:25 39:13 58:14
73:6
**prevent** 90:13
**prevents** 46:2
**previously** 49:3 55:23
**price** 23:23 24:8 25:7 26:11
28:7
**Primarily** 66:12
**principle** 88:6
**prior** 9:3 57:17
**priority** 84:8
**private** 55:12 80:12,15,18,20
80:21 92:9 93:19
**privilege** 14:3
**privileged** 16:22
**probably** 26:23 76:3
**problem** 86:25 87:2 102:17
**procedures** 83:20
**proceeding** 23:5 25:2 26:16
**proceedings** 26:22
**process** 32:12 33:10,15 34:9
34:13
**produced** 30:21
**professional** 27:18
**professionally** 47:5
**prohibit** 46:12,13,14 58:8
80:19,24 82:21 83:2 84:23
91:5,17,23 92:15,22,24
**prohibited** 59:12 67:2 81:9
**prohibiting** 81:25 82:13
**prohibits** 84:15 90:18 91:13
**property** 55:12 80:16,20,21
92:23,25 93:4,4,6,8,12,18
93:19,24,25 94:13 95:12
**props** 84:11
**prosecuted** 104:10
**prosecution** 104:14
**protect** 69:17,20 72:22 83:9
93:14
**protecting** 82:2,14 84:4,6

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

**provide** 9:22
**provided** 6:6,22 7:4,18
   107:11
**provisions** 9:17,19,22 104:19
**public** 3:3 6:18,19 11:5,19
   11:24 12:7,14,19 55:12
   70:12,20 71:3,11 80:22
   106:12 108:9
**publication** 47:10
**purchase** 37:14
**purpose** 8:21 31:18 48:4
**purposes** 7:4 42:19
**pursuant** 8:6
**put** 53:12 101:21
**putting** 56:8

### Q

**que** 14:6
**queen** 65:19
**question** 6:8,11 7:21,24 9:5
   13:7,11,15,18 14:4,7 34:10
   36:17 37:7,13 38:17 39:19
   40:4,10,11,17 41:20 43:17
   43:18,20 44:14 47:4 55:2,5
   55:6,15 56:14,16 59:15,25
   61:23 63:2 64:2 65:10
   68:18 70:5,10,11,19,19
   71:10 74:18,25 75:4 76:2
   76:21,21,25 77:19 79:2,6
   79:14 82:4,24 85:7 87:20
   87:22,24 89:7,19,21 90:4
   90:14,16 91:20 92:11,12,13
   98:16 100:4 101:14
**questioning** 9:4 14:8
**questions** 13:7 14:25 15:3
   16:10 36:20 41:9,16,23
   54:12 101:2,4,7,25 103:21
   105:11
**quick** 41:6 54:23 100:12
**quit** 21:11
**quite** 32:4 65:22 70:10,18
   76:20

### R

**R** 4:2
**R-E-D** 12:18

**R.E.G** 84:9
**Rail** 23:17
**raise** 12:8
**raised** 20:22 87:21
**ran** 24:12
**range** 75:12
**react** 78:15
**read** 29:9 54:23,25 55:7 84:5
   98:2 102:6,9,14,23 106:3
   108:8
**reading** 96:16 98:3
**real** 13:20 54:23
**realize** 28:15
**really** 19:2 74:19
**reason** 15:2 29:12,15 34:7,11
   88:11
**reasonable** 9:17,19
**reasons** 84:13
**recall** 21:21 22:10 31:16
   50:11,16 51:8,13 91:8
   100:3 105:8
**received** 50:3,7
**recertification** 34:16 35:8
**recertified** 34:22 35:12
**recertify** 35:10
**recognize** 28:19 30:5 32:23
   83:15,16 96:7
**recollection** 22:13
**recommend** 19:24
**record** 9:18 11:4,9 12:16
   22:23,24 23:2 29:18,23,24
   36:14 40:19,21,23,24,25
   41:4,7 51:24 63:19,20,21
   63:23 87:11,12,13,15,19,20
   100:17,18 103:10,11,12,14
   103:15 105:17 106:4
   107:10
**recorded** 8:18
**recording** 8:18
**recreation** 62:14 67:15
**recruiting** 54:3
**refer** 45:16
**referring** 55:9
**refuse** 23:9 36:21,24 37:3
   40:16 53:16 84:19 85:17
**refusing** 36:16

