UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

IVAN ANTONYUK, COREY JOHNSON
And ALFRED TERRILLE,

                        Plaintiffs,

        -against-

STEVEN G. JAMES, in his official capacity as
Superintendent of the New York State Police,
WILLIAM FITZPATRICK, in his official capacity
as Onondaga County District Attorney, TOBIAS J.
SHELLEY, in his official capacity as Sheriff of
Onondaga County, MARK RUSIN, in his official
capacity as Chief of Police of Syracuse, and
LEE C. KINDLON, in his official capacity as
District Attorney of Albany County,

                        Defendants.

1:22-Cv-00986
(GTS/PJE)

---

# DEFENDANT LEE C. KINDLON'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

JEFFERY V. JAMISON, Esq.
ALBANY COUNTY ATTORNEY
PHILIP K. BANASZEK, Esq.
ASSISTANT COUNTY ATTORNEY
NDNY Bar Roll No. 706570
*Attorneys for Defendant Lee C. Kindlon*
112 State Street, 6th Floor
Albany, New York 12207
P: (518) 447-7110
F: (518) 447-5564

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

STATEMENT OF FACTS ................................................................................................................. 1

STANDARD OF REVIEW ................................................................................................................ 2

ARGUMENT
Plaintiff's Challenge to the Concealed Carry Improvement Act Fails .......................................... 2

    (a) Parks ........................................................................................................................................ 2

    (b) Airports ................................................................................................................................... 5

    (c) Movie Theaters ....................................................................................................................... 9

    (d) Establishments Serving Alcohol and Restricted Locations ................................................... 11

CONCLUSION ................................................................................................................................... 11

i

## TABLE OF AUTHORITIES

Air Transp. Ass'n of Am.Inc. v. Cuomo, 520 F.3d 218 (2d Cir. 2008) ............................................6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ....................................................................2

Antonyuk v. James, 120 F.4th 941 (2d Cir. 2024)................................................................3, 4, 9, 10

Babbitt v. Farm Workers, 442 U.S. 289 (1979)................................................................................8

Cayuga Nation v. Tanner, 824 F.3d 321 (2d Cir. 2016) ..................................................................9

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ........................................................................2

Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013) ........................................................................7

Clean Air Markets Group v. Pataki, 194 F. Supp. 2d 147 (N.D.N.Y. 2002)....................................7

Davis v. Federal Election Comm'n, 554 U.S. 724 (2008)................................................................8

Dorce v. City of New York, 2 F.4th 82 (2d Cir. 2021)......................................................................8

Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,
    528 U.S. 167 (2000).....................................................................................................................9

FW/PBS, Inc. v. Dallas, 493 U.S. 215 (1990) ................................................................................8

Goodspeed Airport, LLC v. E. Haddam Inland Wetlands and Watercourses Commn.
    681 F. Supp. 2d 182 (D. Conn. 2010).........................................................................................6

Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707 (1985)............................7

Kearns v. Cuomo, 981 F.3d 200 (2d Cir. 2020) ..............................................................................7

Kerzer v. Kingly Mfg., 156 F.3d 396 (2d Cir.1998)........................................................................2

Knight v. U.S. Fire Ins. Co., 804 F.2d 9 (2d Cir. 1986) ..................................................................2

Knife Rights, Inc. v. Vance, 802 F.3d 377 (2d Cir. 2015)................................................................9

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ......................................................................8

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986)..............................2

Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996) ................................................................................6

Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682 (2d Cir. 2013) ...................................................8

New York State Rifle & Pistol Assn., Inc. v. Bruen, 597 U.S. 1 (2022) .........................................5

Nunn v. State, 1 Ga. 243 (1846) .....................................................................................................5

Quarles v. Gen. Motors Corp., 758 F.2d 839 (2d Cir. 1985) ...........................................................2

Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014) ............................................................8, 9

TransUnion LLC v. Ramirez, 594 U.S. 413 (2021) .......................................................................8, 9

Tweed-New Haven Airport Auth. v. Tong, 930 F.3d 65 (2d Cir. 2019) ...........................................6

