UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE,

Plaintiffs,

v.

STEVEN G. JAMES, in his official capacity as Superintendent of the New York State Police, WILLIAM FITZPATRICK, in his official capacity as Onondaga County District Attorney, TOBIAS J. SHELLEY, in his official capacity as Sheriff of Onondaga County, MARK RUSIN, in his official capacity as Chief of Police of Syracuse, and LEE C. KINDLON, in his official capacity as District Attorney of Albany County,

Defendants.

Civil Action No.: 1:22-cv-986 (GTS/PJE)

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CHIEF RUSIN'S MOTION FOR SUMMARY JUDGMENT**

Susan R. Katzoff, Esq.
Corporation Counsel
*Counsel for Chief of Police Mark Rusin*
300 City Hall
Syracuse, New York 13202
(315) 448-8400

By:    Todd M. Long, Esq.
       Senior Corporation Counsel

       Danielle R. Smith, Esq.
       First Assistant Senior Corporation Counsel

#72832v2

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

RELEVANT PROCEDURAL BACKGROUND ............................................................ 2

STANDARD OF REVIEW ............................................................................................. 2

ARGUMENT ................................................................................................................... 4

    I.    *Antonyuk II* Is Binding On This Court................................................................. 4

    II.   Plaintiffs' First Cause Of Action Must Be Dismissed As To Chief Cecile ......................... 6

        A.   Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To The Rosamond Gifford Zoo ................................................................................................. 8

            i.    Controlling Second Circuit Precedent .................................................. 8

            ii.   The Zoo is within a City Park and Contains County and School Facilities............ 9

        B.   Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Ponchito's Taqueria 11

        C.   Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To The Syracuse Mets Baseball Stadium And The Carousel Center Mall Movie Theater ............................... 12

        D.   Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Locations Outside The City .......................................................................................................... 14

        E.   Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Vague And Unidentified Locations ............................................................................................. 15

        F.   Conclusion ......................................................................................................... 16

    II.   Plaintiffs' Second And Third Causes Of Action Must Be Dismissed As To Chief Rusin . 16

CONCLUSION................................................................................................................ 17

#72832v2

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................... 3

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) .................................................................... 2

*Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) ...........................................................2, 8, 9, 11

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) ................................................ 7

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003) ............................................................................ 16

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ............................................... 15, 16

*Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367 (2d Cir. 2024) ..................................................... 4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...................................................................... 3

*D.C. v. Heller*, 554 U.S. 570 (2008) ............................................................................................ 10

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003) ......................................... 3

*Davis v. City of Rochester*, 2022 WL 6885334 (W.D.N.Y. Oct. 12, 2022) ................................... 14

*Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782 (2d Cir. 1983) ...................................... 4

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) ....................................................................... 4

*Frey v. Bruen*, No. 21 CV 05334 (NSR), 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) ............... 12

*Giambalvo v. Suffolk Cnty., New York*, 155 F.4th 163 (2d Cir. 2025) ........................................... 5

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010) ............................................................................... 4

*Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638 (2d Cir. 1998) ............................................. 5

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) ................................................................. 3

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................................................ 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................................... 3

*Mediavilla v. City of New York*, 259 F. Supp. 3d 82 (S.D.N.Y. 2016) ........................................... 7

#72832v2

*Merrill v. Copeland*, No. 3:19-CV-1240 (BKS/ML), 2022 WL 3212075 (N.D.N.Y. Aug. 9, 2022), *aff'd*, No. 22-1928, 2024 WL 119261 (2d Cir. Jan. 11, 2024)..................................................... 3, 4

*Moreira v. Societe Generale, S.A.*, 125 F.4th 371 (2d Cir. 2025) ...................................................... 6

*Panayoty v. Annucci*, 898 F. Supp. 2d 469 (N.D.N.Y. 2012), *report and recommendation adopted sub nom. Bonilla v. Annucci*, No. 9:11-CV-159, 2012 WL 4378127 (N.D.N.Y. Sept. 25, 2012) 5

*Quarles v. Gen. Motors Corp.*, 758 F.2d 839 (2d Cir. 1985) ........................................................... 3

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165 (2d Cir. 2014) ........................... 4

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ................................................................. 7

*Trump v. Cook*, No. 25A312, 2026 WL 1855613 (U.S. June 29, 2026) ......................................... 5

*United States v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002) ................................................................ 4

