UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

IVAN ANTONYUK, COREY JOHNSON, and
ALFRED TERRILLE,

                          Plaintiffs,

              -against-                       Case No. 22 Civ. 986 (GTS/PJE)

STEVEN G. JAMES, in his official capacity as
Superintendent of the New York State Police,
WILLIAM FITZPATRICK, in his official capacity as
Onondaga County District Attorney, TOBIAS J.
SHELLEY, in his official capacity as Sheriff of
Onondaga County, MARK RUSIN, in his official
capacity as Chief of Police of Syracuse, and LEE C.
KINDLON, in his official capacity as District Attorney
of Albany County,

                         Defendants.
-------------------------------------------------------------------X

### SUPERINTENDENT JAMES' RULE 56.1(b) RESPONSE TO PLAINTIFFS' RULE STATEMENT OF MATERIAL FACTS AND RULE 56.1(a) COUNTERSTATEMENT OF MATERIAL FACTS

Defendant Steven G. James ("Superintendent James" or the "Superintendent"), in his

official capacity as Superintendent of the New York State Police, pursuant to Rule 56 of the

Federal Rules of Civil Procedure and this Court's Local Rule 56.1(b), respectfully submits the

following response to Plaintiffs' Statement of Material Facts (ECF No. 178-8).

1.      Plaintiff Corey Johnson is an adult male citizen of the State of New York, a citizen of the

United States, a law-abiding person, and has no disqualification under state or federal law which

would prohibit him from possession a firearm.  Declaration of Corey Johnson ("Johnson

Declaration") ¶¶ 1-3. ECF No. 1-3.

**RESPONSE:** Superintendent James does not dispute that Plaintiff Johnson is an adult male citizen of New York and the United States.  Superintendent James disputes that Plaintiff Johnson is a law-abiding citizen.   Plaintiff Johnson took the Fifth Amendment 27 times in his three-and-a-half hour deposition, including regarding what long guns he owns, Johnson Tr. 72:16-73:2, what semiautomatic rifles he owns, id. 73:3-8; whether he owns a machine gun, ghost gun, or uses a "Glock switch" for fully automatic fire, id. 74:10-75:15; whether he carries his gun to work in violation of company policy, id. 76:16-23; whether he carries his gun in sensitive locations other than schools, courthouses, and government buildings, id. 84:13-85:4; whether he carries guns into various of the sensitive locations at issue in this case, see id. 98:8-14, 109:18-110:5, 124:22-25, 140:7-14, 142:14-19; and whether he carries guns into others' private property (including their homes) without permission, even knowing that the gun is not welcome.  Id. 137:9-138:13, 145:18-146:5.  The Superintendent objects to the assertion that Plaintiff Johnson has no disqualification under state or federal law as a legal conclusion to which no response is required. See Checksfield v. IRS, No. 21 Civ. 1180, 2024 WL 21549, at *2 (N.D.N.Y. Jan. 2, 2024) ("impermissible legal arguments" are not proper under Local Rule 56.1).  To the extent that a response is deemed required, the Superintendent disputes the assertion based on Plaintiff Johnson's repeated invocation of the Fifth Amendment.

2.    Johnson is licensed to carry a firearm in New York.  Johnson Declaration ¶ 3.

    **RESPONSE:**  Undisputed..

3.    Johnson regularly visits and in the future plans to continue to visit several parks, including Bowman Lake State Park, which allows hunting.  Johnson Declaration ¶ 3.

    **RESPONSE:**  Undisputed.

4.    Johnson fishes frequently at Mercer Park.  Exhibit 1, Deposition of Johnson at 124:2-5.

**RESPONSE:**  Undisputed.

5.      Johnson wishes to carry his firearm at restaurants that serve alcohol.  Deposition of Johnson at 127, 183 (Buffalo Wild Wings); Johnson Declaration ¶ 11.

**RESPONSE:** Undisputed.

6.      Johnson does not consume alcohol while carrying his firearm.  Deposition of Johnson at 127:19-22.

**RESPONSE:** Undisputed.

7.      Johnson wishes to carry his firearm in the movie theater.  Deposition of Johnson at 132, 139.

**RESPONSE:**  Undisputed.

8.      Johnson wishes to carry his firearm in zoos, specifically the Rosamond Giffard Zoo.  Deposition of Johnson at 104; Johnson Declaration ¶ 17.

