**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

IVAN ANTONYUK,
COREY JOHNSON, and
ALFRED TERRILLE,

Plaintiffs,

v.

STEVEN G. JAMES, in his official capacity as Superintendent of the New York State Police, WILLIAM FITZPATRICK, in his official capacity as Onondaga County District Attorney, TOBIAS J. SHELLEY, in his official capacity as Sheriff of Onondaga County, MARK RUSIN, in his official capacity as Chief of Police of Syracuse, and LEE C. KINDLON, in his official capacity as District Attorney of Albany County,

Defendants.

Civil Action No. 22-986 (GTS-PJE)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CHIEF RUSIN'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

***Page***

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

I. "*ANTONYUK II*" INVITED REEXAMINATION OF THE HISTORICAL RECORD HERE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PLAINTIFF JOHNSON OBVIOUSLY HAS STANDING TO CHALLENGE THE CCIA'S "SENSITIVE LOCATIONS." . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . 2

A. The Rosamond Gifford Zoo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Ponchito's Taqueria. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. Mets Stadium and the Carousel Mall Theater. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D. "Locations Outside" Syracuse and Other Locations. . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

## Cases

*Antonyuk v. Hochul*, 639 F. Supp. 3d 232 (N.D.N.Y. 2022) .......... 9

*Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024).......... passim

*District of Columbia v. Heller*, 554 U.S. 570 (2008).......... 3

*Firearms Pol'y Coal., Inc. v. Bondi*, 805 F. Supp. 3d 721 (N.D. Tex. 2025).......... 4

*Giambalvo v. Suffolk County*, 155 F.4th 163 (2d Cir. 2025) .......... 1

*Knight v. City of New York*, 164 F.4th 173 (2d Cir. 2026) .......... 3, 8

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) .......... 3, 4

*Steffel v. Thompson*, 415 U.S. 452 (1974) .......... 6

*United States v. Ayala*, 711 F. Supp. 3d 1333 (M.D. Fla. 2024), *appeal dismissed*, No. 24-10462 (11th Cir. Aug. 22, 2025) .......... 4

*United States v. Hemani*, 146 S. Ct. 1677 (2026).......... 6

*Wolford v. Lopez*, 146 S. Ct. 2032 (2026) .......... 4, 6, 8, 9

## Statutes

N.Y. Penal Law § 265.01-e(2)(a).......... 3

N.Y. Penal Law § 265.01-e(2)(m) .......... 3

## Other Authorities

*Application of 18 U.S.C. § 930(a) to Post Offices*, 50 Op. O.L.C. __ (Aug. 12, 2026).......... 4

## ARGUMENT

### I. "*ANTONYUK II*" INVITED REEXAMINATION OF THE HISTORICAL RECORD HERE.

At the outset, Defendant Rusin asserts that "this Court is required to follow the Second Circuit's controlling precedent in *Antonyuk II*," which reversed this Court's preliminary injunction with respect to certain "sensitive locations" under the "Concealed Carry Improvement Act" ("CCIA"). Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Chief Rusin's Motion for Summary Judgment ("Rusin XMSJ") at 5, ECF #186-37; *see also Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024). In support, Defendant notes that, while "'findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial,'" another Second Circuit panel later found *Antonyuk II* to be "well-considered" and therefore "binding" on that panel. Rusin XMSJ at 5, 6 (citing *Giambalvo v. Suffolk County*, 155 F.4th 163, 177 n.4 (2d Cir. 2025)).

But *Giambalvo* is not the "preclusive" (Rusin XMSJ at 5) magic bullet that Defendant suggests. To the contrary, *Giambalvo* expressly "recognize[d] that the panel in *Antonyuk II* correctly emphasized that the parties could submit additional evidence in that case (or a future case, such as this one) regarding the history and tradition of our Nation's firearm laws that could affect its preliminary determinations with respect to the historical record for the firearms provisions at issue." *Giambalvo*, 155 F.4th at 178. And here, Plaintiffs have done just that – they have shown that some of the "territorial laws critical to the Second Circuit's analysis in fact were 'short lived' and 'did not survive … admission' to statehood, rendering them inapplicable under the Second Circuit's own telling." Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment ("MSJ") at 14, ECF #178-9 (citation omitted); *cf. Giambalvo*, 155 F.4th at 178 ("Here … the Applicants have not submitted any additional historical evidence"). Thus,

the Second Circuit's "very early" opinion (*Antonyuk*, 120 F.4th at 1048 n.126) recognized its own limitations, opening the door for revisitation here.

