**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IVAN ANTONYUK,<br>COREY JOHNSON, and<br>ALFRED TERRILLE,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN G. JAMES, in his official capacity as Superintendent of the New York State Police, WILLIAM FITZPATRICK, in his official capacity as Onondaga County District Attorney, TOBIAS J. SHELLEY, in his official capacity as Sheriff of Onondaga County, MARK RUSIN, in his official capacity as Chief of Police of Syracuse, and LEE C. KINDLON, in his official capacity as District Attorney of Albany County,<br><br>Defendants. | Civil Action No. 22-986 (GTS-PJE) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT KINDLON'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

***Page***

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

I. DEFENDANT FAILS TO REBUT PLAINTIFFS' ARGUMENTS. . . . . . . . . . . . 1

A. Parks…. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B. Airports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

C. Movie Theaters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

D. Establishments Serving Alcohol and Restricted Locations. . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

## Cases

*Antonyuk v. Hochul*, 639 F. Supp. 3d 232 (N.D.N.Y.), *aff'd sub nom. Antonyuk v. James*, 120 F.4th 941(2d Cir. 2024) .......... 1

*Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) .......... passim

*Burrell v. Uhler*, 2026 U.S. Dist. LEXIS 31923 (N.D.N.Y. Feb. 17, 2026) .......... 1

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .......... 3

*Michigan v. DeFillippo*, 443 U.S. 31 (1979) .......... 5

*N.Y. State Rifle & Pistol Assn v. Bruen*, 597 U.S. 1 (2022) .......... 6, 7, 8, 9

*United States v. Rahimi*, 602 U.S. 680 (2024) .......... 8

*Wolford v. Lopez*, 146 S. Ct. 2032 (2026) .......... 6, 7

## Statutes

N.Y. Penal Law § 265.01-e(3)(i) .......... 3

N.Y. Penal Law § 265.03(3) .......... 3

N.Y. Penal Law § 400.00(2)(f) .......... 3

## Rules

L.R. 56.1 .......... 1

Local Rule 7.1(a)(3) .......... 1

## ARGUMENT

### I. DEFENDANT FAILS TO REBUT PLAINTIFFS' ARGUMENTS.[1]

#### A. Parks.

At the outset, Defendant notes that Saratoga Spa State Park is not located within his jurisdiction of Albany County, and so "the only park at issue against Defendant Kindlon is Thacher State Park...." Defendant Lee C. Kindlon's Memorandum of Law in Support of Motion for Summary and in Opposition to Plaintiffs' Motion for Summary Judgment ("Kindlon XMSJ") at 3, ECF #182-3. Even so, Plaintiffs have standing against the State as to Saratoga Spa State Park. *See Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 268 (N.D.N.Y.), *aff'd sub nom. Antonyuk v. James*, 120 F.4th 941, 1015 n.76 (2d Cir. 2024). And, with respect to Thacher State Park, Defendant concedes that, "although Park officials have authority, Albany County police would likely respond" to enforce the Concealed Carry Improvement Act ("CCIA") against Plaintiffs. Kindlon XMSJ at 3. Accordingly, Plaintiff Terrille unquestionably has standing to challenge the CCIA's carry ban in Thacher State Park.

Defendant likewise concedes that the Second Circuit "found a divide between urban and rural parks" under the Second Amendment – one that the court admittedly "did not choose to

[1] Defendant failed to respond to Plaintiffs' Statement of Material Facts, so this Court should deem them admitted. Where "'a party has failed to respond to the movant's statement of material facts as required by Local Rule 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record....'" *Burrell v. Uhler*, 2026 U.S. Dist. LEXIS 31923, at *10 (N.D.N.Y. Feb. 17, 2026); *see also* L.R. 56.1 (formerly L.R. 7.1(a)(3)) ("The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."). Here, despite propounding his own Statement of Material Facts to Plaintiffs (ECF #182-2), Defendant Kindlon has not filed a response to Plaintiffs' Statement of Material Facts (ECF #178-8). *See generally* ECF #182. Accordingly, because each of Plaintiff Terrille's statements was "supported by evidence in the record" (*Burrell*, 2026 U.S. Dist. LEXIS 31923, at *10), Plaintiffs request that this Court deem them admitted for purposes of summary judgment against Kindlon. *See* Plaintiffs' Statement of Material Facts in Support of Their Motion for Summary Judgment ¶¶16-32, ECF #178-8.

resolve...." Kindlon XMSJ at 3, 4. And Defendant even concedes that Thacher State Park "contain[s] a majority of the geographic features referenced in the description of the Adirondacks" (*id.* at 3) – a park that is as rural as it gets.

