**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

IVAN ANTONYUK,
COREY JOHNSON, and
ALFRED TERRILLE,

Plaintiffs,

v.

STEVEN G. JAMES, in his official capacity as Superintendent of the New York State Police, WILLIAM FITZPATRICK, in his official capacity as Onondaga County District Attorney, TOBIAS J. SHELLEY, in his official capacity as Sheriff of Onondaga County, MARK RUSIN, in his official capacity as Chief of Police of Syracuse, and LEE C. KINDLON, in his official capacity as District Attorney of Albany County,

Defendants.

Civil Action No. 22-986 (GTS-PJE)

**PLAINTIFFS' RESPONSE TO DEFENDANT STEVEN G. JAMES' STATEMENT OF MATERIAL FACTS**

Plaintiffs Ivan Antonyuk, Corey Johnson, and Alfred Terrille, pursuant to Local Rule 56.1(b), hereby provide the following Responses to Defendant Steven G. James' Statement of Material Facts in support of his Motion for Summary Judgment.

1. In response to the Bruen decision and the May 14, 2022 racially-motivated mass shooting at a Tops Supermarket in Buffalo, the New York Legislature adopted the Concealed Carry Improvement Act ("CCIA") in July 2022, with the twin goals of "protect[ing] individuals' Second Amendment rights as determined by the Supreme Court" and "preventing death and injury by firearms." Sponsor's Memo, N.Y. State S., S.B. S51001 (2022), https://www.nysenate.gov/legislation/bills/2021/S51001.

**RESPONSE**: Admitted that the CCIA was passed in response to *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Specifically, the webpage opens with the "PURPOSE" of the bill by referencing *Bruen*, and how the "State must amend the State's laws on concealed carry permits and take other steps to address the consequences of the Supreme Court decision...." *See* https://www.nysenate.gov/legislation/bills/2021/S51001. Plaintiffs lack personal knowledge as to other motivations of legislators.

2. New York is and remains one of the safest states America [sic], with the fifth-lowest firearm mortality rate of any state in the Union. See CDC National Center for Health Statistics, Firearm Mortality, available at https://www.cdc.gov/nchs/state-stats/deaths/firearms.html (reflecting 2024 data).[1]

**RESPONSE**: Admitted that the CDC website lists New York as having the "fifth-lowest firearm mortality rate of any state in the Union." However, such information is constitutionally irrelevant under *Bruen*'s prohibition on interest balancing. *See Bruen*, 597 U.S. at 17; *see also id.* at 72 (Alito, J., concurring).

3. Its firearm death rate of 4.4 per 100,000 is a fraction of the rate in states with laxer gun laws (13.9 in Texas, 19.8 in Tennessee, 22.9 in Louisiana, and 28 per 100,000 in Mississippi, the state with the highest rate). See id.

**RESPONSE**: Admitted that the CDC website provides that information. However, such information is constitutionally irrelevant under *Bruen*'s prohibition on interest balancing. *See Bruen*, 597 U.S. at 17; *see also id.* at 72 (Alito, J., concurring).

---

* Plaintiffs restate Defendant James' footnotes.

[1] The Court may take judicial notice of the CDC's data because it is taken from a government website "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see Dark Storm Indus., LLC v. Cuomo, 471 F. Supp. 3d 482, 490 n.2 (N.D.N.Y. 2020) ("any facts subject to judicial notice may be properly considered in a motion for summary judgment" (quotation omitted)).

4. If New York's rate were to increase to match Mississippi's, the result would be the loss of nearly 5,000 additional lives per year. See id.

**RESPONSE**: Admitted that the CDC website suggests that information. However, such information is constitutionally irrelevant under *Bruen*'s prohibition on interest balancing. *See Bruen*, 597 U.S. at 17; *see also id.* at 72 (Alito, J., concurring).

5. New York's sensitive location laws play an important role in saving lives: although the science of studying the efficacy of these laws is in its infancy, Dr. Reeping notes that "multiple studies across distinct contexts find effects consistent with neutral or protective outcomes, and none provide empirical evidence that gun-free zones increase the likelihood of violence." Reeping Decl. ¶ 11; see also id. ¶¶ 42-43 (discussing limitations of existing research).

**RESPONSE**: Admitted that Dr. Reeping makes that claim. Denied that such claim has any relevance under *Bruen*'s prohibition on interest balancing. *See Bruen*, 597 U.S. at 17.

