UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

IVAN ANTONYUK, COREY JOHNSON, ALFRED TERRILLE,

Plaintiffs,

v.

STEVEN G. JAMES, in his official capacity as Superintendent of the New York State Police, WILLIAM FITZPATRICK, in his official capacity as Onondaga County District Attorney, TOBIAS J. SHELLEY, in his official capacity as Sheriff of Onondaga County, MARK RUSIN, in his official capacity as Chief of Police of Syracuse, and LEE C. KINDLON, in his official capacity as District Attorney of Albany County,

Defendants.

Civil Action No.: 1:22-cv-986 (GTS/PJE)

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF CHIEF RUSIN'S MOTION FOR SUMMARY JUDGMENT

Susan R. Katzoff, Esq.
Corporation Counsel
*Counsel for Chief of Police Mark Rusin*
300 City Hall
Syracuse, New York 13202
(315) 448-8400

By: Todd M. Long, Esq.
Senior Corporation Counsel

Danielle R. Smith, Esq.
First Assistant Senior Corporation Counsel

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. *Antonyuk II* Is Binding On This Court ........ 2

II. Plaintiffs' First Cause Of Action Must Be Dismissed As To Chief Rusin ........ 2

A. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To The Rosamond Gifford Zoo ........ 2

B. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Ponchito's Taqueria 4

C. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To The Syracuse Mets Baseball Stadium And The Carousel Center Mall Movie Theater ........ 6

D. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Locations Outside The City ........ 8

E. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Vague And Unidentified Locations ........ 9

F. Conclusion ........ 10

II. Plaintiffs' Second And Third Causes Of Action Must Be Dismissed As To Chief Rusin . 10

CONCLUSION ........ 10



#74909v3

## TABLE OF AUTHORITIES

**Cases**

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) ........ 5

*Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) ........ 2

*Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022) ........ 9

*Columbia v. Heller*, 554 U.S. 570 (2008) ........ 4

*Giambalvo v. Suffolk Cnty., New York*, 155 F.4th 163 (2d Cir. 2025) ........ 3

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) ........ 7

*Merrill v. Copeland*, No. 3:19-CV-1240 (BKS/ML) 2022 WL 3212075 (N.D.N.Y. Aug. 9, 2022), *aff'd*, No. 22-1928, 2024 WL 119261 (2d Cir. Jan. 11, 2024) ........ 7

*Quarles v. Gen. Motors Corp.*, 758 F.2d 839 (2d Cir. 1985) ........ 7

*United States v. Hemani*, 146 S. Ct. 1677, 225 L. Ed. 2d 314 (2026) ........ 1, 4, 5

*Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024) ........ 5

*Wolford v. Lopez*, 146 S. Ct. 2032, 225 L. Ed. 2d 494 (2026) ........ 1, 4

*Wolford v. Lopez*, 146 S. Ct. 79, 222 L. Ed. 2d 1241 (2025) ........ 5

## PRELIMINARY STATEMENT

The crux of Plaintiffs'[1] lawsuit against Chief Rusin is that Plaintiff Johnson intends to visit certain locations purportedly within the City with his concealed firearm and therefore faces criminal liability by Chief Rusin under the CCIA. *See generally*, Dkt. No. 1. However, as Chief Rusin argued in his Opening Memorandum, the vast majority of the locations Plaintiff Johnson believed were under Chief Rusin's jurisdiction, were not in fact within the City. And the Second Circuit upheld the "sensitive" designation for Plaintiff Johnson's few remaining City locations. Stated simply, either Plaintiff Johnson lacked standing to challenge the locations as against Chief Rusin (because they were not within the City) or the Second Circuit has already deemed the location "sensitive," a designation this Court is respectfully obligated to follow.

In response, Plaintiffs argue that the Second Circuit's legal reasoning in *Antonyuk II* is flawed. Plaintiffs' argument should be rejected as they have failed to cite any record evidence that was not presented to the Second Circuit. Without that additional evidence, *Antonyuk II* is binding on this Court. Furthermore, Plaintiffs' reliance on *Wolford v. Lopez*, 146 S. Ct. 2032, 225 L. Ed. 2d 494 (2026) and *United States v. Hemani*, 146 S. Ct. 1677, 225 L. Ed. 2d 314 (2026), are misplaced because neither Supreme Court decision concerns the specific causes of action asserted against Chief Rusin.

