**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

IVAN ANTONYUK, COREY JOHNSON, and ALFRED TERRILLE,

Plaintiffs,

-against-

STEVEN G. JAMES, in his official capacity as Superintendent of the New York State Police, WILLIAM FITZPATRICK, in his official capacity as Onondaga County District Attorney, TOBIAS J. SHELLEY, in his official capacity as Sheriff of Onondaga County, MARK RUSIN, in his official capacity as Chief of Police of Syracuse, and LEE C. KINDLON, in his official capacity as District Attorney of Albany County,

Defendants.

Civil Action No. 1:22-CV-00986 (GTS/PJE)

---

**DEFENDANT LEE C. KINDLON'S REPLY MEMORANDUM OF LAW**

**IN FURTHER SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

JEFFERY V. JAMISON, Esq.
ALBANY COUNTY ATTORNEY
JASON R. THOMAS, Esq.
Assistant County Attorney
NDNY Bar Roll No. 706682
Attorneys for Defendant Lee C. Kindlon
112 State Street, 6th Floor
Albany, New York 12207
P: (518) 447-7110
F: (518) 447-5564

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....... 1

ARGUMENT ....... 1

POINT I: THE PARKS PROVISION IS CONSTITUTIONAL ....... 2

A. Antonyuk forecloses Plaintiffs' facial challenge ....... 2

B. The provision is constitutional as applied to Terrille's intended carry in Thacher State Park ....... 3

POINT II: TERRILLE LACKS STANDING TO PRESS THE AIRPORT CLAIM AGAINST THIS DEFENDANT ....... 4

POINT III: WOLFORD DID NOT UNSETTLE ANTONYUK'S HOLDING SUSTAINING THE THEATER PROVISION ....... 6

A. Wolford decided only Hawaii's private-property default rule ....... 6

B. Antonyuk is the post-Rahimi law of this Circuit and binds this Court ....... 8

POINT IV: ESTABLISHMENTS SERVING ALCOHOL AND RESTRICTED LOCATIONS ....... 9

CONCLUSION ....... 9

# TABLE OF AUTHORITIES

**Cases**

*Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024), cert. denied, No. 24-795 (U.S. Apr. 7, 2025) ........ passim

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)........4

*District of Columbia v. Heller*, 554 U.S. 570 (2008)........7

*Hedges v. Obama*, 724 F.3d 189 (2d Cir. 2013)........5

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015)........4

*Michigan v. DeFillippo*, 443 U.S. 31 (1979)........5

*Murthy v. Missouri*, 603 U.S. 43 (2024)........4, 6

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)........7-9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)........4, 6

*United States v. Rahimi*, 602 U.S. 680 (2024)........1, 7, 8

*Wolford v. Lopez*, 609 U.S. ___, 146 S. Ct. 2032 (2026)........passim

**Statutes and Regulations**

18 U.S.C. § 926A........5

49 C.F.R. § 1540.111(c)........5

N.Y. Envtl. Conserv. Law § 9-0101(6)........3

N.Y. Penal Law § 265.01-e(2)(d)........3

N.Y. Penal Law § 265.01-e(2)(n)........5

N.Y. Penal Law § 265.01-e(2)(o)........9

N.Y. Penal Law § 265.01-e(2)(p)........6, 7

N.Y. Penal Law § 265.01-e(3)(i)........4

**Rules**

N.D.N.Y. L.R. 56.1(b)........1

## PRELIMINARY STATEMENT

Defendant Lee C. Kindlon, sued in his official capacity as District Attorney of Albany County, submits this reply in further support of his motion for summary judgment (ECF No. 182) and in reply to Plaintiffs' opposition (ECF No. 196-2, "Opp."). The material facts are undisputed: Plaintiffs admitted every paragraph of Defendant Kindlon's Statement of Material Facts. (ECF No. 196-1.)[1] What remains is law, and the governing law is the Second Circuit's decision in this very case, *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024), issued on remand from the Supreme Court for reconsideration in light of *United States v. Rahimi*, 602 U.S. 680 (2024), and left standing when the Supreme Court denied certiorari on April 7, 2025.

