UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

IVAN ANTONYUK; COREY JOHNSON; and ALFRED TERRILLE,
Plaintiffs,

1:22-CV-0986 (GTS/CFH)

v.

STEVEN G. JAMES, in his Official Capacity as Acting Superintendent of the New York State Police; WILLIAM FITZPATRICK, in His Official Capacity as the Onondaga County District Attorney; TOBIAS J. SHELLEY, in his Official Capacity as the Sheriff of Onondaga County; MARK RUSIN, in his Official Capacity as the Chief of Police of Syracuse; LEE C. KINDLON, in his Official Capacity as the District Attorney of Albany County,
Defendants.

---

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| WILLIAM J. OLSON, P.C.<br>Counsel for Plaintiffs<br>370 Maple Avenue W, Suite 4<br>Vienna, VA 22180 | ROBERT J. OLSON, ESQ. |
| AMBLER LAW OFFICES, LLC<br>Co-Counsel for Plaintiffs<br>115 S Hanover Street, Suite 100<br>Carlisle, PA 17013 | OLIVER M. KRAWCZYK, ESQ. |
| HON. LETITIA A. JAMES<br>Attorney General for the State of New York<br>Counsel for Defendant James<br>The Capitol<br>Albany, NY 12224 | JAMES M. THOMPSON, ESQ.<br>TIMOTHY P. MULVEY, ESQ.<br>PATICK R. BLOOD, ESQ.<br>Assistants Attorney General |
| HON. SUSAN R. KATZOFF<br>Corporation Counsel for the City of Syracuse<br>Counsel for Defendant Rusin<br>233 East Washington Street, 300 City Hall<br>Syracuse, NY 13202 | TODD M. LONG, ESQ.<br>DANIELLE R. SMITH, ESQ.<br>DARIENN BALIN, ESQ.<br>Assistants Corporation Counsel |

HON. ROBERT DURR
Onondaga County Attorney
Counsel for Defendants Fitzpatrick and Shelley
John H. Mulroy Civic Center, 10th Floor
421 Montgomery Street
Syracuse, NY 13202

JOHN E. HEISLER, JR.
Deputy County Attorney

HON. JEFFERY V. JAMISON
Albany County Attorney
Counsel for Defendant Kindlon
112 State Street, Room 600
Albany, NY 12207

JASON R. THOMAS ESQ.
Assistant County Attorney

THE TOWNE LAW FIRM, P.C.
Co-Counsel for Defendant Kindlon
500 New Karner Road
P.O. Box 15072
Albany, NY 12212

JOHN W. LIGUORI, ESQ.

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this civil rights action filed by the remaining three above-captioned individuals ("Plaintiffs") against the remaining five above-captioned employees of the State of New York or one of its counties or cities, are the following four motions: (1) Plaintiffs' motion for summary judgment; (2) Defendant Kindlon's cross-motion for summary judgment; (3) Defendant Rusin's cross-motion for summary judgment; and (4) Defendant James' cross-motion for summary judgment. (Dkt. Nos. 178, 182, 186, and 187.) Defendants Fitzpatrick and Shelly have not opposed any of these motions. (Dkt. No. 189.) For the reasons set forth below, each of these motions is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Relevant Procedural History

Familiarity with this action's procedural history, Plaintiffs' remaining claims, and the

factual allegations supporting those claims, is assumed in this Decision and Order, which is intended primarily for review by the parties (who have demonstrated an accurate understanding of that information in their briefs). The Court will add only that (1) the remaining Plaintiffs in this action are Ivan Antonyuk, Corey Johnson, and Alfred Terrille, (2) the remaining Defendants are Steven G. James, William Fitzpatrick, Tobias J. Shelly, Mark Rusin, and Lee C. Kindlon, all sued in their official capacities, and (3) Plaintiffs' depositions were taken in April 2026, and discovery ended on May 1, 2026.

**B. Summary of Parties' Arguments**

**1. Plaintiffs' Motion for Summary Judgment**

Generally, in support of their motion for summary judgment, Plaintiffs assert eight arguments. (Dkt. No. 178, Attach. 9.) First, Plaintiffs argue, they have standing for the following reasons: (1) in an earlier decision, this Court found that Plaintiffs have standing to challenge the Concealed Carry Improvement Act's ("CCIA") restrictions in each of the seven below-specified locations, and the Second Circuit affirmed that finding; and (2) Plaintiffs' declarations and recent testimony further confirm their standing. (*Id*. at 9-11 [attaching pages 5 through 6].)

Second, Plaintiffs argue, Section 265.01-e(2)(d)'s ban of concealed carry in "public parks" is unconstitutional for the following reasons: (1) the Supreme Court's recent decisions in *United States v. Rahimi*, 602 U.S. 680 (2024), *United States v. Hemani,* 608 U.S. 772 (2026), and *Wolford v. Lopez,* 146 S. Ct. 2032 (2026), confirm a Founding-era focus on relevant historical analogues and reject broad "crowded places" generalities; (2) as a result, the relevant historical analogues regard commons and wilderness carry at the Founding (unlike the Second Circuit's "public forum/crowded square" analogues from Reconstruction); (3) based on those relevant

historical analogues, even if "urban parks" could be sensitive, "rural parks" lack historical analogues; and (4) in the alternative, at a minimum, the Court can and should grant as-applied relief for Bowman Lake State Park, Thacher State Park, and similar non-urban parks. (*Id*. at 13-17 [attaching pages 9 through 13].)

Third, Plaintiffs argue, Section 265.01-e(2)(o)'s ban of concealed carry in "any [licensed] establishment . . . where alcohol is consumed" is unconstitutional for the following reasons: (1) the Supreme Court's decision in *Wolford* rejects reliance on "crowded space" bans in ordinary venues, and its decision in *Hemani* bars disarmament absent present intoxication; (2) Plaintiffs cite widespread founding-era historical analogues permitting armed presence in taverns, while the Second Circuit relied on short-lived Arizona 1889 and Oklahoma 1890 territorial bans on carry in saloons and general "crowded places" (which did not survive admission to statehood by more than a short period and which again *Wolford* rejects); (3) based on the relevant historical analogues, even assuming that the State may disarm intoxicated persons, it still cannot disarm all sober patrons in restaurants that serve alcohol; and (4) in the alternative, at a minimum, summary judgment should be granted as applied to sober carry, which Plaintiffs expressly seek. (*Id*. at 17-22 [attaching pages 13 through 18].)

Fourth, Plaintiffs argue, Section 265.01-e(2)(p)'s ban of concealed carry in "theaters" is unconstitutional for the following reasons: (1) the Supreme Court's decision in *Rahimi* characterizes "going armed" laws as affray-related, and *Wolford* rejects "crowded place" locational bans; (2) Plaintiffs emphasize that there are no founding-era bans on peaceable concealed carry, while the Second Circuit cited Reconstruction assembly bans and statutes of English/Northampton lineage, which regulate only terrorizing displays of firearms in a limited way that is not analogous to a flat ban in theaters; (3) based on the relevant historical analogues,

although theaters may be crowded, the State cannot declare theaters sensitive merely because they are crowded; and (4) in the alternative, at most, the State's analogues regulate affrays or brandishing, not peaceable concealed carriage for self-defense. (*Id*. at 22-25 [attaching pages 18 through 21].)

Fifth, Plaintiffs argue, Section 265.01-e(2)(d)'s ban of concealed carry in "zoos" is unconstitutional for the following reasons: (1) the Supreme Court's decision in *Wolford* rejects crowded-place theories, and the Supreme Court's decision in *Rahimi* cautions against high-level generalities that "water[] down the right"; (2) Plaintiffs rely on the absence of Founding-era prohibitions and note that teachers carried in Reconstruction-era schools, while the Second Circuit invoked late-19th century assembly laws and child-centered abstractions that were not grounded in the Founding era; (3) because the State's analogues postdate the Founding, they cannot establish a Founding-era tradition for such bans; and (4) based on the relevant historical analogues, even though zoos are educational, frequented by children, or crowded, those generalized categories cannot define sensitive places. (*Id*. at 25-26 [attaching pages 21 and 22].)

Sixth, Plaintiffs argue, Section 265.01-e(2)(n)'s ban of concealed carry in "airports" is unconstitutional for the following reasons: (1) Defendants never took an appeal from this Court's prior ruling preliminarily enjoining the enforcement of this provision; (2) as a result, the Second Circuit's vacatur of the preliminary injunction in "all … respects" (other than those portions it explicitly affirmed) appears to have been a scrivener's error; and (3) in any event, Defendants have not challenged this Court's reasoning in support of prior ruling preliminarily enjoining the enforcement of this provision. (*Id*. at 26 [attaching page 22].)

Seventh, Plaintiffs argue, Section 265.01-d(1)'s ban of concealed carry "on or in private property open to the public" (absent express consent or signage) is unconstitutional for the

following reasons: (1) previously, this Court preliminarily enjoined this prevision, and the Second Circuit affirmed this part of the preliminary injunction; and (2) in any event, the Supreme Court in *Wolford* definitively decided the issue when it struck down a similar Hawaii law. (*Id.* at 27-29 [attaching pages 23 and 24].)

Eighth, Plaintiffs argue, Section 265.01-d(1)'s ban of concealed carry "in private property not open to the public" is unconstitutional for the following reasons: (1) this question remains open, because this Court "did not analyze this aspect of the regulation under" *NYSRPA v. Bruen*, 597 U.S. 1 (2022), and thus the Second Circuit in *Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024) ("*Antonyuk II*") did "not decide … whether the Second Amendment includes a right to carry on private property not open to the public"; (2) as a threshold matter, the Second Amendment applies on private property not open to the public (contrary to this Court's prior ruling on the issue), because the Supreme Court's decision in *Wolford* confirms a finding that the law "restrict[s]" the bearing of arms (triggering both *Bruen*'s historical burden and the presumption of unconstitutionality); (3) Plaintiffs rely on the absence of Founding-era analogues establishing a default ban criminalizing carry on private land, and the Supreme Court's decision in *Wolford* assumes that the historical "enclosed" land analogues included some property that was generally *open* to the public; and (4) based on the relevant historical analogues, although owners may privately refuse consent, the State cannot compel speech or create a presumption that overrides owner silence. (*Id.* at 28-29 [attaching pages 24 and 25].)

**2. Defendant Kindlon's Response/Cross-Motion for Summary Judgment**

Generally, in opposition to Plaintiffs' motion, and in support of his own cross-motion, Defendant Kindlon asserts four arguments. (Dkt. No. 182, Attach. 3.) First, Defendant Kindlon argues, Section 265.01-e(2)(d)'s ban of concealed carry in "public parks" is

constitutional for the following reasons: (1) as a preliminary matter, the only park at issue in Plaintiffs' claims against him is Thacher State Park (given that Albany County Police would likely respond to a report of a gun incident there, even though the Thacher State Park is controlled by the Saratoga-Capital District State Park and Recreation Commission), because Saratoga State Park is not within the borders or jurisdiction of Albany County; (2) even though Plaintiffs argue that Thacher State Park is rural, it is more aligned with an "urban park" under the analysis set forth in the Second Circuit's decision, and should be treated as such an "urban" park, because of its (a) history as a public forum and place of social recreation, (b) 380,000 annual visitors, and (c) education center and year-round educational programs; (3) the most analogous historical analogues are not those of Plaintiffs (which regard carry in a commons and the wilderness) but of the historical regulations of crowded public forums analogous to urban parks (which were relied on by the Second Circuit); and (4) Plaintiffs' "hunting allowed but carry banned" argument fails because the Supreme Court's decision in *Bruen* approves bans on concealed (but not open) carry. (*Id*. at 7-9 [attaching pages 3 through 5].)