**regal** 5:12 71:16 80:4,6,12,24
   81:19 83:2,20 84:8,15,18
   84:23 85:16 92:5,17
**regard** 95:22
**regarding** 9:4 103:21
**Regional** 11:18
**registered** 37:24
**regular** 57:2
**regularly** 20:16
**regulations** 98:7,19
**relief** 23:14 98:9
**remember** 13:8 15:24 16:8
   25:13,18 26:6 27:12 47:11
   48:22 49:2 88:2 102:13
**remote** 8:9 9:14 10:4
**remotely** 8:15
**renewal** 34:16,25 35:4
**REP** 3:4,5
**repeat** 34:10 37:7 39:19
   40:11 43:18 44:13 55:4
   59:25 68:18 76:8 77:19
   79:2 85:7 87:16,23 91:19
   91:20 93:20 94:18
**rephrase** 82:25 90:15
**Reported** 1:21
**reporter** 8:8,16 11:4 13:9
   22:25 29:25 30:18 41:2
   63:22 87:16 100:19 102:10
   102:14 103:13,16 105:16
   107:13
**Reporters** 8:12 11:6 107:11
   108:2
**represent** 13:4 81:19 83:19
   85:11 93:15
**represented** 15:6 85:3
**representing** 7:14 11:22 12:5
**request** 30:17 31:18 51:24
**requesting** 10:5 53:6
**require** 41:11 94:4,7
**required** 35:5 37:14 82:9,20
   83:3
**requires** 82:16,17 93:16,23
**reserved** 6:9,13 7:23 8:3
**residences** 17:9
**residents** 48:20,21 49:11
**resolve** 22:15

800-523-7887                                                    ARII@courtsteno.com
Serving all of New York State

**resolved** 22:12,14
**respectfully** 37:3,22 38:3,4 38:16
**respective** 6:4,16 7:2,7,12,17
**responding** 14:6
**response** 54:22 55:3 85:21
**responses** 28:25 29:10 36:8 65:25 71:16
**restaurants** 66:5 85:22 86:14 86:19,22 89:23 91:8,13
**restricted** 56:21
**restricting** 46:5 56:12 61:12 90:25
**restriction** 32:6
**restrictions** 32:10
**restricts** 45:25
**result** 25:19
**retain** 50:18,20
**retire** 17:16
**retired** 17:2,11
**return** 6:20 108:11
**review** 16:14,14
**rifle** 32:15 37:4,5,8,9,15 42:11
**rifles** 36:5,22 42:7
**right** 6:7 7:21 12:8 16:9 20:6 22:25 28:13 29:17,21 30:3 30:13 38:13 40:18 41:2,3,7 41:16,19,22 42:9,12,16,20 42:24 43:4,8,11,12 45:22 45:24 51:4 56:24 58:10 59:14,16,20 60:13,23 62:2 62:3 63:4,5,25 64:9 65:13 65:14,22 68:7,9,11,13,15 68:16,20,22 69:2,3,6 70:7,8 70:12,14,15,17,20,22,23,24 71:2,5,7,10,13 74:12,16 75:8 76:18,25 77:4 79:9,12 79:15,19,20,25 80:8,10,19 80:24 82:18 83:8,11 84:20 84:25 85:18 87:4,9 88:14 89:11 90:3 91:17,22 92:5,6 92:12,15,21,21,24 93:7 94:5,9 95:2,9,21 100:13 101:18 102:6,8,23 103:20 105:6,8,16