Warth v. Seldin, 422 U.S. at 490 (1975) .........................................................................................8

Wolford v. Lopez, 609 U.S. _____, 146 S. Ct. 2032 (U.S. June 25, 2026) .................................10

49 U.S.C. § 40101(1) .......................................................................................................................6

49 CFR 1540.111(c)(2) .....................................................................................................................6

## PRELIMINARY STATEMENT

Defendant Lee Kindlon, *as Albany County District Attorney*, by and through his counsel, submit this memorandum of law in support of his Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff commenced this action by filing a Complaint on September 20, 2022. Preliminary Injunctions were decided on December 8, 2023, enjoining a majority of the Concealed Carry Improvement Act (C.C.I.A.). The decision on preliminary injunctions was appealed to the Second Circuit who affirmed some and vacated the other preliminary injunctions for remand. Plaintiff submitted their motion for summary judgment on June 30, 2026, and defendants are to respond on July 31, 2026.

Defendant Kindlon now responds to this motion to put forth evidence against Plaintiff's challenges to the C.C.I.A. Specifically, we are only tasked with defending against Plaintiff Alfred Terrille's claims since he is the only one challenging within the jurisdiction of Defendant Kindlon. While Defendant Kindlon will agree with the State Defendant in certain aspects of this case, they are not the same entity nor are they represented together. Therefore, as Defendant Kindlon is our only client, we will proceed in his best interest.

## STATEMENT OF FACTS

For a complete recitation of the relevant facts, the Court is respectfully referred to Defendants' Statement of Material Facts filed pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 in support of the instant motion

1

## STANDARD OF REVIEW

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories, evidence and admissions on file, together with the affidavits, if any, "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. In opposing the motion, the factual dispute[s] asserted by the non-moving party must be "material". Id. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Significantly, "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998) (internal citations omitted); see also Fed.R.Civ.P. 56(e)(2). "[T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Additionally, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). Finally, the "[nonmoving party] cannot rely on 'mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (quoting Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985)).

## ARGUMENT

### Plaintiff's Challenge to the Concealed Carry Improvement Act Fails

(a) Parks

Terrille's claim regarding N.Y. Penal Law Section 265-e(2)(d), prohibiting concealed carriage in public parks, is constitutional. As a preliminary matter, Saratoga Spa State Park is not within the borders or jurisdiction of Albany County. *See* NYSOPRHP GIS Bureau, Saratoga Spa State Park Map, SaratogaSpaSaratogaSpaParkMap2022.pdf. Therefore, the only park at issue against Defendant Kindlon is Thacher State Park, controlled by the Saratoga-Capital District State Park and Recreation Commission. (See N.Y. PAR Sections 7.01(11) and 7.03(9)). Following the Second Circuit's logic, regarding the Rosamond Gifford Zoo in Syracuse, the court is likely correct that although Park officials have authority, Albany County police would likely respond to reports of gun incidents. See Antonyuk v. James, 120 F.4th 941, 1016 (2d Cir. 2024).

The Second Circuit in their decision found a divide between urban and rural parks with regards to carriage. Antonyuk, 120 F.4th at 1025. In creating such divide, the panel references commons, spaces held for "shared utilitarian purposes", vast spaces containing an array of New York's renowned geographic features. Id. However, the court distinguished rural from urban by referring to urban parks as "communal spaces" and "quintessential public spaces." Id. Thacher State Park, while containing a majority of the geographic features referenced in the description of the Adirondacks, also embodies some of the features of urban parks.

During the late 19th century, the lands adjacent and parts now considered Thacher State Park was a tourist destination, fueling a creation of hotels, campsites, and increased infrastructure for transportation to the area. *See* NYSOPRHP, John Boyd Thacher State Park, About Thacher

3

State Park. John Boyd Thacher, former Mayor of Albany, and Emma Treadwell Thacher had bought land on the escarpment of the Helderberg mountain range to protect it from public development in 1906. Id. Less than a decade later, Emma Treadwell, following the death of John Boyd, donated the land to the State to be used as public parklands. Id. From then on, Thacher State Park has been used as a recreation destination continuing to improve visitor experiences, and more recently the addition of the Thacher Park Center was constructed to host educational and interpretive exhibits within the park. *See* Open Space Institute, John Boyd Thacher State Park, John Boyd Thacher State Park - Open Space Institute.