*United States v. Rahimi*, 602 U.S. 680 (2024) ............................................................................... 2

*Wolford v. Lopez*, 125 F.4th 1230 (9th Cir. 2025) ........................................................................ 13

*Yick Man Mui v. United States*, 614 F.3d 50 (2d Cir. 2010)........................................................... 5

**Statutes**

Penal Law § 265.01-e ................................................................................................8, 10, 11

#72832v2

## PRELIMINARY STATEMENT

Plaintiffs Ivan Antonyuk ("***Plaintiff Antonyuk***"), Corey Johnson ("***Plaintiff Johnson***") and Alfred Terrille ("***Plaintiff Terrille***" collectively, "***Plaintiffs***"),[1] initiated this action by filing a Complaint with the Northern District of New York on September 20, 2022, against several municipalities and municipal representatives including Syracuse Police Department Chief Joseph Cecile ("***Chief Cecile***"). Chief Cecile has since retired and was replaced by Chief of Police Mark Rusin ("***Chief Rusin***") as a Defendant in this action.

Plaintiffs are seeking relief pursuant to 42 U.S.C. § 1983 ("***Section 1983***"). *See generally*, Dkt. No. 1. Plaintiffs generally assert that New York State's Concealed Carry Improvement Act ("***CCIA***") violates their rights under the First, Second and Fifth Amendments to the United States Constitution. *See generally*, Dkt. No. 1. However, Plaintiff Johnson is the only Plaintiff to allege that his rights have been – or will be – violated by the only municipality within Chief Rusin's jurisdiction, namely, the City of Syracuse ("***City***").

As set forth below, Plaintiff's Motion for Summary Judgment should be denied as to Chief Rusin, Chief Rusin's Motion for Summary Judgment should be granted in its entirety, and the Complaint should be dismissed, with prejudice, as to Chief Rusin.

## STATEMENT OF FACTS

A full recitation of the factual background upon which Defendants seek relief is contained within the accompanying "Statement of Material Facts Not In Dispute" ("SOF ¶___").

---

[1] Initially, the Complaint identified several additional Plaintiffs. *See generally*, Dkt. No. 1. However, all but Plaintiffs Antonyuk, Johnson and Terrille have been dismissed. *See* Dkt. Nos. 155, 170, 174.

#72832v2

**RELEVANT PROCEDURAL BACKGROUND**

Shortly after initiating this action, Plaintiffs filed a Motion for a Preliminary Injunction seeking to enjoin portions of the CCIA ("*PI Motion*"). Dkt. No. 6. On November 7, 2022, this Court issued a Decision and Order granting in part and denying in part the PI Motion ("*PI Decision*"). Dkt. No. 78. Defendants Matthew J. Doran, Steven A. Nigrelli and Chief Cecile appealed. Dkt. No. 28, 31.

On December 8, 2023, the Second Circuit issued a decision in this and several other actions, all challenging aspects of the CCIA. *Antonyuk v. Chiumento*, 89 F.4th 271, 288 (2d Cir. 2023). The Supreme Court granted certiorari in the *Antonyuk* matter, vacated the Second Circuit's decision and remanded to "the Second Circuit for further consideration in light of" the Supreme Court's interim decision in *United States v. Rahimi*, 602 U.S. 680 (2024). *Antonyuk v. James*, 144 S. Ct. 2709, 219 L. Ed. 2d 1315 (2024). In accordance with the Supreme Court's mandate, the Second Circuit issued a subsequent decision in October 2024. *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) ("*Antonyuk II*"). The Supreme Court subsequently denied certiorari. *Antonyuk v. James*, 145 S. Ct. 1900, 221 L. Ed. 2d 646 (2025). The matter was then returned to this Court for further proceedings.

Plaintiffs filed a Motion for Summary Judgment on June 30, 2026. *See* Dkt. No. 178. This Memorandum is submitted in Opposition to Plaintiffs' Motion and in support of Chief Rusin's Motion for Summary Judgment.

**STANDARD OF REVIEW**

"Under Rule 56(a), summary judgment may be granted only if all the submissions taken together 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Merrill v. Copeland*, No. 3:19-CV-1240 (BKS/ML),

2

2022 WL 3212075, at *7 (N.D.N.Y. Aug. 9, 2022), *aff'd*, No. 22-1928, 2024 WL 119261 (2d Cir. Jan. 11, 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *Merrill*, 2022 WL 3213075 at *7 (quoting *Celotex*, 477 U.S. at 323). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Merrill*, 2022 WL 3213075 at *7 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant may meet this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Merrill*, 2022 WL 3213075 at *7 (quoting *Celotex*, 477 U.S. at 322).