**RESPONSE:**  Undisputed.

9.      Johnson wishes to carry his firearm on private property not open to the public.  Deposition of Johnson at 137.

**RESPONSE:**  Undisputed.

10.      Johnson visits Mercer Park at least once a month and Bowman Lake State Park at least once a quarter.  Exhibit 4, Supplemental Declaration of Johnson ¶ 7.

**RESPONSE:**  Undisputed.

11.      Johnson visits the movie theater at least once a quarter and intends to see Heart of the Beast in the theater, which will be released in September 2026.  Exhibit 4, Supplemental Declaration of Johnson ¶ 9.

**RESPONSE:**  Undisputed.

12.    Johnson eats at restaurants that serve alcohol, usually at least once a week, including LongHorn Steakhouse, Texas Roadhouse, Outback Steakhouse, and Ruby Tuesday.  Exhibit 4, Supplemental Declaration of Johnson ¶ 10.

**RESPONSE:**  Undisputed.

13.    Johnson plans to continue to visit Rosamond Gifford Zoo in July 2026 and again in September 2026, and then once about every two months thereafter.  Exhibit 4, Supplemental Declaration of Johnson ¶ 11.

**RESPONSE:**  Undisputed.

14.    Johnson "routinely carr[ies] [his] firearm when out in public," and he regularly shops at various locations in Onondaga County, such as "gas stations, grocery stores, home improvement stores, and big box stores."  Exhibit 4, Supplemental Declaration of Johnson ¶ 12.

**RESPONSE:**  Undisputed.

15.    Johnson purchases gasoline from gas stations about once per week, usually at Byrne Daily in Syracuse, New York.  Johnson shops for groceries at Topps in Baldwinsville about once per week.

**RESPONSE:**  Undisputed.

16.    Plaintiff Alfred Terrille is an adult male citizen of New York, a citizen of the United States, a law-abiding person, and has no disqualification under state or federal law which would prohibit him from possession a firearm.  Declaration of Alfred Terrille ("Terrille Declaration") ¶¶ 1-33. ECF No. 1-10.

**RESPONSE:**  Superintendent James does not dispute that Plaintiff Terrille is an adult male citizen of New York and the United States.  Superintendent James disputes that Plaintiff Terrille is a law-abiding citizen. Plaintiff Terrille invoked the Fifth Amendment 19 times in a four-hour

deposition, including on basic questions like what guns he owns, where he carries them, and when he has ever carried them outside his house.  See Terrille Tr. 42:7-43:13.  Plaintiff Terrille refused to answer questions about a wide variety of illegal conduct, including whether he owns an assault weapon, id. 42:14-17; whether and why he takes his weapon to various sensitive locations, see id. 59:8-21 61:20-62:4, 62:23-63:6, 65:9-15, 80:3-11; whether the presence of his guns caused discomfort to children and families, see id. 60:17-24; and whether he carries weapons into locations (including homes) where the owner prohibits them, id. 84:14-85:19, 94:24-95:10. The Superintendent objects to the assertion that Plaintiff Terrille has no disqualification under state or federal law as a legal conclusion to which no response is required. See Checksfield v. IRS, No. 21 Civ. 1180, 2024 WL 21549, at *2 (N.D.N.Y. Jan. 2, 2024) ("impermissible legal arguments" are not proper under Local Rule 56.1).  To the extent that a response is deemed required, the Superintendent disputes the assertion based on Plaintiff Terrille's repeated invocation of the Fifth Amendment.

17.     Plaintiff Alfred Terrille possesses an unrestricted New York carry permit, which he has held since 1994.  Terrille Declaration ¶ 3.

**RESPONSE:**  Undisputed.

18.     Terrille often visits Thacher State Park.  Terrille Declaration ¶ 8; Exhibit 6, Response to State Defendants' First Set of Interrogatories no. 3; Exhibit 2; Deposition of Terrille at 62.

**RESPONSE:**  Undisputed.

19.     Terrille also visits Saratoga Spa State Park and the Crossings of Colonie.  Exhibit 6, Response to State Defendants' First Set of Interrogatories No. 3; Deposition of Terrille at 61.

**RESPONSE:**  Undisputed.

20.     Terrille intends to continue to visit these parks routinely, including Saratoga Spa State Park, where intends to visit this week and every week thereafter.  Exhibit 5, Supplemental Declaration of Terrille at ¶ 8.

**RESPONSE:**  Undisputed.

21.     Terrille regularly visits Town of Colonie Park and visited on June 30, 2026.  He intends to visit this park "almost every day" and intends to "keep visiting this park almost every day."  Exhibit 5, Supplemental Declaration of Terrille ¶ 9.