## II. PLAINTIFF JOHNSON OBVIOUSLY HAS STANDING TO CHALLENGE THE CCIA'S "SENSITIVE LOCATIONS."

Defendant devotes the remainder of his brief to attacking Plaintiff Johnson's *standing* to challenge the CCIA's firearm bans in 1) the Rosamond Gifford Zoo; 2) Ponchito's Taqueria; 3) Mets Stadium and the Carousel Mall Theater; 4) "locations outside" Syracuse; and 5) other "vague and unidentified locations." Rusin XMSJ at 8-16. Specifically, Defendant claims Plaintiff Johnson suffers no "injury in fact" with respect to any of these locations.[1] *See id.* But as Plaintiffs already explained, "Plaintiffs' standing to challenge the CCIA's carry restrictions is … well-vetted," and both this Court *and* the Second Circuit proceeded to the merits on each of the "sensitive locations" Defendant now disputes. MSJ at 5; *see id.* at 5-6. None of Defendant's new arguments to the contrary is availing.

### A. The Rosamond Gifford Zoo.

Defendant first appears to make a redressability argument, arguing for the first time that the zoo Plaintiff Johnson wishes to visit – Rosamond Gifford Zoo – is located *within* a City park, which he claims Plaintiffs "reference" but do not "appear to challenge" separately. Rusin XMSJ at 9. Thus, because the Second Circuit upheld the "CCIA's restriction of firearms within a city

[1] Defendant emphasizes that Plaintiff Johnson does not reside *within* the City of Syracuse, but never explains why that matters. *See* Rusin XMSJ at 6 n.2, 7; *see also* ECF #186-6 (publishing Plaintiff Johnson's family member's name, and personal tax records, all entirely irrelevant to this case); ECF #186-3 (publicizing the handguns Plaintiff Johnson owns). Standing does not contain a residency requirement, nor does it require the government to publish gun owners' addresses or the make, model, and number of firearms they own on the public docket. Yet as Defendant would have it, challengers to New York's unconstitutional gun control regime must now risk *home invasion* and *burglary* for daring to sue. *See, e.g.*, Christie Casciano, *Onondaga County Sheriff Investigate Firearms Stolen from Syracuse Police Officers' House*, WSYR (Aug. 20, 2023), https://tinyurl.com/2rhfw925.

park," Defendant claims that Plaintiff Johnson lacks standing with respect to the CCIA's firearm double-ban in a zoo-in-a-park. *Id.* But Defendant's claim that "Plaintiffs do not … challenge … urban parks" (Rusin XMSJ at 9) is belied by the papers. Plaintiffs challenged the CCIA's parks ban "*both facially and also as applied*" and, because of the "'line-drawing issue'" presented by the Second Circuit's "urban-rural spectrum," Plaintiffs now argue that "the parks ban must be invalidated in its entirety" – *i.e.*, facially. MSJ at 9, 11, 13. Defendant's parks argument falls flat.[2]

In a similar vein, Defendant claims the presence of "both County and School facilities" within the zoo renders the zoo itself *double-triple-quadruple unchallengeable* – a school event, within a County building, at a zoo, within a City park. Rusin XMSJ at 8, 10 (appearing to argue that Plaintiffs must have challenged N.Y. Penal Law §§ 265.01-e(2)(a) (government buildings) and 265.01-e(2)(m) (schools) in order to challenge the CCIA's ban on guns in zoos). In support, Defendant claims that "[t]he Supreme Court *held* that a state may lawfully prohibit firearms at 'schools and government buildings.'" Rusin XMSJ at 9-10 (emphasis added) (citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). But *Heller* "*held*" no such thing, and this Court already called a similar argument "just disingenuous." Transcript of Oct. 25, 2022 Motion Hearing at 60:15, ECF #72. To the contrary, *Heller*'s dicta expressly welcomed challenges even to its assumed "exceptions" (554 U.S. at 635), and *Bruen* subsequently undermined the notion that schools historically were categorical "sensitive" places. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 61 (2022) (detailing Reconstruction-era accounts of teachers "'go[ing] armed to school'"). Moreover, federal courts and the U.S. Department of Justice all agree that *not all* government buildings are "sensitive." *See United States v. Ayala*, 711 F. Supp. 3d 1333 (M.D.