But that is where the parties' agreement ends. Defendant posits that, because Thacher State Park supposedly also contains *some* "features of urban parks," then *it is* an "urban park" where public carry can be banned under the Second Circuit's preliminary decision. Kindlon XMSJ at 3. Specifically, Defendant juxtaposes the presence of "hotels" within the Park with its rural "campsites." *Id.* He also points to a "park center" opened for educational purposes and vaguely references the Park's "history" with tourism. *Id.* at 4. These features, Defendant claims, mean that Thacher State Park now contains "crowded areas and public forums," justifying a complete ban on public carry *everywhere* within its borders. *Id.*

Defendant's argument demonstrates just how unworkable the Second Circuit's "urban-rural distinction" truly is in practice, warranting facial invalidation of the CCIA's parks ban here. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment ("MSJ") at 10, ECF #178-9. As the Second Circuit observed, "rural parks" often contain "'vast forests, rolling farmlands, towns and villages, mountains and valleys, lakes, ponds and free-flowing rivers'" (*Antonyuk*, 120 F.4th at 1025) – features that typify Thacher State Park, and yet Defendant claims it to be more urban than not. Yet even under the Second Circuit's decision, if "rural parks" can contain entire "*towns and villages*" and still remain "rural," it does not follow that a hotel and some buildings magically transform Thacher into a carry-free zone.

Finally, Defendant makes the stunning (and unsupported) claim that "Terrille's Second Amendment rights are not encumbered by the C.C.I.A. ban on concealed carriage in parks," on the theory that Terrille "has the ability to openly carry," apparently while *hunting*. Kindlon XMSJ at

5 ("pursuant to the park's regulations"). Indeed, because New York law does not allow the open carry of *handguns* (N.Y. Penal Law §§ 400.00(2)(f), 265.03(3)), the only conceivable option to openly carry would be "while lawfully engaged in taking of wildlife … pursuant to a hunting permit or license...." *Id.* § 265.01-e(3)(i). But that would mean Plaintiff Terrille would have to seek and obtain a *hunting license*, which is only good in Thacher State Park "beginning September 15th" and valid only through "February 28."[2] And then he would have to lie about what he is doing – claiming to be hunting when in reality simply spending time with his grandkids (Declaration of Alfred Terrille ¶8, ECF #1-10). Meanwhile, it is apparently of no moment to Defendant that Plaintiff Terrille would be entirely prohibited from carrying his firearm the other six-and-a-half months of the year (March 1 through September 14), during which time there is *no hunting* in the Park. Of course, open carry while hunting also would limit what gun Terrille could carry to "[m]uzzle loader or shotgun only," because "[r]ifles of any caliber or handgun of any type is strictly prohibited" in the Park. *Id.* And finally, Plaintiff Terrille would be banned from entering "within 500 feet of any building, road, playground, or parking lot, and all trails" (*id.*) – *i.e.*, the very same places that he testified he frequents. Declaration of Alfred Terrille ¶8. All told, open carry while hunting is a cold comfort – one that not even the State Defendants offer.

Contrast Defendant's silly theory with what Plaintiff Terrille stated he actually wants to do. Rather than *lie* to obtain a hunting license with which he never intends to hunt, and then *lie* about his reason for carrying a long gun if asked,[3] Plaintiff Terrille stated that he wishes to carry his *handgun*, *concealed*, for *self-defense*, and he wishes to do so *year-round*. *See* Supplemental

[2] *Thacher State Park*, New York State, https://parks.ny.gov/visit/state-parks/thacher-state-park (last visited Aug. 18, 2026).

[3] Of course, the government does not get to decide what gun Plaintiff Terrille can carry, any more than it can choose what words he can speak. It "is no answer to say … that it is permissible to ban the possession of" one type of firearm "so long as the possession of other firearms … is allowed." *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008).

Declaration of Alfred Terrille ¶¶5, 7, ECF #182-4; *see also* Declaration of Alfred Terrille ¶4, ECF #1-10 ("I routinely carry my handgun concealed"), ¶8 ("I also routinely take my grandkids to Thatcher [sic] State Park, in Albany County, where we utilize the hiking trails, picnic areas, and playground for children. I intend to carry my firearm when my family visits the Park in the future, something that occurs and will continue to occur on at least a monthly basis...."); Alfred Terrille's Responses to the State Defendants' First Set of Interrogatories at 2, ECF #178-7 ("Plaintiff states that he possesses at least one handgun that he would be able to and would carry in the places he challenged in this lawsuit."). Open carry of a shotgun in *limited places* and at *limited times* does nothing to cure the constitutional violation at issue here.