6. Firearm prohibitions in alcohol-serving establishments are associated with lower rates of nearby shootings. Id. ¶ 41.

**RESPONSE**: Admitted that Dr. Reeping makes that claim. Denied that such claim has any relevance under *Bruen*'s prohibition on interest balancing. *See Bruen*, 597 U.S. at 17.

7. Plaintiff Johnson invoked the Fifth Amendment 27 times in his three-and-a-half hour deposition, including regarding what long guns he owns, Johnson Tr. 72:16-73:2, what semiautomatic rifles he owns, id. 73:3-8; whether he owns a machine gun, ghost gun, or uses a "Glock switch" for fully automatic fire, id. 74:10-75:15; whether he carries his gun to work in violation of company policy, id. 76:16-23; whether he carries his gun in sensitive locations other than schools, courthouses, and government buildings, id. 84:13-85:4; whether he carries guns into various of the sensitive locations at issue in this case, id. 98:8-14, 109:18-110:5, 124:22-25,

140:7- 14, 142:14-19; and whether he carries guns into others' private property (including their homes) without permission, even knowing that the gun is not welcome. Id. 137:9-138:13, 145:18-146:5.

**RESPONSE**: Admitted that Plaintiff Johnson invoked his Fifth Amendment right during his deposition.

8. Plaintiff Terrille invoked the Fifth Amendment 19 times in a four-hour deposition, including on basic questions like what guns he owns, where he carries them, and when he has ever carried them outside his house. See Terrille Tr. 42:7-43:13.

**RESPONSE**: Admitted that Plaintiff Terrille invoked his Fifth Amendment right during his deposition.

9. Plaintiff Terrille refused to answer questions about illegal conduct, including whether he owns an assault weapon, id. 42:14-17; whether and why he carries a gun to various sensitive locations, id. 59:8-21 61:20-62:4, 62:23-63:6, 65:9-15, 80:3-11; whether his guns' presence caused discomfort to children and families, id. 60:17-24; and whether he carries weapons into locations (including homes) where the owner prohibits them. Id. 84:14-85:19, 94:24-95:10.

**RESPONSE**: Admitted that Plaintiff Terrille invoked his Fifth Amendment right during his deposition. *See* Deposition of Alfred Terrille at 42:14-17, ECF #187-29; *see also id.* at 59:16-17, 62:3-4, 63:5-6, 65:14-15, 80:10-11, 84:19-21, 84:25-85:2, 85:17-19, 95:3-10. As to whether "his guns' presence caused discomfort to children and families," Defendant's counsel first asked Plaintiff to "guess" how people would feel if they knew he had a firearm (*id.* at 60:2-7) and if "people might feel uncomfortable knowing that there were guns around the playground...." *Id.* at 60:17-24.

10. Mercer Park is in the middle of Baldwinsville, with a reservable gazebo and pavilion

for public gatherings. See id.; Village of Baldwinsville, Parks and Trails, https://www.baldwinsville.gov/parks-trails/.

**RESPONSE**: Admitted that the website describes Mercer Park.

11. The New York State Police does not view the state prohibition on guns in airports as nullifying 18 U.S.C. § 926A and does not enforce it in such a manner as to prevent persons who comply with the federal statute and regulatory regime from taking their gun into an airport to check it in their baggage. Deyo Decl. ¶ 3.

**RESPONSE**: Admitted that the Deyo Declaration makes that claim.

12. After the Second Circuit's decision in Christian v. James, 176 F.4th 189 (2d Cir. 2026), and the Supreme Court's decision in Wolford v. Lopez, 146 S.Ct. 2032 (2026), N.Y. Penal Law § 265.01-d is no longer in force by the State Police as to locations open to the public. Deyo Decl. ¶ 2.

**RESPONSE**: Admitted that the Deyo Declaration makes that claim.

Respectfully submitted,

Dated: August 31, 2026

*/s/ Oliver M. Krawczyk*
Oliver M. Krawczyk* (PA # 334423)
Ambler Law Offices, LLC
115 South Hanover Street, Suite 100
Carlisle, PA 17013
T: (717) 525-5822
F: (540) 773-2414
E: oliver@amblerlawoffices.com
NDNY Bar Roll # 707836
**Admitted Pro Hac Vice*

Robert J. Olson (VA # 82488)
William J. Olson, PC
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615

T: (703) 356-5070
F: (703) 356-5085
E: rob@wjopc.com
NDNY Bar Roll # 703779
*Counsel for Plaintiffs*