Plaintiffs also generally argue that Plaintiff Johnson has standing to challenge the various locations even though most of them are not located within the City. Plaintiffs' argument represents a fundamental misunderstanding of Chief Rusin's Opening Memorandum of Law. Chief Rusin *is not* arguing that Plaintiff Johnson lacks standing to challenge the CCIA. Rather, Chief Rusin argues

[1] Chief Rusin will use the same short-hand abbreviations from his Opening Memorandum of Law. Dkt. No. 186-37.

that Plaintiff Johnson – who is not a City resident – fails to establish a credible threat of prosecution *by Chief Rusin* because Plaintiff Johnson is not visiting locations within the City.

Accordingly, Chief Rusin's Motion for Summary Judgment should be granted in its entirety, and the Complaint should be dismissed, with prejudice, as to Chief Rusin.[2]

## ARGUMENT

### I. *Antonyuk II* Is Binding On This Court

Chief Rusin argued in his Opening Memorandum that *Antonyuk II* is binding on this Court. In response, Plaintiffs argue that they have sufficiently updated the record such that the Second Circuit's reasoning is no longer controlling. *See* Dkt. No. 195-2, pp. 4-5. However, Plaintiffs cite only their Memorandum of Law in support. *Id.* at 4. They have not cited *any* record evidence that demonstrates that the Second Circuit's reasoning was flawed as to any of the specific challenges Chief Rusin raises. *Id.* Accordingly, Plaintiffs' argument is unpersuasive.

### II. Plaintiffs' First Cause Of Action Must Be Dismissed As To Chief Rusin

#### A. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To The Rosamond Gifford Zoo

Chief Rusin argued in his Opening Memorandum that Plaintiff failed to establish an injury in fact as to the Zoo because: 1) the Second Circuit upheld zoos as a "sensitive location;" 2) the Zoo is located within a City (meaning, urban) park; and, 3) the Zoo contains school and County buildings. Dkt. No. 186-37. Plaintiffs' responses will be discussed in turn.

Plaintiff's do not meaningfully address Chief Rusin's first argument, that the Second Circuit upheld zoos as a "sensitive location." Nor are Plaintiffs saved by their Opening Memorandum, which only identified *purported errors* in the Second Circuit's legal reasoning, and

[2] Insofar as is permissible, this Memorandum of Law is also submitted in further opposition to Plaintiff's Motion for Summary Judgment.

did not cite any additional record evidence that was not before the Second Circuit. Dkt. No. 178-9, pp. 25-26. As Plaintiff's seemingly concede, *Antonyuk II* is binding on this Court *unless* Plaintiffs "submit additional evidence . . . that could affect [the Second Circuit's] preliminary determinations with respect to the historical record for the firearms provisions at issue." Dkt. No. 195-2, p. 4 (quoting *Giambalvo v. Suffolk Cnty., New York*, 155 F.4th 163, 178 (2d Cir. 2025)). As Plaintiffs have not cited any such evidence, the Second Circuit's decision in *Antonyuk II* with respect to zoos must be upheld.

As to Burnet Park, Plaintiffs argue that they are in fact challenging the CCIA restriction in all parks, including urban parks. Dkt. No. 195-2, pp. 5-7. In so arguing, Plaintiffs do not dispute that Burnet Park is an urban park or that a visitor to the Zoo must necessarily travel through Burnet Park.

Furthermore, Plaintiffs' argument to strike the CCIA's park restriction is *not* because designating an urban park as "sensitive" is inherently unconstitutional. *See* Dkt. No. 178-9, p. 15 ("Meanwhile, on the other side of the Second Circuit's spectrum are 'often-crowded public squares' and 'city parks' are allegedly 'urban parks' *where a carry ban might be upheld*.") (emphasis supplied). Instead, Plaintiffs argue that the Second Circuit created an untenable "line-draw" between urban parks (which can be restricted) and rural/quasi-rural parks (which, according to Plaintiffs, cannot be restricted). *See id.* at 14-15. Thus, unsurprisingly, Plaintiffs do not cite any authority for the proposition that urban parks cannot be designated as "sensitive" under the CCIA. *See generally*, Dkt. No. 178-9; Dkt. No. 195-2. Accordingly, that a visitor to the Zoo must necessarily travel through an urban park—here Burnet Park—provides an additional basis to dismiss Plaintiff Johnson's challenge.