Plaintiffs' opposition rests on two overreadings. It reads *Wolford v. Lopez*, 609 U.S. ___, 146 S. Ct. 2032 (2026), which struck down Hawaii's private-property default rule, as though it silently swept away the location-specific sensitive-place laws that the *Wolford* Court expressly left untouched. And it treats *Antonyuk* as open to relitigation in this Court, a proposition Plaintiffs themselves all but abandon when they "preserve the issue for appeal." (Opp. at 7.) On the undisputed record, Defendant Kindlon is entitled to judgment dismissing the claims against him.

## ARGUMENT

### POINT I: THE PARKS PROVISION IS CONSTITUTIONAL. ANTONYUK FORECLOSES PLAINTIFFS' FACIAL CHALLENGE, AND THE PROVISION IS

---

[1]Plaintiffs ask the Court to deem admitted paragraphs 16 through 32 of their Statement of Material Facts because Defendant Kindlon did not file a separate response. (Opp. at 1 n.1.) The request is academic. Those paragraphs recite the same standing facts concerning Plaintiff Terrille (his residence, his license, and his intended visits) that Defendant Kindlon's own Statement of Material Facts asserts and that Plaintiffs have now admitted in full. (ECF Nos. 182-2, 196-1.) Defendant does not dispute them. Under Local Rule 56.1(b) a deemed admission establishes properly supported facts, not legal conclusions, and no fact in paragraphs 16 through 32 alters the analysis below.

**CONSTITUTIONAL AS APPLIED TO TERRILLE'S INTENDED CARRY IN THACHER STATE PARK.**

**A. Antonyuk forecloses Plaintiffs' facial challenge.**

A facial challenge fails where the challenged statute has a plainly legitimate sweep. The Second Circuit so held as to this very provision:

> We agree with the State that § 265.01-e is within the Nation's history of regulating firearms in quintessentially crowded areas and public forums, at least insofar as the regulation prohibits firearms in urban parks, though not necessarily as to rural parks. Considering, then, that the law has a plainly legitimate sweep as to urban parks, the facial challenge fails notwithstanding doubt that there is historical support for the regulation of firearms in wilderness parks, forests, and reserves.

*Antonyuk*, 120 F.4th at 1019.

Plaintiffs' principal ask, "facial invalidation of the CCIA's parks ban" (Opp. at 2), collides with that holding. Their argument is that the urban-rural line the Second Circuit drew is "unworkable" (id.), which is an argument that *Antonyuk* was wrongly decided. Plaintiffs sought certiorari from that decision, and the Supreme Court denied it. *Antonyuk v. James*, No. 24-795 (U.S. Apr. 7, 2025). This Court is bound to apply the Second Circuit's holding unless and until that court or the Supreme Court says otherwise, and Plaintiffs implicitly concede as much when they "preserve the issue for appeal" rather than explain how this Court could grant facial relief consistent with *Antonyuk*. (Opp. at 7.) Because the facial challenge fails under binding precedent, Plaintiffs' motion must be denied as to the parks provision regardless of how the Court classifies Thacher State Park.

**B. The provision is constitutional as applied to Terrille because his intended carry is in the developed, crowded, child-oriented spaces that fall on the urban side of the functional line Antonyuk drew.**

The line the Second Circuit drew is functional, not cartographic. Urban parks may be regulated because they are "communal spaces" and "quintessential public spaces," *Antonyuk*, 120 F.4th at 1025, whose regulation sits "within the Nation's history of regulating firearms in quintessentially crowded areas and public forums," *id.* at 1019. The tradition the court identified reaches confined gatherings and places where "persons are assembled for amusement," *id.* at 1036-38, and the court identified "places heavily trafficked by children" among the categories that tradition reaches, sustaining the zoo provision on that basis. *Id.* at 1027. The statute itself confirms that acreage and remoteness are not the test: the Legislature excluded from "public park" both private inholdings and "the forest preserve as defined in subdivision six of section 9-0101 of the environmental conservation law." N.Y. Penal Law § 265.01-e(2)(d); N.Y. Envtl. Conserv. Law § 9-0101(6). The vast state wilderness of the Adirondack and Catskill preserves, the very lands Plaintiffs invoke as "as rural as it gets" (Opp. at 2), lies outside the provision altogether.