Second, Defendant Kindlon argues, Plaintiffs' claim challenging Section 265.01-e(2)(n)'s ban of concealed carry in "airports" should be dismissed for lack of standing for the following reasons: (1) the provision is unenforceable as preempted (under both a field preemption analysis and a conflict preemption analysis) by the Federal Aviation Act and TSA regulations governing safety and thus invalidated by the Supremacy Clause; and (2) Plaintiff Terrille cannot satisfy the imminence requirement due to his inability to be prosecuted under a voided criminal statute. (*Id*. at 9-15 [attaching pages 5 through 9].)

Third, Defendant Kindlon argues, Section 265.01-e(2)(p)'s ban of concealed carry in "movie theaters" is constitutional for the following reasons: (1) regardless of whether the

Supreme Court's decisions in *Wolford* and *Bruen* collectively dismantle the tradition of regulating firearms in quintessentially crowded places, those cases did nothing to abrogate the Second Circuit's finding of a tradition of firearm regulation in "spaces wherein people assemble for amusement, educational, or literary purposes"; (2) moreover, unlike in *Wolford* which struck Hawaii's law for lacking analogues, here, North Carolina's 1792 "fairs and markets" ban supports a carriage limit in movie theaters; and (3) Plaintiffs' criticism of the representative nature of the laws of Tennessee and Texas (which comprised only 5.3 percent of the national population) is without merit, because *Bruen* limited its representativeness analysis to an instance of a regulation impacting less than 1 percent of the national population. (*Id*. at 13-15 [attaching pages 9 through 11].)

Fourth, Defendant Kindlon argues, Section 265.01-e(2)(o)'s ban of concealed carry in "any [licensed] establishment . . . where alcohol is consumed" and Section 265.01-d(1)'s ban of concealed carry in "private property" are constitutional for the reasons stated by Defendant James in his motion papers. (*Id*. at 15 [attaching page 11].)[1]

**a. Plaintiffs' Response to Defendant Kindlon's Cross-Motion and Reply on Their Own Motion**

Generally, in opposition to Defendant Kindlon's cross-motion, and in reply on their own motion, Plaintiffs assert five arguments. (Dkt. No. 196.) First, Plaintiffs argue, as a threshold matter, because Defendant Kindlon failed to respond to Plaintiffs' Local Rule 56.1 Statement, Plaintiffs' supported factual assertions should be deemed admitted. (*Id*. at 4, n.1 [attaching page

[1] Ordinarily, such incorporation by reference is not permissible. *See Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *9 n. 65 (N.D.N.Y. Mar. 22, 2007) (Lowe, M.J.); *Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09–CV–0196, 2012 WL 2522651, at *2 (N.D.N.Y. June 27, 2012) (Suddaby, J.). However, here, the Court will permit it, given the extraordinary importance of the issues presented in the parties' motions.

1].)

Second, Plaintiffs argue, Defendant Kindlon fails to rebut their arguments regarding "public parks" for the following reasons: (1) Thacher State Park should not be deemed urban because, although it has some features of urban parks, it has rural characteristics matching the Second Circuit's description of rural parks (including but not limited to "vast forests, rolling farmlands, . . . mountains and valleys, lakes, ponds and free-flowing rivers"); (2) Defendant Kindlon's reliance on the fact that the park contains hotels and a park center and has a history of tourism does not convert the park into a carry-free urban zone because, under the Second Circuit's definition, "rural parks" can contain entire "towns and villages" and still remain "rural"; (3) the Second Circuit's "urban-rural distinction" is unworkable in practice and supports a facial invalidation of the CCIA parks ban; and (4) Defendant Kindlon's argument that Plaintiff Terrille is not harmed because he has the ability to openly carry while hunting is unsupported, because (a) New York State bans open handgun carry, (b) hunting carry is both seasonal (occurring from September 15 through February 28) and restricted (permitting a "[m]uzzle loader or shotgun only" to be carried and not "within 500 feet of any building, road, playground, or parking lot, and all trails"), and (c) Plaintiff Terrille seeks year-round concealed handgun carry for self-defense in park areas he routinely visits. (*Id*. at 4-7 [attaching pages 1 through 4].)

Third, Plaintiffs argue, Defendant Kindlon fails to rebut their arguments regarding "airports" for the following reasons: (1) Defendant Kindlon effectively admits Plaintiffs' Statement of Undisputed Material Facts regarding air travel with a checked firearm but merely argues lack of standing; (2) furthermore, by arguing that the CCIA airport provision is void due to federal preemption, Defendant Kindlon implicitly concedes the provision's unconstitutionality; (3) however, a prosecutor's opinion cannot void a criminal statute, and the

Second Circuit's vacatur left the ban in force absent a new injunction; and (4) declaratory and injunctive relief is necessary and appropriate, because other law enforcement members within Albany County (including the New York State Police) may still enforce the CCIA airport provision despite Defendant Kindlon's stance (given that police are charged to enforce laws until and unless they are declared unconstitutional). (*Id.* at 7-8 [attaching pages 4 and 5].)

Fourth, Plaintiffs argue, Defendant Kindlon fails to rebut their arguments regarding "theaters" for the following reasons: (1) Defendant Kindlon's reliance on a broad category of "spaces wherein people assemble for amusement, educational, or literary purposes" is inconsistent with *Wolford*, which rejected bans in places that Americans routinely visit in the course of their daily routines (such as restaurants and stores); (2) the Second Circuit's finding of a tradition of regulating firearms in "quintessentially crowded places" is overbroad (applying anywhere involving "large groups in confined locations") and cannot justify a narrow and specific ban in movie theaters (independent of whether they are quintessentially crowded places); (3) *Wolford* also undercuts Defendant Kindlon's reliance on "fairs and markets" analogues, which parallel and are equivalent to modern-day supermarkets, big-box stores and home-improvement stores, where bans were rejected; (4) *Rahimi* undermines the use of affray-based laws as historical analogues, and the sole state statute relied on by Defendant Kindlon (i.e., the 1792 North Carolina statute, which was copied nearly verbatim from the Statute of Northampton) is an outlier insufficient to show a historical tradition of regulation; (5) moreover, the territorial laws of Oklahoma and Arizona were short-lived (and did not long survive admission to the Union), and the remaining Tennessee and Texas laws covered too little population to establish a historical tradition of regulation (covering only 5.3 percent of the nation, and only 6.5 percent of one state's population); and (6) finally, state court decisions from

Missouri, Texas and Tennessee upholding such laws were based on misunderstandings of the scope of Second Amendment rights and cannot be construed as evidence that the statutes are in fact constitutional. (*Id*. at 9-12 [attaching pages 6 through 9].)

Fifth, Plaintiffs argue, Defendant Kindlon fails to rebut their arguments regarding "any [licensed] establishment . . . where alcohol is consumed" and private property for the reasons stated by them in reply to Defendant James' arguments on those subjects. (*Id*. at 12 [attaching page 9].)

**b. Defendant Kindlon's Reply on His Cross-Motion**

Generally, in reply on his own cross-motion, Defendant Kindlon asserts four arguments. (Dkt. No. 203.) First, Defendant Kindlon argues, the CCIA's "public parks" provision is constitutional for the following reasons: (a) the Second Circuit's decision in *Antonyuk II* forecloses Plaintiffs' facial challenge, because the Second Circuit held that the challenged statute has a "plainly legitimate sweep" as to urban parks, and the Supreme Court denied Plaintiffs' request for certiorari from the urban-rural line drawn by the Second Circuit; and (b) the provision is constitutional as applied to Terrille's intended carry in Thacher State Park, because (i) his intended carry is not only in a remote quarter of that park but in the developed, crowded, child-oriented spaces that fall on the urban side of the functional line drawn by the Second Circuit in *Antonyuk II*, and (ii) the Legislature excluded from the definition of "public park" the vast state wilderness of the Adirondack and Catskill preserves. (*Id*. at 4-7 [attaching pages 1 through 4].)

Second, Defendant Kindlon argues, Plaintiff Terrille lacks standing to pursue his "airports" provision challenge against Defendant Kindlon for the following reasons: (a) the only conduct Terrille intends is federally protected, not "proscribed" by the CCIA; (b) any presumption of enforcement is rebutted as to Defendant Kindlon, who has disavowed, in a

memorandum filed with this Court, any authority to prosecute the federally protected conduct Terrille intends; and (c) Plaintiffs' remaining theory (that Defendant Kindlon "does not control the New York State Police or other law enforcement officers," who "remain free to question, detain, and arrest" violators) defeats itself as against Defendant Kindlon, because an injury inflicted by officers who Defendant Kindlon does not control is not traceable to him. (*Id*. at 7-9 [attaching pages 4 through 6].)

Third, Defendant Kindlon argues, the Supreme Court's decision in *Wolford* did not unsettle the Second Circuit's holding in *Antonyuk II* that sustained the CCIA's "theater" provision for the following reasons: (a) *Wolford* decided only Hawaii's private-property default rule (i.e., its prohibition against licensed concealed-carry permit holders from carrying handguns on private property open to the public unless the property owner gives express permission), and it repeated the Supreme Court's assurance in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places," which include discrete locations such as theaters; and (b) *Antonyuk II* is the post-*Rahimi* law of this Circuit and binds this Court, because *Antonyuk II* (and its reliance on affray-derived analogues) was the product of a directive by the Supreme Court to reconsider an earlier decision in light of *Rahimi*, and the Supreme Court did not subsequently grant Plaintiffs' request for certiorari from *Antonyuk II*. (*Id*. at 9-12 [attaching pages 6 through 9].)

Fourth, Defendant Kindlon argues, he adopts by reference the State Defendants' arguments as to "any [licensed] establishment . . . where alcohol is consumed" and restricted locations. (*Id*. at 12 [attaching page 9].)

**3. Defendant Rusin's Response/Cross-Motion for Summary Judgment**

Generally, in opposition to Plaintiffs' motion, and in support of his own cross-motion, Defendant Rusin asserts eight arguments. (Dkt. No. 186, Attach. 37.) First, Defendant Rusin argues, Plaintiffs' critique of the historical analogues relied on by the Second Circuit in *Antonyuk II* is irrelevant because, pursuant to the "mandate rule" branch of the law-of-the-case doctrine (and, indeed, pursuant to the doctrine of vertical *stare decisis*), where (as here) the Second Circuit has decided a pure issue of law, the district court, at a later stage in the litigation, is under a duty to follow the Second Circuit's ruling on that issue, and is precluded from altering the Second Circuit decision. (*Id*. at 8-10 [attaching pages 4 through 6].)

Second, Defendant Rusin argues, generally, Plaintiffs' First Cause of Action must be dismissed as to Chief Rusin for lack of standing for the following reasons: (1) while Plaintiff Johnson is a resident of Onondaga County, he is not a resident of the City of Syracuse; (2) the Complaint and Plaintiff Johnson's accompanying declaration only identify one sensitive location within the City that he intends to visit with his weapon, namely, the Rosamond Gifford Zoo; and (3) although during discovery Plaintiff Johnson identified additional businesses purportedly within the City of Syracuse that he intends to visit with his weapon, he should be precluded from constructively amending his Complaint at this late stage of the proceeding. (*Id*. at 10-12 [pages 6 through 8].)

Third, Defendant Rusin argues, more specifically, with respect to the Rosamond Gifford Zoo, Plaintiffs' First Cause of Action against Chief Rusin must be dismissed for the following reasons: (1) because of the above-referenced "mandate rule," the Court must follow the Second Circuit's ruling in *Antonyuk II* that prohibiting firearms at zoos is consistent with the country's tradition of regulating firearms in "places of educational and scientific opportunity, places heavily trafficked by children, and places that are densely crowded," which term accurately

describes the Zoo; (2) alternatively, to access the County-owned Zoo, a visitor will necessarily drive through the City-owned Burnett Park, and the Second Circuit has ruled that the CCIA's restriction of firearms within a city park falls "within a national tradition of regulating firearms in often-crowded public squares"; and (3) moreover, the Zoo contains both County and School facilities, and the Supreme Court has held that a state may lawfully prohibit firearms at "schools and government buildings." (*Id*. at 12-14 [pages 8 through 10].)