**rights** 6:6,22 7:18 18:14 45:3 69:21,22 70:25 79:17,18 91:2
**road** 63:15
**role** 33:15 54:2
**Room** 2:21
**Rule** 6:22
**Rules** 6:7,23 7:5,19,20
**run** 33:11,13 58:7 74:8 96:2 100:6
**running** 74:15
**runs** 18:16 20:5 52:6 64:14
**rural** 62:11,12
**Rusin** 12:5

---

## S

**S** 4:2
**safe** 76:6
**safeguard** 73:17
**safely** 74:20
**safety** 67:11 84:4,6,12,13
**sales** 17:22
**Saratoga** 23:23 64:10,16,24 65:4,8,11
**Saturday** 59:7
**save** 74:10 75:2
**saw** 50:12 67:20
**saying** 53:3
**says** 31:16 32:3,6 71:7 97:2
**scenarios** 75:13,15
**school** 61:7
**schools** 54:17
**screen** 73:4
**sealed** 25:3
**second** 22:22 35:20 55:10 58:19,22
**secondary** 31:3,11 35:21
**section** 8:6 84:3 98:7
**security** 81:6,6,10,23 82:3,5 82:9 98:25
**see** 32:6 37:12 48:6 57:19 68:19 73:3,6 84:12 86:5 90:16 103:4
**seen** 61:11 83:23 90:2
**self** 60:23
**self-** 43:25 44:21 59:14 80:8

84:20 85:18
**self-defense** 44:9,18
**self-incrimination** 41:19 42:10,13,17,21,25 43:5,9 43:11,12 59:17,21 60:24 62:2,4 63:6 65:13,15 80:11 85:2 95:6,10
**semiautomatic** 36:22 37:4,5 37:8,9,15 42:11
**send** 48:14 101:9,10 102:12
**sense** 13:18
**sensitive** 46:7 54:12,13,16 55:8,15,18 56:8 57:5,9 61:24 63:3 65:12 67:4 100:10
**sent** 16:16 28:16,18 48:11 50:19 51:4,7
**separate** 8:9
**serve** 85:22 86:3,8 89:10 90:10,11,19,20 91:10
**serves** 89:25
**settle** 23:8
**settled** 23:5
**settlement** 22:17
**seven** 29:5
**seventy** 97:25 98:9
**shake** 13:22
**Shaleen** 3:3 11:6
**sheet** 106:7
**shoot** 77:12
**shooter** 73:19,23 74:20 75:22 78:4,25 79:5
**shooting** 72:9,13 74:21
**shootings** 72:6
**shops** 66:5
**shot** 73:19 74:5,7 101:18
**shotguns** 36:5 42:7
**shoulders** 13:22
**show** 30:4 81:3 83:12 96:5 99:21 100:4
**shows** 99:15,17 100:8
**shrug** 13:21
**shut** 100:9
**side** 30:13
**sign** 58:2 102:6,9,23 108:8 108:10

signage 61:11
signature 29:5 108:11
Signed 108:24
similarly 13:20 31:22 88:20
single 14:7 51:11
sir 18:7 30:5 43:15 96:6
  103:20
sits 78:9
sitting 57:3 72:21 78:13
  79:22,23
situation 43:25 74:12,20
  75:6,22 76:19 77:2 94:21
six 25:16
sixty 23:12 97:2 98:4
sixty-eight 96:20,24
sixty-four 16:25
Sixty-two 17:17
slides 64:18
slightly 98:16
small 31:15
Soares 105:4,6
sober 88:23
social 21:2
somebody 68:11 70:24 77:16
  77:22 93:7 94:22 95:8
somebody's 94:17
someone's 68:12 91:2 94:13
sorry 22:18,22 24:13 27:3
  35:19 37:11 38:4 39:20
  40:12 44:12 47:11 58:19
  60:16 76:8 85:8 87:24
  91:20 93:20 94:18 96:17,21
  99:13 100:7
sort 13:6 23:13 24:10 25:19
  26:22
sound 93:19
South 2:16
Southwest 85:24
Spa 64:10,24 65:4,8
space 70:7,12,20 71:3,11
  79:16
spaces 71:23
Spaeth 3:3 11:6
spam 51:10
speak 19:24 60:15 77:7
  78:17,18