While the Second Circuit did not choose to resolve the line they drew between urban and rural parks, the history of the park reveals the difference between the Adirondacks, and the similarities to urban parks. The facts also emphasize the similarities, as Thacher State Park attracts 380,000 visitors per year. Id. The addition of a park center for the purposes of education offering year-round educational programs for school groups, youth organizations, clubs and the general public. *See* NYSOP, Thacher State Park, Thacher State Park - New York State Parks & Historic Sites. The history and educational focus of the park is what provides the "applicable metric" for gun regulation "in spaces that, like urban parks do today, have historically acted as public forums and places of social recreation. Antonyuk, 120 F.4th at 1025 (*citing* New York State Rifle & Pistol Assn., Inc. v. Bruen, 597 U.S. at 29, 142 S.Ct. 2111). Moreover, the Second Circuit explained that N.Y. Penal Law Section 265-e is "within the Nation's history of regulating firearms in quintessentially crowded areas and public forums, at least insofar as the regulation prohibits firearms in urban parks, though not necessarily as to rural parks." Id at 1019. Significantly, crowded areas and public forums is what Thacher State Park has developed into.

4

Furthermore, the argument that hunting is allowed, yet concealed carriage is not, fails on multiple levels. The Supreme Court in their ruling on Bruen clarified this exact issue by referencing a "particularly instructive" Georgia Supreme Court ruling. New York State Rifle & Pistol Assn., Inc. v. Bruen, 597 U.S. 1, 54 (2022) (*quoting* Nunn v. State, 1 Ga. 243 (1846)) (finding statutory prohibition concealed carriage or carrying secretly was constitutional but the prohibition on openly carrying not constitutional). Terrille's Second Amendment rights are not encumbered by the C.C.I.A. ban on concealed carriage in parks since he has the ability to openly carry, pursuant to the park's regulations. See Id. Therefore, this Court should find that this provision is constitutional due to the allowance of carrying in Thacher State Park already but not concealed carrying.

For these reasons this Court should find that Thacher State Park should be considered an urban park due to its history of recreation and focus on education, consistent with parks in and around cities that would more obviously fall in the urban category. Moreover, Terrille's rights are not encumbered in Thacher State Park, as applied to him, due to his ability to openly carry. Therefore, this Court should find that N.Y. Penal Law Section 265-e(2)(d) is constitutional.

(b) Airports

With respect to Terrille's challenge to the provision of N.Y. Penal Law Section 265-e, prohibitions on concealed carriage in airports the provision should be found constitutional. Interestingly, the Second Circuit did not analyze airports in their decision as it was not appealed. Regardless, Terrille's challenge to the airport prohibition fails due to a lack of standing.

The federal government's promulgation of the Federal Aviation Act (FAAct) constituted a field preemption. "Field preemption exists where 'Congress intended the Federal Government to occupy a field exclusively.'" Tweed-New Haven Airport Auth. v. Tong, 930 F.3d 65, 75 (2d

5

Cir. 2019) (*quoting* Air Transp. Ass'n of Am.Inc. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008)) (internal brackets omitted). "Courts infer the presence of this congressional intent when 'the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose.'" Goodspeed Airport, LLC v. E. Haddam Inland Wetlands and Watercourses Commn., 681 F. Supp. 2d 182, 199 (D. Conn. 2010), aff'd, 634 F.3d 206 (2d Cir. 2011) (*quoting* Air Transp. Ass'n, 520 F.3d at 221). "The Federal Aviation Act declares that 'The United States Government has exclusive sovereignty of airspace of the United States,' 49 U.S.C. § 40103(a)(1), and directs the FAA Administrator to 'develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace.'" Id. (*quoting* 49 U.S.C. § 40103(b)(1); 49 U.S.C. § 40103(b)(2)). However, the "Supreme Court has repeatedly emphasized, the limiting principle is the intent of Congress". Goodspeed Airport, LLC, 681 F.Supp.2d at 202 (*citing* Medtronic, Inc. v. Lohr, 518 U.S. 470, 485–86 (1996). Significantly, the intent of Congress was "that safety be 'the highest priority in air commerce.'" Id. At 203 (*quoting* 49 U.S.C. § 40101(1)).