"If the moving party meets this burden, the nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Merrill*, 2022 WL 3213075 at *8 (quoting *Anderson.*, 477 U.S. at 248). "'When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Merrill*, 2022 WL 3212075, at *8 (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)). "Still, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and cannot rely on 'mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment[.]'" *Merrill*, 2022 WL 3212075, at *8 (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).

#72832v2

"Furthermore, '[m]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" *Merrill*, 2022 WL 3212075, at *8 (quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

**ARGUMENT**

**I.     *Antonyuk II* Is Binding On This Court**

Prior to addressing Plaintiffs' Causes of Action, it is important to first discuss the "law of the case" doctrine which concerns prior rulings in an action. There are two branches to the law of the case doctrine depending on whether the prior ruling was issued by the same court or an appellate court. *See Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367 n.6 (2d Cir. 2024). The "more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. It holds 'that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case,' . . . unless 'cogent' and 'compelling' reasons militate otherwise." *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (citations omitted).

There is little, if any, flexibility in the other branch of the law of the case doctrine, commonly referred to as the "mandate rule." *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014). "When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue, . . . and is precluded from altering the appellate decision." *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977) (citations omitted). "This doctrine applies to issues that have been decided 'either expressly or by necessary implication.'" *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 788 (2d Cir. 1983) (quoting *Munro v. Post*, 102 F.2d 686, 688 (2d Cir. 1939)). "This

4

'mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate.'" *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012) (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010)).

Finally, even without the "mandate rule," this Court is required to follow the Second Circuit's controlling precedent in *Antonyuk II* under the doctrine of vertical *stare decisis*. *See Trump v. Cook*, No. 25A312, 2026 WL 1855613, at *13 (U.S. June 29, 2026) ("Indeed, as a matter of vertical *stare decisis*, the lower courts have no choice but to follow our lead. When we define a term or establish a background rule, we need not repeat ourselves—once is enough."); *see also Panayoty v. Annucci*, 898 F. Supp. 2d 469, 479–80 (N.D.N.Y. 2012), *report and recommendation adopted sub nom. Bonilla v. Annucci*, No. 9:11-CV-159, 2012 WL 4378127 (N.D.N.Y. Sept. 25, 2012) ("With vertical *stare decisis*, the decisions of an appellate court, i.e., a circuit court of appeals or the Supreme Court, will have preclusive effect on subsequent decisions made by lower courts.").

That *Antonyuk II* was decided at a preliminary injunction stage, rather at the conclusion of the action, is of no moment. The Second Circuit recently issued a decision in another action involving challenges to the CCIA. *Giambalvo v. Suffolk Cnty., New York*, 155 F.4th 163 (2d Cir. 2025). Unsurprisingly, the Second Circuit relied heavily on its prior decision in *Antonyuk II*. *See generally, id.* When referencing *Antonyuk II*, the court in *Giambalvo* "note[d] that "[o]rdinarily, findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial.'" *Id.* at 177 n.4 (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)). However, the Second Circuit explained that "even in the preliminary injunction posture (as in *Antonyuk II*), a well-considered conclusion of law by a panel of this Court in a published opinion, which addresses a pure issue of law that

#72832v2

cannot be impacted by further development of the record, is binding precedent, as with any other published decision." *Id.* (citations omitted). Accordingly, the Second Circuit's decision in *Giambalvo* makes clear that *Antonyuk II* "is binding precedent," despite its interlocutory posture. *Id.*

With the foregoing in mind, Chief Rusin will turn to Plaintiffs' Causes of Action.