**RESPONSE:**  Undisputed.

22.     Terrille wishes and intends to carry his firearm at restaurants that serve alcohol, but for the challenged laws.   Deposition of Terrille at 85-86 (DeMarco's); Terrille Declaration ¶ 19 (Applebee's).

**RESPONSE:**  Undisputed.

23.     Terrille does not consume alcohol.  Deposition of Terrille at 86:13-17.

**RESPONSE:**  Undisputed.

24.     Terrille intends to continue to eat at restaurants that serve alcohol, including Buffalo Wild Wings about twice per year, and intends to do so again in the next six months.  Exhibit 5, Supplemental Declaration of Terrille ¶ 10.

**RESPONSE:**  Undisputed.

25.     Terrille intends to eat at Demarcos in August and intends to eat at Bentleys once a year on his birthday in September.  Exhibit 5, Supplemental Declaration of Terrille ¶ 15.

**RESPONSE:**  Undisputed.

26.    Terrille visits Stewarts in Latham and Cumberland Farms in Cohoes approximately every day for coffee, and he fills up his vehicle with gasoline at those places.  Exhibit 5, Supplemental Declaration of Terrille ¶ 12.

**RESPONSE:**  Undisputed.

27.    Terrille shops at Walmart in Clifton Park about once per week.  Exhibit 5, Supplemental Declaration of Terrille ¶ 11.

**RESPONSE:**  Undisputed.

28.    Terrille intends to carry his firearm at theaters.  Deposition of Terrille at 80 (Regal Movie Theater); Terrille Declaration ¶ 7.

**RESPONSE:**  Undisputed.

29.    Terrille intends to bring his firearm with him to the airport in his checked baggage. Deposition of Terrille at 97.; Terrille Declaration ¶¶ 9, 11; Exhibit 5, Supplemental Declaration of Terrille ¶¶ 14, 15.

**RESPONSE:**  Undisputed.

30.    Because of the uncertainty of the injunction as to airports, Terrille never took his trip to Tennessee.  Deposition of Terrille at 97:3-16; Exhibit 5, Supplemental Declaration of Terrille ¶ 13.

**RESPONSE:**  Undisputed.

31.    Terrille intends to "bring[] a firearm in checked luggage in compliance with T.S.A. regulations . . . ."  Deposition at 98:15-20; Exhibit 5, Supplemental Declaration of Terrille ¶ 15.

**RESPONSE:**  Undisputed.

32.    Terrille has a recently planned trip in the coming 90 days to fly to Nashville, Tennessee and intends to check his firearm in his luggage, but for the challenged laws, and he intends to do so again within 180 days.  Exhibit 5, Terrille Supplemental Declaration ¶ 15.

**RESPONSE:** Undisputed.

33.    Ivan Antonyuk is an adult male citizen of New York, a citizen of the United States, a law-abiding person, and has no disqualification under state or federal law which would prohibit him from possessing a firearm.  Declaration of Ivan Antonyuk ("Antonyuk Declaration") ¶¶ 1, 2, 4. ECF No. 1-8.

**RESPONSE:** Undisputed.

34.    Antonyuk possesses an unrestricted New York carry permit.  Antonyuk Declaration ¶ 4.

**RESPONSE:** Undisputed.

35.    Antonyuk intends to carry his firearm at a restaurant that serves alcohol.  Exhibit 3, Deposition of Antnoyuk at 77-78, 80-81 (LongHorn Steakhouse).

**RESPONSE:** Undisputed.

36.    Antonyuk intends to carry his firearm when he visits movies theaters.  Deposition of Antonyuk at 102-03.

**RESPONSE:** Undisputed.


Pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Rule 56.1(a), the Superintendent submits the following list of material facts to with he contends no genuine issue exists:

1.    In response to the <u>Bruen</u> decision and the May 14, 2022 racially-motivated mass shooting at a Tops Supermarket in Buffalo, the New York Legislature adopted the Concealed Carry Improvement Act ("CCIA") in July 2022, with the twin goals of "protect[ing] individuals' Second Amendment rights as determined by the Supreme Court" and "preventing death and injury by

firearms."   Sponsor's Memo, N.Y. State S., S.B. S51001 (2022), https://www.nysenate.gov/legislation/bills/2021/S51001.