[2] Of course, even if Plaintiffs had not challenged some separate restriction applying to the Rosamond Gifford Zoo, "a plaintiff must show that his requested relief would provide meaningful redress for *an* injury, not that it would relieve him of *every* injury," *Knight v. City of New York*, 164 F.4th 173, 179 (2d Cir. 2026), and Plaintiffs challenge the CCIA *as to zoos*.

Fla. 2024), *appeal dismissed*, No. 24-10462 (11th Cir. Aug. 22, 2025) (post offices); *Firearms Pol'y Coal., Inc. v. Bondi*, 805 F. Supp. 3d 721 (N.D. Tex. 2025) (same); *Application of 18 U.S.C. § 930(a) to Post Offices*, 50 Op. O.L.C. __ (Aug. 12, 2026) (same).[3] Defendant cannot invoke "County and School facilities" as some magic talisman to avoid the merits of the zoo prohibition.[4]

And on the merits, there is *no* historical tradition supporting the CCIA's firearm ban in zoos. As Plaintiffs explained, banning firearms wherever there are children, "'educational … opportunit[ies],'" or "'dense[] crowd[s]'" would "justify banning the Second Amendment in nearly all public places." MSJ at 21. But that is precisely what *Bruen* rejected. *See* 597 U.S. at 31 ("there is no historical basis for New York to effectively declare … a 'sensitive place' simply because it is crowded"); *see also Wolford v. Lopez*, 146 S. Ct. 2032, 2041 (2026) (invalidating carry bans in "many places that people routinely visit in the course of their daily routines"). However, to the extent this Court determines itself to be bound by any portion of the Second Circuit's preliminary conclusion as to zoos, Plaintiffs respectfully preserve the issue for appeal.

**B. Ponchito's Taqueria.**

Defendant notes that Plaintiff Johnson "identified Ponchito's Taqueria as an alcohol-serving restaurant within the City," but claims that "Plaintiff Johnson did not assert that he intends to visit Ponchito's on a specific date or even in the near future." Rusin XMSJ at 11. Thus,

[3] https://www.justice.gov/olc/media/1457751/dl.

[4] In any case, this Court could craft as-applied relief reaching *zoos* – what Plaintiffs challenged – and not certain government buildings and facilities *within* zoos – which Plaintiffs did not challenge. Indeed, such places (like administrative offices) likely are not open to the public in the first place. To foreclose as-applied relief as to a broad category of location simply because of some transient use of a portion of that location as a supposedly "sensitive" place would be akin to banning firearms in the entirety of Adirondack Park's six million acres because of a visiting school field trip. *Cf.* Defendant Lee C. Kindlon's Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment at 3, ECF #182-3 (suggesting that, because Thacher State Park contains a "hotel," New York can ban public carry at the Park's "campsites").

Defendant dismisses Plaintiff Johnson's allegations as "'someday' intentions." *Id.* But Defendant is plain wrong on the facts and does not defend the law.

Indeed, during his deposition, Plaintiff Johnson specifically stated that he visits Ponchito's "at least two to three times a week." Deposition of Corey Johnson at 185:4-5, ECF #178-2 (Ponchito's misspelled as Panchito's); *see also* Corey Johnson's Responses to the State Defendants' First Set of Interrogatories at 4, ECF #186-3 ("Plaintiff also eats at a number of restaurants, including Panchito's Taqueria in Syracuse, NY," and he "intends to continue to visit," demonstrating an ongoing course of activity). Moreover, Plaintiff Johnson explained that he was only "recently" diagnosed with diabetes, and so he no longer drinks alcohol with any regularity. *See* ECF # 186-1, Deposition of Corey Johnson at 127-128. Thus, with respect to Ponchito's, he explained: "I don't get drinks in there anymore, so I don't actually look." *Id.* at 127:15-16. That means Johnson *recently* has been going to Ponchito's and *recently* stopped drinking while eating there. Defendant ignores these facts entirely.