**B. Airports.**

Next, despite effectively *admitting* all of Plaintiff Terrille's facts regarding air travel with a checked firearm (Plaintiffs' Statement of Material Facts ¶¶29-32), Defendant nonetheless claims "Terrille's challenge to the airport prohibition fails due to a lack of standing." Kindlon XMSJ at 5. But interestingly, Defendant does not argue Plaintiff Terrille faces *no* harm from the CCIA's airport ban – quite the opposite. In fact, Defendant makes a federal preemption argument, asserting that Congress's regulation of aviation and the U.S. Constitution's Supremacy Clause deprive New York of the ability to regulate "concealed carriage[4] in airports...." *Id.* at 6, 7. In other words, Defendant agrees that the CCIA's airport provision is *unconstitutional*. But rather than *agree* that summary judgment should be entered in Plaintiffs' favor, Defendant asserts that, because *he* is of the opinion that the airport "provision is void," there is no longer a credible threat of enforcement against Plaintiff Terrille. Kindlon XMSJ at 7, 9.

[4] Plaintiff Terrille never stated that he wanted to *carry concealed* in an airport. Rather, he only wishes to be able to bring a firearm with him in his checked baggage, in compliance with. TSA and airline regulations, free from criminal liability under the CCIA. *See* Plaintiffs' Statement of Material Facts ¶29.

But it is difficult to see how Defendant's opinion alone can "void" a criminal statute. Kindlon XMSJ at 9. This Court only preliminarily enjoined the CCIA's airport ban – a ruling that no Defendant appealed, but which the Second Circuit undid (seemingly unwittingly) when it "vacate[d]" this Court's injunction "in all other respects" than those discussed in its opinion. *Antonyuk*, 120 F.4th at 1048. Thus, far from being *voided*, the CCIA's airport ban remains on the books, and this Court should reissue and make permanent its prior ruling here.

Defendant's agreement that the provision is unconstitutional further demonstrates the necessity of a declaratory judgment and injunction, not dismissal. Defendant is not the only law enforcement element within Albany County who can enforce the statute as written. Indeed, while he may make *charging decisions*, he does not control the New York State Police or other law enforcement officers generally, who remain free to question, detain, and arrest (or worse) violators of the airport ban. As the Supreme Court explains, "[p]olice are charged to enforce laws *until and unless they are declared unconstitutional*. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality – with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) (emphasis added); *see also Antonyuk*, 120 F.4th at 1005 ("courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund'"). This Court's declaration and injunction are necessary to guarantee an end to the airport ban's unconstitutional enforcement. Defendant's word is not good enough.

**C. Movie Theaters.**

Seeming to concede that Plaintiffs have standing to challenge the CCIA as applied to movie theaters, Defendant directs his efforts to supporting the Second Circuit's sparse historical tradition. Kindlon XMSJ at 9-10. But his arguments are unpersuasive.

First, Defendant claims that Plaintiffs rely too heavily on *Wolford* and *Bruen*'s rejection of gun bans in "crowded" places. Kindlon XMSJ at 9; *cf.* MSJ at 18-29. Defendant demurs that the Second Circuit's opinion was more specific than just crowded places, instead upholding gun bans in "'spaces wherein in [sic] people assemble for amusement, educational, or literary purposes, which fairly describes theaters.'" Kindlon XMSJ at 9 (quoting *Antonyuk*, 120 F.4th at 1038). To be sure, *Wolford* recounted Hawaii's dual bans on firearms not only at a long list of specific places, but also "on private property of another" generally. *Wolford v. Lopez*, 146 S. Ct. 2032, 2046 (2026). But the Court's rejection of the second, broader category has significant overlap with the first, more specific category. Thus, *Wolford* rejected the banning of guns in "places that people routinely visit in the course of [Americans'] daily routines," including specifically "restaurants." *Id.* at 2041. This no doubt includes many places where "people assemble for amusement," as the Second Circuit described. *See* ECF # 187-1, Defendant James' XMSJ at 27 ("Bars and locations serving alcohol would certainly constitute 'social gathering[s][']' and locations 'where persons are assembled for amusement.'"). Likewise, undermining the Second Circuit's broad approval of gun bans in "educational" locations, *Bruen* in fact undermined the notion that schools are categorical "sensitive" places. *See N.Y. State Rifle & Pistol Assn v. Bruen*, 597 U.S. 1, 61 (2022) (detailing Reconstruction-era accounts of teachers "'go[ing] armed to school'"). The point is this. Under *Bruen*, and even more so now after *Wolford*, it cannot be the case that a government may simply ban firearms in all places where "people assemble for amusement, educational, or literary

purposes," as the Second Circuit mistakenly held. And "crowded places" certainly does not cut it. At a minimum, to the extent this Court finds itself otherwise bound, Plaintiffs preserve the issue for appeal.