Finally, Chief Rusin argued that the Zoo contains both educational facilities and County governmental buildings as Plaintiffs are not challenging either N.Y. Penal Law § 265.01-e(2)(a) (governmental buildings) or N.Y. Penal Law § 265.01-e(2)(m) (schools). Dkt. No. 186-37, pp. 12-14. Plaintiffs do not meaningfully respond to this argument beyond challenging Chief Rusin's interpretation of *Heller*. *See* Dkt. No. 195-2, pp. 6-7 (citing *Columbia v. Heller*, 554 U.S. 570, 626, 635 (2008)). But regardless of whether Chief Rusin properly summarized the Supreme Court's decision in *Heller*, Plaintiffs are not challenging the CCIA's restrictions as to schools and governmental buildings. Accordingly, that the Zoo contains educational and governmental buildings provides yet another basis to dismiss Plaintiff Johnson's claim.

In sum, Plaintiff Johnson fails to establish an injury in fact with respect to the Zoo, which contains educational and governmental buildings and is surrounded by an urban park.

### B. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Ponchito's Taqueria

Chief Rusin argued in his Opening Memorandum that Ponchito's Restaurant was the only alcohol-serving restaurant Plaintiff Johnson claimed to visit within the City, and the Second Circuit upheld the CCIA's "sensitive location" designation for alcohol-serving restaurants. Dkt. No. 186-37, pp. 15-16. Plaintiffs do not dispute any of the foregoing. *See* Dkt. No. 195-2, pp. 7-9. Instead, Plaintiffs argue that the Second Circuit's reasoning was flawed. *See id.*; *see also* Dkt. No. 178-9, pp. 17-22. However, Plaintiffs do not cite any record evidence that was not before the Second Circuit.

Furthermore, the two Supreme Court decisions that Plaintiffs reference, *Wolford v. Lopez*, 146 S. Ct. 2032, 225 L. Ed. 2d 494 (2026) and *United States v. Hemani*, 146 S. Ct. 1677, 225 L. Ed. 2d 314 (2026), do not support Plaintiffs' argument that the *Antonyuk II* should be reversed. The Ninth Circuit held in *Wolford* recently "that places that serve alcohol fall within the national



#74909v3

historical tradition of prohibiting firearms at sensitive places [which] comports with the only other circuit decision to have reached the issue," meaning, the Second Circuit. *Wolford v. Lopez*, 116 F.4th 959, 986 (9th Cir. 2024) (citing *Antonyuk v. Chiumento*, 89 F.4th 271, 355 (2d Cir. 2023)). The Supreme Court did not address the alcohol-serving restriction of the Ninth Circuit's *Wolford* decision. *See Wolford*, 146 S. Ct. at 2058, n.6 (noting that "Hawaii already prohibits the carry of firearms in places that it deems sensitive, including schools, banks, and establishments serving alcohol"); *see also Wolford v. Lopez*, 146 S. Ct. 79, 222 L. Ed. 2d 1241 (2025) ("Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit granted limited to Question 1 presented by the petition."); *Woflord v. Lopez*, Petition for a Writ of Certiorari, 2025 WL 1011679, at *i (Question 1: "Whether the Ninth Circuit erred in holding, . . . that Hawaii may presumptively prohibit the carry of handguns by licensed concealed carry permit holders on private property open to the public unless the property owner affirmatively gives express permission to the handgun carrier?"). Accordingly, the Ninth Circuit's decision upholding a firearm restriction in alcohol-serving establishments remains good law *and therefore supports Chief Rusin's position*.

Finally, the criminal defendant in *Hemani* argued that he was unlawfully prosecuted for possessing a firearm while also being a marijuana user. *Hemani*, 146 S. Ct. at 1684. The Supreme Court agreed. *Id.* Unsurprisingly, given the criminal charges Mr. Hemani was facing, the Supreme Court did not discuss whether a state could lawfully restrict firearms at *alcohol*-serving restaurants. *See generally, id.* Accordingly, *Hemani* does not support Plaintiffs' position.

Based on the foregoing, Chief Rusin respectfully submits that Plaintiff Johnson cannot establish an injury in fact.