Terrille's intended conduct sits in the heart of what the provision does reach. By his own declarations, he takes his grandchildren to Thacher State Park, "where we utilize the hiking trails, picnic areas, and playground for children," at least monthly, and he intends to carry his concealed handgun on those visits. (Terrille Decl. ¶ 8, ECF No. 1-10; Terrille Supp. Decl. ¶¶ 5, 7, ECF No. 182-4.) Those developed facilities draw 380,000 visitors a year and are anchored by the Thacher Park Center, constructed to host educational and interpretive programming for school groups, youth organizations, and the general public. (Kindlon Mem. at 3-4, ECF No. 182-3.) A playground and picnic ground serving hundreds of thousands of visitors annually is a "communal space" and a place of "social recreation" in every sense that mattered to the Second Circuit, 120 F.4th at 1025, and it is a place "heavily trafficked by children" besides, *id.* at 1027. Plaintiffs answer that Thacher

also has rural features. True, and beside the point: Terrille does not claim he intends to carry only in a remote quarter of the park while avoiding the playground where he brings his grandchildren. His declared course of conduct runs through the park's crowded, developed core, and the provision is constitutional as applied to that conduct.[2]

Thus, whether or not this Court must fix the outer boundary between urban and rural parks in some future case, Plaintiffs' facial challenge is foreclosed and their as-applied challenge fails on Terrille's own account of what he intends to do.[3]

**POINT II: TERRILLE LACKS STANDING TO PRESS THE AIRPORT CLAIM AGAINST THIS DEFENDANT.**

"[S]tanding is not dispensed in gross"; "plaintiffs must demonstrate standing for each claim that they press" against each defendant, "and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). A pre-enforcement plaintiff must show an intention to engage in conduct "arguably affected with a constitutional interest, but proscribed by a statute," together with "a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *see Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015). Courts presume an intent to enforce a recent statute, but only "in the absence of a disavowal by the government." *Antonyuk*, 120 F.4th at

[2]Plaintiffs cite the description of rural parks in Antonyuk as containing "vast forests, rolling farmlands, towns and villages, mountains and valleys, lakes, ponds and free-flowing rivers." (Opp. at 2, quoting 120 F.4th at 1025.) That description is of the Adirondacks. The forest preserve exclusion places those lands outside the provision, which is one more reason the urban-rural line Plaintiffs attack is neither boundless nor unworkable as enacted.

[3]Defendant's moving brief also observed that the Park's regulations permit long-gun carry incident to lawful hunting. See N.Y. Penal Law § 265.01-e(3)(i). Plaintiffs devote considerable energy to that observation. (Opp. at 2-4.) It was offered as evidence of the provision's tailoring, not as a substitute channel for the concealed carry Plaintiff Terrille prefers, and nothing in this Point depends on it.

1005 (quoting *Hedges v. Obama*, 724 F.3d 189, 197 (2d Cir. 2013)). Measured against those requirements, the airport claim against Defendant Kindlon fails three times over.

First, the only conduct Terrille intends is federally protected, not "proscribed." Plaintiffs are emphatic that "Terrille never stated that he wanted to carry concealed in an airport"; he "only wishes to be able to bring a firearm with him in his checked baggage," in compliance with TSA and airline regulations. (Opp. at 4 n.4; Pls.' SMF ¶ 29, ECF No. 178-8.) He testified to the same effect: he does not intend to carry a weapon onto a plane, through security, or on the airport grounds. (Ex. B at 98:21-99:13, ECF No. 182-5.) Federal law affirmatively provides for the conduct he describes. 49 C.F.R. § 1540.111(c) (unloaded firearm, declared to the carrier, in a locked hard-sided container, in checked baggage); *see* 18 U.S.C. § 926A. Defendant's point in moving was not, as Plaintiffs would have it, that his "opinion" voids a statute (Opp. at 5); it is that the Supremacy Clause forbids applying N.Y. Penal Law § 265.01-e(2)(n) to transportation that federal law protects, so no reasonable prosecution of Terrille's intended conduct is possible.