Fourth, Defendant Rusin argues, with respect to Ponchito's Taqueria, Plaintiffs' First Cause of Action against Chief Rusin must be dismissed for the following reasons: (1) even assuming that Plaintiff Johnson "intends to visit" Ponchito's Taqueria someday, vague plans do not establish imminence or credible threat; and (2) in the alternative, *Antonyuk II* holds that prohibiting concealed carry in alcohol-serving venues "pass[es] constitutional muster." (*Id*. at 15-16 [pages 11 and 12].)

Fifth, Defendant Rusin argues, with respect to the Syracuse Mets baseball stadium and the Carousel Center Mall Movie Theater, Plaintiffs' First Cause of Action against Chief Rusin must be dismissed for the following reasons: (1) even though Plaintiff Johnson listed these venues during discovery, he offered no plan to visit them on a specific date or even in the near future, defeating standing; (2) in any event, Plaintiffs' position conflicts with *Antonyuk II*'s reliance on historical analogues permitting concealed carry in "discrete, densely crowded physical spaces wherein people assemble for amusement, educational, or literary purposes"; and (3) furthermore, private no-gun policies at the stadium, mall, and theater independently bar carry. (*Id*. at 16-17 [pages 12 and 13].)

Sixth, Defendant Rusin argues, with respect to locations outside of the City of Syracuse, Plaintiffs' First Cause of Action against Chief Rusin must be dismissed for the following

reasons: (1) contrary to Plaintiff Johnson's claim that various other locations that he intends to visit are within the City (for example, Byrne Dairy, Speedway, Wegmans, Buffalo Wild Wings, and the New York State Fairgrounds), he is incorrect; and (2) as a result, Plaintiff Johnson cannot assert a credible threat of prosecution by Chief Rusin for locations outside the City. (*Id.* at 18-19 [pages 14 and 15].)

Seventh, Defendant Rusin argues, with respect to vague and unidentified locations (including gas stations, grocery stores, home improvement stores and big box stores), Plaintiffs' First Cause of Action against Chief Rusin must be dismissed for the following reasons: (1) Plaintiff Johnson does not claim that any of these locations are within the City or otherwise within Chief Rusin's jurisdiction; and (2) as a result, Plaintiff Johnson has failed to allege an injury in fact. (*Id.* at 19-20 [pages 15 and 16].)

Eight, Defendant Rusin argues, Plaintiffs' Second and Third Causes of Action must be dismissed as to Chief Rusin for the following reasons: (1) these two causes of action concern the application process; and (2) Chief Rusin (and, by extension, the Syracuse Police Department) does not play any role in the review, processing or the decision-making process of firearm applications. (*Id.* at 16-17 [pages 20 and 21].)

**a. Plaintiffs' Response to Defendant Rusin's Cross-Motion and Reply on Their Own Motion**

Generally, in opposition to Defendant Rusin's cross-motion, and in reply on their own motion, Plaintiffs assert five arguments. (Dkt. No. 195, Attach. 2.) First, Plaintiffs argue, contrary to Defendant Rusin's argument that Plaintiffs' critique of the historical analogues relied on by the Second Circuit in *Antonyuk II* is irrelevant because of the "mandate rule," footnote 126 of the Second Circuit's decision in *Antonyuk II* permitted the submission of additional evidence

regarding the historical record in this case (a fact subsequently recognized by the Second Circuit in *Giambalvo v. Suffolk County*, 155 F.4th 163, 178 [2d Cir. 2025]), which Plaintiffs have done by showing that some of the "territorial laws critical to the Second Circuit's analysis in fact were 'short lived' and 'did not survive … admission' to statehood, rendering them inapplicable under the Second Circuit's own telling." (*Id.* at 4-5 [attaching pages 1 and 2].)

Second, Plaintiffs argue, Plaintiff Johnson has standing to challenge the CCIA's firearm bans in the Rosamond Gifford Zoo for the following reasons: (1) even if the Zoo is within a City park, Defendant's argument that "Plaintiffs do not … challenge … urban parks" is belied by the papers, which show that Plaintiffs (a) challenged the CCIA's parks ban "both facially and also as applied" and (b) seek facial invalidation due to the "'line-drawing issue'" presented by the Second Circuit's "urban-rural spectrum"; (2) contrary to Defendant Rusin's argument that the Supreme Court "held" that a state may lawfully prohibit firearms at "schools and government buildings," *Heller* "held" no such thing (and in fact welcomed challenges to its assumed exceptions); (3) in any event, this Court could craft as-applied relief reaching zoos and not certain government buildings and facilities within zoos (thus not resolving unchallenged government offices within zoos); and (4) Plaintiffs' merits argument relies not only on *Bruen*'s rejection of crowd-based sensitive-place expansions but on *Wolford*'s invalidation of broad carry bans in "many places that people routinely visit in the course of their daily routines." (*Id*. at 5-7 [attaching pages 2 through 4].)

Third, Plaintiffs argue, Plaintiff Johnson has standing to challenge the CCIA's firearm bans in Ponchito's Taqueria for the following reasons: (1) contrary to Defendant Rusin's argument that Plaintiff Johnson's vague plans to visit Ponchito's Taqueria do not establish imminence or credible threat, Plaintiff Johnson testified during his deposition that he visits

Ponchito's "at least two to three times a week," demonstrating regularity, recency, an ongoing course of conduct, and concrete future plans to continue frequenting Ponchito's Taqueria (including under the standard set forth in *Antonyuk II*); (2) as to the merits, contrary to the Second Circuit's observation in *Antonyuk II* that there is "no evidence in the record before us that the territorial laws" used to uphold the CCIA's restaurant ban "were short-lived, did not survive admission to the Union, or were later held unconstitutional," Plaintiffs present precisely that sort of evidence here, which Defendant does not rebut; and (3) in addition, Plaintiffs rely on (a) *Wolford*'s invalidation of carry bans in enclosed, "quintessentially 'crowded'" public places that "people routinely visit in the course of their daily routines," and (b) *Hemani*'s rejection of disarmament absent "present[] intoxicat[ion]." (*Id*. at 7-9 [attaching pages 4 through 6].)

Fourth, Plaintiffs argue, Plaintiff Johnson has standing to challenge the CCIA's firearm bans in the Syracuse Mets baseball stadium and the Carousel Mall movie theater for the following reasons: (1) with respect to the Syracuse Mets baseball stadium, it is enough that Plaintiff Johnson "intends to attend baseball games" while armed and, in any event, Plaintiffs do not challenge the CCIA with respect to stadiums; (2) similarly, with respect to the Carousel Mall movie theater, it is enough that Plaintiff Johnson "intends to . . . view movies" there while armed, which he does "at least once a quarter (and which he intends to do with regard to "'Heart of the Beast' in September 2026); (3) Defendant's argument about private firearm policies is likewise unavailing because (a) the policy at Carousel Mall is discretionary, subject to change, and apparently not posted, and (b) in any event, private policies do not justify the CCIA, which makes it a crime to carry in these locations; and (4) as to the merits, Defendant Rusin fails to respond to Plaintiffs' reliance on *Wolford* and *Hemani*, and the "short-lived" nature of the Second Circuit's cited territorial laws. (*Id*. at 9-12 [attaching pages 6 through 9].)

Fifth, Plaintiffs argue, with respect to "locations outside" Syracuse and other locations, Plaintiff Johnson has standing to challenge the CCIA's firearm bans, because (a) the locations specified by Defendant Rusin are all private properties held open to the public where firearms cannot be banned under *Wolford*, and (b) the Second Circuit affirmed this Court's finding that Plaintiff Johnson has standing to challenge the carry bans in "'gas stations, grocery stores, home improvement stores, [and] big box stores'" that are enforced by Defendant Rusin's predecessor. (*Id*. at 12 [attaching page 9].)

**b. Defendant Rusin's Reply on His Cross-Motion**

Generally, in reply on his own cross-motion, Defendant Rusin asserts seven arguments. (Dkt. No. 202, Attach. 5.) First, Defendant Rusin argues, *Antonyuk II* is binding on this Court for the following reasons: (1) Plaintiffs' have failed to cite any record evidence that was not presented to the Second Circuit and that demonstrates that the Second Circuit's reasoning was flawed as to any of the specific challenges raised by Defendant Rusin; and (2) Plaintiffs' reliance on *Wolford* and *Hemani* is misplaced because neither Supreme Court decision concerns the specific causes of action asserted against Defendant Rusin. (*Id*. at 4-5 [attaching pages 1 and 2].)

Second, Defendant Rusin argues, with respect to Plaintiffs' First Cause of Action, Plaintiff Johnson has failed to allege an injury in fact with respect to the Rosamond Gifford Zoo for the following reasons: (1) Plaintiffs fail to rebut Defendant Rusin's argument that *Antonyuk II* (which upheld zoos as a "sensitive location") is binding on this Court under the circumstances; (2) Plaintiffs do not dispute that Burnet Park is an urban park or that a visitor to the Zoo must necessarily travel through Burnet Park to reach the Zoo, but merely challenge the CCIA restriction in *all* parks without citing any authority for the proposition that urban parks cannot be

designated as "sensitive" under the CCIA; and (3) Plaintiffs fail to rebut Defendant Rusin's argument that the Zoo contains both educational facilities and County governmental buildings, and they fail to challenge the CCIA's restrictions as to schools and governmental buildings. (*Id*. at 5-7 [attaching pages 2 through 4].)

Third, Defendant Rusin argues, similarly, Plaintiff Johnson has failed to allege an injury in fact with respect to Ponchito's Taqueria for the following reasons: (1) Plaintiffs fail to rebut Defendant Rusin's argument that *Antonyuk II* (which upheld alcohol-serving restaurants as a "sensitive location") is binding on this Court under the circumstances; (2) the Supreme Court's decision in *Wolford* does not support Plaintiffs' argument that *Antonyuk II* should be reversed, because the Supreme Court did not address the Ninth Circuit's holding that a firearm restriction in alcohol-serving establishments comports with a historical tradition of prohibiting firearms at sensitive places; and (3) the Supreme Court's decision in *Hemani* also does not support Plaintiffs' argument that *Antonyuk II* should be reversed, because the Supreme Court did not discuss whether a state could lawfully restrict firearms at *alcohol*-serving restaurants. (*Id*. at 7-8 [attaching pages 4 and 5].)

Fourth, Defendant Rusin argues, similarly, Plaintiff Johnson has failed to allege an injury in fact with respect to the Syracuse Mets Baseball Stadium and the Carousel Center Mall Movie Theater for the following reasons: (1) Plaintiffs concede that they are not challenging the CCIA's stadium restriction; (2) Plaintiffs do not cite any additional evidence that would undermine the Second Circuit's holding that the Carousel Mall Theater is a "sensitive location"; (3) Plaintiffs' continued reliance on *Wolford* and *Hemani* is misplaced, because neither *Wolford* nor *Hemani* concerned whether a state could lawfully restrict firearms at a theater; and (4) Plaintiff Johnson testified that he is aware that the Carousel Mall has a policy against firearms, preventing him

from alleging an injury in fact caused by the CCIA. (*Id*. at 9-11 [attaching pages 6 through 8].)

Fifth, Defendant Rusin argues, similarly, Plaintiff Johnson has failed to allege an injury in fact with respect to locations outside the City for the following reasons: (1) Plaintiffs do not refute Defendant Rusin's argument that many of the locations they specified are outside the City; (2) although Plaintiffs argue that "the Speedway off Court Street" is within the City, and although that Speedway has a Syracuse mailing address, it is in fact not located in the City, but in the Town of Salina; and (3) although Plaintiffs argue that Plaintiff Johnson has standing to challenge non-City locations against other Defendants, Plaintiff Johnson has failed to assert such a claim against surrounding municipalities, and this claim against Defendant Rusin should be dismissed for lack of standing. (*Id*. at 11-12 [attaching pages 8 and 9].)