specific 18:25 61:23 65:25
  66:2,10 100:3
specifically 15:12 21:10
  41:15 55:10 58:6 103:21
specify 9:18,20
speech 68:12,13
speeding 27:7,15
spell 12:15
spelling 12:6 18:19 33:20
  46:25 52:22
spot 65:5 101:21
spots 62:14
Stambolian 14:2
Stamboulieh 2:4,5 11:10,10
  12:21 15:9,13,22 16:21
  20:19 22:18,21 29:22 30:12
  30:19 31:20 33:5 36:7,12
  36:23 37:21 38:2 40:2,14
  40:20 41:5,14,25 43:16
  44:10,12 51:22 52:3,14,19
  53:2,11,14,17,21 59:10
  60:8,21 61:22 62:25 65:9
  67:7,23 68:4 77:17 80:5
  83:13 88:3 89:6,16,18
  96:14 99:5 100:14,16
  101:10,13,17,22 102:2,4,8
  102:25 103:5,9,17 105:12
stamps 30:10
stands 19:16
start 58:10 85:10 90:18
  103:22
started 21:9 51:9,11
state 1:2,9 2:9,14,16,21
  11:23 12:15 13:4 27:5,9,17
  27:21,25,25 32:3 33:12,14
  34:2,8,12 37:15 38:7 45:3,7
  48:19,21 49:11 55:18 57:9
  63:8 64:3,10,24 65:8,11,17
  67:2,4 69:14 70:2,2,3 85:6
  85:13 89:14 92:21 94:7
  97:3,9 98:12 101:3 106:2
  108:12
stated 107:5
Statement 5:6
statements 104:23
states 9:12

staying 85:13
Stephen 2:5 11:10 31:18
  51:21 101:20
Steven 1:7 108:4
stipulate 9:13
stipulated 6:3,15,25 7:6,11
  7:16 8:4,23 9:24
stipulation 9:16
STIPULATIONS 6:2
stop 76:2
stopped 48:3
story 90:7 95:20
stranger 78:16 95:18
stream 64:14
Street 2:11,16 11:14,23 12:4
  108:13
strike 6:9,11 7:22,25
structure 18:18
stupid 25:6
subjects 49:5
substance 22:6 24:11 25:12
  49:18
suffering 14:18
suing 44:25 95:22
suit 16:12
Suite 2:16
sum 22:5 24:10 25:11 49:18
Superintendant 1:8
Superintendent 11:15 13:4
  34:2
supply 9:8 81:10 82:3
Supreme 23:23
sure 13:23 18:17 25:10,17
  26:20,25 28:24 31:20 32:4
  35:2,6 40:22 53:9 54:10
  55:25 56:7 57:11 64:20,21
  68:6,19 71:9 77:20 78:22
  82:6 85:9 86:6 89:8 91:21
  93:22 94:19 96:18 98:15
  100:7 102:14
surprise 81:20
surprised 63:10,12
surroundings 75:21
swapped 26:11
swear 12:9
swearing 11:7

Associated Reporters Int'l., Inc.                                www.courtsteno.com

**swimming** 58:16 60:19
**switched** 25:7
**swivel** 75:19,25
**sworn** 4:3 6:17 8:15 12:13
 106:11 107:7
**Syracuse** 2:17 3:4 11:17 12:3
 12:4 101:5