Since Congress intended that airports, aviation, and security within the space to be uniform and occupied by the federal government exclusively, the analysis then shifts to the interaction of N.Y. Penal Law Section 265-c(2)(n). The prohibition on concealed carriage in airports directly conflicts with the federal government's exclusive control over safety within airports. *See* 49 U.S.C. § 40101(1); see also Goodspeed Airport, LLC, 681 F.Supp.2d at 202. If the intent of Congress is to provide safety, the concurrent concealed carry regulation is in conflict with the provisions governing airline travel with a weapon. *See* 49 CFR 1540.111(c)(2).

6

"An actual conflict between state and federal laws occurs when compliance with both is physically impossible or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Clean Air Markets Group v. Pataki, 194 F. Supp. 2d 147, 157 (N.D.N.Y. 2002), aff'd, 338 F.3d 82 (2d Cir. 2003) (*quoting* Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985)). There is an actual conflict present in the instant, specifically, Terrille cannot comply with the federal provisions without noncompliance with the C.C.I.A.

Due to the conflict, the airport provision is preempted and "The Supremacy Clause 'invalidates state laws that interfere with, or are c ontrary to, federal law.'" Id. (*quoting* Hillsborough Cnty., Fla., 471 U.S. at 712).

Since the airport provision is preempted by the controlling federal aviation statutory framework, Terrille cannot be prosecuted as the provision is void.

Article III courts have power to decide only "cases" or "controversies." U.S. CONST. art. III § 2, cl. 1. Constitutional standing doctrine, which derives from Article III, is designed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." Id. "More precisely, it 'serves to prevent the judicial process from being used to usurp the powers of the political branches.'" Kearns v. Cuomo, 981 F.3d 200, 207 (2d Cir. 2020) (*quoting* Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)). "The irreducible constitutional minimum of standing contains three elements: (1) the plaintiff must have suffered an injury in fact, i.e., an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) "there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Nat'l Org. for

7

Marriage, Inc. v. Walsh, 714 F.3d 682, 688 (2d Cir. 2013) (*quoting* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)) (internal citations omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defs. of Wildlife, 504 U.S. at 561 (*citing* FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990); Warth v. Seldin, 422 U.S. 490, 508 (1975). Furthermore, "[p]laintiffs must maintain their personal interest in the dispute at all stages of litigation." TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021) (*citing* Davis v. Federal Election Comm'n, 554 U.S. 724, 733 (2008)). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a "'substantial risk' that the harm will occur.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (*quoting* Clapper, 568 U.S. at 414 & n.5). For Article III standing a pre-enforcement challenge to a criminal statute is possible if the plaintiff can demonstrate: "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979). Importantly, "an allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" Dorce v. City of New York, 2 F.4th 82, 95 (2d Cir. 2021) (*quoting* Susan B. Anthony List, 573 U.S. at 158, 134 S.Ct. 2334) (internal quotation marks omitted). Significantly, "'[t]he identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue,' and will not be found where 'plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'" Cayuga Nation v. Tanner, 824 F.3d 321, 331 (2d Cir. 2016) (*quoting* Knife Rights, Inc. v. Vance, 802 F.3d 377, 384 (2d Cir. 2015)) (internal quotation marks omitted).

8

Finally, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021) (*citing* Davis, 554 U.S., at 734, 128 S.Ct. 2759; Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 185 (2000)).