## II.     Plaintiffs' First Cause Of Action Must Be Dismissed As To Chief Cecile

Plaintiffs' First Cause of Action alleges a violation of his Second Amendment rights pursuant to 42 U.S.C. § 1983 ("**Section 1983**"). Specifically, Plaintiff Johnson alleges that his rights as guaranteed by the US Constitution will be violated as he intends to visit various "sensitive locations," as defined by the CCIA, with his firearm, and that doing so will subject him to arrest and criminal prosecution.[2] *See generally*, Dkt. No. 1; Dkt. No. 1-3. Plaintiff Johnson does not allege that he has been arrested or prosecuted for visiting sensitive locations with his firearm. *See generally*, Dkt. No. 1; Dkt. No. 1-3. Furthermore, as set forth below, Plaintiff lacks standing to seek pre-enforcement relief from Chief Rusin.[3]

"To establish standing under Article III of the Constitution, a 'plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Moreira v. Societe Generale, S.A.*, 125 F.4th 371, 384 (2d Cir. 2025) (citations omitted). "[A] plaintiff satisfies the injury-in-fact

---

[2] As previously noted, only Plaintiff Johnson claims even a tenuous connection with the City. Accordingly, only Plaintiff Johnson's allegations are addressed. Nevertheless, should a liberal reading of the Complaint suggest that other Plaintiffs are seeking relief from Chief Rusin, Chief Rusin respectfully submits that their causes of action should be dismissed for the reasons stated herein. Namely, Plaintiffs have failed to identify any sensitive locations within Chief Rusin's jurisdiction wherein their Second Amendment Rights will be violated.

[3] The State Defendants are far better equipped to set forth the historical context supporting the CCIA. Accordingly, Chief Rusin joins in the State Defendants' arguments, insofar as is permissible by this Court.

requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). In other words, "a plaintiff has Article III standing to bring a pre-enforcement challenge to a criminal statute if he or she can demonstrate: (1) an intention to engage in a course of conduct arguably affected with a constitutional interest; (2) that the intended conduct is proscribed by the challenged law; and (3) that there exists a credible threat of prosecution thereunder." *Antonyuk II*, 120 F.4th at 1004 (internal quotations omitted).

To satisfy these requirements, the plaintiff is not required "to confess that [they] will in fact violate the law." *Susan B. Anthony List*, 573 U.S. at 163 (2014) (citation omitted). However, "'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that [Supreme Court] cases require." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

While Plaintiff Johnson is a resident of *Onondaga County*, he *is not* a resident of the *City*. SOF ¶¶1-2. It is therefore unsurprising that the Complaint and Plaintiff Johnson's accompanying declaration only identified one sensitive location within the *City* that he intends to visit with his weapon, namely, the Rosamond Gifford Zoo ("***Zoo***"). *See* Dkt. No. 1, ¶¶149-61; Dkt. No. 1-3. During the discovery phase and at Summary Judgment, Plaintiff Johnson identified additional businesses purportedly within the City. Respectfully, Plaintiff Johnson should be precluded from constructively amending the Complaint at this late stage. *See Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016).

Nevertheless, in an abundance of caution, Chief Cecile has scoured Plaintiff Johnson's various sworn statements (including his interrogatories, declarations and deposition testimony) for

7

any conceivable location that Plaintiff Johnson even vaguely suggested could be located within the City. Those locations – or, when appropriate, category of locations – will be discussed in turn.

**A.    Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To The Rosamond Gifford Zoo**

The CCIA restricts an individual from possessing a firearm in "sensitive locations," which includes "public parks, and zoos."  N.Y. Penal Law § 265.01-e(2)(d). Plaintiff Johnson, who owns and carries a firearm, claims that he has visited and will continue to visit the Rosamond Gifford Zoo ("***Zoo***"). *See* Dkt. No. 1-3, ¶17; Dkt. No. 178-5, ¶11; Dkt. No. 1, 103:14-22. The Zoo is owned and operated by the County of Onondaga ("***Onondaga County***"). *See* Dkt. No. 47-2; Exh. 17.[4] It is, however, located within a City park, namely, Burnett Park ("***Burnett Park***"). *See* Dkt. No. 47-2; *see also* Exh. 1, 105:4-8. As set forth below, Plaintiff has failed to allege an injury in fact with respect to the Zoo because 1) the "mandate rule" requires that the Second Circuit's precedent be followed; and 2) the Zoo contains Onondaga County ("***County***") and school facilities, which Plaintiffs do not appear to challenge as sensitive locations.

*i.    Controlling Second Circuit Precedent*

The Second Circuit ruled in *Antonyuk II* "that prohibiting firearms at zoos is consistent with the country's tradition of regulating firearms in places of educational and scientific opportunity, places heavily trafficked by children, and places that are densely crowded." *Antonyuk II*, 120 F.4th at 1027. Plaintiffs argue that they are entitled to Summary Judgment because the Second Circuit made certain historical errors in its analysis of zoos. *See* Dkt. No. 178-9, pp. 25-26. However, for the reasons set forth above, *Antonyuk II* constitutes controlling precedent. *See*

---

[4] All Exhibits are attached to the Declaration of Todd M. Long, Esq.