2.      New York is and remains one of the safest states America, with the fifth-lowest firearm mortality rate of any state in the Union.  See CDC National Center for Health Statistics, Firearm Mortality, available at https://www.cdc.gov/nchs/state-stats/deaths/firearms.html (reflecting 2024 data).[1]

3.      Its firearm death rate of 4.4 per 100,000 is a fraction of the rate in states with laxer gun laws (13.9 in Texas, 19.8 in Tennessee, 22.9 in Louisiana, and 28 per 100,000 in Mississippi, the state with the highest rate).  See id.

4.      If New York's rate were to increase to match Mississippi's, the result would be the loss of nearly 5,000 additional lives per year.  See id.

5.      New York's sensitive location laws play an important role in saving lives: although the science of studying the efficacy of these laws is in its infancy, Dr. Reeping notes that "multiple studies across distinct contexts find effects consistent with neutral or protective outcomes, and none provide empirical evidence that gun-free zones increase the likelihood of violence."  Reeping Decl. ¶ 11; see also id. ¶¶ 42-43 (discussing limitations of existing research).

6.      Firearm prohibitions in alcohol-serving establishments are associated with lower rates of nearby shootings. Id. ¶ 41.

7.      Plaintiff Johnson invoked the Fifth Amendment 27 times in his three-and-a-half hour deposition, including regarding what long guns he owns, Johnson Tr. 72:16-73:2, what

---

[1] The Court may take judicial notice of the CDC's data because it is taken from a government website "whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); see Dark Storm Indus., LLC v. Cuomo, 471 F. Supp. 3d 482, 490 n.2 (N.D.N.Y. 2020) ("any facts subject to judicial notice may be properly considered in a motion for summary judgment" (quotation omitted)).

semiautomatic rifles he owns, id. 73:3-8; whether he owns a machine gun, ghost gun, or uses a "Glock switch" for fully automatic fire, id. 74:10-75:15; whether he carries his gun to work in violation of company policy, id. 76:16-23; whether he carries his gun in sensitive locations other than schools, courthouses, and government buildings, id. 84:13-85:4; whether he carries guns into various of the sensitive locations at issue in this case, id. 98:8-14, 109:18-110:5, 124:22-25, 140:7-14, 142:14-19; and whether he carries guns into others' private property (including their homes) without permission, even knowing that the gun is not welcome. Id. 137:9-138:13, 145:18-146:5.

8.      Plaintiff Terrille invoked the Fifth Amendment 19 times in a four-hour deposition, including on basic questions like what guns he owns, where he carries them, and when he has ever carried them outside his house. See Terrille Tr. 42:7-43:13.

9.      Plaintiff Terrille refused to answer questions about illegal conduct, including whether he owns an assault weapon, id. 42:14-17; whether and why he carries a gun to various sensitive locations, id. 59:8-21 61:20-62:4, 62:23-63:6, 65:9-15, 80:3-11; whether his guns' presence caused discomfort to children and families, id. 60:17-24; and whether he carries weapons into locations (including homes) where the owner prohibits them. Id. 84:14-85:19, 94:24-95:10.

10.     Mercer Park is in the middle of Baldwinsville, with a reservable gazebo and pavilion for public gatherings. See id.; Village of Baldwinsville, Parks and Trails, https://www.baldwinsville.gov/parks-trails/.

11.     The New York State Police does not view the state prohibition on guns in airports as nullifying 18 U.S.C. § 926A and does not enforce it in such a manner as to prevent persons who comply with the federal statute and regulatory regime from taking their gun into an airport to check it in their baggage. Deyo Decl. ¶ 3.

12. After the Second Circuit's decision in <u>Christian v. James</u>, 176 F.4th 189 (2d Cir. 2026), and the Supreme Court's decision in <u>Wolford v. Lopez</u>, 146 S.Ct. 2032 (2026), N.Y. Penal Law § 265.01-d is no longer in force by the State Police as to locations open to the public.  Deyo Decl. ¶ 2.


Dated:   Syracuse, New York             LETITIA JAMES
         July 31, 2026                  Attorney General of the State of New York
                                        <u>Attorney for the State Defendants</u>


                            By: _____
                                        Patrick Blood
                                        NDNY Bar Roll No. 519910
                                        Timothy Mulvey
                                        NDNY Bar Roll No. 510757
                                        Assistant Attorneys General
                                        300 South State Street, Suite 300
                                        Syracuse, New York 13202
                                        patrick.blood@ag.ny.gov
                                        timothy.mulvey@ag.ny.gov

                                        James M. Thompson
                                        Special Counsel
                                        NDNY Bar Roll No. 703513
                                        28 Liberty Street
                                        New York, NY 10005
                                        james.thompson@ag.ny.gov