In other words, Plaintiff Johnson has demonstrated regularity, recency, an ongoing course of conduct, *and* concrete future plans to continue frequenting Ponchito's in Syracuse. That is far more than sufficient to establish standing, and he need not allege the precise date and time of his next visit. The Second Circuit said it best: "it is simply not all that hard to allege a plausible 'intention to engage in a course of conduct arguably affected with a constitutional interest'.... The Supreme Court has repeatedly found plausible allegations of injury based on relatively vague future intentions. … *A gun owner who alleges a prior visit to a venue, a reason or wish to visit again, and either a plan to do so (thereby subjecting himself to arrest) or a decision to forgo doing so for fear of prosecution will likely have adequately pled standing to seek a pre-enforcement injunction*." *Antonyuk*, 120 F.4th at 1034-35 (emphasis added). For all his insistence that

*Antonyuk* is "binding" (Rusin XMSJ at 4), Defendant gives the Second Circuit's standing analysis on this topic short shrift.

Defendant likewise fails to engage with Plaintiffs' arguments on the merits. *See* Rusin XMSJ at 11 (claiming "this Court must find in accordance with *Antonyuk II*" without further explanation or argument). First, the Second Circuit specifically noted "no evidence in the record before us that the territorial laws" used to uphold the CCIA's restaurant ban "were short-lived, did not survive admission to the Union, or were later held unconstitutional." *Antonyuk*, 120 F.4th at 1029. Plaintiffs present precisely that sort of evidence here, which Defendant does not rebut. *See* MSJ at 14-16. Second, Plaintiffs also explained how the Supreme Court's recent *Wolford* and *Hemani* decisions further undermine the Second Circuit's preliminary analysis. *See id.* at 16-18. *Wolford* invalidated carry bans in all manner of enclosed, "quintessentially 'crowded'" public places (MSJ at 17) that "people routinely visit in the course of their daily routines." *Wolford*, 146 S. Ct. at 2041. Likewise, *Hemani* undermined the notion that sober patrons at a restaurant (like Plaintiff Johnson) can be disarmed, when not even a *regular user of drugs* could be disarmed when not "presently intoxicated." *United States v. Hemani*, 146 S. Ct. 1677, 1693 (2026); *see* MSJ at 17-18. Again, Defendant has no response to these arguments.

**C. Mets Stadium and the Carousel Mall Theater.**

Defendant objects to Plaintiff Johnson's standing as to certain event spaces, on the theory that he has not "asserted that he visited any stadiums or attended any baseball games *with* his concealed firearm...." Rusin XMSJ at 12 (emphasis added). But it is black-letter law that a plaintiff need not "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). It is enough that Plaintiff Johnson "intends to attend baseball games … and

view movies," as Defendant concedes (Rusin XMSJ at 12), and that Johnson intends to do so *while* armed. *See* Supplemental Declaration of Corey Johnson ¶5, ECF #178-5 ("Throughout all of the locations challenged in this litigation, I intend to carry my firearm with me, and but for the Concealed Carry Improvement Act, which makes it a felony for me to carry in these places, I would do so."). And in any case, Plaintiffs do not challenge the CCIA with respect to *stadiums*.

As for theaters, Defendant notes that this Court "previously held that Plaintiff Johnson lacked standing," which Defendant claims "Plaintiff Johnson has not rectified" here. Rusin XMSJ at 12, 13. Not so. Plaintiff Johnson identified the theaters he "attend[s]" with specificity, including "Movie Plex and Camillus. Carousel Mall. I've been to the Auburn Movie Plex, the drive-in theater...." Deposition of Corey Johnson at 131:22-24. Defendant admits as much, but claims "Plaintiff Johnson fails to assert that he intends to visit … the Carousel Mall Theater on a specific date or even in the near future." Rusin XMSJ at 13. But Defendant acknowledges that Plaintiff Johnson intends to see "'Heart of the Beast' in September 2026," objecting only that the location of such screening is "unidentified."[5] *Id.* at 13 n.8. Of course, Plaintiff Johnson already explained: "I figured you guys can see these *local theaters* I would normally go to." Deposition of Corey Johnson at 131:18-19. And Defendant knows "the movie theater in the Carousel Mall" is one of them. *Id.* at 174:21-22. If Plaintiff Johnson "go[es] to the ['local'] movie theater at least once a quarter" (Supplemental Declaration of Corey Johnson ¶9), then Plaintiff Johnson certainly has standing to challenge the CCIA's gun ban there. Again, "a gun owner who alleges a prior visit to a venue, a reason or wish to visit again, and … a plan to do so … will likely have adequately pled standing to seek a pre-enforcement injunction." *Antonyuk*, 120 F.4th at 1034-35. Plaintiff Johnson

---

[5] "Heart of the Beast" will not be released until September 25, 2026. *See* https://www.imdb.com/title/tt7526136/; https://www.heartofthebeastmovie.com/.

has demonstrated the requisite prior visit, desire to visit again, and plan to do so, and so he has standing here.