Second and relatedly, Defendant demurs that *Bruen*'s rejection of gun bans in "all places of public congregation" does not undermine the CCIA's ban in some "specific locations of which historical analogues for regulation exist." Kindlon XMSJ at 10. But the Second Circuit's opinion was not so specific. To the contrary, the court broadly purported to find a historical "tradition of regulating firearms in quintessentially crowded places" – anywhere involving "large groups in confined locations." *Antonyuk*, 120 F.4th at 1038, 1036. That is hardly surprising, because the court cited as analogues laws which were similarly sweeping in their language – banning guns at "any … public assembly," any "social gathering," and "any places where persons are assembled for amusement," etc. *Id.* at 1036. It thus cannot be, as Defendant claims, that the Second Circuit's broad language – and its broad analogues – somehow justify narrow and "specific location[]" bans (Kindlon XMSJ at 10), such as movie theaters, independently of being a "quintessentially crowded place."

*Wolford* provides the nail in the coffin for the Second Circuit's sweeping justification of gun bans in all crowded places. The Second Circuit referenced "a 1786 Virginia law" banning guns in "fair or markets" and relied on the 1382 Statute of Northampton and 1792 North Carolina's bans on guns in "fairs or markets." *Antonyuk*, 120 F.4th at 1037. But in *Wolford*, the Court expressly rejected banning guns in "drug stores, grocery stores, 'big box' stores, home improvement stores," etc. – the modern-day equivalent of markets. *Wolford*, 146 S. Ct. at 2041; *see also id.* at 2048 (specifically giving as a hypothetical a woman frequenting "the super***market***

after work"). The Second Circuit's preliminary and incomplete analysis does not survive the Supreme Court's recent opinions.

Third, Plaintiffs explained how *United States v. Rahimi*, 602 U.S. 680 (2024) undermines the Second Circuit's use of "affray" laws as historical analogues. MSJ at 19-20. Even so, Defendant demurs that *at least* the 1792 North Carolina statute survives, because the Second Circuit found it untethered to affray. Kindlon XMSJ at 10 (citing *Antonyuk*, 120 F.4th at 1039 n.114). But it would seem the Supreme Court disagrees with that analysis. *See Bruen*, 597 U.S. at 122 (Breyer, J., dissenting) (noting that the 1792 North Carolina statute's "language was lifted from the Statute of Northampton virtually verbatim," and noting that the Court's majority "discounts these laws primarily because they … prohibited only public carriage with the intent to terrify"). Ultimately, however, regardless of whether the 1792 North Carolina law is tied to affray, it is but *one statute*, governing *one state*, and cannot by itself establish a historical tradition of anything. *See Bruen*, 597 U.S. at 65 (discounting "outliers").

Fourth, Defendant does not dispute Plaintiffs' claim that the Oklahoma and Arizona territorial statutes were not long-lasting and did not survive admission to the Union. *See* MSJ at 20. Instead, Defendant points to the remaining "Tennessee and Texas laws." Kindlon XMSJ at 10. Of course, with respect to *those* analogues, Plaintiffs pointed out that laws that covered only "5.3 percent of the population" nationwide cannot be used when *Bruen* itself discounted a law covering 6.5 percent of one state's population. MSJ at 20. Defendant objects, claiming it is apples and oranges to analogize a comparison of *state* population to the *national* population. Kindlon XMSJ at 10. But aside from noting his objection, Defendant does not explain why.

Fifth and finally, with respect to the Missouri, Texas, and Tennessee court opinions cited in the Second Circuit's opinion, Plaintiffs explained that those opinions completely misunderstood

the scope of Second Amendment rights. MSJ at 21. Even so, Defendant theorizes, those cases constitute "evidence of lack of successful legal challenges," part of *Bruen*'s "analysis of whether the statute had been rejected on constitutional grounds...." Kindlon XMSJ at 10, 11. But that is bootstrapping at its worst. A court upholding a statute because it *misunderstood* the Constitution is not evidence that the statute is in fact *constitutional*.

**D. Establishments Serving Alcohol and Restricted Locations.**

Because Defendant "follows and adopts the State Defendants' arguments pertaining to these locations" (Kindlon XMSJ at 11), Plaintiffs refer the Court to their responses to those arguments filed in response to that briefing.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendant Kindlon's Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

Dated: August 20, 2026

*/s/ Oliver M. Krawczyk*
Oliver M. Krawczyk* (PA # 334423)
Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
T: (717) 525-5822
F: (540) 773-2414
E: oliver@amblerlawoffices.com
NDNY Bar Roll # 707836
**Admitted Pro Hac Vice*

Robert J. Olson (VA # 82488)
William J. Olson, PC
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
T: (703) 356-5070
F: (703) 356-5085
E: rob@wjopc.com

NDNY Bar Roll # 703779
*Counsel for Plaintiffs*