### C. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To The Syracuse Mets Baseball Stadium And The Carousel Center Mall Movie Theater

Chief Rusin argued in his Opening Memorandum that Plaintiff failed to allege an injury in fact with respect to the Mets Stadium and the Carousel Mall Theater for several reasons, including that the Second Circuit upheld their "sensitive location" designation and both locations have policies prohibiting firearm possession. Dkt. No. 186-37, pp. 16-17. In response, Plaintiffs concede that they are not challenging the CCIA's stadium restriction. Dkt. No. 195-2, p. 10.

As to the Carousel Mall Theater, Plaintiffs argue that the Second Circuit's reasoning was flawed and that the Carousel Mall Theater's policy against firearms is not controlling. As to the Second Circuit's decision, Plaintiffs do not cite any additional evidence that was not before the Second Circuit. Furthermore, Plaintiffs' continued reliance on *Wolford* and *Hemani* is misplaced. Neither *Wolford* nor *Hemani* concerned whether a state could lawfully restrict firearms at a theater. Accordingly, *Antonyuk II* remains binding on this Court.

As to the Carousel Mall Theater's policy restricting firearms, Plaintiffs do not refute that a private property owner has the legal authority to preclude firearms on their property. And while Plaintiffs attempt to shift focus by arguing that policies can change or that the policy is not publicly announced – Plaintiff Johnson testified that he is aware that the Carousel Mall is privately owned has a policy against firearms. Dkt. No. 182-2, 90:6-14 ("Q. And do you know, does Carousel Mall permit guns? A. They have a policy that has no firearms allowed. Q. And are they -- is Carousel Mall a public or a private institution? A. I believe it's a private property. I don't know how that'd work. It's open to the public, but it's owned privately."). Accordingly, the Carousel Mall Theater, which is privately owned, has a policy against firearms, of which Plaintiff Johnson is familiar.

Moreover, Plaintiff has not presented any record evidence that the policies governing the ban on bringing firearms to both the mall and the theater located within it have or will change; just metaphysical doubt as to the material facts regarding the current Mall and Theater Policies' future iterations, with nothing more than its own speculative and discretionary wording, is "mere speculation or conjecture" by Plaintiffs "as to the true nature of the facts to overcome a motion for summary judgment." *Merrill v. Copeland*, No. 3:19-CV-1240 (BKS/ML) 2022 WL 3212075, at *8 (N.D.N.Y. Aug. 9, 2022), *aff'd*, No. 22-1928, 2024 WL 119261 (2d Cir. Jan. 11, 2024) ((quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).

Further, just because the punishment directive within the "Behavior Code" is allegedly worded as discretionary[3] does not mean that nonetheless a person is allowed to bring a concealed firearm to the Carousel Mall in violation of its own Mall Policies. Indeed, Plaintiffs impartially and improperly partially cited the Mall Policies and shifted the focus from the results of Mall Policy violations upon the violator of *any* rule in the Mall Policies,[4] and away from what is a clear prohibition on all weapons that is absolute, and of which Plaintiff Johnson is aware:

> - **No Weapons Allowed**
>   The possession of any weapon, other than by law enforcement personnel, is strictly prohibited.

*See* Dkt. No. 186-9, p. 6.

[3] I.e., "Persons violating the Behavior Code may be directed to leave Destiny USA, banned from entering the property in the future, and/or prosecuted to the fullest extent of the law." Dkt. No. 186-9, p. 5.

[4] *See id.*

Chief Rusin therefore respectfully submits that this Court should find that Plaintiff Johnson has failed to allege an injury in fact.

**D. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Locations Outside The City**

Chief Rusin's Opening Memorandum identified several locations which Plaintiff Johnson asserted within the City. Dkt. No. 186-37, pp. 18-19. Plaintiff does not refute that any of these locations are outside the City, and therefore outside Chief Rusin's jurisdiction, Dkt. No. 195-2, p. 12, with one exception: "Plaintiff Johnson also testified he visits the 'Speedway off Court Street further down" (Exh. 1, 178:12), which has an address of 3060 Court St, Syracuse, NY 13208.'" Dkt. No. 195-1, ¶¶14-15. Although, 3060 Court Street has a Syracuse mailing address, it is not in fact located within the City as established by the record evidence in Chief Rusin's opening motion. *See* Dkt. No. 186-30 (Exh. 29, the property assessment report for 3060 Court Street); *see also* Dkt. No. 186-29, p. 2 (showing Speedway locations). Rather, 3060 Court Street is located within the Town of Salina, which is a completely separate municipal entity outside of the geographical limits of the City of Syracuse,

Onondaga County, NY

Property

**Municipality:** Town of Salina
**Tax ID:** 070.-07-12.2
**Owner:** Hess Retail Stores LLC
**Property Address:** 3060 Court St

**School District:** Lyncourt
**Property Class:** 432 - Gas station
**Acreage/Size:** 197.65 x 114.05
**2026 Total Assessment:** $750,000

Dkt. No. 186-30, p. 1. Accordingly, the "Speedway off Court Street" is not within Chief Rusin's jurisdiction.