Second, any presumption of enforcement is rebutted as to this Defendant. The District Attorney has disavowed, in a memorandum filed with this Court, any authority to prosecute the federally protected conduct Terrille intends. (Kindlon Mem. at 5-9, ECF No. 182-3); *see Antonyuk*, 120 F.4th at 1005 (presumption applies absent "a disavowal by the government"). The record is of a piece: Terrille has never been prosecuted or threatened with prosecution by the Albany County District Attorney for violating the CCIA, has never heard the District Attorney say the office would enforce it, and is aware of no such statement. (Ex. B at 104:9-24, ECF No. 182-5.) *Michigan v. DeFillippo*, 443 U.S. 31 (1979), does not fill the gap. That was a Fourth Amendment case about probable cause to arrest under a presumptively valid ordinance, *id.* at 37-38; it says nothing about

a plaintiff's Article III burden to show a credible threat of prosecution by a particular defendant who has formally taken the contrary position.

Third, Plaintiffs' remaining theory defeats itself as against this Defendant. Plaintiffs argue that an injunction is needed because Kindlon "does not control the New York State Police or other law enforcement officers," who "remain free to question, detain, and arrest" violators. (Opp. at 5.) Precisely so. An injury inflicted by officers Defendant Kindlon does not control is not traceable to him, and an injunction against him would not redress it. *Murthy*, 603 U.S. at 61. The Superintendent of the State Police is a defendant in this action; whatever declaratory or injunctive relief the airport claim may support is a matter between Plaintiffs and the State Defendants. Nor may Plaintiffs convert Defendant's preemption analysis into a merits concession entitling them to judgment: their claim is pleaded under the Second Amendment, not the Supremacy Clause, and summary judgment runs on claims a party has pleaded and has standing to press, not on a defendant's legal analysis of a claim no one pleaded. *See TransUnion*, 594 U.S. at 431.

Terrille accordingly lacks standing to pursue the airport claim against Defendant Kindlon, and that claim should be dismissed as against him.

**POINT III: WOLFORD DID NOT UNSETTLE ANTONYUK'S HOLDING SUSTAINING THE THEATER PROVISION.**

**A. Wolford decided only Hawaii's private-property default rule.**

The Second Circuit held that N.Y. Penal Law § 265.01-e(2)(p) is "consistent with" the Nation's tradition of regulating firearms in "discrete, densely crowded physical spaces wherein people assemble for amusement, educational, or literary purposes, which fairly describes theaters." *Antonyuk*, 120 F.4th at 1036-38 & n.112. Plaintiffs' lead argument is that *Wolford* dismantled that tradition. (Opp. at 6-8.) *Wolford* did no such thing. The Court granted certiorari "to decide whether Hawaii may prohibit licensed concealed-carry permit holders from carrying handguns on private

property open to the public unless the property owner gives express permission," and it held that default rule unconstitutional. *Wolford*, 146 S. Ct. at 2047. The passages Plaintiffs quote, describing "places that people routinely visit in the course of their daily routines" such as restaurants, grocery stores, and "big box" stores (Opp. at 6, quoting 146 S. Ct. at 2041), are the Court's description of the burden a universal default rule imposes on daily life. They are not holdings that a State may not designate discrete sensitive locations supported by historical analogues.

Quite the opposite. The *Wolford* majority repeated *Heller*'s assurance that "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places," citing *Rahimi*. *Wolford*, 146 S. Ct. at 2043 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). And the concurrence draws precisely the distinction Plaintiffs elide: Hawaii "already prohibits the carry of firearms in places that it deems sensitive, including schools, banks, and establishments serving alcohol," and the default rule's constitutional defect was that, unlike those location-specific laws, it "does not target any particular abuse of firearms at all." *Id.* at 2058 & n.6 (Barrett, J., concurring). When a State identifies specific places prone to particular abuses of the right, it may respond with "focused regulations." *Id.* (quoting *Rahimi*, 602 U.S. at 700). Section 265.01-e(2)(p) is a focused, location-specific regulation of exactly the kind *Wolford* left standing. Plaintiffs' contrary reading would prove far too much: it would condemn every location-specific ban in any commercial setting, including the alcohol-establishment bans *Wolford* itself listed among Hawaii's sensitive-place laws without a word of disapproval. *Id.* at 2058 n.6.