Sixth, Defendant Rusin argues, similarly, Plaintiff Johnson has failed to allege an injury in fact with respect to vague and unidentified locations, because Plaintiffs have failed to rebut this argument. (*Id*. at 12-13 [attaching pages 9 and 10].)

Seventh, Defendant Rusin argues, to the extent that Plaintiffs' Second and Third Causes of Action have survived to the summary judgment stage, they should be dismissed as against Defendant Rusin, because Plaintiffs do not oppose this argument. (*Id*. at 13 [attaching page 10].)

**4. Defendant James' Response/Cross-Motion for Summary Judgment**

Generally, in opposition to Plaintiffs' motion, and in support of his own cross-motion, Defendant James asserts twelve arguments. (Dkt. No. 187, Attach. 1.) First, Defendant James argues, Plaintiffs' challenge is facial and therefore disfavored for the following reasons: (1) Plaintiffs' challenge to the sensitive places and private property statutes is facial, because (a) Plaintiffs' sought, as relief, in pertinent part, "[a]n order . . . permanently enjoining Defendants . .

. from enforcing the challenged sections of the CCIA" and "[a]n order declaring that the challenged sections of the CCIA are unenforceable [and] unconstitutional . . . ," and (b) none of the challenged statutes have been applied against any Plaintiff; (2) because Plaintiffs' suit targets the law itself rather than any individual application, they must "establish that the law cannot be constitutionally applied against anyone in any situation"; and (3) Plaintiffs cannot meet this high standard, because the Supreme Court has repeatedly emphasized that sensitive location laws are "longstanding" and "presumptively lawful." (*Id*. at 19-21 [attaching pages 10 through 12].)

Second, Defendant James argues, the decision of Plaintiffs Johnson and Terrille to repeatedly invoke their Fifth Amendment right against self-incrimination during their lengthy depositions in this civil case enables the Court to exercise its discretion to draw adverse inferences that the testimony those witnesses would have offered would not have been favorable to them, thus establishing that they are excluded from the category of "law-abiding citizens" that, as a historical matter, the Second Amendment right has covered. (*Id*. at 21-23 [attaching pages 12 through 14].)

Third, Defendant James argues, Plaintiffs' "Second Amendment methodology" is ahistorical and contrary to Supreme Court and Second Circuit precedent for the following reasons: (1) contrary to Plaintiffs' argument that the Court should base its decision only on "Founding-era understandings," both Supreme Court and Second Circuit precedent recognize that, while the prevailing understanding of the right to bear arms in both 1791 and 1868 are "focal points" of the appropriate analysis, the prevailing understanding in other years are "not weightless" as long as it is not "inconsistent with" the prevailing understanding in 1791 and 1868; and (2) contrary to Plaintiffs' argument that the Court should strike down a law passed by the People's elected representatives based on silence alone (i.e., if there is no specifically on-

point Founding-era law in the record), (a) the appropriate analysis may include sources beyond historical analogues (including judicial decisions and scholarship), and (b) in any event, "it is not necessarily the case that, if no positive legislation from a particular time or place is in the record, it must be because the legislators then or there deemed such a regulation inconsistent with the right to bear arms.'" (*Id*. at 23-26 [attaching pages 14 through 17].)

Fourth, Defendant James argues, guns may constitutionally be prohibited from public parks for the following reasons: (1) although Plaintiffs recast as an "as-applied" challenge their challenge to the CCIA's "public parks" provision, Plaintiffs raised only a facial challenge in their Complaint, because (a) it makes no difference that the words "as applied" appear in a complaint that otherwise says nothing about any particular application, let alone any particular park or any as-applied relief, and (b) Plaintiffs' claims and requested remedies regarding the public parks provision "reach beyond the particular circumstances of these plaintiffs" (and thus they "must therefore satisfy [the] standards for a facial challenge"); and (2) in the alternative, even if Plaintiffs have properly raised an as-applied challenge, applying the public parks provision to rural parks does not "infringe the historical understanding" of the Second Amendment, because (a) America's system of rural state and national parks share their origins and purposes with their urban counterparts (as places for contemplating natural scenery and for active play), making the laws regarding urban parks relevantly similar to the public parks provision, (b) in any event, although the Second Circuit "doubt[ed]" (at the preliminary-injunction stage) "that the evidence presently in the record" addressed rural parks, the record has changed, (c) specifically, the historical tradition of gun regulation in rural parks is evident from the regulation of guns in Yosemite (1864), Yellowstone (1872), Mackinac (1875), Niagara Falls (1883), and Sequoia (1890), and (d) of the four parks named in Plaintiffs' motion for summary judgment, three are

state parks (Bowman, Thacher, and Saratoga Spa) that fall directly in the lineage of regulating firearms in state and national parks, while the fourth (Mercer Park in the middle of Baldwinsville) is indistinct from a rural park. (*Id*. at 26-31 [attaching pages 17 through 22].)

Fifth, Defendant James argues, the CCIA's provision prohibiting guns in "any [licensed] establishment . . . where alcohol is consumed" is constitutional for the following reasons: (1) four separate and sufficient historical traditions justify this provision, specifically, (a) analogues prohibiting intoxicated persons from carrying or purchasing firearms, (b) analogues regulating firearms in locations frequented by concentrations of vulnerable or impaired people, here intoxicated individuals, (c) analogues regulating firearms in crowded places (such as fairs and markets) in order to keep such spaces peaceful, and (d) analogues regulating firearms at social gatherings (such as parties and ballrooms); (2) the Supreme Court's decision in *Wolford* did not overrule (even implicitly) the Second Circuit's analysis as to crowded spaces, and in any event such a determination would be for the Second Circuit to render, not this Court, under the circumstances; (3) although Plaintiff argues that the Arizona and Oklahoma laws regarding "drinking saloons" and "any place where intoxicating liquors are sold" did not survive those territories admission to statehood, that fact is immaterial because the laws were duplicative of other laws, and the conduct remained prohibited well into the 20th century; and (4) even if Plaintiffs Terrille and Johnson abstain from drinking, (a) they do not plead a challenge on that basis, and (b) in any event, this sensitive-place rule operates categorically and not based on individual circumstances. (*Id*. at 31-37 [attaching pages 22 through 28].)

Sixth, Defendant James argues, the CCIA's provision prohibiting guns in "theaters" is constitutional for the following reasons: (1) contrary to Plaintiffs' argument that *Bruen* and *Wolford* repudiated the Second Circuit's recognition of a "tradition of regulating firearms in

quintessentially crowded places," in fact those cases held no such thing, *Bruen* finding only that the law cannot "effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the [NYPD]," and *Wolford* leaving undisturbed Hawaii's prohibition of firearms in "any 'stadium, movie theater, or concert hall'"; (2) while the record does not include regulations that single out theaters for protection, the Second Circuit has discounted that historical "silence," and Defendants' expert (Dr. Rivas) has explained that American cities at the time of the founding "featured relatively few sizeable buildings," and none comparable to modern Broadway theaters or concert arenas; (3) while Plaintiffs attempt to discount the common-law tradition of prohibiting weapon carriage in "fairs and markets," the Supreme Court's opinion in *Rahimi* demonstrates that these laws inform our historical understanding in more than just the narrow situation in which they applied; and (4) in the alternative, 19th-century bans at social, literary, and educational gatherings would certainly cover entertainment and recreational spaces such as theaters. (*Id*. at 37-41 [attaching pages 28 through 32].)

Seventh, Defendant James argues, the CCIA's provision prohibiting guns in "zoos" is constitutional for the following reasons: (1) the Supreme Court in *Bruen* "assume[d] it settled" that carrying weapons in sensitive locations like schools "could be prohibited consistent with the Second Amendment," and declared that "modern regulations . . . are constitutionally permissible" when they "prohibit[] the carry of firearms in new . . . sensitive places" that are analogous to schools; (2) as a result, the Second Circuit in *Antonyuk II* connected zoos to three different separate and sufficient historical traditions, specifically, (a) "places of educational and scientific opportunity," (b) "places heavily trafficked by children," and (c) "places that are densely crowded"; and (3) Plaintiffs' argument that the "logical conclusion" of the Second

Circuit's reasoning would "justify banning the Second Amendment in nearly all public places" ignores governing precedent, which establishes that sensitive-location laws may apply to "discrete, densely crowded physical spaces" wherein people assemble for educational or amusement purposes, such as zoos. (*Id*. at 41-43 [attaching pages 32 through 34].)

Eighth, Defendant James argues, Plaintiffs' challenge to the CCIA's provision prohibiting guns in "airports" fails for lack of standing and on the merits for the following reasons: (1) Plaintiff Terrille lacks injury from this law that is "actual or imminent, not conjectural or hypothetical," because 18 U.S.C. § 926A permits the checked transport of unloaded and locked firearms "[n]otwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof"; (2) to the extent that Plaintiffs may argue on reply that they intend their challenge to cover carrying a weapon on airport grounds *outside* of federal law and regulations, they have repeatedly disclaimed that argument in their Complaint, their moving papers, Plaintiff Terrille's written affidavits, and his deposition testimony; and (3) in any event, even if such a challenge had been pled and lodged, it would fail on the merits, because the categorization of airports as sensitive places is (a) justified by "our historical tradition of regulating firearms in quintessentially crowded places" as recognized by the Second Circuit in *Frey* and (b) alternatively justified by "more nuanced approach" required of dramatic new technologies such as airports. (*Id*. at 43-44 [attaching pages 34 and 35].)

Ninth, Defendant James argues, Plaintiffs' challenge to the law as applied to "private property" that is open to the public is moot for the following reasons: (1) there is no reasonable expectation that any Plaintiff will have the private property provision enforced against them regarding any property open to the public, because of (a) the Second Circuit's affirmance of the permanent injunction in *Christian v. James,* 176 F.4th 189 (2d Cir. 2026), and (b) the Supreme

Court's holding in *Wolford*; and (2) indeed, in *Giambalvo*, the Second Circuit found a *preliminary* injunction to be sufficient to moot a challenge to N.Y. Penal Law § 400.00(1)(o)(iv) (requiring the submission of a list of former and current social media accounts of a concealed carry permit applicant). (*Id*. at 45-47 [attaching pages 36 through 38].)

Tenth, Defendant James argues, any challenge to the law as applied to "private property" that is *closed* to the public fails for the following reasons: (1) Plaintiffs did not plead a challenge to locations closed to the public, because (a) the Complaint does not include any allegation that any of the remaining three Plaintiffs wishes to carry a weapon onto private property closed to the public (and, in his deposition, Plaintiff Johnson invoked the Fifth Amendment when questioned about the subject), and (b) the objection to the law by Plaintiffs Antonyuk and Terrille that it would require them to post signs or otherwise give consent for other people to bring a gun into their homes, does not give rise to a Second Amendment claim in that it fails to implicate *those Plaintiffs'* right to carry a gun or engage in armed self-defense; and (2) even if this claim were properly pled, it would fail on the merits, because (a) the Second Amendment does not confer a right to take guns into other people's homes without their knowledge or consent (but only protects a right to keep and bear arms for self-defense in one's own home or in public), (b) Plaintiffs' position is in no way supported by the Supreme Court's decision in *Wolford* (which took no steps to revisit a prior determination in the case that upheld Hawaii's law "with respect to private property that is closed to the public"), and (c) Plaintiffs' position is contrary to the historical record (which permitted laws requiring an owner's consent to come onto enclosed private property otherwise closed to the public). (*Id*. at 47-52 [attaching pages 38 through 43].)

Eleventh, Defendant James argues, Plaintiffs' remaining compelled-speech claim is without merit for the following reasons: (1) this claim is asserted only by a plaintiff who has

been dismissed from this action (Sloane), and in any event Plaintiffs' argument regarding the claim is limited to footnote 35 of their brief, and thus inadequately asserted; (2) moreover, N.Y. Penal Law § 265.01-d does not compel anyone to speak, because an owner is free to give consent or not, and is not required to utter a particular message favored by the Government; (3) indeed, even if the default rule were flipped (such that owners were required to speak to exclude guns), the speech required would be "just a fact of life" (as observed by the Second Circuit in *Antonyuk II*); and (4) in any event, even if the law regulated speech, it would pass the applicable time-place-and-manner test. (*Id*. at 52-53 [attaching pages 43 and 44].)