---

**T**

**T** 5:2
**T-E-R-R-I-L-L-E** 12:18
**T.S.A** 98:7,19 99:8
**tag** 25:7 26:11 28:7
**take** 13:13 14:5,5,9,22 19:16
 22:19 32:15 36:10 38:14
 41:18 59:3,8,18 66:7,7
 68:10,12 73:19 79:17
 100:12
**taken** 9:14 106:4 107:3
**taker** 81:12
**takes** 79:19 102:14
**talk** 53:19 71:14
**talking** 13:14 27:2 78:3,6
 94:13,17 99:7
**target** 74:9
**Teams** 1:15
**technically** 66:22
**technician** 17:13
**teenager** 25:7
**telephone** 9:14 10:4
**telephonic** 10:3
**tell** 15:13 16:24 21:18 22:5
 24:10 25:5,11 32:12 36:20
 44:24 45:10,23 53:15 75:10
 95:21
**telling** 36:13
**ten** 27:15 41:3 42:4 52:9
 103:4
**Tennessee** 95:24 97:4,10,19
 97:20 98:4,14
**tennis** 64:19,22
**term** 25:23 66:14
**terms** 34:16,20
**terrible** 101:14
**Terrille** 1:1,12 2:1 3:1 4:1,3
 5:1 6:1 7:1 8:1 9:1 10:1

11:1 12:1,8,12,13,17 13:1,2
14:1,12 15:1,6 16:1,23 17:1
18:1 19:1 20:1,15 21:1,15
22:1 23:1,4,17,22 24:1,25
25:1 26:1 27:1,4 28:1,13,19
29:1 30:1,3,10,11 31:1 32:1
32:22 33:1 34:1,15 35:1,19
35:19 36:1 37:1 38:1,9 39:1
40:1,9 41:1 42:1,3,4 43:1
44:1,24 45:1 46:1,17 47:1
48:1 49:1 50:1 51:1 52:1
53:1 54:1,5,11 55:1,7 56:1
57:1 58:1 59:1 60:1 61:1
62:1 63:1,25 64:1 65:1 66:1
66:13 67:1 68:1 69:1 70:1
71:1 72:1 73:1 74:1 75:1,8
76:1 77:1 78:1 79:1 80:1
81:1,3 82:1 83:1,11,14 84:1
84:2 85:1 86:1 87:1 88:1
89:1 90:1 91:1 92:1 93:1
94:1 95:1 96:1,4 97:1,3
98:1,3 99:1,14 100:1,22
101:1 102:1 103:1 104:1
105:1 106:1,3,9 107:1,3
108:1,5,7,25
**testified** 48:7 49:3 69:4 92:4
**testify** 107:7
**testifying** 7:15
**testimony** 6:9,11 7:22,25
 12:9 100:23 102:21 106:4
 107:3,6 108:8
**text** 31:23,24
**Thacher** 62:5,7,17,24 63:8
 64:3
**thank** 11:24 12:7,19,21,22
 13:2 23:4 96:15 105:11
**thanks** 12:25
**theater** 71:16 72:9,19,24
 73:4,6,9,22 74:6 75:21
 76:16,23 77:11,15,16,21,22
 78:4,10,14,16 79:10,16,19
 80:7,12,15 81:18 82:12,21
 84:23
**theaters** 71:15,21,23 72:6
 80:4,25 81:10,20 83:2
 84:15,18

**thing** 13:12 25:6 96:6
**things** 13:8 15:12 52:23,25
 76:4
**think** 47:23 51:15 55:6 57:12
 59:22 60:2,17 64:2 67:14
 67:21 68:2,7,15,20,25 70:6
 71:20 73:8,21 74:19 76:14
 76:21 77:14,20,25 78:12,15
 78:20,23 79:3,8,15 82:15
 88:3,6 90:3,4,8,19,22 91:3
 94:16 105:14,15
**thinking** 58:20 66:3,9,11
 92:8,11,20
**thirty** 102:13 108:9,10
**thirty-seven** 65:18
**Thompson** 2:10 4:4 11:12,13
 11:18 12:24 13:2 22:20
 23:3 30:2,16,20 31:17,21
 33:3,6 36:16,19,25 37:24
 38:5 40:8,22 41:5,22 42:2
 44:11,15 51:21,23 52:8,12
 52:18,24 53:9,12,15,18,24
 60:10 63:18,24 87:14,18
 89:20 100:15,21 101:8,12
 101:15,18,23 102:3,7 103:2
 103:7 105:14 108:6,13
**thought** 69:5 77:5 92:5
**threat** 44:8,17,20 76:2
**threatened** 27:22 67:5 69:12
 104:14
**three** 5:9 33:4 54:20,21,22
 55:2 85:21 91:8
**threshold** 82:20 83:4
**ticket** 27:15 81:12
**tickets** 27:7
**time** 1:14 13:14,24,25 19:23
 24:3 25:18 28:17 34:23
 35:11 37:11 41:3 43:2 48:2
 51:14 59:4,5 61:17 62:20
 75:13 95:23 97:13 98:13
 100:25 103:13 106:4 107:4
**times** 57:2 62:19
**Timothy** 2:15 11:17
**title** 47:6
**today** 11:8 14:16 15:4,7 16:4
 33:8 34:5 52:21 57:3 59:7