As applied to Terrille, he cannot satisfy the imminence requirement due to the inability to prosecute a voided criminal statute. See Knife Rights, Inc. v. Vance, 802 F.3d at 384. Moreover, there is no "substantial risk that the harm will occur", since the harm would be prosecution. Susan B. Anthony List, 573 U.S. at 158. Therefore, Terrille cannot satisfy the imminence requirement, and subsequently does not have standing to challenge this provision. TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021) (explaining that "plaintiffs must demonstrate standing for each claim that they press").

(c) Movie Theaters

Under the C.C.I.A., concealed carriage prohibition in movie theaters is regulated by N.Y. Penal Law Section 265-e(2)(p). Plaintiffs argue that Wolford and Bruen collectively dismantle the tradition of regulating firearms in quintessentially crowded places yet neglect the Second Circuits finding of consistency with the tradition of regulation on "spaces wherein in people assemble for amusement, educational, or literary purposes, which fairly describes theaters." Antonyuk, 120 F.4th at 1038. Moreover, the silence of the affirmative historical analogues was properly discounted for the same reason, that "social, amusement, literary, or educational gatherings appear to have naturally covered theaters." Id. n. 112.

9

Plaintiff's overreading of the Bruen and Wolford decisions supposed overruling of prohibitions on carriage in quintessentially public places is misplaced, for Bruen speaks of New York's repealed broad categorization of "all places of public congregation" and not specific locations of which historical analogues for regulation exist. The same applies for Plaintiff's interpretation of the very recently decided Wolford. There, the Court failed Hawaii for its lack of relatively similar historical analogues and ruled the statute unconstitutional. *See* Wolford v. Lopez, 609 U.S. _____, 146 S. Ct. 2032 (U.S. June 25, 2026). However, the distinguishing factor is the historical analogues provided in the instant are "relatively similar" as required under the Bruen decision.

As the Second Circuit found, beginning with the 1792 North Carolina law, that the law did not require the "terroristic conduct" and affray laws, but instead "banned all carriage in fairs and markets." Antonyuk, 120 F.4th at 1039 n. 114. Therefore, arguments as to missing a specific behavior or affray laws fail as applied to the 1792 North Carolina Law since it had no behavior condition.

As to Plaintiff's qualms with the Tennessee and Texas laws representative factors, they misread Bruen. Bruen addresses the representative factor with speaking to regulation targeting less than 1 percent of the population as one reason why the proffered historical analogues fail. Furthermore, the discounting of Kansas's law of 6.5 percent of one state's population is not relative, mathematically, to the 5.3 percent of the *national population* regulated by the instant historical analogues. *See* Antonyuk, 120 F.4th at 1038 n.113; *see also* Bruen, 597 U.S. at 69-70 (emphasis added). Significantly, the cases mentioned by the Second Circuit, regarding Missouri, Tennessee, and Texas, were evidence of lack of successful legal challenges to the historical

10

analogues. Specifically, Bruen requires an analysis of whether the statute had been rejected on constitutional grounds, and the cases referenced provided that they were not.

Ultimately, for the reasons stated above, this Court should rule that the challenged provision as to theaters is constitutional and dismiss Terrille's claims as to theaters.

(d) Establishments Serving Alcohol and Restricted Locations

For these remaining sensitive locations, Defendant Kindlon follows and adopts the State Defendants' arguments pertaining to these locations.

## CONCLUSION

In view of the foregoing arguments, it is respectfully submitted that Defendant Kindlon has met his burden of proof on this motion and is entitled to Summary Judgment, dismissing Plaintiff's challenges against him as a matter of law.

DATED:   July 30, 2026
         Albany, New York

Respectfully Submitted,

Philip K. Banaszek, Esq.
Assistant Albany County Attorney
*Attorney for Defendant Lee Kindlon, as*
*Albany County District Attorney*
Federal Bar Roll No. 706570
112 State Street, Room 600
Albany, New York 12207
Telephone: (518) 447-7100
Telefax: (518) 447-5564

To:   VIA NDNY ECF:
      All Counsel of Record

11