*supra* Argument I.   Accordingly, the Second Circuit's holding that zoos are appropriately designated as a "sensitive location" must be followed.

Notably, the Second Circuit's reasoning – that zoos are generally "places of educational and scientific opportunity, places heavily trafficked by children, and places that are densely crowded," *Antonyuk II*, 120 F.4th at 1027 – is an accurate description of the Zoo. For example, Plaintiff Johnson agreed that "many of the people who go to the zoos are children or families with children" and the Zoo can get "pretty crowded." Exh. 1, 107:12-22. Plaintiff also agreed that there are "school trips or field trips to the zoo." *Id.* at 107:4-6. The Zoo is also undoubtedly a "place[] of educational and scientific opportunity," as discussed more fully below. *See infra* Argument II.A.ii.

Therefore, in accordance with *Antonyuk II*, the Zoo is properly designated as a sensitive location. As such, Plaintiff Johnson cannot establish an injury in fact.

      *ii.*     *The Zoo is within a City Park and Contains County and School Facilities*

To access the County-owned Zoo, a visitor will necessarily drive through the City-owned Burnett Park. *See* Dkt. No. 47-2. The Second Circuit held that the CCIA's restriction of firearms within a city park falls "within a national tradition of regulating firearms in often-crowded public squares, including, specifically, city parks." *Antonyuk*, 120 F.4th at 1026. For the reasons stated above, this Court follow the Second Circuit's binding precedent.

Plaintiffs do not reference Burnett Park or appear to challenge the Second Circuit's Decision with respect to urban parks, like Burnett Park. *See generally*, Dkt. No. 178-9, pp. 13-18. Instead, Plaintiffs seemingly limit their argument to "rural and suburban parks." *Id.* at 18.

The record is also clear that the Zoo contains both County and School facilities. SOF ¶¶6-7; *see also* Exhs. 19-23. The Supreme Court held that a state may lawfully prohibit firearms at

9

"schools and government buildings." *See D.C. v. Heller*, 554 U.S. 570, 626 (2008) ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms . . . in sensitive places such as schools and government buildings"). Presumably for that reason, Plaintiffs have not asserted a challenge to N.Y. Penal Law § 265.01-e(2)(a), which defines a sensitive location as including "any place owned or under the control of federal, state or local government, for the purpose of government administration, including courts." *Id.*; *see also* Dkt. No. 1; Dkt. No. 178-9; *see also Antonyuk II*, 120 F.4th at 959 n.7 (noting that Plaintiffs do not challenge "any place under the control of federal, state, or local government for purposes of government administration").

Nor do Plaintiffs challenge the constitutionality of N.Y. Penal Law § 265.01-e(2)(m), which concerns schools. *See* Dkt. No. 1, ¶151. Specifically, under the CCIA, a sensitive location includes the following:

> *in or upon any building or grounds, owned or leased, of any educational institutions, colleges and universities*, licensed private career schools, school districts, public schools, private schools . . ., charter schools, non-public schools, board of cooperative educational services, special act schools, preschool special education programs, private residential or non-residential schools for the education of students with disabilities, and any state-operated or state-supported schools.

N.Y. Penal Law § 265.01-e(m) (emphasis supplied); *see also Antonyuk II*, 120 F.4th at 959 n.7 (noting that Plaintiffs do not challenge "any building or grounds of any educational institutions, colleges, school districts, and private schools").

Accordingly, the foregoing provides an additional basis to find that the Zoo is properly designated as a sensitive location. As such, Plaintiff Johnson cannot establish an injury in fact.

10

**B.    Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Ponchito's Taqueria**

The Complaint asserted only that Plaintiff Johnson frequented unidentified restaurants that served alcohol. *See* Dkt. No. 1, ¶¶154-55. Plaintiff Johnson's declaration accompanying the Complaint identified only one such restaurant, Longhorn Steakhouse. Dkt. No. 1-3, ¶11. However, Plaintiff Johnson did not claim that any of the alcohol-serving restaurants he intends to visit – including the Longhorn Steakhouse – were located within the City. *See generally*, Dkt. No. 1; Dkt. No. 1-3. Nevertheless, Plaintiff has since identified Ponchito's Taqueria as an alcohol-serving restaurant within the City. *See* Exh. 1, 127:5-18.