Defendant's demurrer about private firearm *policies* is likewise unavailing. *See* Rusin XMSJ at 13. First, Defendant's materials demonstrate that the Carousel Mall and theater policies are discretionary and subject to change. *See* ECF #186-9 at 5 (emphasis added) ("Persons violating the Behavior Code *may be* directed to leave Destiny USA...."); ECF #186-10 ("our admission policies may be modified periodically...."). Nor is there any evidence in the record that the theater announces its website firearm ban when one visits the premises, such as through signage, or ever enforces it against anyone. Rather, as Plaintiff Johnson explained, "the places I go to don't have no carry signs or have ever made any instance known to me that they would not want me to carry a firearm there." Deposition of Corey Johnson at 96:18-21. Second, and relatedly, private policies do not justify the CCIA, which makes it a *crime* to carry in these locations. As *Wolford* explained, it is enough that the challenged law "burdens those wishing to exercise their Second Amendment right," even if on private property. *Wolford*, 146 S. Ct. at 2047; *see also id.* at 2043 (asking whether a "law place[s] any restrictions on either the 'keep[ing]' … or the 'bear[ing]' … of arms"). Again, Plaintiffs challenge the CCIA's *criminal* penalties as to certain "sensitive locations." So long as the request relief can "provide meaningful redress for *an* injury," it need "not … relieve … *every* injury" for Plaintiffs to have standing. *Knight*, 164 F.4th at 179.

Finally, Defendant once again fails to respond on the merits, simply invoking the Second Circuit's *Antonyuk* decision. *See* Rusin XMSJ at 13. Thus, Defendant does not engage with Plaintiffs' arguments that 1) *Wolford* rejected carry bans in "crowded" places (MSJ at 19); 2) *Rahimi*'s historical going armed laws required *conduct with* weapons, not mere possession (*id.* at 19-20); and 3) the Second Circuit's territorial laws were in fact "short-lived" (*id.* at 20). However,

should this Court determine itself to be bound by any portion of the Second Circuit's preliminary conclusion as to theaters, Plaintiffs respectfully preserve the issue for appeal.

**D. "Locations Outside" Syracuse and Other Locations.**

Finally, Defendant objects as to various other locations outside of Syracuse. Rusin XMSJ at 14-16 (citing a dairy, convenience store, Speedway gas station, and Wegmans grocery store). But these are all private properties held open to the public where firearms cannot be banned under *Wolford*. *See* MSJ at 23-24. Thus, if at least one Plaintiff has standing to challenge any such location with respect to any Defendant, Plaintiffs are entitled to judgment on this portion of the CCIA. *See Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 293, 294 (N.D.N.Y. 2022) (this Court finding Plaintiff Johnson has standing as to "'gas stations, grocery stores, home improvement stores, [and] big box stores'" against, *inter alia*, Defendant Superintendent and Defendant Rusin's predecessor, "because they are tasked with enforcing the CCIA" in those locations), *aff'd*, 120 F.4th at 1042.

**CONCLUSION**

Defendant raises no "triable issue of fact" (Rusin XMSJ at 16) warranting denial of Plaintiffs' Motion here. To the contrary, the material facts are not in dispute (*see* Rusin's Response to Plaintiffs' Statement of Material Facts, ECF #186-36 and Plaintiffs' Response to Rusin's Statement of Material Facts), and questions as to Plaintiffs' standing are only *legal* in nature. This case is ripe for decision on summary judgment. For the foregoing reasons, this Court should deny Defendant Rusin's Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

Dated: August 20, 2026

<u>*/s/ Oliver M. Krawczyk*</u>
Oliver M. Krawczyk* (PA # 334423)

Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
T: (717) 525-5822
F: (540) 773-2414
E: oliver@amblerlawoffices.com
NDNY Bar Roll # 707836
**Admitted Pro Hac Vice*

Robert J. Olson (VA # 82488)
William J. Olson, PC
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
T: (703) 356-5070
F: (703) 356-5085
E: rob@wjopc.com
NDNY Bar Roll # 703779
*Counsel for Plaintiffs*