In opposition, Plaintiffs argue that the non-City locations are immaterial because "if at least one Plaintiff has standing to challenge any such location with respect to any Defendant, Plaintiffs

are entitled to judgment on this portion of the CCIA." Dkt. No 195-2, p. 12 (citation omitted). Plaintiffs misunderstand Chief Rusin's argument. Chief Rusin is not arguing that Plaintiff Johnson lacks standing to challenge the CCIA with respect to these locations that are outside of the geographical and jurisdictional boundaries of the City.[5] Instead, Plaintiff Johnson has failed to assert an injury in fact *with respect to Chief Rusin* because the locations Plaintiff Johnson has identified are outside the City and therefore outside Chief Rusin's jurisdiction. Plaintiff Johnson should have – but apparently chose not to – asserted claims against the surrounding municipalities who would be responsible for prosecuting the CCIA for many of the locations Plaintiff Johnson visits.[6]

Accordingly, Plaintiff Johnson has failed to assert an injury in fact for locations outside of Chief Rusin's jurisdiction. *See Calcano v. Swarovski N. Am. Ltd*., 36 F.4th 68, 76 (2d Cir. 2022) (finding the plaintiff lacked standing to seek injunctive relief "from [the Kohl's] retail store at 271 W. 23rd St, New York, NY" because there was "no Kohl's store anywhere in Manhattan, let alone at that address").

### E. Plaintiff Johnson Failed To Allege An Injury In Fact With Respect To Vague And Unidentified Locations

Chief Rusin argued in his Opening Memorandum that Plaintiff Johnson failed to allege an injury in fact with respect to vague and unidentified locations. Dkt. No. 186-37, pp. 19-20. Plaintiff

[5] Chief Rusin maintain that Plaintiffs' arguments fail as to all these locations because the are properly designated as "sensitive" under the CCIA and, insofar as permissible, join in the State Defendants arguments.

[6] Plaintiffs also suggest some wrongdoing by Defense Counsel in establishing that Plaintiff Johnson is not a City resident. *See* Dkt. No. 195-2, p. 5 n.2. Defense Counsel did so to demonstrate that Plaintiff Johnson is not within Chief Rusin's jurisdiction, rendering it less likely that he would be subject to criminal prosecution by Chief Rusin.

does not meaningfully respond to Chief Rusin's argument. Accordingly, Plaintiff has failed to allege an injury in fact with respect to Chief Rusin.

**F. Conclusion**

Chief Rusin therefore respectfully submits that Plaintiffs' First Cause of Action should be dismissed in its entirety, with prejudice, as to Chief Rusin. Should this Court disagree, Chief Rusin respectfully submits that he has raised a triable issue of fact such that Plaintiffs' Motion for Summary Judgment should be denied.

**II. Plaintiffs' Second And Third Causes Of Action Must Be Dismissed As To Chief Rusin**

Chief Rusin argued that Plaintiff's Second and Third Causes of Action – insofar as any aspect of those claims survived to the summary judgment stage – should be dismissed as to Chief Rusin. Plaintiffs do not oppose this argument.

**CONCLUSION**

Chief Rusin respectfully requests this Court grant his Motion for Summary Judgment, dismiss the Complaint in its entirety as against Chief Rusin with prejudice, deny Plaintiffs' Motion for Summary Judgment and grant such other and further relief the Court deems just and proper. Should this Court disagree, Chief Rusin respectfully submits that he has raised a triable issue of fact such that Plaintiffs' Motion for Summary Judgment should be denied.

Dated: September 3, 2026

Susan R. Katzoff, Esq.
Corporation Counsel, City of Syracuse

*/s/ Todd M. Long*
Todd M. Long, Esq.
Danielle R. Smith, Esq.

*Counsel for Chief Rusin*



#74909v3