*Bruen* is of no more help to Plaintiffs. *Bruen* rejected New York's attempt to expand "sensitive places" to "all places of public congregation," holding there was "no historical basis" to "effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 30-31 (2022). In the same breath, it endorsed the

use of "analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Id.* at 30. A discrete ban on theaters, supported by analogues regulating places "where persons are assembled for amusement," is the exercise *Bruen* endorsed, not the one it forbade. *Antonyuk*, 120 F.4th at 1036-38 & n.112.

**B. Antonyuk is the post-Rahimi law of this Circuit and binds this Court.**

Plaintiffs' remaining theater arguments are quarrels with the Second Circuit, and chronology disposes of the lead one. Plaintiffs say *Rahimi* "undermines" the court's use of affray-derived analogues. (Opp. at 8.) But the Supreme Court vacated the Second Circuit's 2023 decision and remanded for reconsideration in light of *Rahimi*, and the October 2024 opinion on which Defendant relies is the product of that reconsideration. *See Antonyuk*, 120 F.4th 941 (2d Cir. 2024) (decided on remand following *Rahimi*). An argument that *Rahimi* undermines a decision the Second Circuit issued in order to apply *Rahimi* refutes itself.

The rest fares no better. As to the 1792 North Carolina statute, the panel considered and rejected the affray characterization: the law "banned all carriage in fairs and markets" with no conduct element. *Antonyuk*, 120 F.4th at 1039 n.114. Plaintiffs' answer rests on Justice Breyer's *Bruen* dissent (Opp. at 8, citing 597 U.S. at 122 (Breyer, J., dissenting)), which is not law and cannot displace the panel's holding. Nor did the panel rest on a single statute: it traced an enduring tradition from the Statute of Northampton through the 1786 Virginia law, the 1792 North Carolina statute, the post-Civil War enactments of Tennessee, Texas, and Missouri, and the territorial laws of Arizona and Oklahoma, together with the state court decisions sustaining them. *Id.* at 1036-39 & nn.112-15. The panel likewise considered the same population-percentage argument Plaintiffs repeat here and found it insufficient to defeat the analogues. *Id.* at 1038 n.113. And the panel's

reliance on the absence of successful constitutional challenges to those statutes is not "bootstrapping" (Opp. at 9); it is *Bruen*'s own method, which treated the fact that courts were "aware of no disputes regarding the lawfulness of such prohibitions" as settling that the historical sensitive places could be regulated. *Bruen*, 597 U.S. at 30. Each of these points was resolved against Plaintiffs by the court of appeals in this case; this Court is not the forum for their reargument.

The theater provision is accordingly constitutional under controlling precedent that *Wolford* left intact, and Terrille's theater claim should be dismissed.

**POINT IV: ESTABLISHMENTS SERVING ALCOHOL AND RESTRICTED LOCATIONS.**

As in his moving papers, Defendant Kindlon follows and adopts the State Defendants' arguments as to establishments serving alcohol, N.Y. Penal Law § 265.01-e(2)(o), and restricted locations, including as those arguments may be further developed in any reply submission the State Defendants file. (See Kindlon Mem. at 11, ECF No. 182-3; Def. James Mem., ECF No. 187-1.) Plaintiffs do the same in reverse, referring the Court to their briefing against the State Defendants. (Opp. at 9.) Those provisions therefore rise or fall on the State briefing, and Defendant Kindlon respectfully joins in it.

## CONCLUSION

For the foregoing reasons and those stated in his moving papers, Defendant Kindlon respectfully requests that the Court deny Plaintiffs' motion for summary judgment as against him, grant his motion for summary judgment, and dismiss all claims asserted against him, together with such other relief as the Court deems just.

DATED: September 15, 2026
Albany, New York

Respectfully submitted,

JEFFERY V. JAMISON, Esq.
Albany County Attorney

Jason R. Thomas, Esq.
Assistant County Attorney
Attorney for Defendant Lee C. Kindlon,
as Albany County District Attorney
NDNY Bar Roll No. 706682
112 State Street, 6th Floor
Albany, New York 12207
Telephone: (518) 447-7110

To: All Counsel of Record (via CM/ECF)