Twelfth, Defendant James argues, even if the Court were to rule in Plaintiffs' favor, any injunction (a) must be limited to the individual Plaintiffs (and no broader than necessary), and (b) should be stayed for two weeks to allow an appeal (to avoid irreparable injury and confusion). (*Id*. at 53-54 [attaching pages 44 and 45].)

**a. Plaintiffs' Response to Defendant James' Cross-Motion and Reply on Their Own Motion**

Generally, in opposition to Defendant James' cross-motion, and in reply on their own motion, Plaintiffs assert nine arguments. (Dkt. No. 201, Attach. 2.) First, Plaintiffs argue, Defendant James may not reframe their as-applied challenge to a facial challenge for the following reasons: (1) in their Complaint, Plaintiffs stated three times that they were bringing both facial and as-applied challenges (e.g., regarding parks and alcohol-premises), they pled facts supporting their as-applied challenges, and they developed evidence during discovery supporting their as-applied challenges; (2) the Second Circuit in *Antonyuk II* neither characterized nor treated Plaintiffs' challenges as only facial, but left the door open to as-applied relief; and (3) in *NAGR v. Lamont*, 153 F.4th 213 (2d Cir. 2025), the Second Circuit rejected Defendant's rigid

facial/as-applied construct, and acknowledged that the distinction between facial and as-applied challenges goes to the breadth of the remedy employed by the court, not what must be pleaded in a complaint. (*Id*. at 6-8 [attaching pages 1 through 3].)

Second, Plaintiffs argue, Defendant James' attempt to condition one constitutional right (to keep and bear arms under the Second Amendment) on the surrender of another constitutional right (against self-incrimination) is "intolerable" (as characterized by the Supreme Court in *Simmons v. United States*, 390 U.S. 377 [1968]) for the following reasons: (1) no adverse inferences may be drawn against Plaintiffs Johnson and Terrille because Defendant James has failed to present independent, probative evidence that Plaintiffs engaged in criminal activity; (2) many of the questions asked of Plaintiffs Johnson and Terrille during their depositions (which prompted their invocation of their Fifth Amendment right) were irrelevant to this case; (3) the questions were vague and open ended, rendering it likely unwise for anyone to answer them; (4) Defendant James' questions regarding the particulars of these two Plaintiffs' challenge fare no better, and only demonstrate the self-serving circularity of his argument; (5) the Second Amendment does not turn on one's "law-abiding" status, whatever that ambiguous term may mean; (6) the Second Circuit's decision in *Zherka v. Bondi*, 140 F.4th 68, 89-90 (2d Cir. 2025), does not, as Defendant James claims, stand for the point of law that the Second Amendment protects only law-abiding citizens; and (7) no other constitutional right may, as Defendant argues the Second Amendment does, disappear on the mere inference of criminality. (*Id*. at 8-12 [attaching pages 3 through 7].)

Third, Plaintiffs argue, the Court should decline Defendant James' invitation to engage (in disregard Supreme Court precedents) in a "freewheeling reliance" (as phrased by Justice Barrett in her concurrence in *Bruen*) on *all* historical time periods for the following reasons: (1)

rather than being "[a]historical," Plaintiffs' approach simply focuses on the 1791 time period focused on in several Supreme Court's precedents (including *Heller*, *Bruen*, and *Hemani*); and (2) looking far beyond the Founding time period when the Founding-era record fails to support a modern gun control law violates *Bruen* by relying on speculation instead of on "affirmative[] pro[of]" and by failing to "use analogies to those historical regulations" that did exist at the Founding. (*Id*. at 13-14 [attaching pages 8 and 9].)

Fourth, Plaintiffs argue, the CCIA's provision regarding "public parks" violates the Second Amendment, facially and as applied, for the following reasons: (1) Defendant James' attempt to reframe Plaintiffs' challenge as merely a facial one falls flat, because the Second Circuit's decision in *Christian* does not foreclose Plaintiffs' as-applied challenge here (which they clearly preserved with great specificity); and (2) Defendant James' attempt to rebut Plaintiffs' as-applied challenge fails, because there is no historical tradition of banning firearms in rural parks, which is a tradition "doubt[ed]" by the Second Circuit in *Antonyuk II*, and a tradition that contradicts the historical record (despite whatever conclusory opinion is rendered by Defendant James' expert). (*Id*. at 14-19 [attaching pages 9 through 14].)

Fifth, Plaintiffs argue, the CCIA's gun ban in "any [licensed] establishment . . . where alcohol is consumed" is unconstitutional for the following reasons: (1) Defendant James' "location-based" argument fails, because (a) the militia laws he relies on did not prohibit firearms in all places serving alcohol, (b) examples of laws prohibiting firearms at all places serving alcohol are sparse and short-lived, and (c) examples of laws banning intoxicated persons from acquiring or carrying firearms govern behavior and not places; (2) Defendant James' "vulnerable populations" argument fails, because (a) it incoherently presupposes that drunk people (who are too impaired to "defend themselves effectively") need to be protected from

armed law-abiding licensed concealed carriers, while simultaneously being a danger to *dis*armed law-abiding concealed carriers, and (b) it conflicts both with *Rahimi* and *Hemani* (which focused on "a clear threat of physical violence to another" and dangerousness) and with the record in this case (which is devoid of evidence that Plaintiff Terrille is a threat to anyone); (3) Defendant James' "crowded spaces" argument fails, because (a) *Wolford* undermines the notion that firearms may be banned in merely "crowded" areas, (b) the Second Circuit's crowded places analysis pointed only to the 1889 Arizona and 1890 Oklahoma territorial laws that Plaintiffs have now rebutted, and (c) if places could be "sensitive" simply because they are crowded, the general right to publicly carry arms would be eviscerated; (4) Defendant James' "social settings" argument fails, because *Wolford* undermines the notion that firearms may be banned in "places that people routinely visit in the course of [their] daily routines," including specifically "restaurants"; and (5) Defendant James' remaining arguments fall flat, because (a) his attempt to rebut Plaintiffs' argument about the short-lived nature of Arizona and Oklahoma territorial laws relies on other laws regarding "assemblies" without showing that those "assembly" laws were ever enforced against saloons, (b) his reliance on *Wolford* ignores the fact that Hawaii's prohibition of guns at any "restaurant serving alcohol" was not at issue on appeal and the fact that *Wolford* protects the right of ordinary Americans to carry a gun "in the course of their daily routines," (c) his reliance on *Hemani* misses the point that, if even a regular drug user cannot be disarmed when not under the influence, then a sober person cannot be either, and (d) his argument that Plaintiffs brought only a "facial" challenge to the CCIA's alcohol-premises ban is a blatant mischaracterization of the pleadings (not to mention the Supreme Court's flexible treatment of facial/as-applied distinctions). (*Id.* at 19-26 [attaching pages 14 through 21].)

Sixth, Plaintiffs argue, the CCIA's ban on guns in "theaters" is unconstitutional for the

following reasons: (1) Defendant James' argument that a prohibition on guns in "crowded" places is not a prohibition on "public carriage generally" ignores the effect of the CCIA as prohibiting guns virtually everywhere; (2) his reliance on *Wolford* ignores the fact that Hawaii's prohibition of guns at any "stadium, movie theater, or concert hall" was not at issue on appeal and the fact that *Wolford* protects the right of ordinary Americans to carry a gun in places that people frequent in their daily lives; (3) his argument that "social, amusement, literary, or educational gatherings" analogues naturally cover theaters contravenes Justice Barrett's concurrence in *Rahimi*, which warns against reading a principle "at such a high level of generality that it waters down the right"; (4) his expert's assertion that large theaters generally did not exist at the Founding is factually incorrect, given large theaters in Williamsburg, Philadelphia, New York City, Charleston, Halifax, and Annapolis; (5) his argument that "affray" laws are relevantly similar is unpersuasive, because they focused on dealing with dangerous persons, while this provision of the CCIA targets people who are not dangerous and do not pose a danger to anyone; (6) his reliance on laws regarding "public gatherings" is suspect because those laws included churches (where, at the Founding, some jurisdictions required firearms to be carried) and those laws were otherwise from the late 19th century and are distinguishable; and (7) his expert's reliance on an 1804 regulation banning firearms in ballrooms in New Orleans is distinguishable because it was effectively an example of wartime governance. (*Id*. at 27-33 [attaching pages 22 through 28].)

Seventh, Plaintiffs argue, the CCIA's ban on guns in "zoos" is unconstitutional for the following reasons: (1) Defendant James' reliance on laws banning guns in schools is flawed because *Bruen* never approved of banning guns in schools but merely referenced *Heller*'s presumption that list of settled sensitive places included "legislative assemblies, polling places,

and courthouses" (and indeed acknowledged the presence of guns in schools historically); (2) Defendant James' "expert" report supports this fact, demonstrating that virtually every (if not every) school gun ban was directed at "students," "pupils," and "cadets," not faculty, parents, or visitors; (3) in any event, zoos (which are open to the general public) are not relevantly similar to schools (which are generally closed to the public, because they are responsible for the safety, care, and custody of children when away from their parents); (4) Defendant James' reliance on the Second Circuit's finding that "70 percent of zoo visitors come accompanied by children" is fallacious because, it would support a ban in grocery stores, where 87 percent of parents report bringing their kids with them, and contravene *Wolford*'s rejection of the notion that guns can be banned in "grocery stores"; (5) Defendant James' argument that guns can be banned in zoos because "vulnerable populations congregate" there suffers from the same problem as disarming sober patrons of locations that serve alcohol and lacks a historical basis (of disarming the entire general public in order to protect a purported "vulnerable population"); and (6) as one district judge found, "zoos were scattered throughout the Nation during and after the Reconstruction era," yet most visitors "could apparently carry their arms at the zoo without fear of criminal penalties." (*Id*. at 33-37 [attaching pages 28 through 32].)

Eighth, Plaintiffs argue, the CCIA plainly prohibits the "possession" of firearms in "airports," so Plaintiffs have standing to challenge it for the following reasons: (1) this prohibition broadly covers the act of checking one's firearm with their luggage in accordance with TSA regulations, which requires declaring the firearm; (2) Defendant James' argument that the New York State Police would "not enforce [the CCIA] in such a manner as to prevent persons who comply with the federal statute and regulatory regime from taking their gun into an airport to check it in their baggage" is a suspiciously convenient change of position and

contradicted by examples of airport detentions and arrests over checked firearms; (3) in any event, 18 U.S.C. § 926A does not deprive Plaintiff Terrille of standing to challenge this provision's interference with his planned trip, because (a) police are charged to enforce laws until and unless they are declared unconstitutional, and (b) even if Defendant James temporarily stops enforcement, he is free to change his mind about federal law at any time and resume enforcement; and (4) Defendant James' position is further undermined by the fact that he has continued to argue, alternatively, that "prohibiting guns in airports is fully 'consistent with the principles that underpin our regulatory tradition,'" treating the checking of a firearm as an act of grace. (*Id*. at 37-39 [attaching pages 32 through 34].)

Ninth, Plaintiffs argue, their challenge to the CCIA provision regarding private property open to the public is not moot for the following reasons: (1) the Supreme Court's decision in *Wolford* does not moot this challenge, because *Wolford* involved a Hawaii law, and said nothing about New York's independent statute (other than providing conclusive proof that Plaintiffs should prevail here); and (2) the Second Circuit's decision in *Giambal*vo does not moot this challenge, because *Giambal*vo involved an interlocutory appeal of the denial of a motion for preliminary injunction only, and not the broader (and permanent) relief Plaintiffs seek. (*Id*. at 39-40 [attaching pages 34 and 35].)