Associated Reporters Int'l., Inc.                          www.courtsteno.com

100:23
**today's** 15:14
**Todd** 3:4 12:2 101:3
**told** 16:11 21:9
**top** 31:23 54:21 84:7
**totally** 53:22
**tours** 66:7
**town** 58:11,12,15,22 59:2,8,9
  59:12,19,19 60:3 61:3
**trails** 62:8,8 63:16 64:13
**train** 75:12,13,25 76:5
**trained** 75:7 76:7,10 77:8
**training** 73:14 75:11 76:5
**transcript** 9:8 13:10,13,23
  102:9,16,17,22 106:5,7
  108:8,10,11
**transcription** 107:9
**travel** 98:4
**trespass** 85:5
**trespassing** 85:12
**trial** 6:13 8:3
**tried** 28:10
**trip** 95:24 97:6
**trouble** 25:14
**true** 52:12 87:6,8 93:3 106:5
  106:7 107:10
**trust** 77:10,13
**truth** 12:10,11,11 107:7,7,8
**truthful** 14:20 15:3
**try** 75:2
**trying** 69:10
**turning** 35:18
**twelve** 100:15 103:13
**two** 5:7 17:2 22:19 27:10
  30:17 34:20 35:18,19 52:7
  56:9 64:20 88:11
**type** 66:20
**typewritten** 107:8

**U**

**U.S.C** 98:6
**uh-huh** 13:21 30:18 102:18
**uh-uh** 13:21
**ultimate** 33:17
**unauthorized** 8:20
**uncomfortable** 60:18 69:5

**unconstitutional** 45:14,15
  91:5 94:4,6,23
**understand** 13:16 14:15 35:9
  53:2,3 54:13 55:25 86:7
  93:22
**understanding** 18:21 34:19
  34:24 35:7 54:16 55:13
  66:17 72:12
**understood** 13:18 24:25 26:7
  26:15 32:5 35:15 56:6 77:3
  82:4 83:24 85:20 86:18
  91:7 99:14 100:12
**undoubtedly** 74:13
**unfortunate** 90:17
**Uniform** 7:19
**unlawful** 56:22
**unsafe** 69:12
**upset** 71:6
**upstate** 35:5
**urban** 62:10
**use** 9:19 20:16 43:25 59:23
  60:3
**usually** 38:9,14 42:18
**utilized** 7:3

**V**

**v** 1:1,6 2:1 3:1 4:1 5:1 6:1
  7:1 8:1 9:1 10:1 11:1 12:1
  13:1 14:1 15:1 16:1 17:1
  18:1 19:1 20:1 21:1 22:1
  23:1 24:1 25:1 26:1 27:1
  28:1 29:1 30:1 31:1 32:1
  33:1 34:1 35:1 36:1 37:1
  38:1 39:1 40:1 41:1 42:1
  43:1 44:1 45:1 46:1 47:1
  48:1 49:1 50:1 51:1 52:1
  53:1 54:1 55:1 56:1 57:1
  58:1 59:1 60:1 61:1 62:1
  63:1 64:1 65:1 66:1 67:1
  68:1 69:1 70:1 71:1 72:1
  73:1 74:1 75:1 76:1 77:1
  78:1 79:1 80:1 81:1 82:1
  83:1 84:1 85:1 86:1 87:1
  88:1 89:1 90:1 91:1 92:1
  93:1 94:1 95:1 96:1 97:1
  98:1 99:1 100:1 101:1