The CCIA designates the following as a sensitive location: "any establishment holding an active license for on-premise consumption . . . where alcohol is consumed." N.Y. Penal Law § 265.01-e(2)(o). The Second Circuit ruled that designating alcohol-serving restaurants as sensitive locations "pass[es] constitutional muster." *Antonyuk II*, 120 F.4th at 1032 (citation omitted). For the reasons stated above, Chief Rusin respectfully submits that this Court must find in accordance with *Antonyuk II*.

Furthermore, Plaintiff identified Ponchito's Taqueria only as a place he "visits or intends to visit." Exh. 2. Plaintiff Johnson did not assert that he intends to visit Ponchito's on a specific date or even in the near future.[5] As this Court previously recognized, "'someday' intentions— without any description of concrete plans, or indeed even any specification of when the 'someday' will be—do not support a finding of the 'actual or imminent' injury that our cases require." Dkt. No. 78, p. 18; *see also Frey v. Bruen*, No. 21 CV 05334 (NSR), 2022 WL 522478, at *5 (S.D.N.Y.

---

[5] Interestingly, Ponchito's Taqueria was noticeably absent from the list of restaurants Plaintiff Johnson identified in his declaration in support of Plaintiffs' Motion for Summary Judgment. Dkt. No. 178-5.

11

Feb. 22, 2022) (court found no standing in firearms case based on "no concrete plans to violate the New York Penal Laws" and plaintiffs' failure to allege "a credible threat of prosecution"). Plaintiff Johnson's mere allegation that he "intends to visit" Ponchito's Taqueria at some vague point in the future falls squarely within the "someday" plans this Court previously noted was insufficient to establish standing.

Based on the foregoing, Chief Rusin respectfully submits that Plaintiff Johnson cannot establish an injury in fact.

C.    **Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To The Syracuse Mets Baseball Stadium And The Carousel Center Mall Movie Theater**

Neither the Complaint nor Plaintiff Johnson's accompanying declaration asserted that he visited any stadiums or attended any baseball games with his concealed firearm, let alone baseball games at the Syracuse Mets Baseball Stadium ("***Mets Stadium***").[6] *See generally*, Dkt. No. 1; Dkt. No. 1-3. Similarly, neither the Complaint nor Plaintiff Johnson's accompanying declaration asserted that he visited any movie theaters with his concealed firearm, let alone the Carousel Center Mall movie theater, a Regal Cinema ("***Carousel Mall Theater***").[7] *See id.* However, Plaintiff Johnson later asserted that he intends to attend baseball games at the Mets Stadium and view movies at the Carousel Mall Theater. *See* Exh. 2; Exh. 1, 142:4-10; *id.* at 131:21-23.

The CCIA designates "any place used for the performance, art entertainment, gaming, or sporting events such as theaters [and] stadiums" as sensitive locations. N.Y. Penal Law § 265.01-e(2)(p). This Court previously held that Plaintiff Johnson lacked standing to challenge this

---

[6] Plaintiffs do not appear to challenge the CCIA's designation of *stadiums* as a sensitive location. *See generally,* Dkt. No. 1.

[7] As this Court is no doubt aware, the Carousel Center Mall was renamed Destiny USA after extensive renovations. Chief Cecile will nevertheless refer to the property as the Carousel Center Mall in accordance with Plaintiff Johnson's deposition testimony.

restriction because he failed to allege that he intended to bring his firearm to a sensitive location "in the *immediate* future." *See* Dkt. No. 78, pp. 68-78 (emphasis in original). Plaintiff Johnson has not rectified this failing.

Instead, Plaintiff identified Mets Stadium and the Carousel Mall Theater only as places he "visits or intends to visit." Exh. 2. Plaintiff Johnson fails to assert that he intends to visit Mets Stadium or the Carousel Mall Theater on a specific date or even in the near future.[8] As previously argued, "some day" intentions are insufficient to establish standing.