Tenth, Plaintiffs argue, upon further consideration, they do not oppose dismissal without prejudice of their First and Second Amendment claims against the CCIA's provision regarding private property *not* open to the public. (*Id*. at 40 [attaching page 35].)

**b. Defendant James' Reply on His Cross-Motion**

Generally, in reply on their own cross-motion, Defendant James asserts six arguments. (Dkt. No. 204.) First, Defendant James argues, Plaintiffs cannot use their summary judgment

motion papers to raise as-applied theories that they did not plead in their Complaint, because they fail to respond to Defendant James' argument that the only relief sought in the Complaint was explicitly facial in nature, challenging the statute as a whole. (*Id*. at 5-6 [attaching pages 1 and 2].)

Second, Defendant James argues, the Court must not countenance Plaintiffs' refusal to answer fundamental questions at their depositions (particularly where they seek to rely on post-deposition declarations asserting statements regarding their law-abidingness and places where they carry guns). (*Id*. at 6-8 [attaching pages 2 through 3].)

Third, Defendant James argues, Plaintiffs have not undermined the strong history and governing case law supporting the challenged measures for the following reasons: (1) the Second Amendment does not require guns in public parks; (2) the Second Amendment does not require guns in establishments where alcohol is served; (3) the Second Amendment does not require guns in theaters; (4) the Second Amendment does not require guns in zoos; and (5) Plaintiffs cannot manufacture a case or controversy regarding airports, and the Second Amendment does not require guns there. (*Id*. at 8-19 [attaching pages 4 through 15].)

Fourth, Defendant James argues, Plaintiffs' private property claim regarding property open to the public is moot, or fails on the merits; and they do not oppose the dismissal of their private property claim regarding property *not* open to the public. (*Id*. at 19 [attaching page 15].)

Fifth, Defendant James argues, the Court should grant Defendants a 14-day stay of any injunction issued, because Plaintiffs have failed to oppose Defendant James' request for that stay. (*Id*.)

**C. Statement of Undisputed Material Fact on Plaintiffs' Motion**

Generally, the following facts have been asserted and supported through citations to

admissible record evidence by Plaintiffs in their Statement of Material Facts, and either expressly admitted or denied without a citation to admissible record evidence in matching numbered paragraphs by Defendants in their Responses thereto. (*Compare* Dkt. No. 178, Attach. 8 [Plfs.' Rule 56.1 Statement] *with* Dkt. No. 186, Attach. 36 [Def. Rusin's Rule 56.1 Response] *and* Dkt. No. 187, Attach. 2 [Def. James' Rule 56.1 Response] *and* Dkt. No. 182 [containing no Rule 56.1 Response by Def. Kindlon].)

1. Plaintiff Corey Johnson is an adult male citizen of the State of New York and the United States, and is a law-abiding person.[2]

---

[2] Although Defendant James disputes that Plaintiff Johnson is a law-abiding person, the only record evidence James cites in support of that dispute are portions of Johnson's deposition transcript, in which he invokes his Fifth Amendment right against self-incrimination (when asked to answer various questions regarding his ownership of long guns, semi-automatic rifles, and automatic weapons, and his carriage of his handgun). (Dkt. No. 187, Attach. 2, at ¶ 1.) However, "an invocation of the Fifth Amendment is no ground at all for an inference of guilt or of criminal proclivities." *U.S. ex rel. Belfrage v. Shaughnessy*, 212 F.2d 128, 130 (2d Cir. 1954); *see also U.S. v. Okatan*, 728 F.3d 111, 120 (2d Cir. 2013) ("[W]here, as here, an individual is interrogated by an officer, even prior to arrest, his invocation of the privilege against self-incrimination and his subsequent silence cannot be used by the government in its case in chief as substantive evidence of guilt."). Granted, this is a civil proceeding, in which "courts *may* instruct juries that they can draw an adverse inference from the invocation." *In re 650 Fifth Avenue and Related Properties*, 934 F.3d 147, 171 (2d Cir. 2019) (emphasis added). However, here, the Court declines to permit such a possible adverse inference, because the danger of unfair prejudice substantially outweighs any probative value of that inference under Fed. R. Evid. 403. *See Woods v. START Treatment & Recovery Ctr., Inc.*, 864 F.3d 158, 170-71 (2d Cir. 2017) ("Such adverse inferences are appropriately admitted, however, only if they are relevant, reliable, and *not unduly prejudicial*.") (emphasis added). The Court renders this finding for three independent reasons: (1) the criminal nature of this particular inference; (2) the criminal nature of the CCIA; and/or (3) the procedural posture of this action, which involves motions that hinge on undisputed *factual* assertions, not undisputed factual *inferences*. *Cf. Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts). Regarding this third reason, the Court notes that the adverse inference would be unaccompanied by any other evidence disputing that Johnson is law abiding. *See, e.g., In re Inflight Newspapers, Inc.*, 423 B.R. 6, 17 (Bankr. E.D.N.Y. 2010) ("An adverse inference against the party invoking the Fifth Amendment, alone, is not enough to establish the absence of a genuine issue of material fact."); *Centennial*

2. Johnson is licensed to carry a firearm in New York.

3. Johnson regularly visits and in the future plans to continue to visit several parks, including Bowman Lake State Park, which allows hunting.

4. Johnson fishes frequently at Mercer Park.

5. Johnson wishes to carry his firearm at restaurants that serve alcohol.

6. Johnson does not consume alcohol while carrying his firearm.

7. Johnson wishes to carry his firearm in the movie theater.

8. Johnson wishes to carry his firearm in zoos, specifically the Rosamond Gifford Zoo.

9. Johnson wishes to carry his firearm on private property not open to the public.

10. Johnson visits Mercer Park at least once a month and Bowman Lake State Park at least once a quarter.

11. Johnson visits the movie theater at least once a quarter and intends to see Heart of the Beast in the theater, which will be released in September 2026.

---

*Life Ins. Co. v. Nappi*, 956 F. Supp. 222, 228 (N.D.N.Y.1997) ("An adverse inference against the party invoking the Fifth Amendment by itself is insufficient to establish the absence of a genuine issue of material fact."); *Mt. Airy Ins. Co. v. Millstein*, 928 F. Supp. 171, 174 (D.Conn.1996) ("[I]nvocation of the fifth amendment does not relieve a litigant from otherwise presenting proof in support of his burden.").

Having said that, the Court has eliminated Plaintiffs' original assertion that Plaintiff Johnson "has no qualification under state or federal law which would prohibit him from possessing a firearm" to which Defendant James has objected as a legal conclusion. That assertion does not appear in Defendant James' cited declaration, which states merely that "[I] currently possess[] and ha[ve] maintained an unrestricted New York carry permit since 2019. I am eligible to possess and carry firearms in the State of New York, and have met all the qualifications for licensure, including having good moral character." (Dkt. No. 1, Attach. 3, at ¶ 3.) Granted, although the latter sentence may also involve a legal conclusion, the former sentence does not. However, the former sentence essentially appears in Paragraph 2 of Plaintiffs' Statement of Facts, which Defendants do not dispute.

12. Johnson eats at restaurants that serve alcohol, usually at least once a week, including LongHorn Steakhouse, Texas Roadhouse, Outback Steakhouse, and Ruby Tuesday.

13. Johnson plans to continue to visit Rosamond Gifford Zoo in July 2026 and again in September 2026, and then once about every two months thereafter.

14. Johnson "routinely carr[ies] [his] firearm when out in public," and he regularly shops at various locations in Onondaga County, such as "gas stations, grocery stores, home improvement stores, and big box stores."

15. Johnson purchases gasoline from gas stations about once per week, usually at a Byrne Daily that has a mailing address in Mattydale, New York.[3] Johnson shops for groceries at Tops in Baldwinsville about once per week.

16. Plaintiff Alfred Terrille is an adult male citizen of New York and the United States, and is a law-abiding person.[4]

17. Terrille possesses an unrestricted New York carry permit, which he has held since 1994.

---

[3] The location of the above-referenced gas station's mailing address in Mattydale is supported by the transcript of Johnson's deposition of April 29, 2026 (Dkt. No. 186, Attach. 2, at 178-79) and by Exs. 26 and 32 to the Declaration of Attorney Long (Dkt. No. 186, Attach. 27 and 33). Granted, the above-referenced gas station's location in Syracuse is supported by Johnson's Supplemental Declaration of June 30, 2026. (Dkt. No. 178, Attach. 5, at ¶ 12.) However, a party moving for summary judgment may not rely on a post-deposition affidavit that contradicts the affiant's deposition testimony without amplification or explanation. *See Mack v. U.S.*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").

[4] The Court has modified Plaintiffs' original factual assertions regarding Plaintiff Terrille in the above-referenced paragraph for the same reason that the Court modified Plaintiffs' original factual assertions regarding Plaintiff Johnson in Paragraph 1. *See, supra,* note 2 of this Decision and Order.

18. Terrille often visits Thacher State Park.

19. Terrille also visits Saratoga Spa State Park and the Crossings of Colonie.

20. Terrille intends to continue to visit these parks routinely, including Saratoga Spa State Park, where intends to visit this week and every week thereafter.

21. Terrille regularly visits Town of Colonie Park and visited on June 30, 2026. He intends to visit this park "almost every day" and intends to "keep visiting this park almost every day."

22. Terrille wishes and intends to carry his firearm at restaurants that serve alcohol, but for the challenged laws.

23. Terrille does not consume alcohol.

24. Terrille intends to continue to eat at restaurants that serve alcohol, including Buffalo Wild Wings about twice per year, and intends to do so again in the next six months.

25. Terrille intends to eat at Demarcos in August and intends to eat at Bentleys once a year on his birthday in September.

26. Terrille visits Stewart's in Latham and Cumberland Farms in Cohoes approximately every day for coffee, and he fills up his vehicle with gasoline at those places.

27. Terrille shops at Walmart in Clifton Park about once per week.

28. Terrille intends to carry his firearm at theaters.

29. Terrille intends to bring his firearm with him to the airport in his checked baggage.

30. Because of the uncertainty of the injunction as to airports, Terrille never took his trip to Tennessee.

31. Terrille intends to "bring[] a firearm in checked luggage in compliance with

T.S.A. regulations....”

32. Terrille has a recently planned trip in the coming 90 days to fly to Nashville, Tennessee and intends to check his firearm in his luggage, but for the challenged laws, and he intends to do so again within 180 days.

33. Ivan Antonyuk is an adult male citizen of New York, a citizen of the United States, a law-abiding person, and has no disqualification under state or federal law which would prohibit him from possessing a firearm.

34. Antonyuk possesses an unrestricted New York carry permit.

35. Antonyuk intends to carry his firearm at a restaurant that serves alcohol.

36. Antonyuk intends to carry his firearm when he visits movie theaters.

**D. Statement of Undisputed Material Fact on Defendant Kindlon’s Cross-Motion**

Generally, the following facts have been asserted and supported through citations to admissible record evidence by Defendant Kindlon in his Statement of Material Facts, and either expressly admitted or denied without a citation to admissible record evidence in matching numbered paragraphs by Plaintiffs in their Response thereto. (*Compare* Dkt. No. 182, Attach. 2 [Def. Kindlon’s Rule 56.1 Statement] *with* Dkt. No. 196, Attach. 1 [Plfs.’ Rule 56.1 Response].)

1. Plaintiff Alfred Terrille is a resident of Watervliet, within Albany County.

2. Terrille owns an unrestricted New York carry permit and has had one since about 1994.

3. Terrille visits Thacher State Park about four times per year.

4. Terrille visits and intends to continue visiting establishments serving alcohol.

5. Terrille visits local businesses in Albany and Saratoga County often.

6. Terrille also visits movie theaters, specifically Regal Cinemas in Clifton Park and Colonie Center.

7. Terrille intends on travelling to Tennessee and bringing his firearm in his checked baggage, compliant with TSA procedure.