102:1 103:1 104:1 105:1
  106:1 107:1 108:1,4
**vague** 43:19
**variety** 38:22
**vehicle** 23:22 24:7,19
**venue** 1:15 64:13
**verbal** 13:24
**verified** 29:10
**verifying** 29:5
**versus** 23:17,22
**video** 8:7 9:7 28:16 50:12
**videoconference** 8:11,17
**videos** 48:16
**village** 66:4,5,11
**violate** 45:2,17,20
**violates** 46:5,8
**violating** 104:11,15
**violation** 8:20
**visible** 38:24
**visit** 57:17 97:3
**visited** 57:16 59:6 61:18
  62:21
**visiting** 67:6,11
**visits** 57:16
**votes** 45:13

**W**

**wait** 13:11 102:4
**waiting** 101:19
**waived** 7:10
**waiver** 6:12,22 8:2
**walk** 75:19,19
**walking** 61:4 62:8
**want** 29:14 54:24 56:23
  60:12 68:3 69:13,20 86:21
  86:24 91:18 95:11,15 97:15
  98:13 101:20 102:5,6,19,20
  102:22 103:3,9
**wanted** 57:8
**wants** 36:9
**Washington** 12:4
**wasn't** 75:4
**water** 58:17 60:20 64:18
  65:20 66:6
**Watervliet** 17:8
**way** 21:12 24:15 26:8 37:13

Serving all of New York State

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

46:10 55:15 60:5 69:13 70:6,8,15 76:4,24 79:12,15 98:16
**we'll** 14:5 53:22 58:21,21,21 102:4 103:10
**we're** 12:3 14:8 16:22 23:2 63:22 79:11 94:13 100:19 101:19 103:14
**we're** 41:2
**weapon** 37:20,25 38:10,14 38:18,24 39:3,6,9,9 42:15 42:18 69:16 73:9 84:18,22 85:4,14,16 98:22,25 99:4 99:10
**weapons** 38:6 42:3 80:19 84:11,12,15
**wearing** 84:10
**Wednesday** 61:19
**week** 52:6 61:15,19 65:6
**weeks** 52:7
**went** 15:15 32:13 33:11 99:21
**West** 73:20
**whichever** 79:12
**wide** 52:16,16
**Wild** 73:20 85:23 86:7 91:9 92:14
**willing** 36:20
**Wings** 85:24 86:8 91:9 92:14
**withdraw** 85:9
**Withdrawn** 43:19
**witness** 6:18 7:14 8:8,9,14,15 8:25 9:2,4 11:7 12:17,22 30:15 36:10,15,18,24 37:22 38:3 41:18 44:13 52:10 59:13 61:25 63:4 65:12 80:7 102:24 107:6
**witness's** 8:16
**won** 22:16,16
**woodlands** 66:19
**word** 90:17 102:19,20 108:16,17,18,19,20,21,22
**words** 68:20
**work** 11:6 17:12,18,23 18:22 19:20 22:7
**work-related** 21:19

**worked** 17:24 27:25 28:3
**workplace** 24:18
**worried** 79:4
**worry** 78:24
**worrying** 79:9
**worth** 16:19 21:13
**would've** 99:25
**wouldn't** 50:6 67:20 72:15 72:22 88:12,18,22 95:15
**wrap** 105:15
**write** 57:14
**writes** 47:10
**written** 8:19
**wrong** 71:19 102:19