Furthermore, Mets Stadium does not permit firearms. SOF ¶9; *see also* Exh. 1, 144:11-145:4; Exh. 7. Plaintiff Johnson also acknowledged that the Carousel Mall, where the movie theater is located, has "a policy that says no firearms are allowed." SOF ¶10; Exh. 1, 174:24-8; *see also* Exh. 8. (Regal Cinemas have a similar policy. Exh. 9). As Plaintiffs acknowledge "'the Second Amendment does not restrict private-property owners' ability to decide whether to exclude firearms, or certain people for that matter, from their property.'" Dkt. No. 178-9, p. 29 (quoting *Wolford v. Lopez*, 125 F.4th 1230, 1237 (9th Cir. 2025) (VanDyke, J., dissenting)).

Finally, the Second Circuit held that N.Y. Penal Law § 265.01-e(2)(p) is consistent with a national tradition of "regulat[ing] firearms in discrete, densely crowded physical spaces wherein people assemble for amusement, educational, or literary purposes." *Antonyuk II*, 120 F.4th at 1038. For the reasons stated above, Chief Cecile respectfully submits that this Court *should* rule in accordance with its PI Decision and is *mandated* to follow *Antonyuk II*.

Accordingly, Plaintiff has failed to allege an injury in fact.

---

[8] Plaintiff Johnson's declaration in support of his Summary Judgment Motion states that he intends to see "Heart of the Beast" in September 2026 at unidentified "New York theaters." Dkt. No. 175-5, ¶9. At no point in Plaintiff Johnson's declaration does mention the Carousel Mall Theater (or any specific theater). *Id.*

13

### D.    Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Locations Outside The City

In addition to the Zoo, Ponchito's Taqueria, Mets Stadium and the Carousel Mall Theater, Plaintiff Johnson asserts that he will visit various other locations within New York State.[9] Plaintiff appears to claim that five of those locations are within the City: Byrne Dairy, Mirabato Convenience Storr, Speedway, Wegmans and the New York State Fairgrounds. Dkt. No. 178-5, ¶12; Exh. 1, 156:11-21; *id.* at 177:16-179:18. However, as set forth below, Plaintiff is incorrect.

Plaintiff Johnson testified that he visits "the Byrne Dairy heading into Mattydale." Exh. 1, 178:7-13. That Byrne Dairy is located at 2307 Brewerton Road in Mattydale (meaning, not the City). SOF ¶12; *see also* Exh. 26. Plaintiff Johnson testified that he visits "the Speedway on Carrier Circle." Exh. 1, 178:7-13. That Speedway is located at 6589 Thompson Road in Mattydale (meaning, not the City). SOF ¶14; *see also* Exh. 28. Plaintiff Johnson testified that he visits "the Wegmans over on Thompson" Road or James Street. Exh. 1, 179:11-18. That Wegmans is located at 4256 James Street in East Syracuse (meaning, not the City). SOF ¶16; *see also* Exh. 31. Plaintiff Johnson's Interrogatories stated that he visits a Buffalo Wild Wings in the City.[10] Exh. 2. However, there is no Buffalo Wild Wings in the City. SOF ¶20; *see also* Exh. 25. And, finally, Plaintiff Johnson testified that he visits the "New York State Fairgrounds in Syracuse." Exh. 1, 156:11-22. As Chief Cecile argued in opposition to Plaintiff's Motion for a Preliminary Injunction, the New York State Fairgrounds are in the Town of Geddes (meaning, not the City). SOF ¶18; *see also* Dkt. No. 47-9, p. 14; *see also* Dkt. No. 47-7. Plaintiff has never disputed this fact.

---

[9] Insofar as is necessary, this Court may take judicial notice of maps. *See Davis v. City of Rochester*, 2022 WL 6885334, at *8 (W.D.N.Y. Oct. 12, 2022).

[10] Plaintiff Johnson acknowledged during his deposition that there is a Buffalo Wild Wings in Camillus or Cicero and that there may not be one in the City. Exh. 1, 185:4-16

14

Plaintiff Johnson cannot assert a credible threat of prosecution by Chief Rusin for locations outside the City. *See* Declaration of Chief Rusin, dated July 30, 2026. Accordingly, the foregoing locations which Plaintiff Johnson mistakenly believed were located within the City fail to allege an injury in fact. This is also true for the various locations Plaintiff Johnson intends to visit that he identifies as being within New York State, but *not* within the City. These locations include Bowman Lake State Park, Mercer Park, Longhorn Steakhouse,[11] Texas Roadhouse, Outback Steakhouse, Ruby Tuesday, Tops (in Baldwinsville) and Better Burger (in Liverpool). *See* Dkt. No. 1-3; Dkt. No. 178-5. Stated simply, these locations are not within Chief Rusin's jurisdiction, SOF ¶¶21-28, and Plaintiff has not asserted otherwise.