8. Terrille intends to keep visiting these locations regularly.

**E. Statement of Undisputed Material Fact on Defendant Rusin's Cross-Motion**

Generally, the following facts have been asserted and supported through citations to admissible record evidence by Defendant Rusin in his Statement of Material Facts, and either expressly admitted or denied without a citation to admissible record evidence in matching numbered paragraphs by Plaintiffs in their Response thereto. (*Compare* Dkt. No. 186, Attach. 35 [Def. Rusin's Rule 56.1 Statement] *with* Dkt. No. 195, Attach. 6 [Plfs.' Rule 56.1 Response].)

1. Plaintiff Corey Johnson's property tax receipt lists his property's "Municipality" as the Town of Van Buren (in Onondaga County), and lists his property's address as Syracuse.[5]

2. In his deposition, Plaintiff Johnson testified that his "mail sometimes says Solvay" or "Lakeland" and that he resides in the Baldwinsville School district.[6]

3. The Syracuse Police Department ("SPD"), of which Chief Rusin is the Chief of Police, does not *independently* involve itself in investigations of any crimes that occur outside of the City's geographical boundaries (although its website states that it "will provide mutual aid

[5] Although Defendant Rusin's original factual assertion states that "Plaintiff Corey Johnson . . . is a resident of the Town of Van Buren, in Onondaga County . . . ," that statement is based inferentially on a property tax receipt, which does not expressly support that assertion, and which speaks for itself. (Dkt. No. 186, Attach. 6.)

[6] (Dkt. No. 178, Attach. 2, at 161.)

assistance and support when requested by agencies having concurrent jurisdiction or to other criminal justice agencies requiring the services of the Department").

4. SPD does not play any role in the review, processing or the decision-making process of firearm applications.

5. The Rosamond Gifford Zoo ("Zoo") is owned and operated by the County.

6. The Zoo contains at least one educational facility (a "residency program in zoological medicine" launched by the Cornell University College of Veterinary Medicine).

7. The Zoo contains County governmental buildings and offices of County government personnel.[7]

8. Ponchito's Taqueria has a liquor license and sells alcohol.

9. The Syracuse Mets Baseball Stadium prohibits weapons on its property.

---

[7] Plaintiffs assert an inability to admit or deny this fact based on the evidence cited by Defendant Rusin. (Dkt. No. 195, Attach. 1, at ¶ 7.) However, the record evidence cited by Rusin sufficiently establishes this fact, especially when it is considered in conjunction with the previously admitted fact that the Zoo is owned and operated by the County. Furthermore, a denial of fact may not be supported by a statement that the non-movant lacks knowledge of, or information regarding, the fact. *See Percoco v. Lowe's Home Ctrs., LLC*, 208 F. Supp. 3d 437, 440 n.2 (D. Conn. 2016) ("Plaintiff, at various points, fails to admit or deny facts and instead states that she has 'no knowledge.' . . . The Court deems those facts admitted because 'no knowledge' is a noncognizable response."); *In re Horowitz*, No. 14-36884, 2016 WL 1039581, at *1 n.2 (Bankr. S.D.N.Y. Mar. 15, 2016) ("On a motion for summary judgment, denials based on a lack of knowledge or information sufficient to form a belief are insufficient to contest a disputed fact . . . ."); *Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2 (N.D.N.Y. Mar. 27, 2015) ("On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge, mere information or belief, and/or inadmissible evidence are insufficient to create a genuine dispute."); *N.Y.S. Teamsters Conference Pension and Ret. Fund v. Doren Ave. Assoc., Inc.*, 321 F. Supp. 2d 435, 438 (N.D.N.Y. 2004) ("Of the 45 paragraphs in the Fund's response to this statement, 21 are conclusory denials, 16 are denied for lack of sufficient information, and none are accompanied by a record citation. Thus, per Local Rule 7.1(a)(3), the factual allegations in defendants' statement of material facts may be deemed admitted.").

10. The movie theater located within the Carousel Center Mall (which is now Destiny USA) prohibits weapons on its property.

11. Plaintiff Johnson testified that he visits "the Byrne Dairy heading into Mattydale."

12. That Byrne Dairy is located at 2307 Brewerton Road in Mattydale (meaning, not the City).

13. Plaintiff Johnson testified that he visits, among other Speedways,[8] "the Speedway on Carrier Circle."

14. That Speedway is located at 6589 Thompson Road in Mattydale (meaning, not the City).

15. Plaintiff Johnson testified that he visits "the Wegmans over on Thompson" Road or James Street.

16. That Wegmans is located at 4256 James Street in East Syracuse (meaning, not the City).

17. Plaintiff Johnson testified that he visits the "New York State Fairgrounds in Syracuse."

18. The New York State Fairgrounds are in the Town of Geddes (meaning, not the City).

19. Plaintiff Johnson's Interrogatories stated that he visits a Buffalo Wild Wings in the City.

20. There is no Buffalo Wild Wings in the City.

---

[8] Plaintiff Johnson also testified that he visits the "Speedway off Court Street further down" (which apparently has an address of 3060 Court St, Syracuse, NY 13208). (Dkt. No. 186, Attach. 2, at 178.)

21. Bowman State Park is located in Oxford (meaning, not the City).

22. Mercer Park is located in Baldwinsville (meaning, not the City).

23. There are no Longhorn Steakhouse restaurants within the City.

24. Although the Texas Roadhouse restaurant has a Syracuse mailing address, it is located at 3143 Erie Blvd. in the Town of DeWitt (meaning, not the City).

25. There are no Outback Steakhouse restaurants within the City.

26. There are no Ruby Tuesday restaurants within the City.

27. The Tops grocery store that Plaintiff Johnson visits is in Baldwinsville (meaning, not the City).

28. The Better Burger Plaintiff Johnson visits is in Liverpool (meaning, not the City).

**F. Statement of Undisputed Material Fact on Defendant James' Cross-Motion**

Generally, the following facts have been asserted and supported through citations to admissible record evidence by Defendant James in his Statement of Material Facts, and either expressly admitted or denied without a citation to admissible record evidence in matching numbered paragraphs by Plaintiffs in their Response thereto. (*Compare* Dkt. No. 187, Attach. 2 [Def. James' Rule 56.1 Statement] *with* Dkt. No. 201, Attach. 1 [Plfs.' Rule 56.1 Response].)

1. According to a Sponsor's Memo, the New York Legislature adopted the Concealed Carry Improvement Act ("CCIA") in July 2022, with the twin goals of "protect[ing] individuals' Second Amendment rights as determined by the Supreme Court" and "preventing death and injury by firearms," in response to the *Bruen* decision.

2. The CDC website lists New York as having the "fifth-lowest firearm mortality rate of any state in the Union."

3. According to the CDC website, New York's firearm death rate of 4.4 per 100,000

is a fraction of the rate in states with laxer gun laws (13.9 in Texas, 19.8 in Tennessee, 22.9 in Louisiana, and 28 per 100,000 in Mississippi, the state with the highest rate).

4. According to the CDC website, if New York's rate were to increase to match Mississippi's rate, the result would be the loss of nearly 5,000 additional lives per year.

5. According to Defendants' expert Dr. Paul Reeping, although the science of studying the efficacy of New York's sensitive location laws is in its infancy, "multiple studies across distinct contexts find effects consistent with neutral or protective outcomes, and none provide empirical evidence that gun-free zones increase the likelihood of violence."

6. According to Dr. Reeping, firearm prohibitions in alcohol-serving establishments are associated with lower rates of nearby shootings.

7. Plaintiff Johnson invoked the Fifth Amendment 27 times in his three-and-a-half hour deposition, including regarding what long guns he owns, what semiautomatic rifles he owns, whether he owns a machine gun, ghost gun, or uses a "Glock switch" for fully automatic fire, whether he carries his gun to work in violation of company policy, whether he carries his gun in sensitive locations other than schools, courthouses, and government buildings, whether he carries guns into various of the sensitive locations at issue in this case, and whether he carries guns into others' private property (including their homes) without permission, even knowing that the gun is not welcome.

8. Plaintiff Terrille invoked the Fifth Amendment 19 times in a four-hour deposition, including on basic questions like what guns he owns, where he carries them, and when he has ever carried them outside his house.

9. Plaintiff Terrille refused to answer questions about illegal conduct, including whether he owns an assault weapon, whether and why he carries a gun to various sensitive

locations, whether his guns' presence "might" cause discomfort to children and families, and whether he carries weapons into locations (including homes) where the owner prohibits them.

10. Mercer Park is in the middle of Baldwinsville, with a reservable gazebo and pavilion for public gatherings.

11. According to the declaration of New York State Police Division Counsel Michael Deyo, the New York State Police's understanding of N.Y. Penal Law § 265.01-e(2)(n)'s prohibition on carrying firearms in "airports" is that the law does not prevent ticketed passengers with a New York State firearms permit from bringing an unloaded firearm, carried in a locked, hard-sided container, in their checked luggage, in compliance with 18 U.S.C. § 926A and 49 C.F.R. § 1540.111(c).

12. Also according to the Deyo's declaration, after the Second Circuit's decision in *Christian v. James*, 176 F.4th 189 (2d Cir. 2026), and the Supreme Court's decision in *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), N.Y. Penal Law § 265.01-d remains codified but is no longer enforced by the State Police in locations open to the public.

## II. GOVERNING LEGAL STANDARD

For the sake of brevity, the Cout will not repeat the well-known standard governing motions for summary judgment but will merely respectfully refer the reader to Part II.A. of the Court's recent decision in *Natl. Fuel Gas Dist. Co. v. Christian*, 25-CV-0525, 2026 WL 2664388, at *7-8 (N.D.N.Y. Sept. 10, 2026) (Suddaby, J.).

## III. ANALYSIS

At the outset, the Court must candidly acknowledge that it is conceivable or even likely that certain rulings of the Second Circuit in *Antonyuk II* may be overruled by the Supreme Court based on its intervening decisions (e.g., in *Rahimi*, *Hemani*, and *Wolford*) not simply for the

reasons proffered by Plaintiffs but for three other reasons.

First, the challenged provisions discussed in this Decision and Order do not exist in a vacuum but together with numerous other provisions banning concealed carry. As a result, it is difficult for the Court to logically conclude that the CCIA is complying with the Supreme Court's pronouncement that a state law cannot ban firearm carriage "too broadly" so that it "would eviscerate the general right to publicly carry arms for self-defense," *Bruen*, 597 U.S. at 31, when the CCIA bans concealed carry in so many discrete locations that together the bans constitute a ban that exists nearly everywhere.

Second, Defendants seem to forget that the test in question is essentially a proportionality one (analyzing whether the modern regulation is comparable to its relevantly similar historical analogues in that it imposes a comparable burden for a comparable reason or justification). With regard to the prong of the test considering the reason for the modern regulation, little if any admissible record evidence has been presented that law-abiding individuals[9] who otherwise have satisfied the requirements of receiving a concealed carry permit in New York State – including but not limited to the requirements of "good moral character," an in-person interview, and 18 hours of in-person and "live-fire" firearm training – pose any regulation-warranting threat whatsoever to the safety and tranquility of others in the challenged locations. (*See generally* Dkt. No. 187, Attach. 20 [Reeping Decl.]; Dkt. No. 187, Attach. 3 [Charles Decl.]; Dkt. No. 187, Attach. 17 [Rivas Decl.]; Dkt. No. 187, Attach. 22 [Young Decl.].)

Third, with regard to the prong of the test considering the burden imposed by the

---

[9] The Court flatly rejects Defendants' argument that Plaintiffs are not law abiding because of their invocation of their Fifth Amendment rights at their depositions in this action. *See, supra,* note 2 of this Decision and Order.

relevantly similar historical analogues, Defendants readily rely on laws from territories and/or from eras far afield of 1791 and 1868 without properly discounting their weight.