---
**X**
**X** 1:11 4:2 5:2,2 106:8,12

---
**Y**
**yeah** 22:20 29:22 31:20 40:16,16 44:12 48:5,20 51:22 52:14 53:3,14,17,21 60:22 61:3 77:7 83:14,22 86:9 87:17 88:5 96:18 100:14,16,19 101:12,15,17 101:22 103:7
**year** 32:18 57:2 62:19
**years** 16:25 18:11 27:11,16 99:22
**York** 1:2,9 2:9,12,12,14,17 2:22 11:14,15,23 23:18 27:5,9 32:3 33:22 34:12 37:15,25 38:7 44:25 45:3,7 48:19,20 49:11,20 57:8 67:3 69:14 70:2 85:6,12 93:16 98:12 108:12,14,14
**Yorkers** 50:14
**YouTube** 20:4 47:14,16,18 47:19

---
**Z**
**zero** 30:10,10,11,11 35:20,20

---
**0**

---
**1**
**1** 107:5,9

**1:01** 1:14 105:18
**10/14/26** 5:8
**10:05** 22:23
**10:06** 22:24
**10:15** 29:23
**10:22** 29:24
**10:36** 40:24
**10:47** 40:25
**10005** 2:12 108:14
**103** 4:5
**105** 107:9
**11:20** 63:20
**11:40** 63:21
**112** 11:22
**12** 4:4
**12:20** 87:12
**12:24** 87:13
**12:45** 100:17
**12:52** 100:18
**12:55** 103:11
**12:59** 103:12
**12226** 2:22
**13202** 2:17
**18** 98:6
**1979-ish** 25:9
**1994** 32:21 33:8

---
**2**
**20** 1:13
**2008** 23:24 24:8
**2022** 48:25
**2024** 100:2
**2026** 1:13 106:11
**22'** 48:25
**221** 7:19
**233** 12:4
**28** 2:11 11:14 108:13
**29** 5:5
**2nd** 24:19 45:17,20,24 46:5,8 69:23 71:4

---
**3**
**30** 5:7 108:9,10
**300** 2:16
**300A** 2:16
**3113** 9:11

800-523-7887                                                ARII@courtsteno.com
Serving all of New York State

**3113(d)** 8:6
**3116** 6:22
**3117** 6:23
**33** 5:9
**38654** 2:7

---

**4**

**4-20-26** 1:1 2:1 3:1 4:1 5:1
  6:1 7:1 8:1 9:1 10:1 11:1
  12:1 13:1 14:1 15:1 16:1
  17:1 18:1 19:1 20:1 21:1
  22:1 23:1 24:1 25:1 26:1
  27:1 28:1 29:1 30:1 31:1
  32:1 33:1 34:1 35:1 36:1
  37:1 38:1 39:1 40:1 41:1
  42:1 43:1 44:1 45:1 46:1
  47:1 48:1 49:1 50:1 51:1
  52:1 53:1 54:1 55:1 56:1
  57:1 58:1 59:1 60:1 61:1
  62:1 63:1 64:1 65:1 66:1
  67:1 68:1 69:1 70:1 71:1
  72:1 73:1 74:1 75:1 76:1
  77:1 78:1 79:1 80:1 81:1
  82:1 83:1 84:1 85:1 86:1
  87:1 88:1 89:1 90:1 91:1
  92:1 93:1 94:1 95:1 96:1
  97:1 98:1 99:1 100:1 101:1
  102:1 103:1 104:1 105:1
  106:1 107:1 108:1,5
**428** 2:6

---

**5**

**509** 2:21
**523-7887** 108:2
**5th** 41:8,16,18 42:9,12,16,20
  42:24 43:4,8,10,12 59:14
  59:16,20 60:22,23 61:25
  62:3 63:4,5 65:13,14 80:8
  80:10 84:20,25 85:18 95:2
  95:9

---

**6**

**6/30/24** 5:10

---

**7**

---

**8**

**800** 108:2
**84** 5:11

---

**9**

**9:53** 1:14 11:2
**90s** 22:12
**926** 98:7
**94** 34:4
**96** 5:13