Accordingly, Plaintiff Johnson has failed to assert an injury in fact for locations outside of Chief Rusin's jurisdiction. *See Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) (finding the plaintiff lacked standing to seek injunctive relief "from [the Kohl's] retail store at 271 W. 23rd St, New York, NY" because there was "no Kohl's store anywhere in Manhattan, let alone at that address").

## E.    Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Vague And Unidentified Locations

Plaintiff Johnson also asserts that he will visit various vaguely identified categories of businesses, including gas stations, grocery stores, home improvement stores and big box stores. *See* Dkt. No. 1-3; Dkt. No. 178-5; Exh. 2. Plaintiff does not claim that any of these locations are within the City or otherwise within Chief Rusin's jurisdiction. *See generally, id.*

---

[11] This Court was previously "persuaded . . . that (although Plaintiff Johnson lives in the City, of which Defendant Cecile is the Chief of Police) no Longhorn Steakhouses exist in the City." Dkt. No. 78, p. 66 n.49.

15

"[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 637 (2d Cir. 2003). Here, Plaintiff Johnson is asking this Court to do just that – "draw an unwarranted inference[]" that the vague categories of businesses are located within the City. Given that Plaintiff Johnson *does not live in the City*, SOF ¶¶1-2, that unwarranted inference all the more baseless.

Accordingly, Plaintiff has failed to allege an injury in fact. *See Calcano*, 36 F.4th at 76–77 (finding the plaintiffs failed to allege "an injury that is 'concrete and particularized'" where they failed to "specify which stores they visited").

### F.      Conclusion

Chief Rusin therefore respectfully submits that Plaintiffs' First Cause of Action should be dismissed in its entirety, with prejudice, as to Chief Rusin. Should this Court disagree, Chief Rusin respectfully submits that he has raised a triable issue of fact such that Plaintiffs' Motion for Summary Judgment should be denied.

### II.      Plaintiffs' Second And Third Causes Of Action Must Be Dismissed As To Chief Rusin

Plaintiffs' Second and Third Causes of Action concern the application process. *See* Dkt. No. 1, ¶¶246-65). Chief Rusin, and by extension, SPD, does not play any role in the review, processing or the decision-making process of firearm applications. *See* Declaration of Chief Rusin, dated July 30, 2026, ¶13. Accordingly, insofar as any aspect of Plaintiffs' Second and Third Causes of Action survived, they must be dismissed as to Chief Rusin.[12] Should this Court disagree, Chief

---

[12] It is unclear whether any aspect of Plaintiff's Second and Third Causes of Action survived the Stipulation of Partial Settlement. See Dkt. No. 174. Further complicating the issue, Plaintiffs' Second and Third Causes of Action are asserted against "Defendants" in general, but Plaintiffs did not allege that Chief Cecile or SPD played any role in reviewing or deciding firearm applications. *See generally*, Dkt. No. 1; *see also id*. at ¶11 (identifying Judge Matthew Doran as "the proper party with respect to Plaintiffs' challenge to the CCIA's requirement and definition of

#72832v2

Rusin respectfully submits that he has raised a triable issue of fact such that Plaintiffs' Motion for Summary Judgment should be denied.

## CONCLUSION

Chief Rusin respectfully requests this Court grant his Motion for Summary Judgment, dismiss the Complaint in its entirety as against Chief Rusin with prejudice, deny Plaintiffs' Motion for Summary Judgment and grant such other and further relief the Court deems just and proper. Should this Court disagree, Chief Rusin respectfully submits that he has raised a triable issue of fact such that Plaintiffs' Motion for Summary Judgment should be denied.

Dated: July 31, 2026

Susan R. Katzoff, Esq.
Corporation Counsel, City of Syracuse

*/s/ Todd M. Long*
Todd M. Long, Esq.
Danielle R. Smith, Esq.

*Counsel for Chief Rusin*

---

'good moral character,' along with its associated requirements of an in-person interview, disclosure of a list of friends and family, provision of four 'character references,' and provision of three years of social media history"). Nevertheless, Plaintiff's Second and Third Causes of Action are addressed out of an abundance of cation.

17