Having said that, the Court also must faithfully observe the point of law that, while certain rulings of the Second Circuit in *Antonyuk II* may conceivably or even likely be overruled by the Supreme Court based on its intervening decisions, this Court must follow those rulings from *Antonyuk II* unless the Supreme Court's intervening decisions so undermine those rulings that they will "almost inevitably" be overruled by the Second Circuit. *See United States v. Emmenegger*, 329 F. Supp.2d 416, 429 (S.D.N.Y. 2004) ("This Court must follow that precedent unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit."); *accord, United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *United States v. Rivers*, No. 24-CR-6154, 2025 WL 1006338, at *1 (W.D.N.Y. Apr. 4, 2025); *see also Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (noting that district courts and the Second Circuit itself are "required to follow" a Second Circuit decision, even if it is in "tension" with subsequent Supreme Court precedent, "unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision").

With those thoughts in mind, the Court proceeds to its analysis of the parties' arguments regarding the relevant provisions of the CCIA.

### A. Section 265.01-e(2)(d)'s Ban of Concealed Carry in "Public Parks"

After carefully considering the matter, the Court grants Defendants' cross-motions, and denies Plaintiffs' motion, regarding the CCIA's ban of concealed carry in "public parks," because the Court is unable to find that the Supreme Court's intervening decisions (in *Rahimi*, *Hemani*, and *Wolford*) so undermine the Second Circuit's rulings in *Antonyuk II* regarding this

ban that those rulings will "almost inevitably" be overruled by the Second Circuit on an appeal from this Decision and Order. Generally, the Court renders this finding for the reasons stated by Defendants (other than their arguments regarding a lack of standing, which the Court rejects for the reasons stated by Plaintiffs). *See, supra,* Part I.B. of this Decision and Order. Finally, because the Court has already concluded that this claim is not actionable under the Second Amendment, the Court need not, and does not, resolve the parties' dispute regarding whether this claim is a facial challenge or an as-applied challenge. *See Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (noting that "classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but does not speak at all to the substantive rule of law necessary to establish a constitutional violation"); *Citizens United v. FEC*, 558 U.S. 310, 331 (2010) ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."); *see also Nat'l Shooting Sports Found., Inc. v. James*, 144 F.4th 98, 107 (noting that "[g]enerally, ... a challenge to a statute before its enforcement will presumptively constitute a facial challenge," but that a prospective as-applied challenge can be brought where the plaintiffs "'seek to prove that a statute cannot be constitutionally applied to a specific course of conduct that the challenger intends to follow'") (quoting *Copeland v. Vance*, 893 F.3d 242, 265 [2d Cir. 2015]).

**B. Section 265.01-e(2)(o)'s Ban of Concealed Carry in "Any [Licensed] Establishment . . . Where Alcohol Is Consumed"**

After carefully considering the matter, the Court grants Defendants' cross-motions, and

denies Plaintiffs' motion, regarding the CCIA's ban of concealed carry in "any [licensed] establishment . . . where alcohol is consumed," because the Court is unable to find that the Supreme Court's intervening decisions (in *Rahimi*, *Hemani*, and *Wolford*) so undermine the Second Circuit's rulings in *Antonyuk II* regarding this ban that those rulings will "almost inevitably" be overruled by the Second Circuit on an appeal from this Decision and Order. Generally, the Court renders this finding for the reasons stated by Defendants (other than their arguments regarding a lack of standing, which the Court rejects for the reasons stated by Plaintiffs). *See, supra,* Part I.B. of this Decision and Order. Finally, because the Court has already concluded that this claim is not actionable under the Second Amendment, the Court need not, and does not, resolve the parties' dispute regarding whether this claim is a facial challenge or an as-applied challenge.

**C. Section 265.01-e(2)(p)'s Ban of Concealed Carry in "Theaters"**

After carefully considering the matter, the Court grants Defendants' cross-motions, and denies Plaintiffs' motion, regarding the CCIA's ban of concealed carry in "theaters," because the Court is unable to find that the Supreme Court's intervening decisions (in *Rahimi*, *Hemani*, and *Wolford*) so undermine the Second Circuit's rulings in *Antonyuk II* regarding this ban that those rulings will "almost inevitably" be overruled by the Second Circuit on an appeal from this Decision and Order. Generally, the Court renders this finding for the reasons stated by Defendants (other than their arguments regarding a lack standing, which the Court rejects for the reasons stated by Plaintiffs). *See, supra,* Part I.B. of this Decision and Order. Finally, because the Court has already concluded that this claim is not actionable under the Second Amendment, the Court need not, and does not, resolve the parties' dispute regarding whether this claim is a facial challenge or an as-applied challenge.

**D. Section 265.01-e(2)(d)'s Ban of Concealed Carry in "Zoos"**

After carefully considering the matter, the Court grants Defendants' cross-motions, and denies Plaintiffs' motion, regarding the CCIA's ban of concealed carry in "zoos," because the Court is unable to find that the Supreme Court's intervening decisions (in *Rahimi*, *Hemani*, and *Wolford*) so undermine the Second Circuit's rulings in *Antonyuk II* regarding this ban that those rulings will "almost inevitably" be overruled by the Second Circuit on an appeal from this Decision and Order. Generally, the Court renders this finding for the reasons stated by Defendants (other than their arguments regarding a lack of standing, which the Court rejects for the reasons stated by Plaintiffs). *See, supra,* Part I.B. of this Decision and Order. Finally, because the Court has already concluded that this claim is not actionable under the Second Amendment, the Court need not, and does not, resolve the parties' dispute regarding whether this claim is a facial challenge or an as-applied challenge.

**E. Section 265.01-e(2)(n)'s Ban of Concealed Carry in "Airports"**

After carefully considering the matter, the Court denies Defendants' cross-motions, and grants Plaintiffs' motion, regarding the CCIA's ban of concealed carry in "airports," for the reasons stated by Plaintiffs. *See, supra,* Part I.B. of this Decision and Order. To those reasons, the Court adds two brief points.

First, because of a lack of an existing permanent injunction from another case enjoining this provision regarding "airports," the Court finds this case to be distinguishable from the Second Circuit's ruling in *Giambalvo v. Suffolk County*, 155 F.4th 163 (2d Cir. 2025) (finding that the issuance of a preliminary injunction enjoining the CCIA's provision regarding social media accounts in *Antonyuk II* to be sufficient to moot a request for a similar preliminary injunction in *Giambalvo*).

Second, the Court finds that a clear pronouncement of this provision's unenforceability is further necessitated (despite Division Counsel Michael Deyo's assurance to the contrary, at least during his tenure at the New York State Police) due to all the reasons cited by Plaintiffs, including but not limited to the continued instances, cited by them, of airport detentions and arrests over checked firearms. (Dkt. No. 201, Attach. 2, at 38 [attaching page 33, citing, in part, report of incident occurring on January 23, 2026, at LaGuardia Airport].)[10]

For all of these reasons, the Court issues a permanent injunction regarding this provision. Despite Plaintiffs' failure to oppose Defendant James' request for a stay of any injunction entered, the Court denies that request as unsupported by even a showing of facial merit under the circumstances. *See, infra,* note 11 of this Decision and Order.

**F. Section 265.01-d(1)'s Ban of Concealed Carry on or in "Private Property" Open to the Public**

After carefully considering the matter, the Court grants Defendant James' cross-motion to the extent that it requests the dismissal without prejudice of Plaintiffs' claims against the CCIA's provision regarding "private property" that is open to the public (and otherwise denies that cross-motion with regard to this provision), because those claims (due to their obvious merit) have been effectively mooted by the Second Circuit's affirmance of the granting of summary judgment and awarding of a permanent injunction to the plaintiffs regarding this provision in *Christian v. James*, 176 F.4th 189 (2d Cir. 2026).

**G. Section 265.01-d(1)'s Ban of Concealed Carry on or in "Private Property"**

[10] The Court notes that its findings would in no way be changed even if the flaw with this claim was not its unconstitutionality but its preemption. *See also UnitedHealthcare of New York, Inc. v. Lacewell*, 967 F.3d 82, 90-96 (2d. Cir. 2020) (finding that the district court possessed jurisdiction to enforce a preempted state law, reversing the district court's dismissal of plaintiffs' preemption claim, and remanding the case with an instruction to grant summary judgment regarding an Affordable Care Act regulation based on preemption).

***Not* Open to the Public**

After carefully considering the matter, the Court grants Defendant James' cross-motion to the extent that it requests the dismissal without prejudice of Plaintiffs' claims against the CCIA's provision regarding "private property" that is *not* open to the public (and otherwise denies that cross-motion with regard to this provision), because Plaintiffs do not oppose that dismissal. (Dkt. No. 201, Attach. 2, at 40, n.53 [attaching page 35].) The Court adds only that, while dismissal of this claim *with* prejudice is certainly possible based on the case's current procedural posture, the Court finds dismissal *without* prejudice to be more appropriate, given (1) the fact that Defendants have not shown "some plain legal prejudice beyond the mere prospect of a second lawsuit," and (2) the fact that Court is relying on Plaintiffs' voluntary withdrawal of these claims as opposed to an analysis of the Supreme Court's decisions after *Antonyuk II* (much less a merits analysis of any relevantly similar historical analogues regarding firearm carriage "in [a building on] private property"). *See United States v. Ross*, 161 F.4th 100, 121-25 (2d Cir. 2025) (finding no abuse of discretion in dismissal without prejudice).

**H. Plaintiffs' Second and Third Causes of Action Against Defendant Rusin**

After carefully considering the matter, the Court grants Defendant Rusin's cross-motion to the extent that it requests the dismissal of Plaintiffs' Second and Third Causes of Action (regarding the application process) against Defendant Rusin and to the extent that those causes of action are asserted against him and survived the parties' Stipulation of Partial Settlement (Dkt. No. 174), because (1) Plaintiffs have not responded to that request for dismissal, and (2) Defendant Rusin has met his modest threshold burden of establishing that his argument

possesses facial merit for the reasons stated therein.[11]

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 178) is **GRANTED in part** and **DENIED in part** in accordance with Part III of this Decision and Order; and it is further

**ORDERED** that Defendant Kindlon's cross-motion (Dkt. No. 182) is **GRANTED in part** and **DENIED in part** in accordance with Part III of this Decision and Order; and it is further

**ORDERED** that Defendant Rusin's cross-motion (Dkt. No. 186) is **GRANTED in part** and **DENIED in part** in accordance with Part III of this Decision and Order; and it is further

**ORDERED** that Defendant James' cross-motion (Dkt. No. 187) is **GRANTED in part** and **DENIED in part** in accordance with Part III of this Decision and Order; and it is further

**ORDERED** that, in accordance with Part III of this Decision and Order, the following claims are **DISMISSED**:

(1) Plaintiffs' claims challenging Section 265.01-e(2)(d)'s ban of concealed carry in "public parks";

---

11 In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

(2) Plaintiffs' claims challenging Section 265.01-e(2)(o)'s ban of concealed carry in "any [licensed] establishment . . . where alcohol is consumed";

(3) Plaintiffs' claims challenging Section 265.01-e(2)(p)'s ban of concealed carry in "theaters"; and

(4) Plaintiffs' claims challenging Section 265.01-e(2)(d)'s ban of concealed carry in "zoos"; and it is further

**ORDERED** that Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this Order are **PERMANENTLY ENJOINED**, effectively immediately, from enforcing N.Y. Pen. L. § 265.01-d(2)(n) with respect airports, and their regulations, policies, and practices implementing it; and it is further

**ORDERED** that Plaintiffs' claims challenging N.Y. Pen. L. § 265.01-d(1) regarding "private property" (that is both open to the public and *not* open to the public) are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiffs' Second and Third Causes of Action (regarding the application process) against Defendant Rusin are **DISMISSED**; and it is further

**ORDERED** that, within **THREE (3) DAYS** from the date of the entry of this Decision and Order, the parties shall file letters with the Court specifying what, if any, portions of Plaintiffs' Complaint survive the entry of this Decision and Order. If no such letters are filed, the remainder of this action shall be dismissed. and a judgment issued, without further Order of this Court.

Dated: September 30, 2026
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge